*537 U.S. 418, \*; 123 S. Ct. 1115, \*\*;*
*155 L. Ed. 2d 1, \*\*\*; 2003 U.S. LEXIS 1945*

# VICTOR MOSELEY AND CATHY MOSELEY, DBA VICTOR'S LITTLE SECRET, PETITIONERS v. V SECRET CATALOGUE, INC., ET AL.

## No. 01-1015

## SUPREME COURT OF THE UNITED STATES

537 U.S. 418; 123 S. Ct. 1115; 155 L. Ed. 2d 1; 2003 U.S. LEXIS 1945; 71 U.S.L.W. 4126; 65 U.S.P.Q.2D (BNA) 1801; 2003 Cal. Daily Op. Service 1894; 16 Fla. L. Weekly Fed. S 114

November 12, 2002, Argued
March 4, 2003, Decided

**PRIOR HISTORY:** ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT.

V Secret Catalogue, Inc. v. Moseley, 259 F.3d 464, 2001 U.S. App. LEXIS 16937 (6th Cir. Ky. 2001)

**DISPOSITION:** Reversed and remanded.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Respondent trademark owners sued petitioner store owners, alleging, inter alia, a trademark dilution claim. The district court granted the trademark owners summary judgment on the dilution claim. The United States Court of Appeals for the Sixth Circuit affirmed. Certiorari was granted to resolve a conflict regarding proof of actual injury to the economic value of a famous mark.

**OVERVIEW:** The trademark owners sold women's lingerie in over 750 stores. The store owners sold women's lingerie and novelty items in their single retail store. The name of the store was similar, but not identical, to the trademark owners' mark. In the dilution claim, the trademark owners alleged that the store owners' conduct was likely to blur and erode the distinctiveness and tarnish the reputation of their trademark. The store owners did not challenge the claim that the trademark owners' mark was famous. The Court determined that the trademark owners were required to show actual dilution, rather than a likelihood of dilution. There was a complete absence of evidence of any lessening of the capacity of the trademark owners' mark to identify and distinguish goods or services sold in the trademark owners' stores or advertised in their catalogs. In addition, difficulties in obtaining proof of actual dilution were not an acceptable reason for dispensing with proof of an essential element of a statutory violation. The evidence in the record was not sufficient to support the summary judgment on the dilution count.

Exhibit 10, p.1
Dockets.Justia.com

**OUTCOME:** The Court reversed the judgment and remanded the case.

**CORE TERMS:** dilution, famous, trademark, consumer, distinctiveness, lessening, lingerie, junior, distinctive quality, blurring, reputation, unfair competition, distinctive, advertising, trade name, Trademark Act, summary judgment, injunctive relief, infringement, requires proof, tarnish, senior, blur, tarnishment, actual harm, secret, fanciful, selling, earth, injury to business

## LexisNexis(R) Headnotes

Trademark Law > Dilution of Famous Marks > General Overview
**HN1** The Federal Trademark Dilution Act describes the factors that determine whether a mark is "distinctive and famous," and defines the term "dilution" as the lessening of the capacity of a famous mark to identify and distinguish goods or services.

Trademark Law > Dilution of Famous Marks > General Overview
**HN2** Objective proof of actual injury to the economic value of a famous mark, as opposed to a presumption of harm arising from a subjective "likelihood of dilution" standard, is a requisite for relief under the Federal Trademark Dilution Act.

Trademark Law > Special Marks > Trade Names > General Overview
Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview
Trademark Law > Subject Matter > Names > General Overview
**HN3** See 15 U.S.C.S. § 1125(c).

Trademark Law > Dilution of Famous Marks > General Overview
**HN4** See 15 U.S.C.S. § 1127.

Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > Causes of Actions
Trademark Law > Infringement Actions > General Overview
Trademark Law > Special Marks > Trade Names > Infringement
**HN5** Traditional trademark infringement law is a part of the broader law of unfair competition that has its sources in English common law, and was largely codified in the Trademark Act of 1946 (Lanham Act). That law broadly prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service. 15 U.S.C.S. §§ 1114, 1125(a)(1)(A). Infringement law protects consumers from being misled by the use of infringing marks and also protects producers from unfair practices by an "imitating competitor."

Trademark Law > Infringement Actions > General Overview
Trademark Law > Dilution of Famous Marks > General Overview

**Exhibit 10, p.2**

*HN6* Unlike traditional infringement law, the prohibitions against trademark dilution are not the product of common-law development, and are not motivated by an interest in protecting consumers. The preservation of the uniqueness of a trademark should constitute the only rational basis for its protection.

Trademark Law > Dilution of Famous Marks > Factors
Trademark Law > Special Marks > Trade Names > General Overview
Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview

*HN7* The owner of a famous mark is entitled to injunctive relief against another person's commercial use of a mark or trade name if that use causes dilution of the distinctive quality of the famous mark. 15 U.S.C.S. § 1125(c)(1). This text unambiguously requires a showing of actual dilution, rather than a likelihood of dilution.

Trademark Law > Dilution of Famous Marks > General Overview

*HN8* The term "dilution" means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of--(1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception. 15 U.S.C.S. § 1127. The contrast between the initial reference to an actual "lessening of the capacity" of the mark, and the later reference to a "likelihood of confusion, mistake, or deception" in the second caveat confirms the conclusion that actual dilution must be established. Of course, that does not mean that the consequences of dilution, such as an actual loss of sales or profits, must also be proved.

Trademark Law > Dilution of Famous Marks > General Overview

*HN9* At least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution. Such mental association will not necessarily reduce the capacity of the famous mark to identify the goods of its owner, the statutory requirement for dilution under the Federal Trademark Dilution Act.

Trademark Law > Dilution of Famous Marks > General Overview

*HN10* It may well be that direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proven through circumstantial evidence--the obvious case is one where the junior and senior marks are identical. Whatever difficulties of proof may be entailed, they are not an acceptable reason for dispensing with proof of an essential element of a statutory violation.

**DECISION:** Relief under Federal Trademark Dilution Act provision (15 USCS 1125(c)) held to require objective proof of actual injury to economic value of famous mark.

**SUMMARY:** Under 43(c) of the Trademark Act of 1946, as amended ( 3 of the Federal

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...uments/Client%20Files/Schmidt/Smith/moselyopinion.htm (3 of 21)2/10/2006 4:27:06 PM

Exhibit 10, p.3

Trademark Dilution Act (FTDA)) (15 USCS 1125(c)), the owners of a famous mark are entitled to certain relief, including an injunction against another person's commercial use of a mark or tradename if that use causes dilution of the distinctive quality of the mark. Also, in 45 of the Trademark Act of 1946, as amended (FTDA 4) (15 USCS 1127), "dilution" is defined as the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception.

