BidZirk LLC, et al v. Smith — Doc. 6 Att. 12
Get a Document - by Citation - 2004 U.S. Dist. LEXIS 19239
6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-13    Page 1 of 19

*2004 U.S. Dist. LEXIS 19239, \**

STARBUCKS CORP. and STARBUCKS U.S. BRANDS, INC., Plaintiffs, -v- WOLFE'S BOROUGH COFFEE, INC. d/b/a BLACK BEAR MICRO ROASTERY, Defendant.

No. 01 Civ. 5981 (LTS)(THK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2004 U.S. Dist. LEXIS 19239

September 28, 2004, Decided
September 28, 2004, Filed

**SUBSEQUENT HISTORY:** Judgment entered by Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 2005 U.S. Dist. LEXIS 35578 (S.D.N.Y., Dec. 22, 2005)

**DISPOSITION:** Plaintiff's motion for summary judgment denied. Defendant's cross-motion for summary judgment granted in part and denied in part.

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiff corporation sued defendant company and alleged claims for federal and state trademark dilution under the Federal Trademark Dilution Act, 15 U.S.C.S. §§ 1125(c), and 1127 and New York Gen. Bus. Law § 360-l, federal trademark infringement and unfair competition under the Lanham Act, 15 U.S.C.S. § 1051 et seq., and sdeceptive acts and false advertising under state law. The parties filed cross motions for summary judgment.

**OVERVIEW:** The corporation, which was a well known vendor of specialty coffees and coffee products, had more than 56 trademark registrations and had been registered in over 100 foreign countries. When the company began making and selling a dark roasted blend of coffee named "Charbucks Blend" and later renamed "Mister Charbucks", the corporation contacted the company and objected to the use of the term "Charbucks" on the ground that it was disparaging and dilutive of the "Starbucks" mark. The company decided to continue to sell its Charbucks Blend coffee. The court found that the corporation was not entitled to summary judgment on its federal trademark infringement and unfair competition claims under 15 U.S.C.S. § 1114 and 15 U.S.C.S. § 1125(a) because while it was undisputed that the corporation owned a protectable trademark, material issues of fact were present with respect to a number of the factors that had be weighed in determining whether there was a relevant likelihood of confusion between the parties' coffee products.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (1 of 19)2/10/20...

Exhibit 11, p.1

**OUTCOME:** The corporation's motion for summary judgment was denied and the company's motion for summary judgment was granted as to the state law claims of deceptive acts and false advertising and was denied in all other respects.

**CORE TERMS:** dilution, coffee, consumer, summary judgment, trademark, roasted, unfair competition, similarity, famous, purchaser, proffered evidence, quotation, dark, customers, retail, state law, blend, brand, tarnishment, impression, proffer, Lanham Act, trademark infringement, distinctive quality, public interest, sophistication, cross-motion, selling, junior, user

## LexisNexis(R) Headnotes

Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN1** Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The court's role is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. A factual issue is genuine if it can reasonably be resolved in favor of either party, and a fact is material if it can affect the outcome of the action based on the governing law. Initially, the burden is on the moving party to demonstrate the absence of any genuine issues of material fact. If the moving party satisfies its burden, the burden then shifts to the nonmoving party to offer specific evidence showing that a genuine issue for trial exists. In resolving a motion for summary judgment, the court must view the evidence in a light that is favorable to the non-moving party and draw all reasonable inferences in favor of that party. The standard for cross-motions 'is the same as that for individual motions for summary judgment and the court must consider each motion independent of the other.

Trademark Law > Infringement Actions > Burdens of Proof
Trademark Law > Infringement Actions > Determinations
Trademark Law > Protection of Rights > General Overview

**HN2** To prevail on trademark infringement and unfair competition claims under the Lanham Act, 15 U.S.C.S. § 1051 et seq., plaintiffs must prove: (1) that they own a protectable trademark; and (2) there is a likelihood of consumer confusion. A plaintiff's ownership of a registered mark is prima facie evidence of the mark's validity, and of the plaintiff's exclusive right to use the mark in commerce in connection with the goods identified in the certificate of registration. A likelihood of confusion exists if an ordinarily prudent purchaser in the marketplace is likely to be confused as to the origin or sponsorship of the goods. The plaintiff must show that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark. The mere possibility of confusion is not enough; consumer confusion must be probable.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (2 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.2

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 19239

6:06-cv-00109-HMH     Date Filed 02/13/2006     Entry Number 6-13     Page 3 of 19

Trademark Law > Likelihood of Confusion > Consumer Confusion > Circuit Court Consumer Confusion Factors > 2nd Circuit Court
Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > General Overview
Trademark Law > Infringement Actions > Summary Judgment > General Overview

HN3 The United States Court of Appeals for the Second Circuit has identified eight factors for consideration in determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the owner will bridge the gap; (5) evidence of actual confusion; (6) the defendant's good faith in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of the consumers. The first three factors are considered most important; however no one factor is determinative and the list is not exhaustive. Summary judgment is appropriate where the undisputed evidence would lead to only one conclusion under the test.

Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > Appearance
Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

HN4 In assessing the similarity between two trademarks, courts analyze the similarity in pronunciation and appearance of each and the manner in which they are presented to consumers. Courts evaluate whether the overall impression created by the marks in relation to the context in which they are found is likely to confuse potential customers. The question is not merely how many points of similarity the marks share, but whether they create the same general overall impression.

Trademark Law > Infringement Actions > General Overview
Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > Sound
Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

HN5 Courts consider differences in the way words appear and sound as well as differences in the way products are packaged and presented to consumers in evaluating similarity of the marks for purposes of trademark infringement and dilution claims.

