BidZirk LLC et al v. Smith    Doc. 6 Att. 14
Get a Document - by Citation - 263 F.3d 359
6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-15    Page 1 of 18

*263 F.3d 359, \*; 2001 U.S. App. LEXIS 19028, \*\*;*
*60 U.S.P.Q.2D (BNA) 1109*

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, Plaintiff-Appellee, v. MICHAEL T. DOUGHNEY, an individual, Defendant-Appellant. DIANE CABELL; MILTON MUELLER, Amici Curiae. PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, Plaintiff-Appellant, v. MICHAEL T. DOUGHNEY, an individual, Defendant-Appellee.

No. 00-1918, No. 00-2289

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

263 F.3d 359; 2001 U.S. App. LEXIS 19028; 60 U.S.P.Q.2D (BNA) 1109

May 7, 2001, Argued
August 23, 2001, Decided

**SUBSEQUENT HISTORY:** [\*\*1] As Amended September 6, 2001.

**PRIOR HISTORY:** Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Chief District Judge. (CA-99-1336-A).

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant appealed from an order of the U.S. District Court for the Eastern District of Virginia granting plaintiff's motion for summary judgment and plaintiff cross-appealed the denial of its motion for attorney's fees and costs related to its claims of service mark infringement, 15 U.S.C.S. § 1114, unfair competition, 15 U.S.C.S. § 1125(a), and service mark dilution and cybersquatting under 15 U.S.C.S. § 1123(c), and Virginia common law.

**OVERVIEW:** Plaintiff, People for the Ethical Treatment of Animals (PETA), sued defendant after he registered the domain name peta.org and created a website called "People Eating Tasty Animals." The district court granted PETA's motion for summary judgment, but denied its motion for attorney's fees and costs. Defendant disputed the district court's findings that he used the Mark in connection with goods or services and that he used it in a manner engendering a likelihood of confusion. The court of appeals agreed with the district court that defendant's use of PETA's Mark in the domain name of his website was likely to prevent Internet users from reaching PETA's own Internet web site. Thus, the messages were not conveyed simultaneously and did not constitute a parody. However, PETA was not entitled to attorney fees and costs where PETA failed to establish that the district court abused its discretion in refusing to award "the cost of the action" under 15 U.S.C.S. § 1117.

**OUTCOME:** The district court's order denying plaintiff's motion for attorney fees and costs but granting it's motion for summary judgment on trademark infringement claims was affirmed where defendant's use of plaintiff's Mark in the domain name of his website was likely to prevent Internet users from reaching the plaintiff's own Internet site.

**CORE TERMS:** peta, domain, website, site, parody, web, org, message, user, registered, internet, summary judgment, unfair competition, registration, registering, trademark, famous, consumer, offering, convey, trademark infringement, accessing, com, Lanham Act, safe harbor, animal, clerk, infringement, exceptional, conveyed

## LexisNexis(R) Headnotes

Civil Procedure > Appeals > Standards of Review > De Novo Review
Civil Procedure > Summary Judgment > Summary Judgment Standard

HN1⬌ Federal appellate courts review a district court's summary judgment ruling de novo, viewing the evidence in the light most favorable to the non-moving party. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Trademark Law > Infringement Actions > Burdens of Proof
Trademark Law > Infringement Actions > Determinations
Trademark Law > Conveyances > General Overview

HN2⬌ A plaintiff alleging causes of action for trademark infringement and unfair competition must prove (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers. 15 U.S.C.S. §§ 1114, and 1125(a).

Trademark Law > Federal Unfair Competition Law > False Advertising > General Overview
Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > General Overview
Trademark Law > Subject Matter > Names > Internet Domains

HN3⬌ Prospective users of a plaintiffs' services who mistakenly access a defendants' web site may fail to continue to search for plaintiffs' web site due to confusion or frustration. Such users, who are presumably looking for the services provided by the plaintiffs on their web site, may instead opt to select hyperlinks contained in defendants' web site. Thus, a defendants' action in appropriating plaintiff's mark has a connection to plaintiffs' distribution of its services over the Internet. 15 U.S.C.S. §§ 1114, and 1125(a).

Trademark Law > Infringement Actions > Determinations
Trademark Law > Likelihood of Confusion > General Overview

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (2 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.2

Trademark Law > Federal Unfair Competition Law > General Overview

**HN4** The unauthorized use of a trademark infringes the trademark holder's rights if it is likely to confuse an "ordinary consumer" as to the source or sponsorship of the goods. To determine whether a likelihood of confusion exists, a court should not consider how closely a fragment of a given use duplicates the trademark, but must instead consider whether the use in its entirety creates a likelihood of confusion.

