*1994 U.S. Dist. LEXIS 21597, \*; 33 U.S.P.Q.2D (BNA) 1882*

THE MAITLAND COMPANY, INC., and SUMTER TRANSPORT, INC., Plaintiff, v. TERRA FIRST, INC., HEEL-AWAY, INC., and MITCH COVINGTON, Defendants.

CIVIL ACTION NO. 3:94-662-17BD

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA, COLUMBIA DIVISION

1994 U.S. Dist. LEXIS 21597; 33 U.S.P.Q.2D (BNA) 1882

August 24, 1994, Decided
August 24, 1994, Filed

**SUBSEQUENT HISTORY:** Adopted in Part, Rejected in Part, Injunction granted, motion granted by, Maitland Co. v. Terra First, 1994 U.S. Dist. LEXIS 20172 (D.S.C. Oct. 27, 1994).

**DISPOSITION:  [\*1]**  Magistrate judge's recommendations: Plaintiffs' request for preliminary injunction should be granted.

**CORE TERMS:** agitator, patent, tank, preliminary injunction, invention, tanker, shaft, seals, reasonable likelihood, inventor, injunction, bottom, irreparable harm, infringement, memorandum, customer, lawsuit, solid, compete, public interest, non-sparking, invalid, auger, bronze, load, market share, undersigned, practicing, infringed, presumed

**COUNSEL:** For MAITLAND COMPANY, INC. (THE), SUMTER TRANSPORT, INC., plaintiffs: Robert George McCulloch, Jr., Bell, Bagley & Davis, Sumter, SC.

For MAITLAND COMPANY, INC. (THE), SUMTER TRANSPORT, INC., plaintiffs: Michael J Bell, John F. Hornick, Gerson S. Panitch, Esq., Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC.

For MAITLAND COMPANY, INC. (THE), SUMTER TRANSPORT, INC., plaintiffs: James Edward Bell, III, Bell and Moore PA, Sumter, SC.

For TERRA FIRST INC, HEEL-AWAY INC, MITCH COVINGTON, defendants: Russell Thomas Burke, Valentine Henry Stieglitz, III, Nexsen Pruet Jacobs and Pollard, Columbia, SC.

For TERRA FIRST INC, HEEL-AWAY INC, MITCH COVINGTON, defendants: John S. Pratt, Esq., Mitchell G Stockwell, Kilpatrick Stockton LLP, Atlanta, GA.

For RANGER INSURANCE COMPANY, movant: Knox L Haynsworth, III, Brown Massey Evans and McLeod, Greenville, SC.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/maitlandopinion.htm (1 of 19)2/10/2006 4:38:54 PM

**Exhibit 14, p.1**

For TERRA FIRST INC, counter-claimant: Valentine Henry Stieglitz, III, Nexsen Pruet Jacobs and Pollard, Columbia, SC.

For MAITLAND COMPANY, INC. (THE), SUMTER TRANSPORT, INC., counter-defendants: Robert George McCulloch, Jr., Bell, Bagley **[*2]** & Davis, Sumter, SC.

For MAITLAND COMPANY, INC. (THE), SUMTER TRANSPORT, INC., counter-defendants: James Edward Bell, III, Bell and Moore PA, Sumter, SC.

For TERRA FIRST INC, HEEL-AWAY INC, MITCH COVINGTON, counter-claimants: Russell Thomas Burke, Valentine Henry Stieglitz, III, Nexsen Pruet Jacobs and Pollard, Columbia, SC.

For TERRA FIRST INC, HEEL-AWAY INC, MITCH COVINGTON, counter-claimants: John S. Pratt, Esq., Mitchell G Stockwell, Kilpatrick Stockton LLP, Atlanta, GA.

For MAITLAND COMPANY, INC. (THE), SUMTER TRANSPORT, INC., counter-defendants: John F. Hornick, Gerson S. Panitch, Esq., Michael J Bell, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC.

For VERNON MILLING CO., VMC LEASING, INC., PRICE MAINTENANCE SERVICE INC, ELMER THOMAS, defendants: Donald B Sweeney, Jr, Rives & Peterson, Birmingham, AL.

For VERNON MILLING CO., VMC LEASING, INC., PRICE MAINTENANCE SERVICE INC, ELMER THOMAS, defendants: James Mixon Griffin, Simmons Griffin and Lydon, Columbia, SC.

For PRICE MAINTENANCE SERVICE INC, counter-claimant: Donald B Sweeney, Jr, Rives & Peterson, Birmingham, AL.

For PRICE MAINTENANCE SERVICE INC, counter-claimant: **[*3]** James Mixon Griffin, Simmons Griffin and Lydon, Columbia, SC.

**JUDGES:** Bristow Marchant, United States Magistrate Judge.

**OPINIONBY:** Bristow Marchant

**OPINION: REPORT AND RECOMMENDATION**

This action was filed by the Plaintiffs on March 2, 1994. Plaintiffs allege that the Defendants are committing patent infringement in violation of 35 U.S.C. § 271(a),(b), (c). Plaintiffs also charge the Defendants with violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition, South Carolina Unfair Trade Practice Act, § 39-5-10, et.seq., South Carolina Code of Laws, and Civil Conspiracy.

Plaintiffs assert that they are the owners of the entire right, title and interest in U.S. Patent no. 5,275,487 ("the 487 patent"), which is the patent for a tanker trailer

**Exhibit 14, p.2**

agitator produced under the trademark "Roberoller". n1 The sole business of the Plaintiff Maitland Company ("Maitland") is the production of and sale of Roberoller agitators. Plaintiff Sumter Transport ("Sumter") is a major purchaser of Maitland's Roberoller agitators. Plaintiffs allege in this lawsuit that the Defendants have manufactured, caused others to manufacture, used **[*4]** and/or sold and caused others to use and/or sell agitator tanker trailers that fall within the scope of one or more of the claims of the patent, and have therefore infringed the patent. Plaintiffs seek to enjoin the Defendants from further infringement of Plaintiffs' patent, as well as an award of damages and reasonable attorney's fees and costs.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n1 The actual owner of the Patent is Robert Rumph, President of the Maitland Company. Plaintiffs' Exhibit 4. However, for purposes of this report and recommendation, the Court will generally refer to the Plaintiffs as the "owners" of the patent, as they are asserting the right, through Rumph, to use of the patented product.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiffs filed a motion for preliminary injunction in this case on June 15, 1994. In their motion, Plaintiffs seek to enjoin any further use and/or sale of Defendants' alleged infringing agitators pending resolution of this lawsuit. n2 The general standards for considering a preliminary injunction motion are not in dispute. In order to grant **[*5]** a preliminary injunction, a Court must find 1) that the Plaintiff has a reasonable likelihood of success on the merits; 2) that the Plaintiff does not have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; 3) the threatened injury to the Plaintiff outweighs the threatened harm the injunction may inflict on the Defendant; and 4) the granting of a preliminary injunction will not disserve the public interest. Roper Corp. v. Litton Systems, Inc., 757 F.2d 1266, 1269 (Fed.Cir. 1985). n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n2 This motion was referred to the undersigned United States Magistrate Judge by the Honorable Joseph F. Anderson, Jr., United States District Judge, by order filed June 23, 1994, pursuant to 28 U.S.C. § 636 and Local Rule 73.02(D), D.S.C. This Report and Recommendation is entered pursuant to the provisions of 28 U.S.C. § 636 (b)(1) (A).


n3 The standards set by the Court of Appeals for the Federal Circuit, which has appellate jurisdiction over all patent cases pursuant to 28 U.S.C. § 1292, are the standards to be used in considering a preliminary injunction in a patent case. Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1451 n. 12 (Fed.Cir. 1988).

