BidZirk LLC, et al v. Smith                                                                                    Doc. 6 Att. 16
Get a Document - by Citation - 550 F.2d 189
6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-17    Page 1 of 13

*550 F.2d 189, \*; 1977 U.S. App. LEXIS 14701, \*\*;*
*1977-1 Trade Cas. (CCH) P61,292*

Blackwelder Furniture Company Of Statesville, Inc., Appellant, v. Seilig Manufacturing Company, Inc., Appellee

No. 76-2288

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

550 F.2d 189; 1977 U.S. App. LEXIS 14701; 1977-1 Trade Cas. (CCH) P61,292

December 6, 1976, Argued
February 16, 1977, Decided

## SUBSEQUENT HISTORY: [\*\*1]

As Amended March 28, 1977.

## PRIOR HISTORY:

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Woodrow W. Jones, Chief District Judge.

**DISPOSITION:** REVERSED and REMANDED.

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Appellant furniture company sought review of an order of the United States District Court for the Western District of North Carolina which refused to issue a preliminary injunction for a complaint for violations of federal antitrust statutes.

**OVERVIEW:** Appellant was a retail furniture company which brought an action against appellee wholesaler and asserted that it violated the Sherman Act by combining to fix prices and oust an appellant from the competitive market. The court indicated that the trial court's finding that appellant would suffer no irreparable harm, on the basis that any injury to it would be readily calculable and collectible, was clearly erroneous. The court held that appellant made a sufficiently strong showing that it was likely to prevail on the merits in light of the disparity of probable harm as between the appellant and appellee and the location of the public interest. The court held that since the issues were grave, and the balance of hardship substantially favored appellant, the denial of relief in the district court was reversed, and the case was remanded with instructions that an appropriate preliminary injunction was to be issued.

**OUTCOME:** The court reversed the district court's judgment and remanded the case with instructions to grant a preliminary injunction.

**CORE TERMS:** public interest, furniture, interlocutory, probable, preliminary injunction, injunctive relief, injunction, preliminary relief, irreparable injury, balance of hardship, irreparable harm, final decree, balance-of-hardship, dealer, grave, customers, conceive, likelihood of success, retailer, probability of success, business relationship, temporary injunction, findings of fact, status quo, discretionary, incalculable, economically, collectible, calculable, discounter

## LexisNexis(R) Headnotes

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions
**HN1** In ruling on a motion for a preliminary injunction, a court considers a fourfold equitable rule of thumb: (1) Has the petitioner made a strong showing that it is likely to prevail upon the merits? (2) Has the petitioner shown that without such relief it will suffer irreparable injury? (3) Would the issuance of the injunction substantially harm other interested parties? (4) Wherein lies the public interest?

Civil Procedure > Appeals > Standards of Review > Standards Generally
**HN2** A judge's discretion is not boundless and must be exercised within the applicable rules of law or equity. An appellate court's review of a lower court's application of the law is not limited by the same "clearly erroneous" rule which restricts the appellate court's review of the lower court's findings of fact under Fed. R. Civ. P. 52(a).

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions
**HN3** It is sufficient to grant a Fed. R. Civ. P. 65(a) motion for preliminary injunction if the court is satisfied that there is a probable right and a probable danger, and that the right may be defeated, unless the injunction is issued, and considerable weight is given to the need of protection to the plaintiff as contrasted with the probable injury to the defendant.

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions
**HN4** Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to the opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted.

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions
**HN5** The balance-of-hardship test correctly emphasizes that, where serious issues are before the court, it is a sound idea to maintain the status quo ante litem, provided that it can be done without imposing too excessive an interim burden upon the defendant, for otherwise effective relief may become impossible.

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (2 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.2

HN6 The controlling reason for the existence of the judicial power to issue a temporary injunction is that the court may thereby prevent such a change in the relations and conditions of persons and property as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated.