The owners of the Victoria's Secret retail chain and the "VICTORIA'S SECRET" trademark, seeking to compel a husband and wife to stop using the name "Victor's Little Secret" for their single retail store in Kentucky, filed, in the United States District Court for the Western District of Kentucky, an action against the husband and wife that contained claims of (1) trademark infringement under 15 USCS 1114(1), (2) unfair competition under 15 USCS 1125(a), (3) dilution in violation of the FTDA, and (4) violation of Kentucky common law. The District Court (1) entered summary judgment for the husband and wife on the three claims other than the FTDA claim, but (2) on the basis of finding for the trademark owners on the FTDA claim, enjoined the husband and wife from using the name "Victor's Little Secret." The United States Court of Appeals for the Sixth Circuit, in upholding the injunction, concluded that relief under the FTDA did not require proof of actual economic harm (259 F3d 464).

On certiorari, the United States Supreme Court reversed and remanded. In an opinion by Stevens, J., expressing in pertinent part the unanimous view of the court, it was held that:

(1) Relief under the FTDA required objective proof of actual injury to the economic value of a famous mark, because (a) the "causes dilution" text of 1125(c) unambiguously required a showing of actual dilution, rather than a likelihood of dilution; (b) this conclusion was fortified by the definition of "dilution" in 1127; and (c) whatever difficulties of proof might be entailed, they were not an acceptable reason for dispensing with proof of an essential element of a statutory violation.

(2) The evidence in the record of the case at hand was not sufficient to support summary judgment in favor of the trademark owners on the dilution count, where (a) the trademark owners, in support of their motion for summary judgment in the District Court, had submitted an affidavit by an expert in marketing who had explained "the enormous value" of the trademark; but (b) neither the expert nor any other witness had expressed any opinion concerning the impact, if any, of the use by the husband and wife of the name "Victor's Little Secret" on the value of the trademark.

Kennedy, J., concurring, said (1) with respect to the definition in 1127 of "dilution" as the lessening of the capacity of a famous mark to identify and distinguish goods and services, that diminishment of such capacity could be shown by the probable consequences flowing from use or adoption of the competing mark, and (2) the Supreme Court's opinion did not foreclose injunctive relief if, on remand, the trademark owners presented sufficient evidence of either blurring or tarnishment.

**Exhibit 10, p.4**

**LAWYERS' EDITION HEADNOTES:**


**[\*\*\*LEdHN1]**
TRADEMARKS TRADENAMES §20
-- likelihood of trademark dilution -- actual dilution
Headnote: [1A] *LEdHN(1A)* [1B] *LEdHN(1B)* [1C] *LEdHN(1C)*


Relief under 43(c) of the Trademark Act of 1946, as amended ( 3 of the Federal
Trademark Dilution Act (FTDA)) (15 USCS 1125(c))--which provides that the owner of
a famous mark shall be entitled to certain relief, including an injunction against
another person's commercial use of a mark or tradename if that use causes dilution of
the distinctive quality of the mark--requires objective proof of actual injury to the
economic value of a famous mark, because:
(1) The "causes dilution" text of 1125(c) unambiguously requires a showing of actual
dilution, rather than a likelihood of dilution.
(2) This conclusion is fortified by the definition--in 45 of the Trademark Act of 1946,
as amended (FTDA 4) (15 USCS 1127)--of "dilution" as the lessening of the capacity
of a famous mark to identify and distinguish goods or services, regardless of the
presence or absence of (a) competition between the owner of the famous mark and
other parties, or (b) likelihood of confusion, mistake, or deception. The contrast
between the initial reference to an actual "lessening of the capacity" of the mark, and
the later reference to a "likelihood of confusion, mistake, or deception" in the second
caveat, confirms the conclusion that actual dilution must be established.
(3) As to the argument that consumer surveys and other means of demonstrating
actual dilution are expensive and often unreliable, (a) it may well be that direct
evidence of dilution, such as consumer surveys, will not be necessary if actual dilution
can reliably be proven through circumstantial evidence--the obvious case is one where
the junior and senior marks are identical--and (b) whatever difficulties of proof may
be entailed, they are not an acceptable reason for dispensing with proof of an
essential element of a statutory violation.


**[\*\*\*LEdHN2]**
APPEAL §1677.3
SUMMARY JUDGMENT JUDGMENT ON PLEADINGS §5
-- trademark dilution -- sufficiency of evidence -- reversal -- remand
Headnote: [2A] *LEdHN(2A)* [2B] *LEdHN(2B)* [2C] *LEdHN(2C)*


On certiorari to review a Federal Court of Appeals' judgment upholding a Federal
District Court's issuance of an injunction under 43(c) of the Trademark Act of 1946, as
amended ( 3 of the Federal Trademark Dilution Act (FTDA)) (15 USCS 1125(c))--
which provided that the owner of a famous mark would be entitled to certain relief,
including an injunction against another person's commercial use of a mark or
tradename if that use caused dilution of the distinctive quality of the mark--requested
by the owners of the Victoria's Secret retail chain and the "VICTORIA'S SECRET"
trademark, against the use by a husband and wife of the name "Victor's Little Secret"
for their single retail store, the United States Supreme Court, having held that the
FTDA required objective proof of actual injury to the economic value of a famous
mark, reversed the Court of Appeals' judgment and remanded the case for further
proceedings, as the Supreme Court determined that the evidence in the record was

not sufficient to support summary judgment in favor of the trademark owners on the dilution count, where (1) the trademark owners, in support of their motion for summary judgment, had submitted an affidavit by a marketing expert who had explained "the enormous value" of the trademark; but (2) neither the expert nor any other witness had expressed any opinion concerning the impact, if any, of the use by the husband and wife of the name "Victor's Little Secret" on the value of the trademark; and (3) there was a complete absence of evidence of any lessening of the capacity of the "VICTORIA'S SECRET" mark to identify and distinguish goods or services sold in Victoria's Secret stores or advertised in its catalogs.