Trademark Law > Likelihood of Confusion > Consumer Confusion > Surveys
Trademark Law > Infringement Actions > General Overview
Trademark Law > Federal Unfair Competition Law > General Overview

HN6 For purposes of trademark infringement and unfair competition claims, the courts may consider evidence of actual consumer confusion about the source, sponsorship, or affiliation of a plaintiff's goods and services in assessing whether there is a likelihood of confusion.

Trademark Law > Infringement Actions > General Overview
Trademark Law > Federal Unfair Competition Law > General Overview
Trademark Law > Likelihood of Confusion > Intent > General Overview

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (3 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.3

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 19239

6:06-cv-00109-HMH     Date Filed 02/13/2006     Entry Number 6-13     Page 4 of 19

**HN7** For purposes of trademark infringement and unfair competition claims, courts may consider whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation and goodwill or of benefitting from consumer confusion between its product and that of the first user. On the other hand, good faith may be found where the defendant has selected a mark which reflects the product's characteristics. A trier of fact must determine the weight and significance of the evidence in connection with the good faith/bad faith factor. Resolution of the issue on summary judgment is thus precluded.

Trademark Law > Infringement Actions > General Overview
Trademark Law > Federal Unfair Competition Law > General Overview
Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

**HN8** For purposes of trademark infringement and unfair competition claims, courts assess whether the inferior quality of a junior user's goods could jeopardize the senior user's reputation. Products of equal quality may also create confusion as to source.

Trademark Law > Infringement Actions > General Overview
Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview
Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > General Overview

**HN9** In the context of trademark infringement and unfair competition claims, the expense of the products, the manner and market conditions in which the products are purchased, and whether purchasers may be subject to impulse are relevant in determining the sophistication of the buyers. Courts consider the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods. The more sophisticated the consumers, the less likely they are to be misled by similarity in marks. Price alone is not determinative of the care a consumer will take in making purchases, and the touchstone remains the general impression that is left with the ordinary consumer. Analysis of the consumer sophistication issue thus must also be left to the finder of fact.

Trademark Law > Dilution of Famous Marks > Federal Trademark Dilution Act
Trademark Law > Dilution of Famous Marks > Factors
Trademark Law > Special Marks > Trade Names > General Overview

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (4 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.4

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 19239

6:06-cv-00109-HMH     Date Filed 02/13/2006     Entry Number 6-13     Page 5 of 19

**HN10** The Federal Trademark Dilution Act (FTDA), 15 U.S.C.S. § 1125 provides that the owner of a famous mark shall be entitled to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark. 15 U.S.C.S. § 1125(c)(1). The statute defines "dilution" as the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of: (1) competition between the owner of the famous mark and other parties; or (2) likelihood of confusion, mistake or deception. 15 U.S.C.S. § 1127. The elements of a federal dilution claim are as follows: (1) the plaintiff's mark must be famous; (2) the plaintiff's mark must be inherently distinctive; (3) the defendant's use of the junior mark must be a commercial use in commerce; (4) the defendant's use must have began after the plaintiff's mark became famous; and (5) the defendant's use of the junior mark must cause dilution of the distinctive quality of the plaintiff's mark. A plaintiff suing under the FTDA must also show actual dilution, rather than a likelihood of dilution.

Trademark Law > Dilution of Famous Marks > General Overview

**HN11** The United States Court of Appeals for the Second Circuit has held that dilution can occur either by blurring or tarnishment. Dilution through blurring occurs where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product. Dilution by tarnishment can occur when a trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods. A mark may also be tarnished if it loses its ability to serve as a wholesome identifier of the plaintiff's product.

Trademark Law > Conveyances > General Overview
Trademark Law > Likelihood of Confusion > Noncompeting Products > Dilution
Trademark Law > Dilution of Famous Marks > General Overview

**HN12** To succeed on a federal trademark dilution claim, a plaintiff must demonstrate the existence of actual dilution, although it need not prove the consequences of dilution such as actual loss of sales or profits. At least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution since such mental association will not necessarily reduce the capacity of the famous mark to identify the goods of its owner, the statutory requirement for dilution under the Federal Trademark Dilution Act, 15 U.S.C.S. § 1125.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview
Trademark Law > Special Marks > Trade Names > Infringement
Trademark Law > Federal Unfair Competition Law > General Overview

**HN13** See N.Y. Gen. Bus. Law § 360-l.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (5 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.5

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 19239

6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-13    Page 6 of 19

Trademark Law > Dilution of Famous Marks > General Overview

**HN14** To establish a dilution claim under New York law, a plaintiff must establish: (1) ownership of a distinctive mark; and (2) likelihood of dilution. A plaintiff need not show likelihood of confusion or actual dilution to prevail on a state law dilution claim.

Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > Infringement Actions > General Overview
Torts > Business & Employment Torts > Unfair Business Practices
Trademark Law > Federal Unfair Competition Law > False Advertising > General Overview

**HN15** N.Y. Gen. Bus. Law § 349 makes unlawful deceptive acts and practices and N.Y. Gen. Bus. Law § 350 prohibits false advertising in the conduct of business. Most trademark and trade dress infringement claims are deemed to fall outside the ambit of §§ 349 and 350. A successful claim under either statute requires proof of consumer injury or harm to the public interest. The conduct must be the sort of offense to the public interest which would trigger Federal Trade Commission intervention under 15 U.S.C.S. § 45. Harm to a business from a competitor, however, does not constitute the kind of detriment to the public interest required by the statutes.