Trademark Law > Likelihood of Confusion > Noncompeting Products > Parodies & Satires
Trademark Law > Conveyances > General Overview

**HN5** A "parody" is defined as a simple form of entertainment conveyed by juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner. A parody must convey two simultaneous -- and contradictory -- messages: that it is the original, but also that it is not the original and is instead a parody. To the extent that an alleged parody conveys only the first message, it is not only a poor parody but also vulnerable under trademark law, since the customer will be confused. While a parody necessarily must engender some initial confusion, an effective parody will diminish the risk of consumer confusion by conveying only just enough of the original design to allow the consumer to appreciate the point of parody.

Trademark Law > Likelihood of Confusion > Noncompeting Products > Parodies & Satires
Trademark Law > Subject Matter > Names > Internet Domains

**HN6** A defendant's use of a plaintiff's mark in domain name does not convey two simultaneous and contradictory messages where only by reading through the content of the sites can the user discover that the domain names are an attempt at parody.

Trademark Law > Likelihood of Confusion > Intent > General Overview
Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > General Overview
Trademark Law > Subject Matter > Names > Internet Domains

**HN7** To establish an Anticybersquatting Consumer Protection Act violation, a plaintiff is required to (1) prove that the defendant had a bad faith intent to profit from using a domain name, and (2) that the domain name was identical or confusingly similar to, or dilutive of, the distinctive and famous mark. 15 U.S.C.S. § 1125(d)(1)(A).

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings

**HN8** The Federal Rules allow liberal amendment of pleadings throughout the progress of a case. A party's failure to amend will not affect a final judgment if the issues resolved were tried by express or implied consent of the parties. Fed. R. Civ. P. 15(b). Even without a formal amendment, a district court may amend the pleadings merely by entering findings on the unpleaded issues.

Trademark Law > Protection of Rights > Registration > Degree of Protection
Trademark Law > Subject Matter > Names > Internet Domains

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (3 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.3

**HN9** The Anticybersquatting Consumer Protection Act (ACPA) expressly states that it shall apply to all domain names registered before, on, or after the date of the enactment of the Act. Pub. L. No. 106-113, § 3010, 113 Stat. 1536. Moreover, while the ACPA precludes the imposition of damages in cases in which domain names were registered, trafficked, or used before its enactment, Pub. L. No. 106-113, § 3010, 113 Stat. 1536, it does not preclude the imposition of equitable remedies.

Trademark Law > Infringement Actions > Defenses > General Overview
Trademark Law > Subject Matter > Names > Internet Domains
**HN10** See 15 U.S.C.S. § 1125(d)(1)(B)(i).

Trademark Law > Subject Matter > Names > Internet Domains
**HN11** The Anticybersquatting Consumer Protection Act contains a safe harbor provision stating that bad faith intent shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful. 15 U.S.C.S. § 1225(d)(1)(B)(ii).

Trademark Law > Subject Matter > Names > Internet Domains
**HN12** A defendant who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from the Anticybersquatting Consumer Protection Act's safe harbor provision, 15 U.S.C.S. § 1225(d)(1)(B)(ii).

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
Civil Procedure > Costs & Attorney Fees > Attorney Fees
**HN13** The U.S. Court of Appeals for the Fourth Circuit reviews a trial court's denial of an award for attorney fees for abuse of discretion. A trial court abuses its discretion only if its conclusions are based on mistaken legal principles or clearly erroneous factual findings.

Trademark Law > Infringement Actions > Remedies > Attorney Fees
Trademark Law > Infringement Actions > Remedies > Damages > General Overview
**HN14** In trademark infringement cases, a court may award reasonable attorney fees in exceptional cases. Under 15 U.S.C.S. § 1117(a), a case is "exceptional" if the defendant's conduct was malicious, fraudulent, willful or deliberate in nature. In other words, a prevailing plaintiff must show that the defendant acted in bad faith.

Trademark Law > Subject Matter > Names > Internet Domains
**HN15** A bad faith finding under the Anticybersquatting Consumer Protection Act does not compel a finding of malicious, fraudulent, willful or deliberate behavior under 15 U.S.C.S. § 1117.

Trademark Law > Infringement Actions > Remedies > Damages > General Overview

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (4 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.4

HN16 The award of monetary damages, attorney fees and costs under the Lanham Act is committed to the sound discretion of the Court, based on the equities of each particular case.

**COUNSEL:** ARGUED: G. Gervaise Davis, III, DAVIS & SCHROEDER, P.C., Monterey, California, for Appellant.

Philip Jay Hirschkop, HIRSCHKOP & ASSOCIATES, P.C., Alexandria, Virginia, for Appellee.

ON BRIEF: Eric Bakri Boustani, DAVIS & SCHROEDER, P.C., Monterey, California; Richard T. Rossier, Kathryn A. Kleiman, MCLEOD, WATKINSON & MILLER, Washington, D.C., for Appellant.