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/maitlandopinion.htm (3 of 19)2/10/2006 4:38:54 PM

**Exhibit 14, p.3**

Get a Document - by Citation - 33 U.S.P.Q.2D (BNA) 1882

6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-16    Page 4 of 19
- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*6]**

As noted in Wright & Miller, Federal Practice and Procedure, § 2948, p. 428-429, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." However, a United States District Court may consider the principals of equity when deciding a preliminary injunction motion, and may impose such terms as the Court deems reasonable under the circumstances. see 35 U.S.C. § 283. Federal Courts have recognized that sometimes there is a special need for immediate relief in patent cases, see e.g., Pittway v. Black and Decker, 667 F. Supp. 585, 593 (N.D.II. 1987), Augat, Inc. v. John Mezzalingua Assocs., Inc., 642 F. Supp. 506, 508 (N.D.N.Y. 1986), and a patent is presumed valid under Federal Law. 35 U.S.C. § 282. However, this presumption of validity does not relieve a patentee who moves for a preliminary injunction from the requirement that the movant carry the burden of showing likelihood of success on the merits with respect to all disputed issues. Accord, New England Braiding Co. v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed.Cir. 1992). **[\*7]**

Both sides have submitted extensive briefs with accompanying exhibits on this motion. Indeed, this Court was still receiving filings relating to this motion from the Defendants on the day the motion was scheduled to be argued. The Court advised the parties of the requirements of Local Rule 12.01 D.S.C., and further advised the parties that this Rule should be strictly adhered to in future filings with this Court. However, for purposes of the motion for preliminary injunction, the Court has allowed the Plaintiffs to submit a written response to the Defendants' late filings, post-hearing, and therefore the Court has considered all materials submitted by both parties in rendering this opinion. The Court will now discuss each element necessary for determination of Plaintiff's motion.

## 1) Do the Plaintiffs have a reasonable likelihood of success on the merits?

Plaintiffs are the owner of the 487 patent for the Roberoller agitator. The 487 patent was issued three (3) years after the initial application was submitted, during which time the application was considered by two United States Patent Examiners. The examiners concluded that Plaintiffs (actually Robert Rumph) were entitled **[\*8]** to a United States Patent for the Roberoller agitator. As previously noted, pursuant to 35 U.S.C. § 282, the 487 patent is presumed valid. see Exhibit 5 to Plaintiffs' memorandum in support. Defendants' patent attorney conceded at the hearing that the 487 patent is presumed valid as a matter of law.

The Roberoller agitator tanker is used in the shipment of certain waste products. It is designed to prevent build-up of solids on the tanker floor and to maintain a uniform mixture of waste throughout the tank. The Roberoller utilizes an internal non-sparking motor and shaft ends contained entirely within the tank. Plaintiffs' Exhibit 16; see also text Claim 1. One of Maitland's first customers for this agitator was the Defendant Terra First, Inc. ("Terra First"). The Defendant Mitch Covington ("Covington"), President of Terra First, signed a sales contract on June 21, 1991 (prior to the issuance of the 487 patent) which acknowledged that a patent for this device was pending. Covington and Terra First agreed in this contract not to copy or permit

**Exhibit 14, p.4**

others to copy the Roberoller agitator tanker design. Plaintiff's Exhibit 5, P's 9-10; Plaintiff's **[*9]** Exhibit 6. However, Maitland later filed a lawsuit against Terra First alleging that Terra First and an Alabama Company called Price Maintenance were making and using copy-cat agitator tankers. Plaintiff's Exhibit 5, P 11. This lawsuit resulted in a settlement agreement wherein Terra First agreed to stop hauling agitated hazardous waste with the Price Maintenance/Roberoller units within a set period of time, and also to make certain cash payments to the Plaintiff Maitland. see Plaintiff's Exhibit 10. However, Plaintiff alleges that following this settlement, Covington proceeded to set up a new company, the Defendant Heel-Away, Inc. ("Heel-Away"), to continue the manufacture of agitator tankers with the same key features as Maitland's Roberoller agitator tankers. Plaintiffs then filed this lawsuit for patent infringement and damages. Defendants deny that the agitator they use is an infringement of Plaintiffs' patent, and further allege that the patent itself is not enforceable in any event. see Answer filed April 4, 1994.

As the patent is presumed valid, the burden of establishing invalidity is on the Defendants. Therefore, Plaintiffs argue they need only prove a reasonable **[*10]** likelihood that the patent is not invalid to show a reasonable likelihood of success on this issue for purposes of the motion for preliminary injunction. see Roper Corp. v. Litton Sys., supra, at 1270. This standard may be the subject of some confusion, in that the Federal Circuit still requires that a patentee clearly show that his patent is both valid and infringed to obtain a preliminary injunction. Atlas Powder Co. v. Ireco Chemicals, 773 F.2d 1230, 1233 (Fed.Cir. 1985). In any event, in order to issue a preliminary injunction, this Court must be satisfied that Plaintiffs have shown a reasonable likelihood of success on the merits of this issue at trial.