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

HN7 The first step in a Fed. R. Civ. P. 65(a) situation is for the court to balance the likelihood of irreparable harm to the plaintiff against the likelihood of harm to the defendant; and if a decided imbalance of hardship should appear in plaintiff's favor, then the likelihood-of-success test is displaced by the following formulation: It will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. The importance of probability of success increases as the probability of irreparable injury diminishes, and where the latter may be characterized as simply "possible," the former can be decisive. Even so, it remains merely one strong factor to be weighed alongside both the likely harm to the defendant and the public interest.

**COUNSEL:** George L. Little, Jr. and Norwood Robinson (Douglas G. Eisele, Hudson, Petree, Stockton, Stockton & Robinson, Raymer, Lewis, Eisele and Patterson on brief), for Appellant.

J. Melville Broughton, Jr. and Don G. Nicholson (Broughton, McConnell & Boxley on brief), for Appellee.

**JUDGES:** Craven, Butzner and Russell, Circuit Judges.

**OPINIONBY:** CRAVEN

**OPINION:** [*191] CRAVEN, Circuit Judge:

This is an appeal by Blackwelder Furniture Company of Statesville, Inc., from the refusal of the district court to issue a preliminary [*192] injunction under Rule 65(a). Fed. R. Civ. P. 65(a). At the same time we heard the appeal, we considered a Rule 8 motion and granted a temporary injunction pending our decision on the appeal. Fed. R. App. P. 8. Blackwelder's complaint seeks treble damages and injunctive relief under the Clayton Act, 15 U.S.C. §§ 15 & 16, on the theory that a decision by Seilig Manufacturing Company, Inc., to terminate Blackwelder [**2] as an authorized dealer violated the federal antitrust statutes. For reasons to be stated, we think the district court applied incorrect principles in undertaking to exercise its discretion to grant or deny a preliminary injunction and further that the application of correct principles requires that a preliminary injunction issue, restoring Blackwelder to its status as a Seilig dealer pending trial on the merits.

I.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (3 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.3

Blackwelder contends that Seilig has violated Section 1 of the Sherman Act by combining to fix prices, rig retail territories, and oust a discounter from the competitive market. 15 U.S.C. § 1. From affidavits and certain agreed facts, it seems fair to say Blackwelder will be able to offer competent evidence at trial tending to show the following: n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The district court opinion recites the allegations of the pleadings, affidavits and counter-affidavits but does not resolve conflicts. We observe sympathetically that Rules 52(a) and 65(d) require findings of fact, albeit tentative. We agree with Judge Friendly that finding facts from conflicting affidavits is not always possible and endorse the Second Circuit suggestion that a perplexed district judge may in his discretion require live testimony "where everything turns on what happened and that is in sharp dispute." *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1204 (2 Cir. 1970). Here, both parties willingly joined in the battle of affidavits.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*\*3]**

Blackwelder was a successful distributor of Seilig furniture for over a decade; its purchases of Seilig furniture accounted for about 35% of its total purchases of "contemporary upholstered furniture"; Seilig was one of its top three lines of contemporary upholstered furniture; from January to June 1976, it ordered more than $52,000 worth of furniture from Seilig. Part of Blackwelder's sales were to mail-order customers in the Washington, D.C. area, who took advantage of Blackwelder's discount prices, ranging up to 30% below Seilig's suggested retail prices. Such potential customers often visit the showrooms of a local D.C. retailer, select a piece of furniture, and then place their order with Blackwelder -- to the great displeasure of the local retailer. Blackwelder alleges that as a result Seymour Woodnick of W. J. Sloane's, a large D.C. retailer of Seilig furniture, threatened to see to it that Blackwelder lose its Seilig line unless it quit the D.C. market. While Woodnick denies the threat, he admits his sales personnel were greatly aggravated over time wasted on Blackwelder customers.

In April of 1974 Seilig's regional sales director, Jim Robinson, on the authority of Jerrold **[\*\*4]** Wexler, Executive Vice President of Seilig, warned Blackwelder that because of pressure from D.C. dealers like Sloane's it would be forced to terminate Blackwelder's dealership unless it stopped sales in the D.C. area. Robinson denies the threat, but he admitted to having asked Blackwelder to reduce the customary number of its salesmen at the Seilig space at the upcoming High Point Furniture market lest they "irritate" Seilig salesmen from D.C. The threats are said to have been repeated.