**[\*\*\*LEdHN3]**
APPEAL §1289
-- assumptions -- trademark dilution
Headnote: [3] *LEdHN(3)*

The United States Supreme Court, on certiorari to determine whether 43(c) of the Trademark Act of 1946, as amended ( 3 of the Federal Trademark Dilution Act (FTDA)) (15 USCS 1125(c)), which provides that the owner of a famous mark shall be entitled to certain relief including an injunction against another person's commercial use of a mark or tradename if that use causes dilution of the distinctive quality of the mark, requires objective proof of actual injury to the economic value of a famous mark--where (1) the complaint filed in the case at hand in a Federal District Court by the owners of the Victoria's Secret retail chain and the "VICTORIA'S SECRET" trademark, in seeking to compel a husband and wife to stop using the name "Victor's Little Secret" for their single retail store, contained claims of (a) trademark infringement, alleging that the name "Victor's Little Secret" was likely to cause confusion and/or mistake in violation of 15 USCS 1114(1), (b) unfair competition, alleging misrepresentation in violation of 15 USCS 1125(a), (c) dilution in violation of the FTDA, and (d) violation of state common law; (2) the District Court, finding for the trademark owners on the FTDA dilution claim only, had enjoined the husband and wife from using the name "Victor's Little Secret;" and (3) the Federal Court of Appeals whose decision the Supreme Court was reviewing had upheld the District Court's injunction--decided the case on the assumption that the use of the name "Victor's Little Secret" neither confused any consumers or potential consumers, nor was likely to do so, because the trademark owners had not appealed the District Court's adverse judgment on the counts other than the dilution count. Moreover, the Supreme Court determined that the disposition of those other counts also made it appropriate for the Supreme Court to decide the case on the assumption that there was no significant competition between the adversaries.

**[\*\*\*LEdHN4]**
TRADEMARKS TRADENAMES §30
-- trademark dilution -- defenses
Headnote: [4] *LEdHN(4)*

With respect to the use by a husband and wife of the name "Victor's Little Secret" for their single retail store, neither the absence of any likelihood of confusion, nor the absence of competition, provided a defense to a complaint, by the owners of the

**Exhibit 10, p.6**

Victoria's Secret retail chain and the "VICTORIA'S SECRET" trademark, alleging that the use of the name "Victor's Little Secret" violated 43(c) of the Trademark Act of 1946, as amended ( 3 of the Federal Trademark Dilution Act (FTDA)) (15 USCS 1125 (c))--which provided that the owner of a famous mark would be entitled to certain relief including an injunction against another person's commercial use of a mark or tradename if that use caused dilution of the distinctive quality of the mark--even though the United States Supreme Court determined that relief under the FTDA required objective proof of actual injury to the economic value of a famous mark.

[***LEdHN5]

TRADEMARKS TRADENAMES §19.8
-- consequences of dilution
Headnote: [5] *LEdHN(5)*

The United States Supreme Court's holding that relief under 43(c) of the Trademark Act of 1946, as amended ( 3 of the Federal Trademark Dilution Act (FTDA)) (15 USCS 1125(c))--which provides that the owner of a famous mark shall be entitled to certain relief including an injunction against another person's commercial use of a mark or tradename if that use causes dilution of the distinctive quality of the mark--requires objective proof of actual injury to the economic value of the famous mark, rather than a likelihood of dilution, does not mean that the consequences of dilution, such as an actual loss of sales or profits, must also be proved. However, at least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution, as such mental association will not necessarily reduce the capacity of the famous mark to identify the goods of its owner, the statutory requirement for dilution under the FTDA. "Blurring" is not a necessary consequence of mental association; nor is "tarnishing."

**SYLLABUS:** An army colonel sent a copy of an advertisement for petitioners' retail store, "Victor's Secret," to respondents, affiliated corporations that own the VICTORIA'S SECRET trademarks, because he saw it as an attempt to use a reputable trademark to promote unwholesome, tawdry merchandise. Respondents asked petitioners to discontinue using the name, but petitioners responded by changing the store's name to "Victor's Little Secret." Respondents then filed suit, alleging, *inter alia*, "the dilution of famous marks" under the Federal Trademark Dilution Act (FTDA). This 1995 amendment to the Trademark Act of 1946 describes the factors that determine whether a mark is "distinctive and famous," 15 U.S.C. § 1125(c)(1), and defines "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods or services," § 1127. To support their claims that petitioners' conduct was likely to "blur and erode" their trademark's distinctiveness and "tarnish" its reputation, respondents presented an affidavit from a marketing expert who explained the value of respondents' mark but expressed no opinion concerning the impact of petitioners' use of "Victor's Little Secret" on that value. The District Court granted respondents summary judgment on the FTDA claim, and the Sixth Circuit affirmed, finding that respondents' mark was "distinctive" and that the evidence established "dilution" even though no actual harm had been proved. It also rejected the Fourth Circuit's conclusion that the FTDA "requires proof that (1) a defendant has [used] a junior mark sufficiently similar to the famous mark to evoke in . . .

**Exhibit 10, p. 7**

consumers a mental association of the two that (2) has caused (3) actual economic harm to the famous mark's economic value by lessening its former selling power as an advertising agent for its goods or services," *Ringling-Bros.-Barnum & Bailey Combined Shows, Inc.,* v. *Utah Div. of Travel Development,* 170 F.3d 449, 461.

Held:

1. The FTDA requires proof of actual dilution. Pp. 9-16.

(a) Unlike traditional infringement law, the prohibitions against trademark dilution are not the product of common-law development, and are not motivated by an interest in protecting consumers. The approximately 25 state trademark dilution laws predating the FTDA refer both to injury to business reputation (tarnishment) and to dilution of the distinctive quality of a trademark or trade name (blurring). The FTDA's legislative history mentions that the statute's purpose is to protect famous trademarks from subsequent uses that blur the mark's distinctiveness or tarnish or disparage it, even absent a likelihood of confusion. Pp. 9-13.

(b) Respondents' mark is unquestionably valuable, and petitioners have not challenged the conclusion that it is "famous." Nor do they contend that protection is confined to identical uses of famous marks or that the statute should be construed more narrowly in a case such as this. They do contend, however, that the statute requires proof of actual harm, rather than mere "likelihood" of harm. The contrast between the state statutes and the federal statute sheds light on this precise question. The former repeatedly refer to a "likelihood" of harm, rather than a completed harm, but the FTDA provides relief if another's commercial use of a mark or trade name "causes dilution of the [mark's] distinctive quality," § 1125(c)(1) (emphasis added). Thus, it unambiguously requires an actual dilution showing. This conclusion is confirmed by the FTDA's "dilution" definition itself, § 1127. That does not mean that the consequences of dilution, such as an actual loss of sales or profits, must also be proved. This Court disagrees with the Fourth Circuit's *Ringling Bros.* decision to the extent it suggests otherwise, but agrees with that court's conclusion that, at least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution. Such association will not necessarily reduce the famous mark's capacity to identify its owner's goods, the FTDA's dilution requirement. Pp. 13-15.