Torts > Business & Employment Torts > Unfair Business Practices

**HN16** New York law prohibits the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods. Under New York law, the standard for unfair competition is a virtual cognate of the federal Lanham Act, 15 U.S.C.S. § 1051 et seq., and is predicated on the theory of the misappropriation of a claimant's commercial goodwill. In addition, to succeed on the merits of a common law claim of unfair competition, a plaintiff must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating the defendant's bad faith.

**COUNSEL:** [*1] JONES, DAY, REAVIS & POGUE, By: Bonnie L. Hemenway, Esq., Barbra S. Levy, Esq., New York, NY, Attorneys for Plaintiffs. n1

n1 After the parties' briefs were filed in connection with the instant motion practice, the Court issued an Order, dated January 15, 2004, substituting as counsel for Plaintiffs John C. Rawls, Esq. and Mark Bradford, Esq., of Fulbright & Jaworski L.L.P., in place of Bonnie L. Hemenway, Esq., and Barbra S. Levy, Esq., of Jones, Day, Reavis & Pogue.

KONOWITZ & GREENBERG, By: Michael K. Terry, Esq., Steven S. Konowitz, Esq., Wellesley Hills, MA, Attorneys for Defendant.

**JUDGES:** LAURA TAYLOR SWAIN, United States District Judge.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (6 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.6

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 19239

6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-13    Page 7 of 19

**OPINIONBY:** LAURA TAYLOR SWAIN

**OPINION:** OPINION AND ORDER

LAURA TAYLOR SWAIN, United States District Judge

Before the Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in this action arising from the use by Defendant Wolfe's Borough Coffee, Inc., d/b/a Black Bear Micro Roastery ("Black Bear" or "Defendant"), of the names "Charbucks Blend" and "Mister Charbucks" for a blend of dark roasted coffee that Black Bear is allegedly selling in **[\*2]** direct competition with Plaintiffs' Starbucks coffee products. Plaintiffs Starbucks Corporation and Starbucks U. S. Brands, Inc. (collectively, "Plaintiffs") move for judgment as a matter of law on their federal and state trademark dilution claims, brought pursuant to the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. §§ 1125(c), and 1127 and New York Gen. Bus. Law § 360-l, their federal trademark infringement and unfair competition claims, brought pursuant to the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), their deceptive acts and business practices and false advertising claims, brought pursuant to New York Gen. Bus. Law §§ 349 and 350, and their common law unfair competition claim. Defendant opposes Plaintiffs' motion in its entirety and cross-moves for summary judgment, n2 seeking dismissal of each of the aforementioned claims.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Plaintiffs contend that Defendant Black Bear's cross-motion for summary judgment is both untimely, since it was filed after the date on which dispositive motions were due, and procedurally defective, since Black Bear failed to file and serve a proper notice of motion along with its memorandum of law and other motion papers. The Court finds, however, that it is in the interests of justice and judicial economy to consider both parties' motions since they have been thoroughly and vigorously briefed and, as a result, the Court is in a position to address the issues presented therein.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*3]**

The Court has jurisdiction of the federal claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as 28 U.S.C. § 1332(a). The Court has jurisdiction of Plaintiffs' state claims pursuant to 28 U.S.C. §§ 1367 and 1338(b).

The Court has considered throughly all of the parties' submissions and arguments relating to the motions. For the following reasons, Plaintiffs' motion for summary judgment is denied and Defendant's motion for summary judgment is granted in part and denied in part.

BACKGROUND n3

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (7 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.7

n3 The facts summarized below are undisputed except as otherwise noted.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiff Starbucks Corporation is a large and very well-known vendor of specialty coffees and coffee products. Starbucks Corporation has grown over the last 30-plus years from a single coffee shop into a chain of thousands of retail stores located across the United States and Canada, and in numerous other countries around the world. (Declaration **[*4]** of Sheri Marzolf, dated July 17, 2002 ("Marzolf Decl.") at P 1, Exh. 6 to Affirmation of Barbra S. Levy, dated July 19, 2002 ("Levy Aff.").) Starbucks Corporation also supplies premium coffees to hundreds of restaurants and other accounts all over the globe. (Id.) Starbucks' revenues for fiscal year 2001 exceeded $ 2.5 billion. (Id.)

Since 1971, Starbucks Corporation has done business under the trade names "Starbucks," "Starbucks Coffee Company" and "Starbucks Coffee," and has used the "STARBUCKS" trademark (the "Starbucks mark") both as the name of the company and as an identifier of its goods and services. (Id. at P 4.) The Starbucks mark is the subject of more than 56 trademark registrations issued by the United States Patent and Trademark Office, and has been registered in over 100 foreign countries. (Id.) Starbucks has expended substantial energy, time and money promoting the Starbucks mark throughout the United States and abroad. (Id. at P 5.)

Ownership of the Starbucks mark is vested in Plaintiff Starbucks U.S. Brands, Inc., a wholly-owned subsidiary of Starbucks Corporation. Starbucks Corporation is a licensee of all of the trademarks owned by Starbucks **[*5]** U.S. Brands, Inc. (Id. at P 4.)