Marianne R. Merritt, HIRSCHKOP & ASSOCIATES, P.C., Alexandria, Virginia, for Appellee.

Diane Cabell, HARVARD LAW SCHOOL, Cambridge, Massachusetts; Dr. Milton Mueller, Center for Science and Technology, SYRACUSE UNIVERSITY, Syracuse, New York, Amici Curiae Pro se.

**JUDGES:** Before MICHAEL and GREGORY, Circuit Judges, and Benson E. LEGG, United States District Judge for the District of Maryland, sitting by designation. Judge Gregory wrote the opinion, in which Judges Michael and Legg joined.

**OPINIONBY:** GREGORY

**OPINION:**

[*362] GREGORY, Circuit Judge:

People for the Ethical Treatment of Animals ("PETA") sued Michael Doughney ("Doughney") after he registered [**2] the domain name peta.org and created a website called "People Eating Tasty Animals." PETA alleged claims of service mark infringement under 15 U.S.C. § 1114 and Virginia common law, unfair competition under 15 U.S.C. § 1125(a) and Virginia common law, and service mark dilution and cybersquatting under 15 U.S.C. § 1123(c). Doughney appeals the district court's decision granting PETA's motion for summary judgment and PETA cross-appeals the district court's denial of its motion for attorney's fees and costs. Finding no error, we affirm.

I.

PETA is an animal rights organization with more than 600,000 members worldwide. PETA "is dedicated to promoting and heightening public awareness of animal protection issues and it opposes the exploitation of animals for food, clothing, entertainment and vivisection." Appellee/Cross-Appellant PETA's Brief at 7.

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (5 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.5

Doughney is a former internet executive who has registered many domain names since 1995. For example, Doughney registered domain names such as dubyadot.com, dubyadot.net, deathbush.com, RandallTerry. **[\*\*3]** org (Not Randall Terry for Congress), bwtel.com (BaltimoreWashington Telephone Company), pmrc.org ("People's Manic Repressive Church"), and ex-cult.org (Ex-Cult Archive). At the time the district court issued its summary judgment ruling, Doughney owned 50-60 domain names.

Doughney registered the domain name peta.org in 1995 with Network Solutions, Inc. ("NSI"). When registering the domain name, Doughney represented to NSI that the registration did "not interfere with or infringe upon the rights of any third party," and that a "nonprofit educational organization" called "People Eating **[\*363]** Tasty Animals" was registering the domain name. Doughney made these representations to NSI despite knowing that no corporation, partnership, organization or entity of any kind existed or traded under that name. Moreover, Doughney was familiar with PETA and its beliefs and had been for at least 15 years before registering the domain name.

After registering the peta.org domain name, Doughney used it to create a website purportedly on behalf of "People Eating Tasty Animals." Doughney claims he created the website as a parody of PETA. A viewer accessing the website would see the title **[\*\*4]** "People Eating Tasty Animals" in large, bold type. Under the title, the viewer would see a statement that the website was a "resource for those who enjoy eating meat, wearing fur and leather, hunting, and the fruits of scientific research." The website contained links to various meat, fur, leather, hunting, animal research, and other organizations, all of which held views generally antithetical to PETA's views. Another statement on the website asked the viewer whether he/she was "Feeling lost? Offended? Perhaps you should, like, exit immediately." The phrase "exit immediately" contained a hyperlink to PETA's official website.

Doughney's website appeared at "http://www.peta.org/" for only six months in 1995-96. In 1996, PETA asked Doughney to voluntarily transfer the peta.org domain name to PETA because PETA owned the "PETA" mark ("the Mark"), which it registered in 1992. See U.S. Trademark Registration No. 1705,510. When Doughney refused to transfer the domain name to PETA, PETA complained to NSI, whose rules then required it to place the domain name on "hold" pending resolution of Doughney's dispute with PETA. n1 Consequently, Doughney moved the website to www.mtd.com/tasty **[\*\*5]** and added a disclaimer stating that "People Eating Tasty Animals is in no way connected with, or endorsed by, People for the Ethical Treatment of Animals."

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 When Doughney registered peta.org, he agreed to abide by NSI's Dispute Resolution Policy, which specified that a domain name using a third party's registered trademark was subject to placement on "hold" status.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (6 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.6

In response to Doughney's domain name dispute with PETA, The Chronicle of Philanthropy quoted Doughney as stating that, "if they [PETA] want one of my domains, they should make me an offer." Non-Profit Groups Upset by Unauthorized Use of Their Names on the Internet, THE CHRONICLE OF PHILANTHROPY, Nov. 14, 1996. Doughney does not dispute making this statement. Additionally, Doughney posted the following message on his website on May 12, 1996:

> "PeTa" has no legal grounds whatsoever to make even the slightest demands of me regarding this domain name registration. If they disagree, they can sue me. And if they don't, well, perhaps **[\*\*6]** they can behave like the polite ladies and gentlemen that they evidently aren't and negotiate a settlement with me. . . . Otherwise, "PeTa" can wait until the significance and value of a domain name drops to nearly nothing, which is inevitable as each new web search engine comes on-line, because that's how long it's going to take for this dispute to play out.