**a) Has a "claim" been violated?** As part of the process to obtain a patent, an applicant submits "claims" concerning the item to be patented to the U.S. Patent and Trademark Office ("PTO"). After a patent is issued, infringement occurs when a claim is found to have been violated, or infringed. Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1054 (Fed. Cir.) cert. denied, 488 U.S. 825, 102 L. Ed. 2d 51, 109 S. Ct. 75 (1988). Although numerous **[*11]** claims may be attached to a patent, only one non-dependant claim need be infringed for infringement of a patent to have occurred. Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 625-626 (Fed. Cir.) cert. dismissed, 474 U.S. 976, 106 S. Ct. 340, 88 L. Ed. 2d 326 (1985). Plaintiffs assert that Claims 1-14 and 15-19 of the 487 patent have been infringed; however, only Claim 1 is extensively discussed by the parties in their briefs. see Plaintiffs' Memorandum in support, at p. 22, n. 14; Defendants' Brief on Claim 1; and related submissions. Claim 1 of the 487 patent provides as follows:

An apparatus for containing a load of hazardous substances including liquids and solids, a top surface of the load defining a load level, the apparatus comprising:

a closed tank for containing the load of hazardous substances and including a tank bottom and opposing side walls,

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/maitlandopinion.htm (5 of 19)2/10/2006 4:38:54 PM

**Exhibit 14, p.5**

said tank having a top portion a man hole opening located in the top portion and a valved opening located in the bottom

agitating means located in the tank and extending between the side walls for agitating substances within the tank to prevent the solids from settling on the bottom of the tank,  **[*12]**

the agitating means including a shaft rotatably mounted in the tank extending substantially parallel to the tank bottom and having first and second distal shaft ends,

said side walls of the tank being imperforate in areas adjacent to the first and second distal shaft ends;

means located in said tank for supporting said shaft such that the entire agitating means, including the first and second distal shaft ends is completely contained and supported within the interior of the tank;

a non sparking motor for rotating the shaft, the motor being located within the tank beneath the load level and being submerged in at least a portion of the hazardous substances and

means for transmitting power to the non-sparking motor.

Plaintiffs' Memorandum in support, pp. 23-24.

Plaintiffs have attached as Appendix 1 to Plaintiffs' Exhibit 5 photographs of the Defendants' agitator tanker trailer which was displayed at an industry trade show in Nashville, Tennessee. Plaintiffs' Exhibit 5, at P 17. Plaintiffs provide a point by point analysis of why the Heel-Away agitator shown in the photographs constitutes an infringement of Claim 1 of the 487 patent. Id, pp. 23-24; Appendix  **[*13]**  1 to Plaintiffs' Exhibit 5.

Defendants argue that Plaintiffs cannot show a reasonable likelihood of success on the merits by merely pointing to the one Heel-Away agitator system on display in Nashville. Defendants assert that they have other agitator designs that do not incorporate a shaft running "substantially parallel to the bottom of the tank," as defined in Claim 1, and also assert that the Defendants' tanks are "double conical," while the Plaintiffs' are not. see Defendants' Exhibit 44. However, a closer review of the submitted exhibits does not support Defendants' arguments. The term "substantially parallel" means just that. It does not mean exactly parallel. see Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 338 F. Supp. 1240, 1243-1244 (W.D.Mich. 1972), aff'd 476 F.2d 1286 (6th Cir. 1973). The figures shown in Appendix 1 to Plaintiffs' Exhibit 5 certainly show a shaft running "substantially parallel" to the tank bottom. Further, as noted in the patent itself, the agitator may be installed in either level center discharge tanks or in drop center tanks known to the art. see Plaintiffs' Exhibit 4, column 6, lines 64-66. Defendants'  **[*14]**  double conicle tanks are drop center tanks known to the art.

Exhibit 14, p.6

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/maitlandopinion.htm (6 of 19)2/10/2006 4:38:54 PM

Defendants also assert in their brief that one design of Defendants' agitator does not utilize a shaft running the entire length of the tanker, which they contend is a requirement of the Roberoller patent. However, while Defendants' patent attorney categorically denied at the hearing that Defendants' shortened shaft design would fall within Claim 19 of the patent, he conceded that this shortened shaft design might fall within Claim 1. see Transcript, p. 178. Further, Defendants themselves make the argument in their brief that "Claim 1 encompasses a shaft of any length that is rotably mounted for rotation by a non-sparking motor." Defendants' Memorandum in Opposition, p. 46 (emphasis in original).

Similarly, Defendants' argument that Defendants' design is not within Claim 1 because the Heel-Away motor is located on the shaft end, rather than in the middle of the tank, also fails. Claim 1 provides that the non-sparking motor be located within the tank beneath the load level and be submerged in at least a portion of the hazardous substances. see Claim 1, P 3, p. 24, Plaintiff's Memorandum in Support. Defendants' **[*15]** design falls within this definition.

Based on the evidence and arguments submitted, Plaintiff has established a reasonable likelihood of success on the issue of a violation of Claim 1 of the patent. As previously noted, infringement of only one claim of a patent constitutes infringement of the patent itself. Shatterproof Glass Corp, supra.

**b) Is the patent invalid?** The Court's inquiry does not end with a finding of likelihood of success by the Plaintiffs on the issue of infringement. This is because the Defendants also assert that the patent itself is not enforceable, and that there can be no infringement of an unenforceable patent. see Answer, 6th and 7th defenses to Plaintiffs' first cause of action. Defendants promote several arguments in support of a finding that the patent is invalid, as follows: i) it fails to identify the correct inventor of the device; ii) there are extensive prior patents and prior devices (called "prior art") never considered by the U.S. Patent and Trademark Office which render the device unpatentable; iii) the device is "obvious," and therefore not patentable under 35 U.S. C. § 103; and iv) the patent **[*16]** fails to disclose all of the information critical to practicing the subject matter of the patent. Defendants' Memorandum in Opposition, at p. 3.

**i) Identity of the inventor.** Defendants' first claim is based on the rule that "patent applications must be filed by the inventor, 35 U.S.C. § 111, who 'shall make oath that he believes himself to be the original and first inventor.' 35 U.S.C. § 115.'" Ashlow, Ltd. v. Morgan Construction Co., 1982 U.S. Dist. LEXIS 12920, 213 U.S.P.Q. (BNA) 671, 696 (D.S.C. 1982); see also Iowa State Univ. Research Foundation Inc. v. Sperry Rand Corp., 444 F.2d 406, 408 (4th Cir. 1971). Defendants assert that Robert Rumph, the owner of the patent, is not the inventor of the Roberoller agitator and, therefore, the patent is invalid. Defendants allege that Ralph Ott, not Robert Rumph, is the true inventor of the Roberoller agitator. In support of this argument, Defendants point to testimony and evidence which they allege show Ott's critical participation in the design and development of the Roberoller agitator. see Defendant's Exhibit 11, Ott Deposition, at 41, 57-58, 62, **[*17]** 65, 170-171, 179; Defendant's Exhibit 12, R. Rumph Deposition, at 73-74, 156, 186-187; Defendant's Exhibit 3, S. Rumph

Exhibit 14, p.7

Deposition, at 33-34.