On May 4, 1976, Seilig wrote Blackwelder that it would be terminated on June 1 because "it occasionally becomes necessary to make certain changes in a company's distribution policy in order to better develop a particular area." No other or more concrete reason was given. Despite Seilig's contention that it acted unilaterally and that some 300 other dealers were terminated at the same time, the names of those

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (4 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.4

dealers and a comparison of their respective sales records with Blackwelder's were not furnished the court.

The district court, in denying Blackwelder's motion for interlocutory relief, relied **[\*193]** on the **[\*\*5]** HN1 fourfold equitable rule of thumb set forth in *Airport Comm. of Forsyth Co., N.C. v. CAB*, 296 F.2d 95 (4th Cir. 1961):

> 1) Has the petitioner made a *strong showing* that it is likely to prevail upon the merits?
>
> 2) Has the petitioner shown that without such relief it will suffer irreparable injury?
>
> 3) Would the issuance of the injunction substantially harm other interested parties?
>
> 4) Wherein lies the public interest?

296 F.2d at 96 (emphasis added). *Accord, First-Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 483 (4th Cir. 1970). It reasoned that a single adverse determination on any of the four questions would be fatal to the movant. The court found first that "neither side" had made a "strong showing" that Seilig's actions were either collaborative or unilateral for purposes of the Section 1 requirement of a contract, combination or conspiracy. 15 U.S.C. § 1. For this reason alone the court reasoned that relief should be denied; nonetheless, it also found that denial of interlocutory relief would occasion no irreparable harm to Blackwelder -- since its damages, if any, **[\*\*6]** would be readily calculable and collectible. The court felt unable to decide the remaining two factors, *viz.*, the public interest and the potential harm to the defendant, but did note that "it is hard to conceive" how Seilig could be economically damaged by continuing its business relationship with Blackwelder.

II.

When the grant or denial of interim injunctive relief is reviewed, it is simplistic to say or imply, as we sometimes do, that it will be set aside only if an abuse of discretion can be shown. *Singleton v. Anson Co. Bd. of Education*, 387 F.2d 349, 351 (4th Cir. 1967); *Meiselman v. Paramount Film Distributing Corp.*, 180 F.2d 94, 97 (4th Cir. 1950). For there is, of course, the possibility that the court below has either failed to exercise its discretion in some respect, *compare Paine v. St. Paul Union Stockyards Co.*, 35 F.2d 624 (8th Cir. 1929), *with Mattox v. United States*, 146 U.S. 140, 36 L. Ed. 917, 13 S. Ct. 50 (1892), or else exercised it counter to established equitable principles. *Prendergast v. N. Y. Tel. Co.*, 262 U.S. 43, 50-51, 67 L. Ed. 853, 43 S. Ct. 466 (1923); **[\*\*7]** *Security Metal Products Co. v. Kawneer Co.*, 14 F.2d 569, 572-573 (8th Cir. 1926). HN2 A judge's discretion is not boundless and must be exercised

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (5 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.5

within the applicable rules of law or equity. *Peterson v. John Hancock Mutual Life Insurance Co.*, 116 F.2d 148, 151 (8th Cir. 1971). And our review of the lower court's application of the law is not limited by the same "clearly erroneous" rule which restricts our review of its findings of fact under Rule 52(a). Fed. R. Civ. P. 52(a). *Delaware & Hudson Ry. Co. v. United Transp. Union*, 146 U.S. App. D.C. 142, 450 F.2d 603, 620 (1971).