2. The evidence in this case is insufficient to support summary judgment on the dilution count. There is a complete absence of evidence of any lessening of the VICTORIA'S SECRET mark's capacity to identify and distinguish goods or services sold in Victoria's Secret stores or advertised in its catalogs. The officer who saw the ad directed his offense entirely at petitioners, not respondents. And respondents' expert said nothing about the impact of petitioners' name on the strength of respondents'

**Exhibit 10, p.8**

mark. Any difficulties of proof that may be entailed in demonstrating actual dilution are not an acceptable reason for dispensing with proof of an essential element of a statutory violation. Pp. 15-16.

259 F.3d 464, reversed and remanded.

**COUNSEL:** James R. Higgins, Jr. argued the cause for petitioners.

Lawrence G. Wallace argued the cause for the United States, as amicus curiae, by special leave of court.

Walter E. Dellinger, Jr. argued the cause for respondents.

**JUDGES:** STEVENS, J., delivered the opinion for a unanimous Court with respect to Parts I, II, and IV, and the opinion of the Court with respect to Part III, in which REHNQUIST, C. J., and O'CONNOR, KENNEDY, SOUTER, THOMAS, GINSBURG, and BREYER, JJ, joined. KENNEDY J., filed a concurring opinion.

**OPINIONBY:** STEVENS

**OPINION:** **[*420]**  **[***7]**  **[**1118]**  JUSTICE STEVENS delivered the opinion of the Court. *

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


* JUSTICE SCALIA joins all but Part III of this opinion.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -


 **[***LEdHR1A]**  [1A]*LEdHR(1A)* In 1995 Congress amended § 43 of the Trademark Act of 1946, 15 U.S.C. § 1125, to provide a remedy for the "dilution of famous marks." 109 Stat. 985-986. That amendment, known as *HN1* the Federal Trademark Dilution Act (FTDA), describes the factors that determine whether a mark is "distinctive **[*421]**  and famous," and defines the term "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods or services." n1 The question we granted **[*422]**  certiorari to decide is whether *HN2* objective **[**1119]**  proof of **[***8]**  actual injury to the economic value of a famous mark (as opposed to a presumption of harm arising from a subjective "likelihood of dilution" standard) is a requisite for relief under the FTDA.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n1 The FTDA provides: "SEC. 3. REMEDIES FOR DILUTION OF FAMOUS MARKS.

"(a) REMEDIES. -- Section 43 of the Trademark Act of 1946 (15 U.S.C. 1125) is amended by adding at the end the following new subsection:

**Exhibit 10, p.9**

*HN3* "'(c)(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection. In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to --

"'(A) the degree of inherent or acquired distinctiveness of the mark;

"'(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

"'(C) the duration and extent of advertising and publicity of the mark;

"'(D) the geographical extent of the trading area in which the mark is used;

"'(E) the channels of trade for the goods or services with which the mark is used;

"'(F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;

"'(G) the nature and extent of use of the same or similar marks by third parties; and

"'(H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

"'(2) In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of the famous mark shall also be entitled to the remedies set forth in sections 35(a) and 36, subject to the discretion of the court and the principles of equity.

"'(3) The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register shall be a complete bar to an action against that person, with respect to that mark, that is brought by another person under the common law or a statute of a State and that seeks to prevent dilution of the distinctiveness of a mark, label, or form of advertisement.

"'(4) The following shall not be actionable under this section:

"'(A) Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark.

"'(B) Noncommercial use of a mark.

"'(C) All forms of news reporting and news commentary.'

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...ments/Client%20Files/Schmidt/Smith/moselyopinion.htm (10 of 21)2/10/2006 4:27:06 PM

**Exhibit 10, p.10**

"(b) CONFORMING AMENDMENT. -- The heading for title VIII of the Trademark Act of 1946 is amended by striking 'AND FALSE DESCRIPTIONS' and inserting ', FALSE DESCRIPTIONS, AND DILUTION.'

"SEC. 4. DEFINITION.

"Section 45 of the Trademark Act of 1946 (15 U.S.C. 1127) is amended by inserting after the paragraph defining when a mark shall be deemed to be 'abandoned' the following:

HN4 "'The term "dilution" means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of --

"'(1) competition between the owner of the famous mark and other parties, or

"'(2) likelihood of confusion, mistake, or deception.'" 109 Stat. 985-986.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I

Petitioners, Victor and Cathy Moseley, own and operate a retail store named "Victor's Little Secret" in a strip mall in Elizabethtown, Kentucky. They have no employees.

Respondents are affiliated corporations that own the VICTORIA'S SECRET trademark, and operate over 750 Victoria's Secret stores, two of which are in Louisville, Kentucky, a short drive from Elizabethtown. In 1998 they spent over $ 55 million advertising "the VICTORIA'S SECRET brand--one of moderately priced, high quality, attractively designed lingerie sold in a store setting designed to look like a woman's **[*423]** bedroom." App. 167, 170. They distribute 400 million copies of the Victoria's Secret catalog each year, including 39,000 in Elizabethtown. In 1998 their sales exceeded $ 1.5 billion.

In the February 12, 1998, edition of a weekly publication distributed to residents of the military installation at Fort Knox, Kentucky, petitioners advertised the "GRAND OPENING Just in time for Valentine's Day!" of their store "VICTOR'S SECRET" in nearby Elizabethtown. The ad featured "Intimate Lingerie *for every woman*"; "Romantic Lighting"; "Lycra Dresses"; "Pagers"; and "Adult Novelties/Gifts." *Id.,* at 209. An army colonel, who saw the ad and was offended by what he perceived to be an attempt to use a reputable company's trademark to promote the sale of "unwholesome, tawdry merchandise," sent a copy to respondents. *Id.,* at 210. Their counsel then wrote to petitioners stating that their choice of the name "Victor's Secret" for a store selling lingerie was likely to cause confusion with the well-known VICTORIA'S SECRET mark and, in addition, was likely to "dilute the distinctiveness" of the mark. *Id.,* at 190-191. They requested the immediate discontinuance of the use of the name "and any variations thereof." *Ibid.* In response, petitioners changed the name of their store to "Victor's Little Secret." Because that change did not satisfy respondents, **[***9]** n2 they promptly filed this action in Federal District Court.