The thousands of Starbucks retail stores located around the world sell coffee, cappuccino, espresso-based beverages and teas brewed on site, blended beverages, numerous varieties of Starbucks brand roasted coffees, baked goods and other branded merchandise. Each of the retail stores prominently displays the Starbucks mark on exterior signs and at a variety of other locations throughout the store. (Id. at 6.) In addition, Starbucks has licensed Host Marriott Services Corporation to operate over 150 coffee kiosks in major American and Canadian airports. The kiosks, which sell Starbucks brand coffees and other beverages prepared on site, utilize the Starbucks mark in a manner similar to the retail stores described above. (Id. at P 7.) Starbucks brand coffee and espresso beverages are also sold from dedicated retail areas in hundreds of Barnes & Noble Bookstores, which prominently display the Starbucks mark, and Starbucks has entered into license agreements with major supermarkets, including Safeway and Albertson's, for the sale of Starbucks products. (Id. at PP 8-9.) Starbucks also sells its coffee to hundreds of restaurants, as well as **[*6]** numerous airlines, sports and entertainment venues, movie theaters, hotels and cruise lines. Starbucks permits all of these customers to indicate on menus and in promotional items that they are serving Starbucks brand coffees. Such customers are also permitted to use the Starbucks mark on cups and coffee dispensers, and in promotional materials. (Id. at P 10.) In addition, Starbucks distributes several exclusive coffee blends, a brand of ice cream and two coffee drinks, all displaying the

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (8 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.8

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 19239

6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-13    Page 9 of 19

Starbucks mark, for sale at grocery stores and other retailers, and operates a heavily trafficked website which utilizes the Starbucks mark throughout the site. (Id. at PP 11-12.)

Defendant Black Bear, a company with annual gross revenues that are generally less than $ 200,000 per year, manufactures and sells to the public roasted coffee beans and related goods. (Affidavit of James O. Clark, dated August 16, 2002 ("Clark Aff.") n4, at P 25.) Black Bear's coffee is sold only in retail grocery stores, where labeled and packaged Black Bear products are made available on shelves, and by direct order either online at Black Bear's website or via telephone/fax. (Id. at P 33.) Black Bear's company **[*7]** logo, which is prominently displayed on its website, includes a graphic representation of a recumbent bear and the words "The Black Bear Micro Roastery." (Id. at P 23.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Plaintiffs object generally to the Court's consideration of the Clark Aff. on the ground that it does not comply with Rule 56(e). Because the Clark Aff. is a sworn statement by Defendant's founder and corporate treasurer, the Court will consider it to the extent the individual statements made therein are admissible. The Court will address Plaintiffs' specific objections to particular statements contained in the Clark Aff. individually and only to the extent they are relevant to the Court's analysis in resolving the instant motions.

Plaintiffs also contend that the Court should not consider the affidavits of Dr. Alex Simonson, Cynthia Coughlin, Betty Omansky and Conrad Omansky. Because the Court has not relied on such evidence in evaluating the instant motions and would reach the same result in resolving the motions whether such evidence is considered or not, the Court need not specifically address Plaintiffs' objections to such evidence.

The Court's treatment of Plaintiffs' evidentiary objections in this Opinion is without prejudice to Plaintiffs' ability to revive their objections in connection with future proceedings in this case.

- - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*8]**

In February 1997, Black Bear developed a dark roasted blend of coffee named "Charbucks Blend," which it began selling and shipping to customers on April 7, 1997. (Deposition of James O. Clark, taken April 18, 2002 ("Clark Dep.") at 14-15, Exh. 5 to Levy Aff.) In or about April 2001, Black Bear changed the product's name from "Charbucks Blend" to "Mister Charbucks." (Id. at 44.) At the time Black Bear began making and selling its Charbucks Blend, Black Bear was aware of the Starbucks mark, which had already become a valid trademark. As of the time in 2002 when the instant motion papers were filed, Black Bear was still manufacturing and selling the aforementioned blend of dark roasted coffee under the name "Mister Charbucks." (Clark Aff. at P 11.) n5 From April 8, 1997 until August 14, 2002, Black Bear's sales of Charbucks Blend/Mister Charbucks coffee totaled $ 35,649.61, or less than $ 7,000 per year. (Id. at P 29.) Black Bear's only commercial use of the

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (9 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.9

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 19239

6:06-cv-00109-HMH     Date Filed 02/13/2006     Entry Number 6-13     Page 10 of 19

Charbucks name is in relation to the labeling and sales of its "Mister Charbucks" blend of coffee. (Id. at P 28.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 As of the time of this writing, Defendant's internet site lists "Mr. Charbucks" as one of the varieties of coffee for sale.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*9]**

The "Mister Charbucks" label incorporates three graphic representations of a "proper British gentleman," as well as the words "Mister Charbucks," "Roasted to the extreme . . . For those who like the extreme . . .," "Pre-Ground," and "Gourmet Coffee By The Black Bear Micro Roastery Center Tuftonboro, New Hampshire." (Id. at P 24.)

In August 1997, Starbucks first contacted Black Bear regarding Black Bear's use of the term "Charbucks." (Id. at P 43.) Starbucks notified Black Bear that it objected to the use of the term "Charbucks" on the ground that it was disparaging and dilutive of the Starbucks mark, and demanded that Black Bear cease and desist from all further use of the Charbucks mark. The parties entered into extensive negotiations and reached an agreement in principle whereby Black Bear would terminate use of the name Charbucks, but Black Bear ultimately declined to finalize the agreement and continued to sell its Charbucks Blend coffee. (Pls' R.56.1 Stmt. at P 49; Def's Stmt. of Add. Mat. Facts Pursuant to R.56.1 at 6.) Starbucks did not file the instant lawsuit until July 2001. (Pls' Obj. and Resp. to Def's R.56.1 Stmt. at 8.)