PETA sued Doughney in 1999, asserting claims for service mark infringement, unfair competition, dilution and cybersquatting. PETA did not seek damages, but sought only to enjoin Doughney's use of the "PETA" Mark and an order requiring Doughney to transfer the peta.org domain name to PETA.

Doughney responded to the suit by arguing that the website was a constitutionally-protected parody of PETA. Nonetheless, **[\*364]** the district court granted PETA's motion for summary judgment on June 12, 2000. People for the Ethical Treatment of Animals, Inc. v. Doughney, 113 F. Supp. 2d 915 (E.D. Va. 2000). The district court rejected Doughney's parody defense, explaining that

> only after arriving at the "PETA.ORG" web site could the web site browser determine that this was not a web site owned, controlled or sponsored **[\*\*7]** by PETA. Therefore, the two images: (1) the famous PETA name and (2) the "People Eating Tasty Animals" website was not a parody because [they were not] simultaneous.

Id. at 921.

PETA subsequently moved for attorney fees and costs. The district court denied the motion, finding that the case was not "exceptional" under 15 U.S.C. § 1117. PETA moved to reconsider in part, arguing that it was entitled to "costs of the action" and attaching a statement for filing fees, photocopying, facsimiles, courier services, postage, travel, mileage, tolls, parking, long distance telephone calls, "services," transcripts, computer research, "miscellaneous" expenses, and witness fees and

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (7 of 18)2/10/2006 4:34:12 PM

**Exhibit 13, p.7**

mileage. The district court ruled on September 15, 2000, stating that

> Plaintiff has submitted to the Court what it asserts is an itemization of its expenses without providing any supporting documentation or legal analysis of why these expenses are "costs of the action" within the meaning of 15 U.S.C. § 1117(a) and 28 U.S.C. § 1920. Defendant challenges Plaintiff's expenses as excessive. It appears to the Court that **[\*\*8]** many of Plaintiff's expenses are for mere "trial preparation," and not recoverable as costs.

For those reasons it is hereby,

> ORDERED that Plaintiff's Motion for Reconsideration and/or Clarification is DENIED except that Plaintiff shall be awarded those costs routinely taxed by the Clerk. Plaintiff shall not receive as costs mere trial preparation expenses. Plaintiff shall submit a Bill of Costs to the Clerk of the Court.

People for the Ethical Treatment of Animals, Inc. v. Doughney, 2000 U.S. Dist. LEXIS 17843, *3, Civil Action No. 99-1336-A, Order (E.D. Va. Sept. 15, 2000).

II.

HN1 We review a district court's summary judgment ruling de novo, viewing the evidence in the light most favorable to the non-moving party. Goldstein v. The Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 340 (4th Cir. 2000); Binakonsky v. Ford Motor Co., 133 F.3d 281, 284-85 (4th Cir. 1998). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **[\*\*9]** Fed. R. Civ. P. 56.

A. Trademark Infringement/Unfair Competition

HN2 A plaintiff alleging causes of action for trademark infringement and unfair competition must prove (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers. 15 U.S.C. §§ 1114, 1125(a); Lone Star Steakhouse & Saloon v. Alpha of Virginia, 43 F.3d 922, 930 (4th Cir. 1995). n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (8 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.8

n2 See also Lone Star Steakhouse & Saloon, 43 F.3d at 930 n.10 ("the test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law . . . .").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*365]  There is no dispute here that PETA owns the "PETA" Mark, that Doughney used it, and [**10]  that Doughney used the Mark "in commerce." Doughney disputes the district court's findings that he used the Mark in connection with goods or services and that he used it in a manner engendering a likelihood of confusion.

1.

To use PETA's Mark "in connection with" goods or services, Doughney need not have actually sold or advertised goods or services on the http://www.peta.org/ website. Rather, Doughney need only have prevented users from obtaining or using PETA's goods or services, or need only have connected the website to other's goods or services.

While sparse, existing caselaw on infringement and unfair competition in the Internet context clearly weighs in favor of this conclusion. For example, in OBH, Inc. v. Spotlight Magazine, Inc., the plaintiffs owned the "The Buffalo News" registered trademark used by the newspaper of the same name. 86 F. Supp. 2d 176 (W.D. N.Y. 2000). The defendants registered the domain name thebuffalonews.com and created a website parodying The Buffalo News and providing a public forum for criticism of the newspaper. Id. at 182. The site contained hyperlinks to other local news sources and a site owned by the defendants [**11]  that advertised Buffalo-area apartments for rent. Id. at 183.