Plaintiffs dispute Defendants' characterization of Ott as the inventor of the Roberoller agitator. Defendants themselves admit that Robert Rumph conceived the idea of the Roberoller agitator. Motion Hearing Transcript, p. 188; Defendants' Memorandum in Opposition, pp. 18-19. Plaintiffs argue that just because Ott assisted Rumph in performing engineering design and development work does not mean that Ott is the true inventor of the device, citing Sewall v. Walters, 21 F.3d 411, 415 (Fed.Cir. 1994); and Shatterproof Glass Corp. v. Libbey-Owens Ford Co., supra, at 624 Further, even if Ott could be considered a co-inventor of the Roberoller agitator, Plaintiffs point out that 35 U.S.C. § 256 expressly provides that "the error of omitting inventors… shall not invalidate the patent…." Plaintiff's reply memorandum, at p. 23. Therefore, in the event an inventor has been omitted from the original patent, as long as such omission was not due to a deceptive intention on **[*18]** the part of the applicant, the patent can be corrected. Id; see also MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1570 (Fed.Cir. 1989). While Defendants are correct that a showing of fraud or even gross negligence in the naming of a co-inventor may serve to invalidate a patent, the Defendants have not shown any such activity in this case. Defendants' arguments that deception and willfulness are present in this case (see Defendants' Memorandum in Opposition, pp. 57-58 n.33) are mere speculation on the Defendants' part.

After review of the submitted material and the arguments of counsel, the Court concludes that Plaintiffs have a reasonable likelihood of success on this issue. It is uncontested that Robert Rumph conceived the idea of the Roberoller agitator, and even if Ott is ultimately determined to be a co-inventor, there is no evidence of fraud or gross negligence in Robert Rumph's submission of the original Application.

**ii) Issue of "prior art."** Defendants also claim that there are extensive prior patents and prior devices (called "prior art") which render the Roberoller agitator unpatentable. A valid patent cannot be granted for an "invention **[*19]** [that] was known or used by others…before the invention thereof by the applicant for patent." 35 U.S.C. § 102 (a). Further, a valid patent cannot be issued for an invention that was in public use or on sale more than one year prior to the date of the application for the patent. 35 U.S.C. § 102 (b).

Defendants assert that tankers having every element of the "invention" claimed in Claims 1 and 19 of the 487 patent were publicly known, used, and on sale in this country in the 1980's, and that therefore the 487 patent is invalid. Specifically, Defendants claim that every element in Claims 1 and 19 of the 487 patent were developed and used by Proco and Max/Vac in the 1980's. Defendants' Exhibits 28 and 29 to their memorandum in opposition show a comparison of Claims 1 and 19 of the 487 patent to the Max/Vac agitator tanker and the Proco agitator tanker, as well as two other types of agitator tankers (as to Claim 1 only). However, the Max/Vac and Proco agitator tankers are "screw augers." Screw augers are not designed to prevent solids from settling on the tank bottom. Rather, screw augers rely on the material in the tank settling to **[*20]** the bottom for drainage. Transcript, pp. 129-131. Conversely, the Roberoller agitator, as well as the agitator used by the Defendants, operate to create turbulence in order to prevent solids from settling on the tank

**Exhibit 14, p.8**

bottom. n4 Claim 1 of 487 patent specifically provides, inter alia, that the agitation within the tank is designed to "prevent the solids from settling on the bottom of the tank."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Defendants argue in a subsequent submission that their agitator actually does not prevent settlement on the bottom. see Defendants' Supplemental Memorandum, (Non-Infringement), filed July 25, 1994. However, in a twist of logic, this claim is predicated on the fact that settlement can and does occur when Defendants' agitator is turned off. This is not surprising. The Court does not believe the Plaintiffs would deny that their agitator will also fail to prevent settlement if turned off. The issue is not what the two devices do when they are turned off, but how they perform when they are operating.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The **[*21]** PTO considered a number of auger devices during its examination of the application for the 487 patent, including the Gillican screw auger relied on so heavily by Defendants in their supplemental memorandum (Prosecution History) dated July 25, 1994 (pp. 6-8), and concluded that the Roberoller agitator was patentable over each such reference. see Plaintiffs' reply memorandum, pp. 10-11, 14, n.8. Therefore, based on the material and arguments submitted, the Court finds that the Plaintiffs have a reasonable likelihood of success on the issue of "prior art" raised by the Defendants.

**iii) Is the Roberoller agitator "obvious"?** Patents may not be obtained for devices which are only "obvious" improvements in the state of the art. This is called the requirement of non-obviousness. see 35 U.S.C. § 103. The "nonobvious" requirement means that a patent may not be obtained for a device which only produces "insignificant variations and innovations of a commonplace sort." Graham v. John Deere Co., 383 U.S. 1, 16, 15 L. Ed. 2d 545, 86 S. Ct. 684 (1966). "Because patent rights limit free competition, protection of the public interest and the **[*22]** free enterprise system requires that patents with obvious subject matter be declared invalid. see Lear, Inc. v. Adkins, 395 U.S. 653, 670, 23 L. Ed. 2d 610, 89 S. Ct. 1902 (1969); Sinclair and Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330-331, 89 L. Ed. 1644, 65 S. Ct. 1143 (1945)." Defendants' Memorandum in Opposition, p. 47, n. 26. Therefore, in considering the question of "nonobviousness", it must be determined whether the differences between a device sought to be patented and the prior art, or state of the art, are so common that a hypothetical person knowledgeable in the art would have found the differences to be obvious.

Defendants claim that the patented Roberoller agitator is "obvious" because the previously cited auger agitators provide for agitation of semi-liquid debris or materials through means of a device with a shaft and operated by an immersed, non-sparking motor. cites to Defendants' Exhibits 30, 31, 34 and 36; Defendants' Memorandum in Opposition, pp. 48-50. Plaintiffs complain that Defendants are attempting to show

**Exhibit 14, p.9**

obviousness by combining various previous devices and treating them as one. As stated by the Plaintiffs **[*23]** in their brief, "Defendants combined the previously discussed Wahl reference (issued in 1950) with the Parker patent (issued in 1960) and claim that a person of ordinary skill in the art would have looked at these two patents and independently arrived at the Rumph invention. If it were so obvious, why didn't anyone think of it for thirty years?" Plaintiffs' Reply Memorandum, pp. 16-17.

The fact that such items as shafts and non-sparking motors were used in prior art does not in and of itself denote obviousness. "That the claimed invention may employ known principles does not itself establish that the invention would have been obvious. Most inventions do." Lindemann Maschinenfabrik GmBh Co. v. American Hoist & Derrick, 730 F.2d 1452, 1462 (Fed.Cir. 1984). "It is impermissible to use the claimed invention as an instruction manual or 'template' to piece together the teachings of the prior art so that the claimed invention is rendered obvious." In re Fritch, 972 F.2d 1260, 1266 (Fed.Cir. 1992). "One cannot use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention." In re Fine, 837 F.2d 1071, 1075 (Fed.Cir. 1988). **[*24]**

Most importantly, Plaintiffs point out that the patent office itself considered similar combinations during prosecution of the 487 patent and found the Roberoller agitator patentable. In fact, the Keith and Wickoren patents, cited by the Defendants as Defendants' Exhibits 35 and 36, were specifically considered by the patent office prior to the PTO finding the Roberoller agitator patentable. see Plaintiffs' Exhibit 4 (Rumph patent), p. 1 ("references cited - U.S. Patent documents"). Further, the fact that no one else ever created the Roberoller agitator from this prior art, and the commercial success of the Roberoller agitator after it came on the market (see subsequent discussion of commercial success, infra), provide objective evidence of nonobviousness. Chisum v. Brewco Sales and Mfg, Inc., 726 F. Supp. 1499, 1509 (W. D.Ky. 1989).