We reverse the district court because it failed to apply the settled principles which govern consideration of a Rule 65(a) motion in this circuit, as set forth in *Sinclair Refining Co. v. Midland Oil Co.*, 55 F.2d 42 (4th Cir. 1932):

> HN3 It is sufficient [to grant the motion] if the court is satisfied that there is a probable right and a probable **[**8]** danger, and that the right may be defeated, unless the injunction is issued, *and considerable weight is given to the need of protection to the plaintiff as contrasted with the probable injury to the defendant.*

55 F.2d at 45 (emphasis added). *Accord, West Virginia Conservancy v. Island Creek Coal Co.*, 441 F.2d 232, 235 (4th Cir. 1971). The district court's reliance on the different standards of *Airport Comm'n of Forsyth Co.* and *Camp, see* p. 193 *supra*, was misplaced -- though understandably so. Even the treatise writers have mistakenly equated the stringent standards of those cases with the more flexible rule of *Sinclair Refining, supra. See, e.g.*, 7 Moore's Federal Practice, P 65.04[1] at 65-39 n.7 (1975). But there is a difference. The cases relied upon by the district court deal with the question of the issuance *vel non* of an *appellate* stay **[*194]** pending review of an administrative order or a trial court decision that dealt with the merits of a controversy. n2 Hence they propound an *appellate* standard -- and not one for use in the trial courts.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 While the appellate origins of the fourfold rule have been noted, the proper implications thereof have not. *See* 11 Wright & Miller, Federal Practice and Procedure, § 2948 at 430 (1973).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[**9]**

In cases like *Airport* and *Camp* a judicial or quasi-judicial body has already passed upon the merits of a question and typically has also denied a discretionary stay of its decision; only then is the motion made for an appellate stay. For a stay to issue under such circumstances, we adopted in *Airport Comm'n of Forsyth, supra*, 296 F.2d at 96, the requirement of *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 104 U.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (6 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.6

S. App. D.C. 106, 259 F.2d 921 (1958), that a "*strong* showing" of probable success on appeal be made, for otherwise there is "no justification for the [appellate] court's intrusion into the ordinary processes of administrative and judicial review." 259 F.2d at 925.

Likewise, *Long v. Robinson*, 432 F.2d 977 (4 Cir. 1970), another "strong showing" case from this circuit, involved a stay-pending-appeal situation, in which the district court had *fully considered the merits of the controversy*, rendered its final decree, and refused the request for an interim stay. Judge Winter explained in *Long* that the petitioner's burden in seeking injunctive relief is substantially greater **[\*\*10]** on appeal. 432 F.2d at 979. *See, e.g., Railway Express Agency, Inc. v. United States*, 82 S. Ct. 466, 7 L. Ed. 2d 432, 434 (1962) (Harlan, J.) (a "strong showing . . . must be made to justify reversal of the District Court's discretionary action"); *Breswick & Co. v. United States*, 75 S. Ct. 912, 100 L. Ed. 1510, 1513 & n.1 (1955); *Magnum Import Co. v. Coty*, 262 U.S. 159, 164, 67 L. Ed. 922, 43 S. Ct. 531 (1923). And this is especially so where the lower court has adversely determined the merits of the controversy.

Therefore, the district court erred in guiding itself by an appellate standard inappropriate at the trial level.

III.

A.

The correct trial court standard in this circuit, as declared in *Sinclair Refining, supra*, was doubtless derived from *Ohio Oil Co. v. Conway*, 279 U.S. 813, 73 L. Ed. 972, 49 S. Ct. 256 (1929), where the Supreme Court laid down the rule "generally to be applied" by trial courts in the exercise of their discretion in Rule 65(a) situations. *Alabama v. United States*, 279 U.S. 229, 231, 73 L. Ed. 675, 49 S. Ct. 266 (1929). That rule **[\*\*11]** is the balance-of-hardship test as it was then formulated by the Eighth Circuit, *see, e.g., Love v. Atchison, T. & S. F. Ry. Co.*, 185 F. 321, 331-332 (1911):

> HN4 Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to the opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, *the injunction usually will be granted*.

*Ohio Oil Co. v. Conway, supra*, 279 U.S. at 815 (emphasis added).

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (7 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.7

Like the present case, *Conway* was an appeal from the denial of a preliminary injunction. And there, too, the original application was submitted upon *ex parte* affidavits which, by creating "a real dispute over material questions of fact," rendered impossible any accurate determination by the trial court of the merits of the controversy. 279 U.S. at 814. Nonetheless, **[\*\*12]** because a "grave" question was raised -- and the balance of hardship decisively favored the movant -- the Court concluded that the petition for interlocutory order should have been granted and reversed the lower court.