**Exhibit 10, p.11**

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n2 After being advised of a proposal to change the store name to "VICTOR'S LITTLE SECRETS," respondents' counsel requested detailed information about the store in order to consider whether that change "would be acceptable." App. 13-14. Respondents filed suit two months after this request.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -


**[***LEdHR2A]**  [2A]*LEdHR(2A)*⚓The complaint contained four separate claims: (1) for trademark infringement alleging that petitioners' use of their trade name was "likely to cause confusion and/or mistake in violation of 15 U.S.C. § 1114(1)"; (2) for unfair competition alleging misrepresentation in violation of § 1125(a);  **[*424]**  (3) for "federal dilution" in violation of the FTDA; and (4) for trademark infringement and unfair competition in violation of the common law of Kentucky. *Id.,* at 15, 20-23. In the dilution count, the complaint alleged that petitioners' conduct was "likely to blur and erode the distinctiveness" and "tarnish the reputation" of the VICTORIA'S SECRET trademark. *Ibid.*

After discovery the parties filed cross-motions for summary judgment. The record contained uncontradicted affidavits and deposition testimony describing the vast size of respondents' business, the value of the VICTORIA'S SECRET name, and descriptions of the items sold in the respective parties' stores. Respondents sell a "complete line of lingerie" and related items, each of which bears a VICTORIA'S SECRET label or tag. n3 Petitioners  **[**1120]**  sell a wide variety of items, including adult videos, "adult novelties, " and lingerie. n4 Victor Moseley stated in an affidavit that women's lingerie represented only about five per cent of their sales. *Id.,* at 131. In support of their motion for summary judgment, respondents submitted an affidavit by an expert in marketing who explained "the enormous value" of respondents' mark. *Id.,* at 195-205. Neither he, nor any other witness, expressed any opinion concerning the impact, if any,  **[*425]**  of petitioners' use of the name "Victor's Little Secret" on that value.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n3 Respondents described their business as follows: "Victoria's Secret stores sell a complete line of lingerie, women's undergarments and nightwear, robes, caftans and kimonos, slippers, sachets, lingerie bags, hanging bags, candles, soaps, cosmetic brushes, atomizers, bath products and fragrances." *Id.,* at 168.


n4 In answer to an interrogatory, petitioners stated that they "sell novelty action clocks, patches, temporary tattoos, stuffed animals, coffee mugs, leather biker wallets, zippo lighters, diet formula, diet supplements, jigsaw puzzles, whyss, handcufs *[sic]*, hosiery bubble machines, greeting cards, calendars, incense burners,

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...ments/Client%20Files/Schmidt/Smith/moselyopinion.htm (12 of 21)2/10/2006 4:27:06 PM

**Exhibit 10, p.12**

car air fresheners, sunglasses, ball caps, jewelry, candles, lava lamps, blacklights, fiber optic lights, rock and roll prints, lingerie, pagers, candy, adult video tapes, adult novelties, t-shirts, etc." *Id.,* at 87.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finding that the record contained no evidence of actual confusion between the parties' marks, the District Court concluded that "no likelihood of confusion exists as a matter of law" and entered summary judgment for petitioners on the infringement and unfair competition claims. V Secret Catalogue, Inc. v. Moseley, 2000 U.S. Dist. LEXIS 5215, Civ. Action No. 3:98CV-395-S (WD Ky., Feb. 9, 2000), App. to Pet. for Cert. 28a, 37a. With respect to the FTDA claim, however, the court ruled for respondents.

Noting that petitioners did not challenge Victoria Secret's claim that its mark is "famous," the only question it had to decide was whether petitioners' use of their mark diluted the quality of respondents' mark. **[\*\*\*10]** Reasoning from the premise that dilution "corrodes" a trademark either by "'blurring its product identification or by damaging positive associations that have attached to it,'" the court first found the two marks to be sufficiently similar to cause dilution, and then found "that Defendants' mark dilutes Plaintiffs' mark because of its tarnishing effect upon the Victoria's Secret mark." *Id.,* at 38a-39a (quoting *Ameritech, Inc.* v. *American Info. Technologies Corp.,* 811 F.2d 960, 965 (CA6 1987)). It therefore enjoined petitioners "from using the mark 'Victor's Little Secret' on the basis that it causes dilution of the distinctive quality of the Victoria's Secret mark." App. to Pet. for Cert. 38a-39a. The court did not, however, find that any "blurring" had occurred. *Ibid.*

The Court of Appeals for the Sixth Circuit affirmed. 259 F.3d 464 (2001). In a case decided shortly after the entry of the District Court's judgment in this case, the Sixth Circuit had adopted the standards for determining dilution under the FDTA that were enunciated by the Second Circuit in *Nabisco, Inc.* v. *PF Brands, Inc.,* 191 F.3d 208 (1999). See *Kellogg Co.* v. *Exxon Corp.,* 209 F.3d 562 (CA6 2000). In order to apply those standards, it was necessary to discuss **[\*426]** two issues that the District Court had not specifically addressed -- whether respondents' mark is "distinctive," n5 and whether relief could be granted before dilution has actually occurred. n6 With respect to the first issue, **[\*\*1121]** the court rejected the argument that VICTORIA'S SECRET could not be distinctive because "secret" is an ordinary word used by hundreds of lingerie concerns. The court concluded that the entire mark was "arbitrary and fanciful" and therefore deserving of a high level of trademark protection. 259 F.3d at 470. n7 On **[\*427]** the second issue, the court relied on a distinction suggested by this sentence in the **[\*\*\*11]** House Report: "Confusion leads to immediate injury, while dilution is an infection, which if allowed to spread, will inevitably destroy the advertising value of the mark." H. R. Rep. No. 104-374, p. 1030 (1995). This statement, coupled with the difficulty of proving actual harm, lent support to the court's ultimate conclusion that the evidence in this case sufficiently established "dilution." 259 F.3d, at 475-477. In sum, the Court of Appeals held:

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...ments/Client%20Files/Schmidt/Smith/moselyopinion.htm (13 of 21)2/10/2006 4:27:06 PM

**Exhibit 10**, p.13

"While no consumer is likely to go to the Moseleys' store expecting to find Victoria's Secret's famed Miracle Bra, consumers who hear the name 'Victor's Little Secret' are likely automatically to think of the more famous store and link it to the Moseleys' adult-toy, gag gift, and lingerie shop. This, then, is a classic instance of dilution by tarnishing (associating the Victoria's Secret name with sex toys and lewd coffee mugs) and by blurring (linking the chain with a single, unauthorized establishment). Given this conclusion, it follows that Victoria's Secret would prevail in a dilution analysis, even without an exhaustive consideration of all ten of the *Nabisco* factors." *Id.,* at 477. *n8*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 "It is quite clear that the statute intends distinctiveness, in addition to fame, as an essential element. The operative language defining the tort requires that 'the [junior] person's . . . use . . . cause dilution of the distinctive quality of the [senior] mark.' 15 U.S.C. § 1125(c)(1). There can be no dilution of a mark's distinctive quality unless the mark is distinctive." *Nabisco, Inc.* v. *PF Brands, Inc.,* 191 F.3d 208, 216 (CA2 1999).

n6 The Second Circuit explained why it did not believe "actual dilution" need be proved:

"Relying on a recent decision by the Fourth Circuit, Nabisco also asserts that proof of dilution under the FTDA requires proof of an 'actual, consummated harm.' *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Division of Travel Dev.,* 170 F.3d 449, 464 (4th Cir. 1999). We reject the argument because we disagree with the Fourth Circuit's interpretation of the statute.