DISCUSSION

Summary Judgment **[*10]** Standard

HN1 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). "A factual issue is genuine if it can reasonably be resolved in favor of either party," and "[a] fact is material if it can affect the outcome of the action based on the governing law." David v. N.Y.P.D. 42nd Precinct Warrant Squad,2004 U.S. Dist. LEXIS 16678, No. 02 Civ. 2581, 2004 WL 1878777, at *3 (S.D.N.Y. Aug. 23, 2004) (citing Anderson, 477 U.S. at 248, 250). Initially, the burden is on the moving party to "demonstrate the absence of any genuine issues of material fact." Harrison v. Potter, 323 F. Supp. 2d 593, 599 (S.D.N.Y. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). **[*11]** If the moving party satisfies its burden, the burden then "shifts to the nonmoving party to offer specific evidence showing that a genuine issue for trial exists." Am. Home Assurance v. Zim Jamaica, 296 F. Supp. 2d 494, 498-99 (S.D.N.Y. 2003). In resolving a motion for summary judgment, "the Court must view

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (10 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.10

the evidence in a light that is favorable to the non-moving party and draw all reasonable inferences in favor of that party." Harrison, 323 F. Supp. 2d at 599 (citing Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004)). The standard for cross-motions "'is the same as that for individual motions for summary judgment and the court must consider each motion independent of the other.'" Schultz v. Stoner, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004) (quoting Aviall, Inc. v. Ryder Sys., Inc., 913 F. Supp. 826, 828 (S.D.N.Y. 1996)).

Plaintiffs' Federal Trademark Infringement and Unfair Competition Claims

Counts Two and Three of Plaintiff's Complaint allege that Defendant's use of its Charbucks mark constitutes trademark infringement under 15 U.S.C. § 1114 **[*12]** and unfair competition under 15 U.S.C. § 1125(a), respectively. HN2 "To prevail on . . . trademark infringement and unfair competition claims, [Plaintiffs] must prove (1) that [they own] a protectable trademark, and (2) there is a likelihood of consumer confusion." Pfizer, Inc. v. Y2K Shipping & Trading, Inc., 2004 U.S. Dist. LEXIS 10426, No. 00 Civ. 5304, 2004 WL 896952, at *2 (E.D.N.Y. Mar. 26, 2004). It is undisputed that Plaintiffs own a protectable trademark. "[Plaintiffs'] ownership of a registered mark is *prima facie* evidence of the mark's validity, and of Plaintiff's exclusive right to use the mark in commerce in connection with the goods identified in the certificate of registration." Id. It is undisputed that Plaintiff Starbucks U.S. Brands, Inc., a wholly owned subsidiary of Plaintiff Starbucks Corporation, owns the Starbucks mark, which is the subject of multiple registrations; thus, the only remaining substantive issue for the Court to consider in connection with these claims is whether Plaintiffs have established that there is a likelihood of confusion.

A likelihood of confusion exists if "an 'ordinarily prudent purchaser' in the marketplace is **[*13]** likely to be confused as to the origin or sponsorship of the goods." Id. (quoting Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986)). "Plaintiff must show that 'numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark.'" Savin Corp. v. The Savin Group, 2003 U.S. Dist. LEXIS 19220, No. 02 Civ. 9377, 2003 WL 22451731, at *5 (S.D.N.Y. Oct. 24, 2003) (quoting Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1074 (2d Cir. 1993)). The mere possibility of confusion is not enough; "consumer confusion must be probable." Savin, 2003 U.S. Dist. LEXIS 19220, 2003 WL 22451731, at *5.

HN3 The Second Circuit has identified eight factors for consideration in determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the owner will bridge the gap; (5) evidence of actual confusion; (6) defendant's good faith in adopting the mark; (7) the quality of defendant's product; and (8) **[*14]** the sophistication of the consumers. Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). "The first three factors are considered most important; however no one factor is determinative and the list is not exhaustive." Pfizer, 2004 U.S. Dist. LEXIS 10426, 2004 WL 896952, at *3. "'Summary judgment is appropriate where the undisputed evidence would lead to only one conclusion under the Polaroid test.'" Id. (quoting The Sports Auth., Inc. v. Prime Hospitality Corp., 89

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (11 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.11

F.3d 955, 960 (2d Cir. 1996)).

Here, there is no dispute as to the first, third, and fourth factors. The parties agree that Plaintiffs' mark is a strong one, that Plaintiffs and Defendant use their respective marks in connection with the sale of coffee products, and that there is no competitive gap to be bridged between the relevant commercial activities of the parties.

Notwithstanding the parties' agreement as to the analysis of those three factors, material issues of disputed fact preclude summary judgment for either side on Plaintiff's federal trademark and unfair competition claims because the evidence of record, when viewed in connection with each side's motion in the **[*15]** light most favorable to the nonmoving party, could support inferences favoring either side in connection with the important issues of similarity of the marks, actual confusion, good or bad faith, product quality and consumer sophistication.

*Similarity of the Marks*

**HN4** In assessing the similarity between two marks, "courts analyze the similarity in pronunciation and appearance of each and the manner in which they are presented to consumers." Pfizer, 2004 U.S. Dist. LEXIS 10426, 2004 WL 896952, at *4. Courts evaluate "whether the overall impression created by the marks in relation to the context in which they are found is likely to confuse potential customers." Savin, 2003 U.S. Dist. LEXIS 19220, 2003 WL 22451731, at *7 (internal quotation marks and citation omitted). "The question is not merely how many points of similarity the marks share, but whether they create the same general overall impression." Pfizer, 2004 U.S. Dist. LEXIS 10426, 2004 WL 896952, at *4 (internal quotation marks and citations omitted).