The court held that the defendants used the mark "in connection with" goods or services because the defendants' website was "likely to prevent or hinder Internet users from accessing plaintiffs' services on plaintiffs' own web site." Id.

> HN3
> Prospective users of plaintiffs' services who mistakenly access defendants' web site may fail to continue to search for plaintiffs' web site due to confusion or frustration. Such users, who are presumably looking for the news services provided by the plaintiffs on their web site, may instead opt to select one of the several other news-related hyperlinks contained in defendants' web site. These news-related hyperlinks will directly link the user to other news-related web sites that are in direct competition with plaintiffs in providing news-related services over the Internet. Thus, defendants' action in appropriating plaintiff's mark has a connection to plaintiffs' distribution of its services.

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (9 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.9

Id. Moreover, the court explained that defendants' use of the plaintiffs' mark was in connection with goods or services because it contained a link to the **[\*\*12]** defendants' apartment-guide website. Id.

Similarly, in Planned Parenthood Federation of America, Inc. v. Bucci, the plaintiff owned the "Planned Parenthood" mark, but the defendant registered the domain name plannedparenthood.com. 1997 U.S. Dist. LEXIS 3338, 42 U.S.P.Q.2D (BNA) 1430 (S.D.N.Y. 1997). Using the domain name, the defendant created a website containing information antithetical to the plaintiff's views. 42 U.S.P.Q.2D (BNA) at 1435. The court ruled that the defendant used the plaintiff's mark "in connection with" the distribution of services

> because it is likely to prevent some Internet users from reaching plaintiff's own Internet web site. Prospective users of plaintiff's services who mistakenly access defendant's web site may fail to continue to search for plaintiff's own home page, due to anger, frustration, or the belief that plain tiff's home page does not exist.

Id.

The same reasoning applies here. As the district court explained, Doughney's **[\*366]** use of PETA's Mark in the domain name of his website

> is likely to prevent Internet users from reaching[PETA's] own Internet web site. The prospective users of[PETA's] services who mistakenly access Defendant's **[\*\*13]** web site may fail to continue to search for [PETA's] own home page, due to anger, frustration, or the belief that [PETA's] home page does not exist.

Doughney, 113 F. Supp. 2d at 919 (quoting Bucci, 1997 U.S. Dist. LEXIS 3338, 42 U.S.P.Q.2D (BNA) at 1435). Moreover, Doughney's web site provides links to more than 30 commercial operations offering goods and services. By providing links to these commercial operations, Doughney's use of PETA's Mark is "in connection with" the sale of goods or services.

2.

**HN4** The unauthorized use of a trademark infringes the trademark holder's rights if it is likely to confuse an "ordinary consumer" as to the source or sponsorship of the goods. Anheuser-Busch, Inc. v. L&L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992)

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (10 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.10

(citing 2 J. McCarthy, Trademarks and Unfair Competition § 23:28 (2d ed. 1984)). To determine whether a likelihood of confusion exists, a court should not consider "how closely a fragment of a given use duplicates the trademark," but must instead consider "whether the use in its entirety creates a likelihood of confusion." Id. at 319.

Doughney does not dispute that the peta.org domain **[\*\*14]** name engenders a likelihood of confusion between his web site and PETA. Doughney claims, though, that the inquiry should not end with his domain name. Rather, he urges the Court to consider his website in conjunction with the domain name because, together, they purportedly parody PETA and, thus, do not cause a likelihood of confusion.

HN5 A "parody" is defined as a "simple form of entertainment conveyed by juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner." L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 34 (1st Cir. 1987). A parody must "convey two simultaneous -- and contradictory -- messages: that it is the original, but also that it is not the original and is instead a parody." Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ. Group, Inc., 886 F.2d 490, 494 (2d Cir. 1989) (emphasis in original). To the extent that an alleged parody conveys only the first message, "it is not only a poor parody but also vulnerable under trademark law, since the customer will be confused." Id. While a parody necessarily must engender some initial confusion, an effective parody will diminish **[\*\*15]** the risk of consumer confusion "by conveying [only] just enough of the original design to allow the consumer to appreciate the point of parody." Jordache Enterprises, Inc. v. Hogg Wyld, Ltd., 828 F.2d 1482, 1486 (10th Cir. 1987).

Looking at Doughney's domain name alone, there is no suggestion of a parody. The domain name peta.org simply copies PETA's Mark, conveying the message that it is related to PETA. The domain name does not convey the second, contradictory message needed to establish a parody -- a message that the domain name is not related to PETA, but that it is a parody of PETA.