Considering the material submitted together with the fact that the patent has a presumption of validity under 35 U.S.C. § 282, this Court finds that the Plaintiff has a reasonable likelihood of success on the issue of obviousness.

### iv) Does the patent fail to disclose all of the information  [*25]  critical to practicing the subject matter of the patent?

Defendants allege Robert Rumph fails in his patent to disclose the "best mode" known to him of practicing his invention (i.e., to make and use the invention). Defendants point out that 35 U.S.C. § 112 requires that a patent specification "shall set forth the best mode contemplated by the inventor of carrying out his invention." One of the primary purposes of this requirement is to prevent an inventor from obtaining"…the right to exclude others unless at the time of filing he has provided an adequate disclosure of the best mode known to him of carrying out his invention." Amgen, Inc. v. Chugai Pharmaceutical Co., 927 F.2d 1200, 1210 (Fed.Cir.), cert. denied, 502 U.S. 856, 112 S. Ct. 169, 116 L. Ed. 2d 132 (1991). The best mode requirement "prevent [s] inventors from having their cake   patent protection   and eating it to   the retention of the exclusive ability to make the invention due to inadequate disclosure." Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc., 20 U.S.P.Q.2D

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/maitlandopinion.htm (10 of 19)2/10/2006 4:58:34 PM

**Exhibit 14**, p.10

(BNA) 1791, 1793 (D.Minn. 1991). n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Defendants also claim that the 487 patent is "nonenabling" under 35 U.S.C. § 112. The "enablement" argument is similar to the "best mode" argument in that it consists of a claim by the Defendants that the 487 patent has not been presented in "such full, clear, concise, and exact terms as to enable any person skilled in the art…to make and use same,…" 35 U.S.C. § 112. As with the "best mode" argument, Defendants' "nonenabling" claim is predicated on the allegation that the 487 patent is not sufficiently detailed to enable one skilled in the art to practice the claims of the patent.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*26]**

Defendants claim that the 487 patent violates § 112 because the specifications do not state what kind of seals and bearings are used in the Roberoller agitator. Even though the specifications make reference to the seals and bearings and their use in the device, Defendants argue that these citations are not specific enough to enable one skilled in the art to read the specifications and know what types of seals and bearings are to be used. see generally, Defendants' Memorandum in Opposition, pp. 61-63. Defendants also assert that detailed information concerning the Roberoller agitator's seals and bearings was deliberately left out of the 487 patent in order to keep it as a trade secret. Id., pp. 63-64. Intentional concealment may render a patent unenforceable. see Consolidated Aluminum Corp. v. Foseco Int'l Limited, 910 F.2d 804, 809 (Fed.Cir. 1990).

Plaintiffs argue in response that the patent is proper and does describe the invention in enough detail for a person of ordinary skill in the art to make the device. Plaintiffs contend that Defendants' arguments for finding the 487 patent unenforceable under § 112 are based on mere speculation as to what **[*27]** a person of ordinary skill in the art would or would not understand. Id.

Defendants point to several examples where the Plaintiffs discuss the importance of seals and bearings to the operation of the agitator. see generally Exhibit 11, Ott Deposition, at 62 and 161-162; Exhibit 12, R. Rumph Deposition at 45. However, there does not seem to be anything unusual about Plaintiffs acknowledging the importance of seals and bearings in the operation of a machine. This acknowledgment does not mean that the seals and bearings are unique. Plaintiffs contend that the seals and bearings used in the Roberoller agitator are not unique, are purchased by Maitland on the open market from manufacturers, and that anyone can purchase these items from any number of manufacturers. see Plaintiffs' Reply Memorandum, pp. 27-29; Plaintiffs' Exhibit 16, pp. 2-5. Robert Rumph also testified at his deposition that he had used differing types of seals in his agitator motor, all of which were "off-the-shelf" seals that he obtained from manufacturers. Defendants' Exhibit 12, p. 45. Similarly, while Defendants claim that "there is no disclosure how to make the special bronze bearings" used **[*28]** in the Roberoller, Defendants fail to show why these bronze bearings are "special". Robert Rumph attests that the bearings used in the

**Exhibit 14,** p.11

original Roberoller agitator tanker were, as with the seals used in the original device, "off-the-shelf" bearings. Plaintiffs' Exhibit 16, P 9. Rumph also points out that even though off-the-shelf bearings are manufactured in bronze, he nevertheless specifically referenced bronze bearings in his patent application, as opposed to other types of bearings, because he believed this was the safest material to use since it does not produce a spark when rubbed against another metal. Id.

Defendants have failed to carry their argument for purposes of this preliminary injunction motion that information critical to "practicing the subject matter" of the patent was not disclosed. Nor is there sufficient evidence before this Court that Robert Rumph deliberately left out information concerning the seals and bearings in order to keep his invention a trade secret, as argued by the Defendants in their brief. Id, pp. 63-64. While Defendants quote Ralph Ott's statement that "the seals are proprietary design [and we] feel that the bearings are such proprietary **[*29]** design;" Defendants' Memorandum in Opposition, p. 63, citing Defendants' Exhibit 11, at 188; a review of the Ott deposition and Mr. Ott's statement in its entirety shows that he was actually referring to the overall proprietary design of the Roberoller agitator. Defendants' attorney then got Ott to state that he considered everything within that overall design to be proprietary. Id, pp. 187-188. Therefore, for the proposition cited by the Defendants, Ott's comments are taken out of context. Ott does not testify that there is any special design for the seals and bearings used in the Roberoller agitator motor. Id. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n6 Defendants do cite a reference in the deposition of Scott W. Rumph from the previous lawsuit between Maitland and Terra First (C/A No. 3:92-1973-19) wherein Scott Rumph complains about the Price/Terra First agitator using inferior bearings; see Defendants' Exhibit 3, p. 18; specifically, Scott Rumph's comment that Maitland or Robert Rumph had designed their own bearing and that "we will resist actually giving you the components of the bearing…." Id. However, there is no evidence that Plaintiffs have actually designed their own bearings. Robert Rumph states that later units of the Roberoller agitator used thicker bearings so they would last longer, all of which he notes were built after the patent application was filed. However, the bronze bearings used in the Roberoller agitator, disclosed in the application as bronze bearings, were obtained off-the-shelf. Plaintiffs' Exhibit 16, p. 3.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*30]**

As the burden at trial will be on the Defendants to show that the 487 patent does not disclose the "best mode" of practicing the invention, 35 U.S.C. § 282, the evidence presented to this Court with the motion for preliminary injunction establishes a reasonable likelihood of success on this issue by the Plaintiffs.