HN5 The balance-of-hardship test correctly emphasizes that, where *serious* issues are **[\*195]** before the court, it is a sound idea to maintain the *status quo ante litem*, provided that it can be done without imposing too excessive an interim burden upon the defendant, *Munoz v. Porto Rico Light & Power Co.*, 83 F.2d 262, 269 (1st Cir. 1936), *Benson Hotel Corp. v. Woods*, 168 F.2d 694, 696 (8th Cir. 1948); *Pratt v. Stout*, 85 F.2d 172, 177 (8th Cir. 1936); *Sinclair Refining Co. v. Midland Oil Co.*, supra, 55 F.2d at 45 (*citing Blount v. Societe Anonyme Du Filtre*, 53 F. 98, 101 (6th Cir. 1892)), for otherwise effective relief may become impossible:

> HN6 The controlling reason for the existence **[\*\*13]** of the judicial power to issue a temporary injunction is that the court may thereby prevent such a change in the relations and conditions of persons and property as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated.

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 743 n.10 (2d Cir. 1953) (*quoting Love v. Atchison, T. & S. F. Ry. Co., supra*, 185 F. at 332).

The district court below erred in holding that plaintiff must first show "likelihood of success" in order to be entitled to preliminary relief. Instead, HN7 the first step in a Rule 65(a) situation is for the court to balance the "likelihood" of irreparable harm to the plaintiff against the "likelihood" of harm to the defendant; and if a decided imbalance of hardship should appear in plaintiff's favor, then the likelihood-of-success test is displaced by Judge Jerome Frank's famous formulation:

> It will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. **[\*\*14]**

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (8 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.8

*Hamilton Watch Co. v. Benrus Watch Co., supra*, 206 F.2d at 740, 743; *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970). The importance of probability of success increases as the probability of irreparable injury diminishes, *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 923 (3d Cir. 1974); *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974); *District 50, United Mine Workers v. United Mine Workers*, 134 U.S. App. D.C. 34, 412 F.2d 165, 168 (1969); *Packard Instrument Co. v. ANS, Inc.*, 416 F.2d 943 (2d Cir. 1969); and where the latter may be characterized as simply "possible," the former can be decisive. Even so, it remains merely one "strong factor" to be weighed alongside both the likely harm to the defendant and the public interest. *Dino De Laurentiis Cinematografica, SpA. v. D-150, Inc.*, 366 F.2d 373, 375 (2d Cir. 1966) (*quoting* 3 Barron & Holtzoff, Federal Practice [**15] & Procedure § 1433 at 493 (1958)).

B.

We have expressly reaffirmed our *Sinclair Refining* rule in *West Virginia Conservancy v. Island Creek Coal Co.*, 441 F.2d 232 (1971). *See also Phillips v. Crown Petroleum Corp.*, 376 F. Supp. 1250, 1253 (D. Md. 1973). Finding that the balance of hardship favored the plaintiff, the *Island Creek* court readily upheld a grant of interlocutory relief. n3 Judge Winter treated the "likelihood of success" factor in this fashion:

> While we express no opinion on [the merits of the issues], we can say that their resolution is not immediately apparent. That is enough to say that Conservancy [*196] has not embarked on frivolous litigation, *and thus interlocutory relief is not improper if Conservancy can also show a need for protection which outweighs any probable injury to* [*the defendant*].

441 F.2d at 235 (emphasis added).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 By contrast, in *Davis v. Crown Central Petroleum Corp.*, 483 F.2d 1014 (4th Cir. 1973) (an order granting preliminary relief was vacated), the court found that the balance of hardship stood at equipoise: "the plight of the defendant was not substantially different from that of the plaintiffs." 483 F.2d at 1016. It is in just such a case that the probability of success begins to assume real significance, *see* p. 195 *supra*; for if the factors of harm to the parties cancel each other, then "greater significance must be placed upon the likelihood that each party will ultimately succeed upon the merits." *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 924 (3d Cir. 1974). For that reason the Davis court took notice

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (9 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.9

that North Carolina's Statute of Frauds appeared to be a complete bar to the action and overturned the grant of relief. 483 F.2d at 1016.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*\*16]**

Thus in this circuit the trial court standard for interlocutory injunctive relief is the balance-of-hardship test. Whenever a district court has before it a Rule 65(a) motion, although it may properly consider the four general factors enumerated in *Airport, see* p. 193 *supra*, it should give them the relative emphasis required by the *Sinclair* rule: The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success. Always, of course, the public interest should be considered.