"It is not clear which of two positions the Fourth Circuit adopted by its requirement of proof of 'actual dilution.' *Id.* The narrower position would be that courts may not infer dilution from 'contextual factors (degree of mark and product similarity, etc.),' but must instead rely on evidence of 'actual loss of revenues' or the 'skillfully constructed consumer survey.' *Id.* at 457, 464-65. This strikes us as an arbitrary and unwarranted limitation on the methods of proof." *Nabisco,* 191 F.3d at 223.

n7 "In this case, for example, although the word 'secret' may provoke some intrinsic association with prurient interests, it is not automatically linked in the ordinary human experience with lingerie. 'Secret' is not particularly descriptive of bras and hosiery. Nor is there anything about the combination of the possessive 'Victoria's' and 'secret' that automatically conjures thought of women's underwear-except, of course, in the context of plaintiff's line of products. Hence, we conclude that the 'Victoria's Secret' mark ranks with those that are 'arbitrary and fanciful' and is therefore deserving of a high level of trademark protection. Although the district court applied a slightly

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...ments/Client%20Files/Schmidt/Smith/moseleyopinion.htm (14 of 21)2/10/2006 4:27:06 PM

**Exhibit 10, p.14**

different test from the one now established in this circuit, the court would undoubtedly have reached the same result under the *Nabisco* test. Certainly, we cannot say that the court erred in finding that the preliminary factors of a dilution claim had been met by Victoria's Secret." 259 F.3d at 470-471.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -


n8 The court had previously noted that the "Second Circuit has developed a list of ten factors used to determine if dilution has, in fact, occurred, while describing them as a 'nonexclusive list' to 'develop gradually over time' and with the particular facts of each case. Those factors are: distinctiveness; similarity of the marks; 'proximity of the products and the likelihood of bridging the gap;' 'interrelationship among the distinctiveness of the senior mark, the similarity of the junior mark, and the proximity of the products;' 'shared consumers and geographic limitations;' 'sophistication of consumers;' actual confusion; 'adjectival or referential quality of the junior use;' 'harm to the junior user and delay by the senior user;' and the 'effect of [the] senior's prior laxity in protecting the mark." *Id.*, at 476 (quoting *Nabisco*, 191 F.3d at 217-222).


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

 **[\*428]** *In reaching that conclusion the Court of Appeals expressly rejected the holding of the Fourth Circuit in Ringling Bros.-Barnum & Bailey Combined Shows, Inc.* v. *Utah Div. of Travel Development*, 170 F.3d 449 (1999). In that case, which involved a claim that Utah's use on its license plates of the phrase "greatest *snow* on earth" was causing dilution of the "greatest *show* on earth," the court had concluded "that to establish dilution of a famous mark under the federal Act requires proof that (1) a defendant has made **[\*\*1122]** use of a junior mark sufficiently similar to the famous mark to evoke in a relevant universe of consumers a mental association of the two that (2) has caused (3) actual economic harm to the famous mark's economic value by lessening its former selling power as an advertising agent for its goods or services." *Id.*, at 461 (emphasis added). Because other Circuits have also expressed differing views about the "actual harm" issue, we granted certiorari to resolve the conflict. 535 U.S. 985, 152 L. Ed. 2d 463, 122 S. Ct. 1536 (2002).

II

HN5 Traditional trademark infringement law is a part of the broader law of unfair competition, see *Hanover Star Milling Co.* v. *Metcalf,* 240 U.S. 403, 413, 60 L. Ed. 713, 36 S. Ct. 357, 1916 Dec. Comm'r Pat. 265 (1916), that has its sources in English common law, and was largely **[\*\*\*12]** codified in the Trademark Act of 1946 (Lanham Act). See B. Pattishall, D. Hilliard, & J. Welch, Trademarks and Unfair Competition 2 (4th ed. 2000) ("The United States took the [trademark and unfair competition] law of England as its own"). That law broadly prohibits uses of

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...ments/Client%20Files/Schmidt/Smith/moselyopinion.htm (15 of 21)2/10/2006 4:27:06 PM

**Exhibit 10,** p.15

trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service. See 15 U.S.C. §§ 1114, 1125(a)(1)(A). Infringement law protects consumers from being misled by the use of infringing marks and also protects producers from unfair practices by an "imitating competitor." *Qualitex Co.* v. *Jacobson Products Co.,* 514 U.S. 159, 163-164, 131 L. Ed. 2d 248, 115 S. Ct. 1300 (1995).

**[\*\*\*LEdHR3]** [3]*LEdHR(3)* **[\*\*\*LEdHR4]** [4]*LEdHR(4)* Because respondents did not appeal the District Court's adverse judgement on counts 1, 2, and 4 of their complaint, **[\*429]** we decide the case on the assumption that the Moseleys' use of the name "Victor's Little Secret" neither confused any consumers or potential consumers, nor was likely to do so. Moreover, the disposition of those counts also makes it appropriate to decide the case on the assumption that there was no significant competition between the adversaries in this case. Neither the absence of any likelihood of confusion nor the absence of competition, however, provides a defense to the statutory dilution claim alleged in count 3 of the complaint.

*HN6* Unlike traditional infringement law, the prohibitions against trademark dilution are not the product of common-law development, and are not motivated by an interest in protecting consumers. The seminal discussion of dilution is found in Frank Schechter's 1927 law review article concluding "that the preservation of the uniqueness of a trademark should constitute the only rational basis for its protection." Rational Basis of Trademark Protection, 40 Harv. L. Rev. 813, 831. Schechter supported his conclusion by referring to a German case protecting the owner of the well-known trademark "Odol" for mouthwash from use on various noncompeting steel products. n9 That case, and indeed the principal focus of the Schechter article, involved an established arbitrary mark that had been "added to rather than withdrawn from the human vocabulary" and an infringement that made use of the identical mark. *Id.,* at 829. n10

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n9 The German court "held that the use of the mark, 'Odol' even on non-competing goods was '*gegen die guten Sitten*,' pointing out that, when the public hears or reads the word 'Odol,' it thinks of the complainant's mouth wash, and that an article designated with the name 'Odol' leads the public to assume that it is of good quality. Consequently, concludes the court, complainant has 'the utmost interest in seeing that its mark is not diluted [*verwassert*]: it would lose in selling power if everyone used it as the designation of his goods.'" 40 Harv. L. Rev., at 831-832.