Plaintiffs argue that the words "Starbucks" and "Charbucks" sound similar, each consisting of two syllables with an accent on the first syllable, and point out that the two words differ from each other in terms **[*16]** of spelling by only the first two letters. Plaintiffs have also proffered evidence in the form of survey results indicating that a sizable percentage of potential consumers surveyed associated the term "Charbucks" with Plaintiffs' Starbucks mark or with coffee in general. Black Bear, in turn, has proffered evidence that the logos and packaging used by Black Bear differ substantially from those used by Starbucks, a factor that courts have found relevant in assessing whether marks are similar. See e.g., Playtex Prods. Inc., v. Georgia-Pacific Inc., 2003 U.S. Dist. LEXIS 13981, No. 02 Civ. 7848, 2003 WL 21939706, at *5, *8 (S.D.N.Y. Aug. 12, 2003) **HN5** (considering differences in the way words appear and sound as well as differences in the way products are packaged and presented to consumers in evaluating similarity of the marks for purposes of trademark infringement and dilution claims). In addition, Black Bear points out that its product is currently called "Mister Charbucks," rather than simply "Charbucks," which is both less similar to "Starbucks" in sound and spelling than "Charbucks" is standing alone, and is a variation that was not covered by the questions posed in Plaintiffs' consumer survey. **[*17]** This evidence, taken as a whole, could support inferences favorable to either party on the important factor of similarity of the marks.

*Actual Confusion*

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (12 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.12

The factor of actual confusion is likewise one on which the evidence of record could support a determination favoring either side. **HN6** Courts "may consider evidence of actual consumer confusion about the source, sponsorship, or affiliation of plaintiff's goods and services" in assessing whether there is a likelihood of confusion. Savin, 2003 U.S. Dist. LEXIS 19220, 2003 WL 22451731, at *10. Plaintiffs proffer evidence in the form of survey results which indicate that 31% of consumers think of Starbucks upon hearing the term "Charbucks." (Mitofsky Expert Report at -70], Ex. 4 to Levy Aff.) While this survey result might well be consistent with potential for actual confusion, it is insufficient to establish that the survey respondents were likely to be confused as to the source of Defendants' Charbucks Blend or Mister Charbucks products. Nor is it clear on the current record that there is no actual confusion.

*Good/Bad Faith*

**HN7** Courts also consider "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's **[*18]** reputation and goodwill or of benefitting from consumer confusion between its product and that of the first user." Savin, 2003 U.S. Dist. LEXIS 19220, 2003 WL 22451731, at *10 (internal quotation marks and citations omitted). On the other hand, "good faith may be found where the defendant has selected a mark which reflects the product's characteristics . . ." Pfizer, 2004 U.S. Dist. LEXIS 10426, 2004 WL 896952, at *5. Plaintiffs proffer undisputed evidence that, at the time Black Bear made the decision to use the word "Charbucks Blend" as a name for one of its products, Black Bear believed both that some consumers would directly associate the term "Charbucks" with Starbucks and that there was a chance that some consumers would think that Black Bear was somehow affiliated with Starbucks. Black Bear contends, however, that it came to the conclusion, prior to naming the Charbucks Blend product, that "there was no possibility that any reasonable consumer could ever believe there was an association between our company and/or products and Starbucks, despite the rhyming nature of Charbucks and Starbucks." (Clark Aff P 22.) Defendant has also proffered evidence that it chose the name of its product to alert consumers **[*19]** to the dark roasted character of the coffee, and that it introduced the product in response to requests for darker roasts than it normally offered in its product line. (Clark Aff. PP 12, 19.) A trier of fact must determine the weight and significance of this evidence in connection with the good faith/bad faith factor. Resolution of the issue on summary judgment is thus precluded.

*Quality of Defendant's Product*

**HN8** Courts also assess "whether the inferior quality of a junior user's goods could jeopardize the senior user's reputation." Malletier v. Dooney & Bourke, Inc., 340 F. Supp. 2d 415, 2004 U.S. Dist. LEXIS 17295, No. 04 Civ. 2990, 2004 WL 1924792, at *8 (S.D.N.Y. Aug. 27, 2004). "'Products of equal quality may [also] create confusion as to source.'" Savin, 2003 U.S. Dist. LEXIS 19220, 2003 WL 22451731, at *11 (quoting Morningside Group Ltd. v. Morningside Capital Group, 182 F.3d 133, 142 (2d Cir. 1999)). Plaintiffs proffer that their survey results indicate that a substantial minority of their sample of respondents had a negative reaction to the term "Charbucks," taking it as an indication of burnt or bitter coffee. (Mitofsky Expert Report at -90], Exh. 4 to Levy Aff.) Defendant, on the other hand, **[*20]** indicates

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (13 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.13

that it chose the Charbucks name in order to flag the dark roasted character of this coffee, in the belief that some consumers associated the name with overroasted or dark roasted coffee. (Clark Tr. 32-34.) Neither party has proffered evidence as to the quality of Defendant's product in relation to that of Starbucks products. Defendant proffers that the quality of its product is in fact high. To the extent the evidence of record can inform a determination with respect to the significance of this factor in the likelihood-of-confusion analysis, it certainly does not admit of only one conclusion, thus the question must be left to the finder of fact.

*Sophistication of Consumers*

HN9 "The expense of the products, the manner and market conditions in which the products are purchased, and whether purchasers may be subject to impulse are relevant in determining the sophistication of the buyers." Savin, 2003 U.S. Dist. LEXIS 19220, 2003 WL 22451731, at *12. "Courts consider 'the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods.'" Pfizer, 2004 U.S. Dsit. LEXIS 10426, 2004 WL 896952, **[*21]** at *6 (quoting W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 575 (2d Cir. 1993)). "The more sophisticated the consumers, the less likely they are to be misled by similarity in marks." TCPIP Holding Co., Inc. v. Haar Communications Inc., 244 F.3d 88, 102 (2d Cir. 2001). Defendant's product sells for between $ 8.58 and $ 10.40 per pound and Plaintiffs' for as much as $ 16.95 per pound. Although the Second Circuit has characterized "food" as a "relatively inexpensive" item, the customers for which "are not likely to be sophisticated purchasers as to the goods in question," n6 Defendant has proffered evidence that "consumers of high quality coffee products tend to be very discriminating . . . and . . . very knowledgeable and sophisticated customers." (Clark Aff. P 32.) n7 Furthermore, as the Second Circuit noted in Sports Authority, "price alone is not determinative of the care a consumer will take in making purchases, and our touchstone remains the general impression that is left with the ordinary consumer." Id. Analysis of the consumer sophistication issue thus must also be left to the finder of fact.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The Sports Auth., Inc., 89 F.3d at 965. **[*22]**