Doughney claims that this second message can be found in the content of his website. Indeed, the website's content makes it clear that it is not related to PETA. However, this second message is not conveyed simultaneously with the first message, as required to be considered a parody. The domain name conveys the first message; the second message is conveyed only when the viewer reads the content of the website. As the district court explained, "an internet user would not realize **[\*367]** that they were not on an official PETA web site until after they had used PETA's Mark to access **[\*\*16]** the web page'http://www.peta.org/'apos;" Doughney, 113 F. Supp. 2d at 921. Thus, the messages are not conveyed simultaneously and do not constitute a parody. See also Morrison & Foerster LLP v. Wick, 94 F. Supp. 2d 1125 (D. Co. 2000) (HN6 defendant's use of plaintiffs' mark in domain name "does not convey two simultaneous and contradictory messages" because "only by reading through the content of the sites could the user discover that the domain names are an attempt at parody"); Bucci, 1997 U.S. Dist. LEXIS 3338, 42 U.S.P.Q.2D (BNA) at 1435 (rejecting parody defense because "seeing or typing the 'planned parenthood' mark and accessing the web site are two separate and nonsimultaneous activities"). The district court properly rejected Doughney's parody defense and found that Doughney's use of the peta.org domain name engenders a likelihood of confusion. Accordingly,

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (11 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.11

Doughney failed to raise a genuine issue of material fact regarding PETA's infringement and unfair competition claims.

B. Anticybersquatting Consumer Protection Act

The district court found Doughney liable under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1)(A). **HN7** **[**17]** To establish an ACPA violation, PETA was required to (1) prove that Doughney had a bad faith intent to profit from using the peta.org domain name, and (2) that the peta.org domain name is identical or confusingly similar to, or dilutive of, the distinctive and famous PETA Mark. 15 U.S.C. § 1125(d)(1)(A).

Doughney makes several arguments relating to the district court's ACPA holding: (1) that PETA did not plead an ACPA claim, but raised it for the first time in its motion for summary judgment; (2) that the ACPA, which became effective in 1999, cannot be applied retroactively to events that occurred in 1995 and 1996; (3) that Doughney did not seek to financially profit from his use of PETA's Mark; and (4) that Doughney acted in good faith.

None of Doughney's arguments are availing. First, PETA raised its ACPA claim for the first time in its summary judgment briefs. Doughney objected, noting that PETA failed to plead the claim in its complaint and failed to seek leave to amend to do so. Doughney also vigorously defended against the claim. PETA acknowledged below that it did not plead the claim, but "respectfully requested" in its summary judgment reply **[**18]** brief "that the district Court apply the [the ACPA] to the case at bar[.]" Nothing in the record suggests that the district court entered an order amending PETA's complaint to include an ACPA claim. However, the district court appears to have ruled on PETA's informal motion, listing the ACPA in its summary judgment order as one of the claims on which PETA seeks summary judgment and rendering judgment as to that claim.

**HN8** The Federal Rules "allow liberal amendment of pleadings throughout the progress of a case." Elmore v. Corcoran, 913 F.2d 170, 172 (4th Cir. 1990) (citing Brandon v. Holt, 469 U.S. 464, 471, 83 L. Ed. 2d 878, 105 S. Ct. 873 (1985) (petitioners allowed to amend pleadings before Supreme Court)). A party's failure to amend will not affect a final judgment if the issues resolved were "tried by express or implied consent of the parties." Id. (citing Fed. R. Civ. P. 15(b)). Even without a formal amendment, "a district court may amend the pleadings merely by entering findings on the unpleaded issues." Id. (quoting Galindo v. Stoody Co., 793 F.2d 1502, 1513 n. 8 (9th Cir. 1986)).

Here, PETA's summary judgment briefs **[**19]** essentially moved the district court for leave to amend its complaint to include an **[*368]** ACPA claim, and the district court appears to have granted that motion via its summary judgment ruling. While the record would have been clearer had PETA formally filed such a motion and the district court formally entered such an order, they did so in substance if not in form. Thus, we reject Doughney's first contention.