**2) Do the Plaintiffs have an adequate remedy at law, or will the Plaintiffs be irreparably harmed if the injunction does not issue?**

Having gone through each of the Defendants' arguments and concluded that the

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/maitlandopinion.htm (12 of 19)2/10/2006 4:38:54 PM

**Exhibit 14, p.12**

Plaintiffs have a reasonable likelihood of success on the merits, the Court must now turn to the question of whether the Plaintiffs have an adequate remedy at law, or whether the Plaintiffs will be irreparably harmed if the injunction does not issue in this case.

The Roberoller agitator is Plaintiff Maitland's only product and only source of revenue. n7 The Plaintiff Sumter purchases Roberoller agitators from Maitland and then leases them to customers in the trucking industry. Although Sumter is more diversified and has some other sources of income, it nevertheless contends that it is also being irreparably injured by Defendants' [*31] alleged infringement of the 487 patent. Plaintiffs have provided exhibits showing that prior to the Defendants' introduction of their agitator into the market, Plaintiffs had sold over seventy-five Roberoller agitator tankers. Transcript, p. 76; Plaintiffs' Brief, pp. 6-7; Plaintiffs' Exhibit 5. Sumter purchased forty-four of the Roberoller agitators for leasing, with the remainder having been sold directly by Maitland to transportation related companies. Transcript, p. 73. However, following the introduction of the Heel-Away agitator into the market in the third quarter of 1993, sales and leases of Roberoller agitators decreased dramatically, see Plaintiffs' Exhibit 5, Appendix 2; Plaintiffs' Exhibit 11, Appendix 1, while Defendants proceeded to sell a substantial number of units. see generally, Transcript, pp. 76, 111-112. Sumter is no longer buying Roberoller agitators from Maitland because of this drop in demand for the product. Plaintiffs' Exhibit 11, pp. 2-3; Plaintiffs' Exhibit 3, P 23. Sumter further claims that because of this loss of leasing business, it faces a serious risk of bankruptcy. Plaintiffs' Exhibit 11, PP 5 and 9.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Defendants try to distinguish between the tanker truck Roberoller and a Roberoller agitator being designed for railroad cars; however, there is no evidence before this Court that Maitland is presently commercially marketing a rail car Roberoller.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*32]**

Plaintiff Maitland asserts that if the Heel-Away agitator continues to be marketed and sold, that it (Maitland) will quite simply go out of business. Maitland's president, Robert Rumph, states in his affidavit that Maitland expects only one more sale in the second quarter, and perceives no more future sales at this time. Plaintiffs' Exhibit 5, at P 20. Plaintiffs also argue that any monetary damages received as a result of a trial cannot compensate for Plaintiffs being put out of business. Finally, Plaintiffs assert that their loss of market share, and the possibility that any accidents involving the Heel-Away agitator could adversely affect the market for, and even future approved use of, the Roberoller agitator, constitute further grounds for acquiring cessation of the use of the Heel-Away agitator. Plaintiffs' Brief, pp. 12, 15-16. Plaintiffs summarize their arguments for irreparable harm in their briefs by concluding "plaintiffs' businesses depend entirely upon the Roberoller and the 487 patent that protects it. Absent an injunction pending trial, Plaintiffs may not exist when trial arrives." Plaintiffs' Memorandum in Support, p. 13. see Plaintiffs' Exhibit 11, **[*33]** PP 5 and 10; Plaintiffs' Exhibit 5, PP 18-20.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/maitlandopinion.htm (13 of 19)2/10/2006 4:38:54 PM

**Exhibit 14, p.13**

Defendants dispute that Plaintiffs have shown irreparable injury. However, the only comment Defendants make concerning the Plaintiffs' financial health is contained in P 16 on p. 9 of their memorandum in opposition, wherein they state "the graphs and financial data provided by the Rumphs are misleading, inconclusive, and do not logically support their self-serving prediction of economic doom." At the hearing, defense counsel called into question the accuracy of Plaintiffs' Appendix 2 to Exhibit 5 by citing contradictory figures contained in Defendants' Exhibit 22. Defendants' Exhibit 22 (a copy of Maitland's 1992 monthly sales) shows that in calendar year 1992 Maitland invoiced $ 333,259.90, and received $ 424,462.91. Plaintiffs' bar graph (Appendix 2 to Plaintiffs' Exhibit 5) shows total sales in 1992 of $ 493,700.00. Defendants contend that the discrepancy in these figures shows that the financial information provided by the Plaintiffs is inaccurate and unreliable. However, Plaintiffs state that in 1992 Maitland exchanged five units for labor and space, and that these five like-kind exchanges were not reflected on Maitland's 1992 **[\*34]** sales sheets of cash transactions. Plaintiffs' Exhibit 35, P 3. Plaintiffs further note that, despite discovery and depositions having been conducted in this case, the Defendants have not documented any discrepancies in Maitland's 1993 or 1994 figures, which are the relevant years for purposes of the preliminary injunction motion.

Defendants also contend that even if the Plaintiffs are in dire financial condition, Plaintiffs have still not shown irreparable harm because the reason the Plaintiffs are not selling any of their Roberoller agitators is because they are failing to compete in the marketplace. Defendants' Counsel at the hearing stated that while Plaintiffs' Roberoller agitators maintained a consistent price of around $ 29,000 per unit, prices for the Heel-Away agitators ranged, depending on the models, anywhere from $ 5,000 to $ 20,000 per unit. These rough figures were not disputed by Plaintiffs at the hearing. Defendants contend that Plaintiffs are not suffering irreparable harm because all they need to do is lower their prices to compete with the Heel-Away agitator. However, Plaintiffs claim that Defendants are flooding the market with below market-price Heel-Away **[\*35]** agitators, effectively freezing the Roberoller out of the market.

Both sides have submitted numerous exhibits concerning per mile price averages and whether one side or the other could charge more or less and still make a profit. However, the issue is not strictly one of whether Defendants are selling below-cost units or whether Plaintiff could lower prices in order to better compete. The evidence shows that Plaintiffs enjoyed solid business sales (75 sales) before the Heel-Away agitators came on the market, and that since the Heel-Away agitators were introduced the Plaintiffs have virtually no business. Plaintiffs' Brief, pp. 6-11; Plaintiffs' Exhibits 3,5,11, 15-17. Even if Plaintiffs could reduce prices to better compete against the Heel-Away agitator, as Defendants assert, loss of market share has itself been recognized as an irreparable injury because it is so difficult to recover. see American Home Products Corp. v. Abbott Laboratories, 522 F. Supp. 1035, 1038 (S.D.N.Y. 1981); BF Goodrich FlightSystems, Inc. v. Insight Instruments Corp., 1992 U.S. Dist. LEXIS 12212, 22 U.S.P.Q.2D (BNA) 1832, 1844 (S.D.Ohio 1992), aff'd 991 F.2d 810 (Fed.Cir. 1993); **[\*36]** Jacobson v. Cox Paving Co., 1991 U.S. Dist. LEXIS 17787, 19 U.S.P.Q.2D (BNA) 1641, 1653-1654 (D.Ariz.), aff'd 949 F.2d 404 (Fed.Cir. 1991) (table); Henkel Corporation v. Coral, Inc. 754 F. Supp. 1280, 1322, (N.D.Ill. 1990), aff'd 945 F.2d 416 (Fed.Cir. 1991); Standard Havens Products, Inc. v. Gencor

**Exhibit 14, p.14**

Industries, Inc., 897 F.2d 511, 515 (Fed.Cir. 1990).