Here the district court erroneously required *a strong showing of success* as a prerequisite to relief.

IV.

A.

The district court also found that interlocutory relief was barred by plaintiff's failure to show that without it it would be irreparably injured. But that requirement was also taken from the list of essentially independent factors that an *appellate* court ought to consider before staying an order entered after consideration of the merits **[\*\*17]** below. Its emphasis is that of deference to a decision involving discretion, as well as greater attention to the facts than is possible on appeal. *Airport Comm'n of Forsyth Co. v. CAB*, see p. 192 *supra*. Insofar as a trial court is concerned, the requirement of irreparable harm must also be evaluated within the basic context of the balance-of-hardship test.

Therefore, while "irreparability" may suggest some minimum of probable injury which is required to get the court's attention, the more important question is the *relative* quantum and quality of plaintiff's likely harm. The decision to grant preliminary relief cannot be intelligently made unless the trial court knows how much the precaution will cost the defendant. If it costs very little, the trial court should be more apt to decide that the threatened injury is "irreparable" for purposes of interlocutory relief. In addition, as we have noted above, even a "possible" irreparable injury has been held to suffice if there is strong probability of success on the merits.

The decision to grant or deny a preliminary injunction depends upon a "flexible interplay" among all the factors considered. *Cf. Packard Instrument Co. v. ANS, Inc., supra*, 416 F.2d at 945. **[\*\*18]** The district court erred in treating the four *Airport* factors as a defense in depth -- to be overcome, each and every one, before entitlement to preliminary relief should be decreed. Its error was compounded by failure to decide the last two questions in the *Airport* test, for all four are intertwined and each affects in degree all the others. The failure to find that Seilig would not be harmed -- although remarking that any such harm is hard to conceive -- inevitably

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (10 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.10

increased Blackwelder's burden of persuasion on the other questions -- especially as to what degree it had to show irreparable injury. We agree with the district court's intimation, short of a finding, that the possible harm to Seilig, in light of the history of past, profitable dealings between the parties, is negligible. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 650 (5th Cir. 1962). Moreover, what little risk might be posed to Seilig is easily indemnifiable by a bond. *See Ohio Oil Co. v. Conway, supra*, 279 U.S. at 81; *cf.* 15 U.S.C. § 26.

B.

We view the trial court's finding that Blackwelder will suffer no irreparable **[\*\*19]** harm (on the basis that any injury to it would be readily calculable and collectible) as clearly erroneous. Blackwelder's past profits on Seilig furniture afford a **[\*197]** plausible basis for calculating some of the damages from any wrongful termination. But not all. Word-of-mouth grumbling of customers can convert Blackwelder's inability to honor Seilig orders into a reputation for general unreliability as a merchant. Losing Seilig can set back Blackwelder's efforts to become known as a "full-line" furniture discounter. *Cf. Bergen Drug Co. v. Parke, Davis & Co.*, 307 F.2d 725 (3d Cir. 1962). The harm posed to Blackwelder's general goodwill by its inability to fill outstanding and accumulating orders in excess of $15,000 for furniture listed in its catalogues is incalculable -- not incalculably great or small, just incalculable. *See* Note, *Developments in the Law -- Injunctions*, 78 Harv. L. Rev. 994, 1002-1003 (1965); *cf. Semmes Motors, Inc. v. Ford Motor Co., supra*, 429 F.2d 1197. And, as Learned Hand observed, irreparability of harm includes the "impossibility of ascertaining with any accuracy the extent of the loss": **[\*\*20]**

> That has always been included in its meaning; and I cannot see how the plaintiff will ever be able to prove what sales the defendant's competition will make it lose, *to say nothing of the indirect, though at times far-reaching, effects upon its good will.* . . .