n10 Schecter discussed this distinction at length: "The rule that arbitrary, coined or fanciful marks or names should be given a much broader degree of protection than symbols, words or phrases in common use would appear to be entirely sound. Such trademarks or tradenames as 'Blue Ribbon,' used, with or without registration, for all kinds of commodities or services, more than sixty times; 'Simplex' more than sixty

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...ments/Client%20Files/Schmidt/Smith/moseleyopinion.htm (16 of 21)2/10/2006 4:27:06 PM

**Exhibit 10, p.16**

times; 'Star,' as far back as 1898, nearly four hundred times; 'Anchor,' already registered over one hundred fifty times in 1898; 'Bull Dog,' over one hundred times by 1923; 'Gold Medal,' sixty-five times; '3-in-1' and '2-in-1,' seventy-nine times; 'Nox-all,' fifty times; 'Universal,' over thirty times; 'Lily White' over twenty times; -- all these marks and names have, at this late date, very little distinctiveness in the public mind, and in most cases suggest merit, prominence or other qualities of goods or services in general, rather than the fact that the product or service, in connection with which the mark or name is used, emanates from a particular source. On the other hand, 'Rolls-Royce,' 'Aunt Jemima's,' 'Kodak,' 'Mazda,' 'Corona,' 'Nujol,' and 'Blue Goose,' are coined, arbitrary or fanciful words or phrases that have been added to rather than withdrawn from the human vocabulary by their owners, and have, from the very beginning, been associated in the public mind with a particular product, not with a variety of products, and have created in the public consciousness an impression or symbol of the excellence of the particular product in question." *Id.,* at 828-829.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

 **[*430]   [**1123]** Some 20 years later Massachusetts **[***13]** enacted the first state statute protecting trademarks from dilution. It provided:

"Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be a ground for injunctive relief in cases of trade-mark infringement or unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." 1947 Mass. Acts, p. 300, ch. 307.

Notably, that statute, unlike the "Odol" case, prohibited both the likelihood of "injury to business reputation" and "dilution." It thus expressly applied to both "tarnishment" and "blurring." At least 25 States passed similar laws in the decades before the FTDA was enacted in 1995. See Restatement (Third) of Unfair Competition § 25, Statutory Note (1995).

III

In 1988, when Congress adopted amendments to the Lanham Act, it gave consideration to an antidilution provision. **[*431]** During the hearings on the 1988 amendments, objections to that provision based on a concern that it might have applied to expression protected by the First Amendment were voiced and the provision was deleted from the amendments. H. R. Rep. No. 100-1028 (1988). The bill, H. R. 1295, 104th Cong., 1st Sess., that was introduced in the House in 1995, and ultimately enacted as the FTDA, included two exceptions designed to avoid those concerns: a provision allowing "fair use" of a registered mark in comparative advertising or promotion, and the provision that noncommercial use of a mark shall not constitute dilution. See 15 U.S.C. § 1125(c)(4).

On July 19, 1995, the Subcommittee on Courts and Intellectual Property of the House Judiciary Committee held a 1-day hearing on H. R. 1295. No opposition to the bill was voiced at the hearing and, with one minor amendment that extended protection to

**Exhibit 10, p.17**

unregistered as well as registered marks, the subcommittee endorsed the bill and it passed the House unanimously. The committee's report stated that the "purpose of H. R. 1295 is to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion." H. R. Rep. No. 104-374, p. 1029 (1995). As examples of dilution, it stated that "the use of DUPONT shoes, BUICK aspirin, and KODAK pianos would be actionable under this legislation." *Id.*, at 1030. In the Senate an identical bill, S. 1513, 104th Cong., 1st Sess., was introduced on December 29, 1995, and passed on the same day by voice vote without any hearings. In his explanation of the bill, Senator Hatch also stated that it was intended "to protect famous trademarks from subsequent **[***14]** uses that blur the distinctiveness of the mark or tarnish or disparage it," and referred to the Dupont Shoes, Buick aspirin, and Kodak piano examples, as well as to the Schechter law review article. 141 Cong. Rec. 38559-38561 (1995).

**[*432]** **[**1124]** IV

The VICTORIA'S SECRET mark is unquestionably valuable and petitioners have not challenged the conclusion that it qualifies as a "famous mark" within the meaning of the statute. Moreover, as we understand their submission, petitioners do not contend that the statutory protection is confined to identical uses of famous marks, or that the statute should be construed more narrowly in a case such as this. Even if the legislative history might lend some support to such a contention, it surely is not compelled by the statutory text.

The District Court's decision in this case rested on the conclusion that the name of petitioners' store "tarnished" the reputation of respondents' mark, and the Court of Appeals relied on both "tarnishment" and "blurring" to support its affirmance. Petitioners have not disputed the relevance of tarnishment, Tr. of Oral Arg. 5-7, presumably because that concept was prominent in litigation brought under state antidilution statutes and because it was mentioned in the legislative history. Whether it is actually embraced by the statutory text, however, is another matter. Indeed, the contrast between the state statutes, which expressly refer to both "injury to business reputation" and to "dilution of the distinctive quality of a trade name or trademark," and the federal statute which refers only to the latter, arguably supports a narrower reading of the FTDA. See Klieger, Trademark Dilution: The Whittling Away of the Rational Basis for Trademark Protection, 58 U. Pitt. L. Rev. 789, 812-813, and n. 132 (1997).

**[***LEdHR1B]** [1B]*LEdHR(1B)* The contrast between the state statutes and the federal statute, however, sheds light on the precise question that we must decide. For those state statutes, like several provisions in the federal Lanham Act, repeatedly refer to a "likelihood" of harm, rather than to a completed harm. The relevant text of the FTDA, quoted in full in note 1, *supra*, provides that *HN7* "the owner of a famous mark" is entitled to injunctive **[*433]** relief against another person's commercial use of a mark or trade name if that use *causes dilution* of the distinctive quality" of the famous mark. 15 U.S.C. § 1125(c)(1) (emphasis added). This text unambiguously requires a showing of actual dilution, rather than a likelihood of dilution.

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...ments/Client%20Files/Schmidt/Smith/moselyopinion.htm (18 of 21)2/10/2006 4:27:06 PM

**Exhibit 10,** p.18

This conclusion is fortified by the definition of the term "dilution" itself. That definition provides:

HN8 "The term 'dilution' means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of --

"(1) competition between the owner of the famous mark and other parties, or

"(2) likelihood of confusion, mistake, or deception." § 1127.