n7 Plaintiffs object to this evidence on a number of grounds (see Pls' Evid. Obj. To Aff. in Supp. of Def's Opp. to Pls' Motion for Summ. J. at 6), but the Court finds that the objections lack merit and that the evidence is admissible.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Because material issues of fact are present with respect to a number of the factors that must be weighed in determining whether there is a relevant likelihood of confusion between the parties' products, the parties' respective motions for summary

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (14 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.14

judgment are denied with respect to Counts Two and Three of the Complaint.

Plaintiffs' Federal and State Trademark Dilution Claims

Counts One and Four of Plaintiffs' Complaint allege dilution of Plaintiffs' trademarks in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c) and 1127, and New York Gen. Bus. Law § 360-l, respectively.

*Plaintiffs' Federal Trademark Dilution Claim*

The FTDA provides that HN10 "the owner of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark **[*23]** or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C.A. § 1125(c)(1) (West 1998). The statute defines "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of . . . (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception." 15 U.S.C.A. § 1127 (West 2004). The elements of a federal dilution claim are as follows: 1) plaintiff's mark must be famous; 2) plaintiff's mark must be inherently distinctive; 3) defendant's use of the junior mark must be a commercial use in commerce; 4) defendant's use must have began after plaintiff's mark became famous; and 5) defendant's use of the junior mark must cause dilution of the distinctive quality of the plaintiff's mark." Mastercard Int'l Inc. v. Nader 2000 Primary Comm., Inc., 2004 U.S. Dist. LEXIS 3644, No. 00 Civ. 6068, 2004 WL 434404, *6 (S.D.N.Y. Mar. 8, 2004) (internal quotation marks and citation omitted). A plaintiff suing under the FTDA must also show "'actual dilution, rather than a likelihood **[*24]** of dilution.'" Mastercard, 2004 U.S. Dist. LEXIS 3644, 2004 WL 434404, at *6 (quoting Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 433, 155 L. Ed. 2d 1, 123 S. Ct. 1115 (2003)). It is undisputed that the first four elements are satisfied in this case. (Def's Mem. of Law in Opp. to Pl's Motion for Summ. J. at 3.) The only element at issue is whether Black Bear's use of the term "Charbucks" dilutes the distinctive quality of the Starbucks mark.

HN11 The Second Circuit has held that dilution can occur either by blurring or tarnishment. See New York Stock Exchange, Inc. v. New York, New York Hotel, LLC, 293 F.3d 550, 557 (2d Cir. 2002). Dilution through blurring occurs "'where the defendant uses or modifies the plaintiff's trademark to identify defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.'" Perkins School for the Blind v. Maxi-Aids, Inc., 274 F. Supp. 2d 319, 325 (E.D.N.Y. 2003) (quoting New York Stock Exchange, 293 F.3d at 557). Dilution by tarnishment can occur when a trademark "is linked to products of shoddy quality, or is portrayed in **[*25]** an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497, 507 (2d Cir. 1996) (internal quotation marks and citation omitted)). A mark "may also be tarnished if it loses its ability to serve as a 'wholesome identifier' of plaintiff's product." Id. Plaintiffs contend that Black Bear's use of the term Charbucks dilutes the Starbucks mark both by blurring and tarnishment. n8

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (15 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.15

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 The Supreme Court's decision in Moseley calls into question the continued viability of the proposition that a demonstration of tarnishment is sufficient to show dilution within the meaning of the FTDA. See 537 U.S. at 432. Because factual issues preclude resolution of Plaintiffs' dilution claims on summary judgment and because the New York dilution cause of action recognizes tarnishment as a ground in any event, it is unnecessary for this Court to determine the scope of the federal cause of action at this juncture.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*26]**

As noted above, HN12 to succeed on a federal trademark dilution claim, "[a] plaintiff must demonstrate the existence of *actual* dilution," although it need not prove the consequences of dilution such as actual loss of sales or profits. Malletier, 2004 U.S. Dist. LEXIS 17295, 2004 WL 1924792, at *9 (emphasis in original). "At least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution" since "such mental association will not necessarily reduce the capacity of the famous mark to identify the goods of its owner, the statutory requirement for dilution under the FTDA." Moseley, 537 U.S. at 433.

Plaintiffs have proffered evidence in the form of survey results indicating that 31% of the consumers surveyed associated the term "Charbucks" with Starbucks, and that 43% of consumers surveyed would have a negative impression of a coffee called "Charbucks." There is no direct evidence in the current record of actual consumer confusion as to the source of Defendant's product (and thus no direct evidence of diminution of Plaintiffs' mark as a unique identifier of **[*27]** their goods and services), or as to consumers forming negative views of Plaintiffs' products by reason of the presence of Defendant's coffee in the market. The weight and significance of the survey and other evidence of record as to dilution must be left for determination by the finder of fact. The parties' motions for summary judgment on Plaintiff's federal trademark dilution claim (Count One of the Complaint) are therefore denied.