Doughney's second argument -- that the ACPA may not be applied retroactively --

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (12 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.12

also is unavailing. **HN9** The ACPA expressly states that it "shall apply to all domain names registered before, on, or after the date of the enactment of this Act[.]" Pub. L. No. 106-113, § 3010, 113 Stat. 1536. See also Sporty's Farm L.L.C. v. Sportsman's Market, Inc., 202 F.3d 489, 496 (2d Cir. 2000) (same). Moreover, while the ACPA precludes the imposition of damages in cases in which domain names were registered, trafficked, or used before its enactment, Pub. L. No. 106-113, § 3010, 113 Stat. 1536 ("damages under subsection (a) or (d) of section 35 of the Trademark Act of 1946 (15 U.S.C. 1117), . . . shall not be available with respect to the registration, **[\*\*20]** trafficking, or use of a domain name that occurs before the date of the enactment of this Act"), it does not preclude the imposition of equitable remedies. See also Virtual Networks, Inc. v. Volkswagen of America, Inc., 238 F.3d 264, 268 (4th Cir. 2001). Here, the district court did not award PETA damages (nor did PETA request damages), but ordered Doughney to relinquish the domain name, transfer its registration to PETA, and limit his use of domain names to those that do not use PETA's Mark. Doughney, 113 F. Supp. 2d at 922. Thus, the district court properly applied the ACPA to this case.

Doughney's third argument -- that he did not seek to financially profit from registering a domain name using PETA's Mark -- also offers him no relief. It is undisputed that Doughney made statements to the press and on his website recommending that PETA attempt to "settle" with him and "make him an offer." The undisputed evidence belies Doughney's argument.

Doughney's fourth argument -- that he did not act in bad faith -also is unavailing. **HN10** Under 15 U.S.C. § 1125(d)(1)(B)(i), a court may consider several factors to determine whether a **[\*\*21]** defendant acted in bad faith, including

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> 
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> 
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> 
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> 
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> 
> (VI) the person's offer to transfer, sell, or otherwise assign the domain

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (13 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.13

name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior **[**22]** conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional **[*369]** failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the per son's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). In addition to listing these nine factors, *HN11* the ACPA contains a safe harbor provision stating that bad faith intent "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe **[**23]** that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1225(d)(1)(B)(ii).

The district court reviewed the factors listed in the statute and properly concluded that Doughney (I) had no intellectual property right in peta.org; (II) peta.org is not Doughney's name or a name otherwise used to identify Doughney; (III) Doughney had no prior use of peta.org in connection with the bona fide offering of any goods or services; (IV) Doughney used the PETA Mark in a commercial manner; (V) Doughney "clearly intended to confuse, mislead and divert internet users into accessing his web site which contained information antithetical and therefore harmful to the goodwill represented by the PETA Mark"; (VI) Doughney made statements on his web site and in the press recommending that PETA attempt to "settle" with him and "make him an offer"; (VII) Doughney made false statements when registering the domain name; and (VIII) Doughney registered other domain names that are identical or similar to the marks or names of other famous people and organizations. People for the Ethical Treatment of Animals, 113 F. Supp. 2d at 920.

Doughney **[**24]** claims that the district court's later ruling denying PETA's motion for attorney fees triggers application of the ACPA's safe harbor provision. In that ruling, the district court stated that

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (14 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.14

> Doughney registered the domain name because he thought that he had a legitimate First Amendment right to express himself this way. The Court must consider Doughney's state of mind at the time he took the actions in question. Doughney thought he was within his First Amendment rights to create a parody of the plaintiff's organization.

People for the Ethical Treatment of Animals, Inc. v. Doughney, 2000 U.S. Dist. LEXIS 13421, *5, Civil Action No. 99-1336-A, Order at 4 (E.D. Va. Aug. 31, 2000). With its attorney's fee ruling, the district court did not find that Doughney "had reasonable grounds to believe" that his use of PETA's Mark was lawful. It held only that Doughney thought it to be lawful.

Moreover, HN12 a defendant "who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from [the ACPA's] safe harbor provision." Virtual Works, Inc., 238 F.3d at 270. Doughney knowingly provided false information to NSI upon registering the domain [**25] name, knew he was registering a domain name identical to PETA's Mark, and clearly intended to confuse Internet users into accessing his website, instead of PETA's official website. Considering the evidence of Doughney's bad faith, the safe harbor provision can provide him no relief.

 [*370]  III.

A. Attorney Fees

HN13 This Court reviews the denial of an award for attorney fees for abuse of discretion. Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 108 n.6 (4th Cir. 1991). A trial court abuses its discretion only if its conclusions are based on mistaken legal principles or clearly erroneous factual findings. Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999).

HN14 In trademark infringement cases, the Court may award reasonable attorney fees in exceptional cases. Under 15 U.S.C. § 1117(a), a case is "exceptional" if the defendant's conduct was "malicious, fraudulent, willful or deliberate in nature." Scotch Whisky Ass'n v. Majestic Drilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1991). In other words, a prevailing plaintiff must "show that the defendant acted in bad faith." Id. See also Texas Pig Stands v. Hard Rock Cafe Int'l, Inc., 951 F.2d 684, 697 (5th Cir. 1992) [**26] (the term "exceptional" should be "interpreted by courts to require a showing of a high degree of culpability on the part of the infringer, for example, bad faith or fraud").