Defendants have offered several exhibits to support their argument that they are not taking away business from the Plaintiffs. These exhibits offer testimony from potential agitator customers that Heel-Away's agitators are not being purchased or used at the expense of the Roberoller agitators. see Defendants' Exhibit 38, PP 3-7, 10-12, 14-15; Defendants' Exhibit 40, P 2. However, Defendants' own exhibits show that the different price of the Heel-Away and Roberoller units is at least a factor in the Heel-Away units' ascendancy in the marketplace. see Defendants' Exhibit 38, PP 10-12. Plaintiffs have also provided their own exhibits to show that they have indeed lost customers directly because of the introduction of the Heel-Away agitator into the **[*37]** marketplace. Plaintiffs' Brief, p. 7; Plaintiffs' Exhibit 3, PP 17-19. Plaintiffs further contend that any and all sales or uses of the Heel-Away agitator constitute lost sales to the Plaintiffs, even if the Heel-Away agitator sales were to new customers never before serviced by the Plaintiffs. In this regard, Plaintiffs cite cases to the effect that in a two- supplier market, it may be presumed that but for an alleged infringer's presence, the infringer's sales would have been made by the owner of the patent. see E.G. Kaufman Co. v. Lantech Inc., 926 F.2d 1136, 1140-1141 (Fed.Cir. 1991); Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed.Cir. 1983); Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1326-1327 (Fed.Cir. 1987).

Finally, Plaintiffs argue that the Heel-Away agitator is not as well made as the Roberoller agitator. Consequently, Plaintiffs believe that any problems customers experience with the Heel-Away agitator will adversely affect future sales of their [Plaintiffs'] product, because customers will associate these problems with all agitators of this type (i.e., the Roberoller). Further, **[*38]** if major problems develop with the Heel-Away agitators, Plaintiffs are fearful that the U.S. Department of Transportation may prohibit or indefinitely suspend the use of all such agitators, including the Plaintiffs'. Plaintiffs' Exhibit 3, P 31.

Defendants claim there are no safety problems with the Heel-Away agitator. Defendants contend that the safety problems referred to by Joe Cousby in his affidavit (Plaintiffs' Exhibit 3) are not accurate. For example, Defendants have provided an affidavit stating that Cousby's claim that Mickie Humphries with ThermalKem contacted Cousby to get his company (WTI) to help ThermalKem deal with a spill by Terra First did not happen. see Defendants' Exhibit 41, (Declaration from Mickie Humphries). Defendants argue that Cousby's other statement, that the shaft of a Heel-Away unit broke during a trial run at Safety-Kleen, also refers to an incident that never happened. see Defendants' Exhibit 40, (Declaration of Monte Londot). Finally, Defendants argue that the Roberoller agitator has itself experienced problems in operation. see Defendants' Exhibit 42, (Declaration of Robert Hill).

However, in support of their arguments concerning **[*39]** the quality of Heel-Away's agitators, Plaintiffs point to five specific examples of problems with the Heel-Away agitator shown in the record, as follows:

> 1. Terra First and Heel-Away in interrogatory answers admit to at least five shaft failures in their tankers. (Plaintiffs' Exhibit 1, Interrogatory no. 11).

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/maitlandopinion.htm (15 of 19)2/10/2006 4:58:54 PM

**Exhibit 14**, p.15

2. One of [Defendants'] own affidavit witnesses admits a heel problem that Heel-Away and Terra First are "trying to correct" with a new agitator design (Defendants' Exhibit 40, P 4).

3. Terra First produced a letter from a customer (NuKem, related to ThermalKem) referring to numerous problem incidents with Defendants' agitators (Plaintiffs' Exhibit 21; "the problems with agitators continue…").

4. Terra First produced a letter form another customer (TXI) enumerating serious problems with Defendants' product. (Plaintiffs' Exhibit 22).

5. In three years and seventy-five units, Maitland's overall product design has remained constant. In eight months and twenty-one units, Terra First/ Heel-Away have significantly altered their design no less than five times. (Plaintiffs' Exhibit 5; Plaintiffs' Exhibit 1, Answer no. 1; and Plaintiffs' **[*40]** Exhibit 23). If Defendants' unit works so well, why fix it?

Plaintiffs' Reply Memorandum, p. 7.

Considering the evidence and exhibits as a whole, this Court reaches several conclusions. First, it is apparent that Maitland, and to a lesser extent Sumter, are in financial distress. It is also apparent from the figures provided that, although the Roberoller agitator enjoyed commercial success prior to the introduction of the Heel-Away agitator onto the market, it has enjoyed almost no sales since that point, while the Heel-Away has produced a solid sales record. Plaintiffs are correct in arguing that any monetary damages received as a result of a trial cannot compensate for Plaintiffs being put out of business. Plaintiffs have also submitted sufficient evidence to show a legitimate concern as to whether the future marketability of its agitator may be adversely effected by problems with the Heel-Away unit, although the Court believes sound marketing by the Plaintiffs could actually turn this issue into a positive sales tool for its own product.

However, the information submitted is inconclusive as to whether Plaintiffs' loss of sales may be, at least in part, a result of **[*41]** its own pricing structure. Defendants contend that Plaintiffs are not suffering irreparable harm because all Plaintiffs need to do is lower their prices to compete with the Heel-Away agitator. There is conflicting evidence in the Record as to what prices could be charged by the Plaintiff while still remaining in business. n8 Defense counsel asserted at the hearing that the Plaintiffs' cost per unit was only around $ 14,000, and therefore the price of the Roberoller could be lowered substantially from its current price of around $ 29,000 per unit while still allowing Plaintiffs a profit on their product. If Plaintiff could in fact effectively compete in the marketplace with the Heel-Away agitator by lowering the price for the Roberoller unit, then it may be possible for Plaintiffs to remain in business pending ultimate resolution of this case at trial, although Defendants should be aware that a lower profit margin could add to Plaintiffs' damages.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/maitlandopinion.htm (16 of 19)2/10/2006 4:58:34 PM

**Exhibit 14, p.16**

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 Cousby states that WTI must charge a rate of $ 3.85 per loaded Roberoller unit to make a profit because WTI pays Sumter 1/3 of its hauling revenue. Plaintiffs' Exhibit 3, P 22. However, Maitland also makes direct sales to transportation companies other than Sumter, and it is not clear why these sales could not be at a lower price. A lower sales price to Sumter would also allow WTI to in turn pay a lower royalty payment, thereby allowing WTI to lower its charges.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*42]**

### 3. Does the threatened injury to the Plaintiff outweigh the possible harm the injunction may inflict on the Defendants?