*Foundry Servs., Inc. v. Beneflux Corp.*, 206 F.2d 214, 216 (2d Cir. 1952) (Hand, J., concurring) (emphasis added).

V.

The last of the *Airport* criteria is: "Wherein lies the public interest." One reason for the more lenient interlocutory relief standards, as opposed to those governing motions for stays pending appeal, is the "public interest" in preserving the *status quo ante litem* until the merits of a *serious* controversy can be fully considered by a trial court. The right to a stay after the merits have once been unfavorably determined is quite a different thing. That basic "public interest" is further enhanced where, as here, the private controversy may possibly vindicate public policy. Private actions are an important means of enforcing federal antitrust policies. *Bergen Drug Co. v. Parke,*

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (11 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.11

*Davis & Co., supra*, 307 F.2d at 727-728.

The presence of a federal **[**21]** statute both prohibiting the alleged acts of the defendant and supplying the gravamen of the complaint aligns Blackwelder, if only provisionally, on the side of the public interest and constitutes added weight in favor of precautionary relief. *West Virginia Conservancy v. Island Creek Coal Co., supra*, 441 F.2d at 236; *Vanadium Corp. of America v. Susquehanna*, 203 F. Supp. 686, 696 (D. Del. 1962); *Yakus v. United States*, 321 U.S. 414, 88 L. Ed. 834, 64 S. Ct. 660 (1944). This is so especially where, as here, the statute expressly authorizes interlocutory injunctive relief. 15 U.S.C. § 26. *See* 11 Wright & Miller, Federal Practice & Procedure, § 2948 at 462 (1973); *United States v. Nutrition Serv., Inc.*, 227 F. Supp. 375 (W.D. Pa. 1964), *aff'd per curiam*, 347 F.2d 233 (3d Cir. 1965).

VI.

Since decision below was entered upon conflicting affidavits, and some agreed facts, our ordinary deference to the district judge's findings of fact is less appropriate. *Aetna Cas. & Sur. Co. v. Hunt*, 486 F.2d 81, 84 (10th Cir. 1973); *Shumaker v. Groboski Industries, Inc.*, 352 F.2d 837, 840 (7th Cir. 1965). **[**22]**

We have already noted our agreement with the district judge's statement that "it is hard to conceive how the defendant can be economically damaged by a continued business relationship with the plaintiff." We also think that what we have said hereinbefore strongly suggests that Blackwelder has sufficiently shown that without preliminary relief it will likely be irreparably injured.

Blackwelder has pleaded a prima facie case. *Cf.* 11 Wright & Miller, Federal Practice & Procedure § 2948 at 452 (1973). Moreover, the references we have made hereinbefore to the admissions of Seilig tend at least to partially support the allegations of the complaint. And it is clear that the public interest lies, as we have already said, in vindication of the antitrust laws.

**[*198]** It appears to us that the plaintiff has made a sufficiently strong showing that it is likely to prevail on the merits in light of the disparity of probable harm as between the plaintiff and the defendant and the location of the public interest. Since the issues are grave, and the balance of hardship substantially favors Blackwelder, the denial of relief in the district court will be reversed, and the case is remanded **[**23]** with instructions that an appropriate preliminary injunction issue. On remand, the district court should consider whether Blackwelder should be required to post a bond conditioned upon: (1) indemnification of Seilig against harm if decision on the merits goes against Blackwelder, *cf.* 15 U.S.C. § 26, and (2) Blackwelder's expeditiously proceeding to prosecute its suit to a final decree. *See Ohio Oil Co. v. Conway, supra*, 279 U.S. at 81.

REVERSED AND REMANDED.

Service: **Get by LEXSEE®**
Citation: **550 F.2d 189**

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (12 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.12

View: Full
Date/Time: Friday, February 10, 2006 - 4:41 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/blackwelderopinion.htm (13 of 13)2/10/2006 4:41:59 PM

Exhibit 15, p.13