The contrast between the initial reference to an actual "lessening of the capacity" of the mark, and the later reference to a "likelihood of confusion, mistake, or deception" in the second caveat confirms the conclusion **[***15]** that actual dilution must be established.

**[***LEdHR5]** [5] LEdHR(5) Of course, that does not mean that the consequences of dilution, such as an actual loss of sales or profits, must be proved. To the extent that language in the Fourth Circuit's opinion in the *Ringling Bros.* case suggests otherwise, see 170 F.3d at 460-465, we disagree. We do agree, however, with that court's conclusion that, HN9 at least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution. As the facts of that case demonstrate, such mental association will not necessarily reduce the capacity of the famous mark to identify the goods of its owner, the statutory requirement for dilution under the FTDA. For even though Utah drivers may be reminded of the circus when they see a license plate referring to the "greatest *snow* on earth," it by no means follows that they will associate "the greatest show **[**1125]** on earth" **[*434]** with skiing or snow sports, or associate it less strongly or exclusively with the circus. "Blurring" is not a necessary consequence of mental association. (Nor, for that matter, is "tarnishing.")

**[***LEdHR2B]** [2B] LEdHR(2B) The record in this case establishes that an army officer who saw the advertisement of the opening of a store named "Victor's Secret" did make the mental association with "Victoria's Secret," but it also shows that he did not therefore form any different impression of the store that his wife and daughter had patronized. There is a complete absence of evidence of any lessening of the capacity of the VICTORIA'S SECRET mark to identify and distinguish goods or services sold in Victoria's Secret stores or advertised in its catalogs. The officer was offended by the ad, but it did not change his conception of Victoria's Secret. His offense was directed entirely at petitioners, not at respondents. Moreover, the expert retained by respondents had nothing to say about the impact of petitioners' name on the strength of respondents' mark.

**[***LEdHR1C]** [1C] LEdHR(1C) **[***LEdHR2C]** [2C] LEdHR(2C) Noting that consumer surveys and other means of demonstrating actual dilution are expensive and often unreliable, respondents and their *amici* argue that evidence of an actual "lessening of the capacity of a famous mark to identify and distinguish goods or services," § 1127, may be difficult to obtain. HN10 It may well be, however, that direct evidence of dilution such as consumer surveys will not be necessary if actual

**Exhibit 10, p.19**

dilution can reliably be proven through circumstantial evidence -- the obvious case is one where the junior and senior marks are identical. Whatever difficulties of proof may be entailed, they are not an acceptable reason for dispensing with proof of an essential element of a statutory violation. The evidence in the present record is not sufficient to support the summary judgment on the dilution count. The judgment is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

**CONCURBY:** KENNEDY

**CONCUR: [*435] [***16]** JUSTICE KENNEDY, concurring.

As of this date, few courts have reviewed the statute we are considering, the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), and I agree with the Court that the evidentiary showing required by the statute can be clarified on remand. The conclusion that the VICTORIA'S SECRET mark is a famous mark has not been challenged throughout the litigation, *ante*, at 6, 13, and seems not to be in question. The remaining issue is what factors are to be considered to establish dilution.

For this inquiry, considerable attention should be given, in my view, to the word "capacity" in the statutory phrase that defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services." 15 U.S.C. § 1127. When a competing mark is first adopted, there will be circumstances when the case can turn on the probable consequences its commercial use will have for the famous mark. In this respect, the word "capacity" imports into the dilution inquiry both the present and the potential power of the famous mark to identify and distinguish goods, and in some cases the fact that this power will be diminished could suffice to show dilution. Capacity is defined as "the power or ability to hold, receive, or accommodate." Webster's Third New International Dictionary 330 (1961); see also Webster's New International Dictionary 396 (2d ed. 1949) ("Power of receiving, containing, or absorbing"); 2 Oxford English Dictionary 857 (2d ed. 1989) ("Ability to receive or contain; holding power"); American Heritage Dictionary 275 (4th ed. 2000) ("The ability to receive, hold, or absorb"). If a mark will erode or lessen the power of the famous mark to give customers the assurance of quality and the full satisfaction they have in knowing they have purchased goods **[**1126]** bearing the famous mark, the elements of dilution may be established.

Diminishment of the famous mark's capacity can be shown by the probable consequences flowing from use or adoption **[*436]** of the competing mark. This analysis is confirmed by the statutory authorization to obtain injunctive relief. 15 U.S. C. § 1125(c)(2). The essential role of injunctive relief is to "prevent future wrong, although no right has yet been violated." *Swift & Co.* v. *United States,* 276 U.S. 311, 326, 72 L. Ed. 587, 48 S. Ct. 311 (1928). Equity principles encourage those who are injured to assert their rights promptly. A holder of a famous mark threatened with diminishment of the mark's capacity to serve its purpose should not be forced to wait until the damage is done and the distinctiveness of the mark has been eroded.

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...ments/Client%20Files/Schmidt/Smith/moselyopinion.htm (20 of 21)2/10/2006 4:27:06 PM

**Exhibit 10, p.20**

In this case, the District Court found that petitioners' trademark had tarnished the VICTORIA'S SECRET mark. App. to Pet. for Cert. 38a-39a. The Court of Appeals affirmed this conclusion and also found dilution by blurring. 259 F.3d 464, 477 (CA6 2001). The Court's opinion does not foreclose injunctive relief if respondents on remand present sufficient evidence of either blurring or tarnishment.

With these observations, I join the opinion of the Court.

**REFERENCES:** Return To Full Text Opinion     Go to Supreme Court Brief(s)     Go to Oral Argument Transcript

74 Am Jur 2d, Trademarks and Tradenames 116, 117, 157

15 USCS 1125(c), 1127

L Ed Digest, Trademarks and Tradenames 20

L Ed Index, Trademarks and Tradenames

Annotation References:

What constitutes "famous mark" for purposes of Federal Trademark Dilution Act, 15 U.S.C.A. 1125(c) [15 USCS 1125(c)], which provides remedies for dilution of famous marks. 165 ALR Fed 625.

---

Service: **Get by LEXSEE®**
Citation: **537 U.S. 418**
    View: Full
Date/Time: Friday, February 10, 2006 - 4:25 PM EST

---

* Signal Legend:

🔴 -  Warning: Negative treatment is indicated
🟧Q -  Questioned: Validity questioned by citing refs
⚠️ -  Caution: Possible negative treatment
➕ -  Positive treatment is indicated
🅰 -  Citing Refs. With Analysis Available
ⓘ -  Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

---

 About LexisNexis  |  Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...ments/Client%20Files/Schmidt/Smith/moselyopinion.htm (21 of 21)2/10/2006 4:27:06 PM]

**Exhibit 10, p.21**