*Plaintiffs' State Trademark Dilution Claim*

Section 360-l of New York's General Business Law provides as follows:

> HN13 Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (16 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.16

N.Y. Gen. Bus. Law § 360-I (McKinney's 2004). HN14 "To establish a dilution claim under New York law, Plaintiff must establish: (1) ownership of a distinctive mark, and (2) likelihood of dilution." n9 Pfizer, 2004 U.S. Dist. LEXIS 10426, 2004 WL 896952, [*28] at *8. A plaintiff need not show likelihood of confusion or actual dilution to prevail on a state law dilution claim. Id. (citing Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 175 (2d Cir. 2000)). Black Bear concedes that Plaintiffs' mark is distinctive. (Def's Mem. of Law in Opp. to Pls' Motion for Summ. J. at 4.) For substantially the reasons explained in the preceding discussion of Plaintiffs' federal dilution claim, issues of fact preclude the grant of summary judgment for either side on Plaintiffs' state dilution claims.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 Since the Supreme Court's March 2003 decision in Moseley, the majority of New York district courts to have considered the issue have held that Moseley did not alter the prevailing New York state law test for dilution, which focuses on the likelihood of dilution rather than actual dilution. See Pfizer, 204 U.S. Dist. LEXIS 10426, 004 WL 896952, at * 8 (citing cases). This Court concurs with those determinations and finds that Moseley does not affect the analysis of Plaintiffs' state law dilution claim.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*29]

The parties' respective motions for summary judgment are therefore denied as to Count Four of the Complaint.

Plaintiffs' State Law Deceptive Acts and False Advertising Claims

In Count Five of their Complaint, Plaintiffs assert claims for deceptive acts and false advertising under New York state law. Section 349 of the New York General Business Law HN15 makes unlawful "deceptive acts and practices" and Section 350 of that statute prohibits false advertising in the conduct of business. "Most trademark and trade dress infringement claims are deemed to fall outside the ambit of Sections 349 and 350." Perkins, 274 F. Supp. 2d at 327. "A successful claim under either statute requires proof of 'consumer injury or harm to the public interest.'" Savin, 2003 U.S. Dist. LEXIS 19220, 2003 WL 22451731, at *15 (quoting Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995)). The conduct "must be the sort of offense to the public interest which would trigger FTC intervention under 15 U.S.C.A. § 45," Savin, 2003 U.S. Dist. LEXIS 192220, 2003 WL 22451731, at *15 (internal quotation marks and citations omitted), and mere evidence of general consumer [*30] confusion is insufficient. See Perkins, 274 F. Supp. 2d at 327.

Here, Plaintiffs contend that Black Bear's use of the term "Charbucks" misleads and deceives consumers as to the source of Black Bear's product, and that Plaintiffs have suffered and are continuing to suffer injury as a result. "Harm to a business from a

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (17 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.17

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 19239

6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-13    Page 18 of 19

competitor, however, does not constitute the kind of detriment to the public interest required by the statutes." Id. at 16. The Court therefore concludes that Plaintiffs have failed to proffer sufficient evidence of harm to the public interest to withstand Defendant's motion for summary judgment as to Plaintiffs' claims under Sections 349 and 350 of the General Business Law. Accordingly, Plaintiffs' claims asserted in Count Five of the Complaint are dismissed.

Plaintiffs' State Common Law Unfair Competition Claim

Plaintiffs also bring a claim in Count Six of their Complaint for unfair competition under New York state law. HN16 "New York law prohibits 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" Perkins, 274 F. Supp. 2d at 327 [*31] (quoting Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995)). Under New York law, the standard for unfair competition "is a virtual cognate of the federal Lanham Act and is predicated on the theory of the misappropriation of a claimant's commercial goodwill." Bangkok Crafts Corp. v. Capitolo Di San Pietro In Vaticano, 331 F. Supp. 2d 247, 2004 U.S. Dist. LEXIS 16668, No. 03 Civ. 0015, 2004 WL 1878791, at *7 (S.D.N.Y. Aug. 23, 2004). "In addition, to succeed on the merits of a 'common law claim of unfair competition, [a plaintiff] must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating [the defendant's bad faith].'" Malletier, 2004 U.S. Dist. LEXIS 17295, 2004 WL 1924792, at *9 (quoting Phillip Morris USA Inc. v. Felizardo, 2004 U.S. Dist. LEXIS 11154, No. 03 Civ. 5891, 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004)).

As explained above, the presence of material fact issues precludes determination of Plaintiffs' Lanham Act claims on these motions for summary judgment. The parties' motions are denied for the same reason to the extent they are directed to the state unfair competition claim asserted in Count Six of the Complaint.

CONCLUSION [*32]

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied in all respects, and Defendant's cross-motion for summary judgment is granted as to Count Five of the Complaint and is denied in all other respects.

The parties shall meet promptly with Magistrate Judge Theodore H. Katz for settlement purposes. The Court's November 2, 2001, Pre-Trial Scheduling Order is hereby reinstated and amended insofar as the final pre-trial conference is adjourned to **Friday, December 3, 2004, at 11:30 a.m.** The parties are directed to make pre-conference submissions in accordance with the provisions of the Court's November 2, 2001, Pre-Trial Scheduling Order.

SO ORDERED.

Dated: New York, New York
September 28, 2004

/s/

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (18 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.18

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 19239

6:06-cv-00109-HMH     Date Filed 02/13/2006     Entry Number 6-13     Page 19 of 19

LAURA TAYLOR SWAIN

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 19239**
View: Full
Date/Time: Friday, February 10, 2006 - 4:28 PM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/starbucksopinion.htm (19 of 19)2/10/2006 4:29:13 PM

Exhibit 11, p.19