PETA sought attorney fees of more than $ 276,000. The district court denied the motion, holding that Doughney did not act maliciously, fraudulently, willfully or deliberately because "he thought that he had a legitimate First Amendment right to express himself this way" and "to create a parody of the plaintiff's organization." PETA

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (15 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.15

claims the district court's decision is inconsistent with its bad faith finding under the ACPA, and argues that Doughney's conduct established bad faith.

However, HN15 a bad faith finding under the ACPA does not compel a finding of malicious, fraudulent, willful or deliberate behavior under § 1117. The district court was within its discretion to find that, even though Doughney violated the ACPA (and, thus, acted in bad faith), he did not act with the level of malicious, fraudulent, willful or deliberate behavior necessary for an award of attorney fees.

B. Costs

PETA also sought to recover $ 28,671.68 for the costs of filing fees, photocopying, facsimiles, courier services, postage, **[**27]** attorney travel, mileage, tolls and parking, long distance telephone calls, "services", witness fees and mileage, transcripts, computer research, and "miscellaneous" items. Under 15 U.S.C. § 1117, a prevailing plaintiff "shall be entitled . . . to recover . . . the cost of the action." The term "costs of the action" is not defined by the Lanham Act. The district court interpreted the term to mean that PETA was entitled to those costs defined in 28 U.S.C. § 1920, which states that

> [a] judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

**[**28]**

PETA claims that 15 U.S.C. § 1117 "does not incorporate nor reference the limitations set forth in § 1920" and that "the fact that a separate statute was **[*371]** passed to expansively award 'costs of the action' in trademark cases indicates that it is a statute that is to be considered separate and apart from the traditional costs statute." Appellee/CrossAppellant PETA's Reply Br. at 26 (emphasis in original).

However, the term "costs of the action" is not unique to the Lanham Act. Identical

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (16 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.16

language appears in the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(d)(2) ("In any successful action to enforce the liability under this paragraph, the court may award the court costs of the action together with a reasonable attorney's fee as determined by the court"), ERISA, 29 U.S.C. § 1132(g)(2) ("the court shall award the plan" . . . "reasonable attorney's fees and costs of the action" if the action results in a "judgment in favor of the plan"), the Fair Labor Standards Act, 29 U.S.C. § 216(b) (providing for "reasonable attorney's fees . . . and the costs of the action"), the Right **[**29]** to Financial Privacy Act, 12 U.S.C. § 3417 (same), the Expedited Funds Availability Act, 12 U.S.C. § 4010 (same), the Truth in Savings Act, 12 U.S.C. § 4310 (same), and other statutes. Moreover, at least two Circuit Courts have held that the term "costs of the action" must be interpreted with reference to 28 U.S.C. § 1920. See, e.g., Uphoff v. Elegant Bath, LTD, 176 F.3d 399, 411 (7th Cir. 1999) (interpreting Fair Labor Standard Act 29 U.S.C. § 216(b)'s "costs of the action" with reference to § 1920); Agredano v. Mutual of Omaha Cos., 75 F.3d 541, 544 (9th Cir. 1996) ("We therefore hold that [Employment Retirement Income Security Act 29 U.S.C. § 1132's] allowance for 'costs of action' empowers courts to award only the types of 'costs' allowed by 28 U.S.C. § 1920").

Moreover, we need not determine now whether the "costs of the action" referenced in § 1117 are limited to those mentioned in § 1920 because HN16 the "award of monetary damages, attorney fees and costs under the Lanham **[**30]** Act is committed to the sound discretion of the Court, based on the equities of each particular case." Dick's Sporting Goods, Inc. v. Dick's Clothing & Sporting Goods, Inc., 12 F. Supp. 2d 499, 500 (D.Md. 1998), aff'd, 188 F.3d 501 (4th Cir. 1999). The district court was required to award PETA, as the prevailing party, no more than those costs required by § 1920. Any additional award of costs was within its sound discretion and PETA fails to make a compelling argument establishing that the district court abused its discretion in refusing to do so.

IV.

For the foregoing reasons, the judgment of the district court is affirmed. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Because a finding of trademark infringement, unfair competition, and an ACPA violation supports the remedy PETA sought, we need not address PETA's dilution claim.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

AFFIRMED

Service: **Get by LEXSEE®**
Citation: **263 F.3d 359**
View: Full
Date/Time: Friday, February 10, 2006 - 4:33 PM EST

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (17 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.17

* Signal Legend:
- 🔴 - Warning: Negative treatment is indicated
- 🅠 - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

---



**About LexisNexis** | **Terms & Conditions**

Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELW...cuments/Client%20Files/Schmidt/Smith/PETAopinion.htm (18 of 18)2/10/2006 4:34:12 PM

Exhibit 13, p.18