When considering this issue, the Court is mindful of the fact that production and sale of the Roberoller agitator is the Plaintiff Maitland's sole business. Conversely, the agitation services provided by Defendant Terra First account for only approximately 30 percent of its hauling revenue. Defendants' Exhibit 2, P 31. Therefore, while the granting of any preliminary injunction would undoubtedly result in financial harm to Terra First, unlike Maitland it has other products and revenue available for continued business use.

Finally, Plaintiffs note that in the event the Court grants a preliminary injunction, the Plaintiffs will be required to post a bond indemnifying any possible losses of the Defendants. While Defendants contend the Defendant Heel-Away, Inc. would be put out of business if an injunction were to issue (see Defendants' Exhibit 44, P 8), Defendants not only have the security of a bond, something the Plaintiffs do not have, but the sales evidence presented demonstrates that the Defendants would be able to resume business in the event **[*43]** the Defendants are successful in this lawsuit much easier than would the Plaintiff Maitland, which is enjoying virtually no sales in the current market. Further, Plaintiffs have submitted credible evidence that the Defendant Heel-Away is in reality an alter ego of the Defendant Terra First, and would therefore be cushioned from any adverse financial impact as a result of an injunction to a much greater degree than would Maitland if an injunction does not issue. Plaintiffs' Exhibits 31 and 32, Plaintiffs' Reply Memorandum, at pp. 30-31; see also Transcript, pp. 18-21 [arguments on jurisdiction] and cited documents.

Therefore, the threatened injury to the Plaintiff outweighs the threatened harm an injunction may inflict on the Defendants.

### 4. Will the granting of a preliminary injunction disserve the public interest?

The final issue to be addressed by this Court is whether the public interest favors denial of a preliminary injunction in this case. Defendants' main arguments in this regard rest solely on their previously asserted arguments that the 487 patent is invalid. see Defendants' Memorandum in Opposition, pp. 73-74. Having already considered and rejected **[*44]** these arguments, the undersigned does not find that the public interest would be disserved by the granting of the injunction. see also B.F.

**Exhibit 14, p.17**

Goodrich Flight Systems v. Insight Instruments, supra, at 1844. [Price differences alone are not sufficient to preclude preliminary injunction].

## Conclusion

Plaintiffs have filed a motion for preliminary injunction seeking to enjoin any further use and/or sale of Defendants' alleged infringing Heel-Away agitators pending resolution of this lawsuit. As discussed herein, supra, this Court has determined that the Plaintiff has a reasonable likelihood of success on the merits in this case, that the threatened injury to the Plaintiff outweighs the threatened harm any injunction may inflict on the Defendants, and that the granting of a preliminary injunction will not disserve the public interest.

With regard to the fourth factor to be considered, this Court has determined based on the evidence and arguments submitted that the Plaintiffs, particularly the Plaintiff Maitland, are in danger of bankruptcy and that in the event they are forced out of business any monetary damages received as a result of a trial would not adequately compensate **[*45]** the Plaintiffs. This Court has also found that the evidence shows Plaintiffs' market share for sales of its agitator has virtually disappeared, while Defendants have successfully pursued sales of its less expensive product. A United States District Court can find irreparable harm based on loss of market share, especially when considered in conjunction with such other evidence as has been presented here. see American Home Products Corp. v. Abbott Laboratories, supra; BF Goodrich FlightSystems, Inc. v. Insight Instruments Corp., supra; Jacobson v. Cox Paving Co., supra; Henkel Corporation v. Coral, Inc., supra; Standard Havens Products, Inc. v. Gencor Industries, Inc., supra. Therefore, the undersigned believes a finding of irreparable harm is justified in this case on consideration of all the evidence and the equities involved, see 35 U.S.C. § 283; see also Augat, Inc. v. John Mezzalingua Assocs., Inc., supra, at 508, and Plaintiffs' request for a preliminary injunction should be **granted**.

In the event the District Court declines to follow the undersigned's recommendation **[*46]** as to irreparable harm based on market share and the other cited factors, n9 it may want to further consider the remaining unresolved issue concerning irreparable harm, that of market price. The undersigned has previously concluded that the evidence submitted is inconclusive on the issue of whether or not Plaintiffs could adjust or mitigate their dire financial situation (that of virtually no business being conducted) by lowering their prices to more effectively compete in the marketplace, or whether such an option is truly not available to them. Given the other findings of this Court as set forth herein, in the event the Plaintiffs submit sufficient and credible financial information to show that their current pricing structure is based on realistic market and business concerns, and that they are not able to reduce the price of their product to such an extent as to allow the Roberoller to effectively compete with the Heel-Away agitator, then at that point Plaintiffs will have shown irreparable harm on the only unresolved issue, and the motion should be granted, with a requirement that an adequate bond be posted by the Plaintiffs pending resolution of this case. see 35 U.S.C. § 283 **[*47]** [A United States District Court may consider the principals of equity when deciding a preliminary injunction motion]. see also Pittway Corp. v. Black and Decker, Inc., supra, at 593; Augat, Inc. v. John

**Exhibit 14**, p.18

Mezzalingua Assocs., Inc., supra, at 508. Whether additional evidence on this issue should be allowed at this time is within the sole discretion of the United States District Judge.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 see Cordis Corporation v. Medtronic, Inc., 835 F.2d 859 (Fed.Cir. 1987) and Nutrition 21 v. Thorne Research, Inc., 1991 U.S. App. LEXIS 11129 (Fed.Cir. 1991).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Bristow Marchant

United States Magistrate Judge

Columbia, South Carolina

August 24, 1994

---

Service: **Get by LEXSEE®**
Citation: **1994 U.S. Dist. LEXIS 21597**
View: Full
Date/Time: Friday, February 10, 2006 - 4:37 PM EST

---

* Signal Legend:

🔴 - Warning: Negative treatment is indicated

🟧Q - Questioned: Validity questioned by citing refs

⚠️ - Caution: Possible negative treatment

➕ - Positive treatment is indicated

🅐 - Citing Refs. With Analysis Available

🅘 - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

---



About LexisNexis  |  Terms & Conditions

Copyright ©  2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/maitlandopinion.htm (19 of 19)2/10/2006 4:38:54 PM

**Exhibit 14, p.19**