*43 F.3d 922, *; 1995 U.S. App. LEXIS 416, **;*
*33 U.S.P.Q.2D (BNA) 1481; 31 Fed. R. Serv. 3d (Callaghan) 1082*

LONE STAR STEAKHOUSE & SALOON, INCORPORATED; MAX SHAYNE, INCORPORATED, Plaintiffs-Appellees, v. ALPHA OF VIRGINIA, INCORPORATED, d/b/a Lone Star Grill, Defendant-Appellant.

No. 93-2076

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

43 F.3d 922; 1995 U.S. App. LEXIS 416; 33 U.S.P.Q.2D (BNA) 1481; 31 Fed. R. Serv. 3d (Callaghan) 1082

May 13, 1994, Argued
January 11, 1995, Decided

**PRIOR HISTORY:  [**1]** Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-93-327-A). Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., 1993 U.S. Dist. LEXIS 21459 (E.D. Va., July 23, 1993)

**DISPOSITION:** Affirmed in part, reversed in part and remanded.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant appealed from a judgment of the United States District Court for the Eastern District of Virginia that granted summary judgment and a permanent injunction in favor of plaintiffs, a steakhouse and a New York cafe owner, in an action for trademark infringement under the Lanham Act, 15 U.S.C.S. §§ 1051 -1127.

**OVERVIEW:** Plaintiffs owned the trademark registrations on the several marks used in their restaurants. After defendant opened and advertised a restaurant with a similar name, plaintiffs brought an action for trademark infringement under the Lanham Act, 15 U.S.C.S. §§ 1114(1) and 1125(a). The district court granted plaintiffs' motion for summary judgment and awarded a permanent injunction. Defendant appealed. The court found the district court properly granted summary judgment with respect to one of the plaintiffs, the steakhouse. However, the court found the district court erred by awarding summary judgment to the other plaintiff, the New York cafe owner, solely on the basis that plaintiffs' mark was incontestable. The court held that the district court needed to further inquire into whether there was a likelihood of confusion. The court undertook this analysis and applying several factors, including determining what category of distinction the mark fell into, concluded that a likelihood of confusion was probable.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (1 of 30)2/10/2006 9:19:03 AM

Exhibit 17, p.1

Dockets.Justia.com

**OUTCOME:** The court affirmed the district court's grant of summary judgment with respect to one of the plaintiffs, the steakhouse. The court reversed the district court's grant of summary judgment with respect to the other plaintiff, the New York cafe owner and remanded for further proceedings with respect to this plaintiff.

**CORE TERMS:** alpha, trademark, restaurant, registration, discovery, summary judgment, trademark infringement, incontestable, registrant, descriptive, injunction, consumer, Lanham Act, unfair competition, infringement, suggestive, incontestability, similarity, customer, permanent injunction, irreparable injury, advertising, secondary meaning, user, opened, injunctive relief, likely to cause, abandonment, registered, counterclaim

## LexisNexis(R) Headnotes

Civil Procedure > Appeals > Standards of Review > De Novo Review
Civil Procedure > Summary Judgment > Summary Judgment Standard
Trademark Law > Infringement Actions > Standards of Review > General Overview
*HN1* The appeals court reviews de novo the district court's granting or denying a summary judgment motion.

Civil Procedure > Appeals
Civil Procedure > Summary Judgment > Summary Judgment Standard
Trademark Law > Infringement Actions > Summary Judgment > General Overview
*HN2* Pursuant to Fed. R. Civ. P. 56(c), the appeals court will reverse the granting of summary judgment if a genuine issue of material fact exists or if the movant is not entitled to judgment as a matter of law.

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits
Civil Procedure > Appeals
Trademark Law > Infringement Actions > Summary Judgment > General Overview
*HN3* At the summary judgment stage, the appeals court draws inferences from the underlying facts contained in materials before the district court in the light most favorable to the party opposing the motion. Moreover, courts apply the general principle that summary judgment is appropriate only after the opposing party has had adequate time for discovery.

Civil Procedure > Summary Judgment > Summary Judgment Standard
Civil Procedure > Appeals > Standards of Review > Plain Error
*HN4* When the court overlooks the dispositive issue in the case and proceeds to decide a case summarily before discovery is concluded and before an order of discovery has been complied with, there has been a mistake and inadvertence and one that works an injustice.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
Civil Procedure > Trials > Judicial Discretion
Trademark Law > Infringement Actions > Standards of Review > General Overview
*HN5* The appeals court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (2 of 30)2/10/2006 4:46:49 PM

**Exhibit 17, p.2**

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss
Civil Procedure > Appeals > Standards of Review > De Novo Review
HN6 The appeals court reviews de novo a district court's decision to deny a motion to dismiss on jurisdictional grounds when the underlying facts are not in dispute.

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Question Jurisdiction
HN7 In actions based on federal questions, federal courts are not limited by restrictions on the authority of state courts to hear the actions.

Trademark Law > Infringement Actions > Determinations
Trademark Law > Federal Unfair Competition Law > Lanham Act > General Overview
HN8 In order to prevail under the Lanham Act, 15 U.S.C.S. §§ 1114(1) and 1125 (a), for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers.

Trademark Law > Protection of Rights > Registration > Incontestability > Effects
Trademark Law > Protection of Rights > Registration > Evidence
HN9 Incontestability is conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce. Lanham Act, 15 U.S.C.S. § 1115(b).

Trademark Law > Protection of Rights > Registration > Incontestability > Affidavit Requirement
Trademark Law > Protection of Rights > Registration > Incontestability > Continuing Use Requirement
HN10 A registrant's right to use a mark may become incontestable after five years of continuous and unchallenged use, if such use has been averred to in an affidavit filed with the Patent and Trademark Office within one year after the five-year period. Lanham Act, 15 U.S.C.S. § 1065.

Trademark Law > Protection of Rights > Registration > Incontestability > Continuing Use Requirement
Trademark Law > Subject Matter > Names > General Overview
Trademark Law > Subject Matter > Descriptive & Laudatory Terms > General Overview
HN11 An incontestable registration is subject to cancellation if the trademark becomes a common descriptive term or a generic name for an item. Lanham Act, 15 U.S.C.S. §§ 1064(3) and 1065(4).

Trademark Law > Protection of Rights > Abandonment > Intentional Nonuse
Trademark Law > Protection of Rights > Conveyances > General Overview
Trademark Law > Protection of Rights > Registration > Evidence

**Exhibit 17, p.3**

*HN12* Pursuant to the Lanham Act, 15 U.S.C.S. § 1115(b)(2), proof that a registrant abandoned a mark defeats the registrant's exclusive right to use the mark.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview

Trademark Law > Protection of Rights > Registration > Federal Registration

*HN13* Under the Lanham Act, 15 U.S.C.S. §§ 1051-1127, the senior owner of a federal registration has superior priority over all junior users, but a court will enjoin the junior user only if the registrant is likely to enter, or has entered, the junior user's trade territory.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview

Trademark Law > Protection of Rights > Registration > Federal Registration

*HN14* The registrant has a nationwide right, but the injunctive remedy does not ripen until the registrant shows a likelihood of entry into the disputed territory. The junior user's use of the mark can continue only so long as the federal registrant remains outside the market area.

Trademark Law > Protection of Rights > Registration > General Overview

Trademark Law > Protection of Rights > Commercial Use > Actual Use

*HN15* Protection is only potential in areas where the registrant in fact does not do business .A competing user can use the mark there until the registrant extends its business to the area. Thereupon the registrant is entitled to exclusive use of the mark and to injunctive relief against its continued use by prior users in that area.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview

Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

*HN16* The standard for likelihood of confusion under which a court may grant injunctive relief for trademark infringement is established in the Lanham Act, 15 U.S.C.S. § 1114(1). Under the test in § 1114(1), the analysis turns on whether the use of the accused copy or imitation of the registered trademark is likely to cause confusion, or to cause mistake, or to deceive. In applying this standard, a trademark owner need not demonstrate actual confusion. An unauthorized use a trademark infringes the trademark holder's rights if it is likely to confuse an "ordinary consumer" as to the source or sponsorship of the goods. Given the fact that the likelihood of confusion depends on varying human reactions to situations incapable of exact appraisement, determining the likelihood of confusion is an inherently factual issue that depends on the facts and circumstances in each case.

Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > General Overview

Trademark Law > Likelihood of Confusion > Intent > General Overview

Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

**Exhibit 17, p.4**

HN17 In determining whether a likelihood of confusion exists, there are seven factors a court must consider: (1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion. Not all these factors are of equal relevance in every case.

Trademark Law > Subject Matter > Distinctiveness > General Overview
Trademark Law > Subject Matter > Strength
HN18 Courts categorize marks submitted for registration into four classes in increasing order of strength or distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary.

Trademark Law > Subject Matter > Secondary Meaning > General Overview
Trademark Law > Subject Matter > Descriptive & Laudatory Terms > General Overview
Trademark Law > Subject Matter > Suggestive Terms
HN19 The significance of the distinction between descriptive or suggestive lies in the fact that descriptive marks are accorded trademark protection only upon proof of secondary meaning while suggestive marks are considered presumptively valid.

Trademark Law > Subject Matter > Suggestive Terms
Trademark Law > Subject Matter > Descriptive & Laudatory Terms > General Overview
HN20 The distinction between descriptive and suggestive marks is difficult to determine and involves a factual examination of the two terms. To aid in the analysis, courts have developed legal definitions of the two terms. For instance, courts have reasoned that a word or figure is descriptive if it identifies a characteristic or quality of an article or service, and is suggestive if it suggests rather than describes, some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature to these goods.

Trademark Law > Infringement Actions > General Overview
Trademark Law > Protection of Rights > Registration > Incontestability > General Overview
HN21 Incontestability alone does not establish that the trademark is strong and therefore likely to cause the consumer confusion necessary for a finding of trademark infringement.

Civil Procedure > Injunctions > Permanent Injunctions
Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview
HN22 A party seeking an injunction must normally show that it would suffer irreparable injury absent the injunctive relief.

Civil Procedure > Injunctions > Permanent Injunctions

Exhibit 17, p.5

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (5 of 30)2/10/2006 4:46:49 PM

Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview

HN23 A court need not conduct an evidentiary hearing before issuing a permanent injunction if the affidavits and documentary evidence clearly establish the plaintiff's right to the injunction such that a hearing would not have altered the result.

Trademark Law > Infringement Actions > General Overview
Trademark Law > Likelihood of Confusion > General Overview
Civil Procedure > Injunctions > Permanent Injunctions

HN24 In the context of a trademark infringement action, a finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears.

Civil Procedure > Appeals > Standards of Review > De Novo Review
Civil Procedure > Injunctions > Permanent Injunctions
Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview

HN25 The appeals court reviews the district court's granting or denial of a permanent injunction for abuse of discretion. In applying this standard, the appeals court accepts the factual findings of the district court unless they are clearly erroneous and review the district court's application of legal principles de novo.

**COUNSEL:** ARGUED: Burton J. Fishman, TUCKER, FLYER & LEWIS, Washington, D.C., for Appellant.

Jeffery Alan Handelman, WILLIAN, BRINKS, HOFER, GILSON & LIONE, Chicago, Illinois, for Appellees.

ON BRIEF: Robert W. Steele, Cheryl M. Browning, MCCARTHY, STEELE & BURKE, P.C., Washington, D.C., for Appellant.

Jerome Gilson, WILLIAN, BRINKS, HOFER, GILSON & LIONE, Chicago, Illinois; Sandra A. Sellers, Robert W. Zelnick, WILLIAN, BRINKS, HOFER, GILSON & LIONE, Washington, D.C., for Appellees.

**JUDGES:** Before RUSSELL and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge. Judge Russell wrote the opinion, in which Judge Hamilton and Senior Judge Sprouse joined.

**OPINIONBY:** RUSSELL

**OPINION:**

 **[*925]  OPINION**

RUSSELL, Circuit Judge:

**Exhibit 17, p.6**

Plaintiffs Lone Star Steakhouse & Saloon, Inc., and Max Shayne, Inc. (hereinafter "Lone Star Steakhouse,""Max Shayne," or "Plaintiffs"), filed this action charging defendant Alpha of Virginia, Inc. (hereinafter "Alpha" or "Defendant"), with trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051 **[\*\*2]** -1127, and unfair competition under pendent state law claims. The district court granted Plaintiffs summary judgment on the question of liability and issued a permanent injunction principally enjoining Alpha from using the mark "Lone Star Grill" or any other name or mark containing the words "Lone Star" in association with restaurant services.

On Alpha's appeal, we affirm the district court's granting of summary judgment and issuance of the permanent injunction in favor of Plaintiff Lone Star Steakhouse and reverse and remand the granting of summary judgment and issuance of the permanent injunction in favor of Plaintiff Max Shayne.

I.

Plaintiff Lone Star Steakhouse is a Delaware corporation with its principal place of business in Wichita, Kansas. At the time of the district court proceedings, the company was operating over 30 "Lone Star Steakhouse & Saloon" restaurants in the United States, with four restaurants in Virginia. Lone Star Steakhouse first opened a restaurant in the Washington, D.C., area in September 1992, when the company opened a location in Centreville, Virginia. The company subsequently opened another location in Herndon, Virginia, also in the Washington, D.C., area. **[\*\*3]** In addition to its food service operations, Lone Star Steakhouse sells various clothing items and promotional accessories bearing the restaurant logo. Plaintiff Max Shayne is a New York corporation with its principal place of business in New York, New York. At the time of the district court proceedings, Max Shayne was operating the "Lone Star Cafe Roadhouse" restaurant in New York, New York. Max Shayne also sells various clothing items bearing its restaurant logo.

Lone Star Steakhouse owns the following United States trademark and service mark registrations:

> 1) No. 1,155,907, issued on May 26, 1981, for the mark "LONE STAR CAFE," which registration is now incontestable under 15 U.S.C. § 1065. This registration is based on a date of first use of February 2, 1977, and covers restaurant services and **[\*926]** nightclub services featuring musical entertainment. The registration also explicitly disclaims the word "Cafe" apart from the complete trademark. n1

> 2) No. 1,318,227, issued on February 5, 1985, for the mark "LONE STAR CAFE," which registration is now incontestable under 15 U.S.C. § 1065. This registration **[\*\*4]** is based on a date of first use of February 1977 and covers various clothing items and accessories.

> 3) No. 1,731,247, issued on November 10, 1992, for the mark "LONE

**Exhibit 17, p.7**

STAR STEAKHOUSE & SALOON." This registration is based on dates of first use of October 1989, and February 2, 1977, in another form. The trademark covers clothing, such as men's and women's sport shirts, sweatshirts, polo shirts, and caps. n2

Registration Numbers 1,155,907 and 1,318,227 were originally granted to Max Shayne but were assigned to Texas Lone Star, Ltd., in January 1992. Texas Lone Star, Ltd., was then merged into Lone Star Steakhouse & Saloon, Inc. Max Shayne continues to use the mark under a license from Lone Star Steakhouse, with the use inuring to the benefit of Lone Star Steakhouse. Registration Number 1,731,247 was also originally issued to Texas Lone Star, Ltd., before Texas Lone Star, Ltd., was merged into Lone Star Steakhouse. Lone Star Steakhouse & Saloon is therefore the current owner of each of the above registrations (hereinafter collectively referred to as the "Lone Star" marks).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Alpha argues before this Court that the federal registration of "Lone Star Cafe" to Max Shayne did not provide that the words "Lone Star" alone would become an incontestable trademark. In support of its contention, Alpha cites several cases reasoning that incontestability inures only to the mark that is actually registered. Appellant's Br. at 19-20 (citing, inter alia, In re National Data Corp., 753 F.2d 1056 (Fed. Cir. 1985)). Alpha's contentions, however, are not relevant to this case. The original federal registration of "Lone Star Cafe" effectively gave Max Shayne the exclusive right to use the term "Lone Star" because the registration explicitly disclaimed the word "Cafe" apart from the complete mark "Lone Star Cafe," see Registration Number 1,155,907; and this right to use the mark "Lone Star" was subsequently assigned to Lone Star Steakhouse. Furthermore, the mark "Lone Star," apart from "Cafe," is important to this case because this Court has held that courts should concentrate on the words not disclaimed in assessing the likelihood of confusion necessary for trademark infringement. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1529-30 (4th Cir. 1984). **[**5]**

n2 In addition to the three marks described in the text, Lone Star Steakhouse also has an application pending in the United States Patent and Trademark Office at the time of this appeal. The application is numbered 74-248,299, and is for the mark "Lone Star Steakhouse & Saloon" in connection with restaurant services. This application is based on dates of first use of October 1989 and February 2, 1977, in another form.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Lone Star Steakhouse has enjoyed tremendous success over the last few years, as its gross sales have jumped from $ 4,360,000 in 1990 to $ 15,980,000 in the first quarter of 1993. Since 1990, Lone Star Steakhouse has spent over $ 1,200,000

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (8 of 30)2/10/2006 4:46:49 PM

Exhibit 17, p.8

engaging in significant advertising and promotional activities in an effort to increase recognition of its "Lone Star" marks. These activities include newspaper advertising, magazine advertising, couponing, radio advertising, point of purchase advertising, and direct mail. The company's success has attracted noteworthy media coverage in national and local publications.

In 1991 Alpha began operating a restaurant under the name "Lone Star Grill" in **[**6]** Arlington, Virginia. After Lone Star Steakhouse filed this action, Alpha opened another restaurant under the same name in Baltimore, Maryland. Alpha advertises its restaurant in newspapers and magazines and conducts an extensive couponing program in the Washington, D.C., area through which customers obtain meal discounts. Alpha's coupons prominently feature the words "Lone Star," often in conjunction with a five-point star similar in appearance to the five point star used by Lone Star Steakhouse.

Plaintiffs filed this action on March 12, 1993, and alleged four specific causes of action: (1) trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) common law unfair competition; and (4) unfair competition under Virginia state law. Alpha filed an answer on April 5, 1993, listing as defenses, among other things, estoppel, waiver, and **[*927]** abandonment. On May 3, 1993, the district court entered a scheduling order requiring all discovery to be completed by July 9, 1993, and requiring summary judgment **[**7]** motions to be filed by June 24, 1993. The court further set the pretrial conference for July 15, 1993.

As reflected in the affidavits, declarations, and deposition testimony before the district court, Alpha's use of the mark "Lone Star Grill" resulted in actual confusion among consumers. For instance, numerous customers visiting the Lone Star Steakhouse restaurants presented coupons from Alpha's Lone Star Grill in Arlington, mistakenly believing that the restaurants were connected. Similarly, people telephoned the Lone Star Steakhouse restaurants in Centreville and Herndon to inquire about the Lone Star Grill in Arlington or to ask about whether the Centreville and Herndon restaurants were accepting the coupons from the Arlington restaurant. Alpha's bartenders and floor managers also testified that they had encountered instances of actual confusion among customers.

Witnesses further testified in depositions that the actual confusion frustrated customers of Lone Star Steakhouse and disrupted its business. On several occasions, customers became highly annoyed upon learning that they would not receive a discount on their meal, and some customers walked out before ordering. To alleviate **[**8]** the problem, employees of Lone Star Steakhouse have given customers free drinks, a reduced bill, or coupons for use at a future meal.

On June 24, 1993, Plaintiffs moved for summary judgment, and the following day, Alpha moved to amend its complaint and add counterclaims. Alpha's proposed amendment stated that the alleged mark was not entitled to federal protection, and its counterclaim asserted fraud based upon third parties' alleged use of the term "Lone Star" in connection with businesses in numerous geographical areas. On June 28, Alpha moved for partial summary judgment; and on July 8, it moved to strike Lone

Exhibit 17, p.9

Star's pleadings or, in the alternative, to compel discovery ordering Plaintiffs to present for deposition two witnesses who had produced affidavits supporting Plaintiffs' motion for summary judgment.

At the hearing on Lone Star's motion for summary judgment on July 9, 1993, the district court denied Alpha's motion for leave to amend. The court declined to "inject the defense of fraud" on the date of the close of the discovery period because it concluded that the facts underlying Alpha's allegations were known "as early as March." Joint Appendix ("JA") at 976. On the same **[**9]** date, the district court also granted Plaintiffs summary judgment on the issue of liability, despite the pendency of Alpha's motion to compel discovery. Specifically, the district court held that Alpha's actions constituted trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); federal unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and unfair competition in violation of Virginia common law. n3 Alpha moved for reconsideration of the rulings, and the district court denied the motion. One week later, the court struck all of Alpha's defenses. The court entered a permanent injunction on July 23 enjoining Alpha from using any mark containing the words "Lone Star" and from performing any other action likely to cause consumers to associate Alpha's goods and services with those of either Plaintiff. n4 Thereafter, the court refused to consider any of the evidence developed **[*928]** by Alpha's counsel after the issuance of the injunction and before the filing of Notice of Appeal on August 23, 1993. From the district court's rulings, Alpha now appeals on various grounds.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 In so phrasing its summary judgment decision, the district court apparently combined Plaintiff's third and fourth causes of action alleging common law unfair competition and unfair competition under Virginia state law. **[**10]**

n4 Specifically, the district court's injunction "permanently enjoined" Alpha from:

A. Using the mark LONE STAR GRILL, or any other name or mark containing the words LONE STAR, in connection with the advertising, promotion and sale of its goods and services;

B. Doing any other act or thing likely to induce the mistaken belief that Defendant's goods and services are in any way affiliated, connected, or associated with Plaintiffs;

C. Unfairly competing with Plaintiffs in any manner whatsoever; and

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (10 of 30)2/10/2006 4:46:49 PM

**Exhibit 17, p.10**

D. Causing a likelihood of confusion with respect to Plaintiffs' LONE STAR marks, or injury to the business reputation of Plaintiffs.

JA at 1183-84.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

II.

Alpha first contends that the district court committed reversible error by granting Plaintiffs summary judgment on liability because the record was undeveloped due to Plaintiffs' refusal to provide relevant discovery. Alpha specifically contests the fact that Plaintiffs refused to present for deposition two of the witnesses who submitted affidavits in support of Plaintiffs' motion for summary judgment. Alpha noticed these witnesses, **[**11]** William W. Dick, chief executive officer of Max Shayne, and S. Douglas Glendenning, chief operating officer of Lone Star Steakhouse, on June 25, 1993, at the close of the discovery period. n5 In the same vein, Alpha argues that the district court erroneously denied its subsequent motions to compel discovery of these two witnesses.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 In these affidavits, Dick and Glendenning alleged the right to continuing and exclusive use of the "Lone Star" trademarks. Employees of Lone Star Steakhouse echoed these allegations in their affidavits.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

HN1 This Court reviews de novo the district court's granting or denying a summary judgment motion. M & M Medical Supplies and Service, Inc. v. Pleasant Valley Hospital, Inc., 981 F.2d 160, 163 (4th Cir. 1993) (en banc), cert. denied, 125 L. Ed. 2d 662, 113 S. Ct. 2962 (1993). HN2 Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, this Court therefore will reverse the granting of summary judgment if **[**12]** a genuine issue of material fact exists or if the movant is not entitled to judgment as a matter of law. See United States v. Ringley , 985 F.2d 185, 186 (4th Cir. 1993). HN3 At the summary judgment stage, this Court also draws inferences from the underlying facts contained in materials before the district court in the light most favorable to the party opposing the motion. Helm v. Western Maryland Ry. Co., 838 F.2d 729, 734 (4th Cir. 1988). Moreover, courts in this Circuit and elsewhere apply the general principle that summary judgment is appropriate only after the opposing party has had "adequate time for discovery." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); see also Fed. R. Civ. P. 56(f); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Oksanen v. Page Memorial Hospital, 945 F.2d 696, 707-08 (4th

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (11 of 30)2/10/2006 4:46:49 PM

**Exhibit 17**, p.11

Cir. 1991), cert. denied, 502 U.S. 1074, 117 L. Ed. 2d 137, 112 S. Ct. 973 (1992). **[\*\*13]**

From these principles, Alpha argues that the district court erred in granting summary judgment because Alpha did not have an opportunity to conduct adequate discovery. Alpha proceeds to discuss two cases from this Circuit as supporting its proposition. The first case, however, actually contradicts Alpha's argument because the case Alpha cites was superseded when this Court reheard the case en banc and specifically concluded that the party opposing the summary judgment motion had adequate time for discovery on the key issues in the case. See Oksanen v. Page Memorial Hospital, 945 F.2d 696, 707-08 (4th Cir. 1991) (superseding 912 F.2d 73 (4th Cir. 1990), which had reversed the district court's grant of summary judgment because the district court had stayed all discovery pending the disposition of the summary judgment motions), cert. denied, 112 S. Ct. 973 (1992).

The second case Alpha discusses, White v. Investors Management Corp., 888 F.2d 1036, 1041-42 (4th Cir. 1989), is significantly distinguishable because it involved a situation, unlike here, in **[\*\*14]** which the party opposing the motion was not at fault for its failure to complete adequate discovery. In White, this Court reversed a granting of summary judgment when the movant had refused to disclose a document of which the district court had compelled discovery. This Court concluded that the district judge was unaware at the time he entered summary judgment that the defendant had not complied with the outstanding order of production. Id. at 1041. This Court reasoned:

> HN4⬆ When the court overlooks the dispositive issue in the case and proceeds to decide a **[\*929]** case summarily before discovery is concluded and before an order of discovery has been complied with, there has been a mistake and inadvertence and one that works an injustice.

Id. (emphasis added).

In contrast, Alpha had adequate opportunity to complete discovery in this case and failed to depose key witnesses solely due to its inexcusable delay. As outlined in Section I above, the scheduling order in the case, dated May 3, 1993, required all discovery to be completed by July 9, 1993, and required summary judgment motions to be filed by June 24, 1993. Plaintiffs concluded their discovery **[\*\*15]** and trial preparation and filed a motion for summary judgment on the issue of liability on June 24, 1993. Alpha, however, neglected to serve any written discovery until June 8, 1993, making Plaintiff's responses due as the discovery period was ending. In addition, Alpha waited until the week of June 27, 1993, to conduct its first deposition. Alpha's depositions of Dick and Glendenning were scheduled even later in the discovery period, on July 6 and July 8, respectively. n6 In denying Alpha's motions, the district court recognized that Alpha had already deposed the individuals most knowledgeable regarding the infringing activity at issue, the general managers for the Lone Star Steakhouse restaurants in Centreville and Herndon. n7 The district court

**Exhibit 17, p.12**

was also aware that Plaintiffs had timely responded to all of Alpha's written discovery, even though Alpha's interrogatories significantly exceeded the numerical limit set by local rule. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n6 Plaintiff Lone Star Steakhouse advised Alpha by letter dated July 2, 1993, that the witnesses were not available on the requested dates due to scheduling conflicts and the short notice. **[\*\*16]**

n7 Alpha also argues that the district court committed reversible error in granting summary judgment because Plaintiffs' counsel directed these managers not to answer material questions on the issues of sales, profits, and marketing. Much of the subject matter of these disallowed questions became unnecessary, however, because Plaintiffs waived their claim for damages when Alpha disclosed that it had obtained no profits during the period of infringement.

n8 Before the close of the discovery period, Alpha also deposed Clyde Sexton, owner of an "entertainment center" in Indian Head, Maryland, named the "Lone Star Cafe." JA at 391-92.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In seeking to explain its delay in discovery, Alpha asserts that it retained new counsel late in the case. Alpha made this same argument when it requested a stay of the permanent injunction before this Court. This contention, however, is unfounded because the same law firm has represented Alpha throughout the course of the district court proceedings and this appeal. Furthermore, switching attorneys within a firm is customary and often necessary due to scheduling conflicts. **[\*\*17]** Alpha thus had more than ample opportunity for discovery and its attempt to excuse its undue delay lacks merit.

HN5 This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion. Erdmann v. Preferred Research, Inc., 852 F.2d 788, 792 (4th Cir. 1988); Larouche v. National Broadcasting Co., Inc., 780 F.2d 1134, 1139 (4th Cir. 1986), cert. denied, 479 U.S. 818, 93 L. Ed. 2d 34, 107 S. Ct. 79 (1986). Given Alpha's unwarranted delay in beginning its discovery, we conclude that Alpha had adequate time to complete discovery before the district court granted summary judgment and that the district court did not abuse its discretion in denying Alpha's motion to compel discovery in this case. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

**Exhibit 17**, p.13

n9 In addition to the arguments addressed in the text, Alpha contends that the district court should have dismissed this action on jurisdictional grounds because Plaintiffs have not obtained a certificate of authority to conduct business in Virginia pursuant to §§ 13.1-757(A) and 13.1-758 of the Virginia Code. *HN6* We review de novo a district court's decision to deny a motion to dismiss on jurisdictional grounds when the underlying facts are not in dispute. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768-69 (4th Cir. 1991), cert. denied, 112 S. Ct. 1167 (1992). As the district court held, Alpha's argument lacks merit because jurisdiction of this action is based upon Section 39 of the Lanham Act, 15 U.S.C. § 1221, not upon diversity of citizenship. *HN7* In actions based on federal questions, federal courts are not limited by restrictions on the authority of state courts to hear the actions. See Angel v. Bullington, 330 U.S. 183, 192, 91 L. Ed. 832, 67 S. Ct. 657 (1947); Holmberg v. Armbrecht, 327 U.S. 392, 397, 90 L. Ed. 743, 66 S. Ct. 582 (1946) (both establishing the standard that state statutes of limitations do not control a federal court sitting in that state when a federal right is claimed). Courts have specifically applied this principle and held that a plaintiff need not secure a license or certificate of authority from the state to maintain a lawsuit based on federal trademark laws. See Lyon v. Quality Courts United, Inc., 249 F.2d 790, 795-796 (6th Cir. 1957); see also Harms, Inc. v. Tops Music Enterprises, Inc., 160 F. Supp. 77, 80-81 (S.D. Cal. 1958) (reasoning in an action based on Lanham Act violations that "the State is powerless to determine the condition under which a corporation, in a non-diversity case, or in a pendent action, may sue in federal courts") (emphasis in original). The two cases on which Alpha bases its argument are inapposite because they concern diversity jurisdiction and not federal question jurisdiction. In fact, one of the cases Alpha cites explicitly limited its holding to diversity cases. See Rock-Ola Manufacturing Corp. v. Wertz, 249 F.2d 813, 814 (4th Cir. 1957) ("If the doors of a State's courts are properly shut to a foreign corporation, it is now settled that the corporation is likewise barred from suing, on the basis of diversity of citizenship, in a Federal court sitting in that state.") (emphasis added). Therefore, because jurisdiction in this case is based on the Lanham Act and other federal statutes, any state law disqualifying Plaintiffs from suit does not bar this Court from hearing this action.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -


[*930]  III.

Alpha next argues that the district court erred in granting Plaintiffs summary judgment because there remained material factual disputes primarily regarding the strength of the "Lone Star" trademark and the consumer confusion experienced in this case. In order to address the importance of Alpha's factual concerns, this Court must analyze the propriety of the district court's legal conclusion that Alpha's actions constituted trademark infringement and unfair competition. See United States v. Ringley, 985 F.2d 185, 186 (4th Cir. 1993). As with other legal determinations by the trial court, we will review the district court's legal conclusions de novo. See, e.g., North Carolina v. City of Virginia Beach, 951 F.2d 596, 601 (4th Cir. 1991).

*HN8* In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate

**Exhibit 17,  p.14**

that it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. See 15 U.S. C. § 1114(1). n10 In this case, the district court did not hinge its granting of summary judgment on finding a likelihood of confusion primarily because the court reasoned that the mark "Lone Star" was incontestable. *HN9* Incontestability is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce." 15 U.S.C. § 1115(b). *HN10* A registrant's right to use a mark may become incontestable after five years of continuous and unchallenged use, if such use has been averred to in an affidavit filed with the Patent and Trademark Office within one year after the five-year period. 15 U.S.C. § 1065. The statute lists eight affirmative defenses against an otherwise incontestable registration, n11 and *HN11* an incontestable registration is subject to cancellation if the trademark becomes a common descriptive term or a generic name for an item. 15 U.S.C. §§ 1064 (3), 1065(4). **[\*\*18]**

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved. Food Fair Stores, Inc. v. Lakeland Grocery Corp., 301 F.2d 156, 160 (4th Cir. 1962), cert. denied, 371 U.S. 817, 9 L. Ed. 2d 58, 83 S. Ct. 31 (1962); Philip Morris Inc. v. MidWest Tobacco, Inc., 1988 U.S. Dist. LEXIS 16787, 9 U.S.P.Q.2D (BNA) 1210, 1214 (E.D. Va. 1988); CPC Int'l, Inc. v. Skippy, Inc., 651 F. Supp. 62, 67 (E.D. Va. 1986).

n11 The eight statutory defenses are listed as: (1) the mark was obtained fraudulently; (2) the mark was abandoned; (3) the mark was used with the permission of the registrant or his privy; (4) the alleged infringer used the mark in his own business because it was the name of that individual or his privy; (5) the alleged infringer adopted the mark prior to its registration and has used it continuously without knowledge of the registrant's prior use and registration; (6) the alleged infringer used the mark pursuant to a prior, non-abandoned registration; (7) the mark violates the antitrust laws; and (8) equitable principles are applicable. 15 U.S.C. § 1115(b).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*19]**

In this case, it is undisputed that the trademark "Lone Star Cafe" as originally registered by Max Shayne in 1981 has become incontestable under the statutory standard. Alpha, however, asserts that it cannot **[\*931]** be guilty of infringement under the Lanham Act because it has satisfied certain of the statutory defenses to incontestability as established in 15 U.S.C. § 1115(b). Alpha raised many of these defenses in a motion to amend its answer, but because we hold that the district court did not commit error in denying the motion, we need not consider these defenses.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (15 of 30)2/10/2006 4:46:49 PM

**Exhibit 17, p.15**

n12 We need only consider the defense of abandonment under 15 U.S.C. § 1115(b) (2), the only defense raised in Alpha's original answer for which Alpha offered specific evidence before the district court.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n12 Alpha primarily sought to import the defense of fraud in its motion to amend its answer. Alpha specifically contended that Plaintiffs committed fraud on the United States Patent and Trademark Office because they were aware that the mark "Lone Star" had been used by numerous businesses across the country before Max Shayne sought the trademark registration in 1980. This contention would affect that enforceability of the trademark because the Lanham Act provides that trademarks procured by fraud are unenforceable. 15 U.S.C. §§ 1052, 1064. As explained in Section VII, infra, we find that the district court did not abuse its discretion in denying Alpha's motion to amend in this case, and we therefore need not address the merits of Alpha's fraud arguments.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*20]**


HN12 Pursuant to § 1115(b)(2), proof that a registrant abandoned a mark defeats the registrant's exclusive right to use the mark. Alpha argues that the evidence before the district court indicated that Max Shayne abandoned its restaurant business in 1988 and therefore had no trademark rights to assign to Lone Star Steakhouse under 15 U.S.C. § 1127, which provides that nonuse of a mark for two years constitutes prima facie evidence of abandonment. Courts have consistently held that trademark nonuse must be intentional to constitute abandonment. See, e.g., Edco, Inc. v. McElrath , 172 U.S.P.Q. 149, 150 (D.S.C. 1971); see also 3 Callmann, Unfair Competition, Trademarks, and Monopolies § 19.65 (4th ed. 1992). The district court found that the evidence, at most, only demonstrated that Max Shayne did not attempt to expand its business beyond one location in New York City. The court concluded that any such nonexpansion did not demonstrate the intentional nonuse necessary for abandonment.

Plaintiffs produced one affidavit testifying that Max Shayne has used the mark "Lone Star Cafe" "continuously," well beyond the **[\*\*21]** date it assigned the trademark to Texas Lone Star, Ltd., the predecessor of Lone Star Steakhouse. JA at 330. After the district court granted them summary judgment, Plaintiffs also produced two affidavits and accompanying exhibits that confirmed that Max Shayne has used the mark "Lone Star Cafe" in a restaurant in New York City as late as 1993. JA at 1252-58, 1264-1278. Alpha's affidavits recognize this same New York City restaurant but maintain that the original mark has been abandoned primarily because the current New York restaurant is named "Lone Star Cafe Roadhouse," with the term "Roadhouse" emphasized. Although the term "Roadhouse" is in larger lettering than "Lone Star Cafe" on some of the signs and paraphernalia displaying the trademark, the "Lone Star Cafe" is followed by a registered trademark symbol and is unmistakably the same trademark that was originally registered to Max Shayne in 1981. Given this evidence, the district court's rejection of Alpha's claims of abandonment is not erroneous.

**Exhibit 17, p.16**

Alpha further argues that Plaintiffs cannot prevail in a trademark infringement action because Alpha used the mark"Lone Star" in the Washington, D.C., area before Lone Star Steakhouse. **[**22]** This argument is based on a misconception of the importance of priority of use. Given the insufficiency of Alpha's arguments attacking Max Shayne's ability to assign its rights, Lone Star's possession of the assignment of the original registration granted to Max Shayne for "Lone Star Cafe" (in which the word "Cafe" was disclaimed) establishes that, as between the Alpha and Lone Star Steakhouse, Lone Star Steakhouse is the senior owner of the trademark"Lone Star." Lone Star Steakhouse's rights date back to Max Shayne's original registration in 1981, well before Alpha opened its"Lone Star Grill" in 1991.

*HN13* Under the Lanham Act, the senior owner of a federal registration has superior priority over all junior users, but a court will enjoin the junior user only if the registrant **[*932]** is likely to enter, or has entered, the junior user's trade territory. As a leading commentator has explained, *HN14* "the registrant has a nationwide right, but the injunctive remedy does not ripen until the registrant shows a likelihood of entry into the disputed territory. . . . [The junior user's] use of the mark can continue only so long as the federal registrant remains outside the market area." 2 J. Thomas **[**23]** McCarthy, McCarthy on Trademarks § 26.14[1], at 26-52 (3d ed. 1992) (emphasis in original) (citing Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959)). This Court applied this rule in Armand's Subway, Inc. v. Doctor's Associates, Inc., 604 F.2d 849, 849-50 (4th Cir. 1979), in which the court reasoned:

> After the Lanham Act, nationwide protection was extended to registered marks, regardless of the area in which the registrant actually used the mark, because under 15 U.S.C. 1072 registration constituted constructive notice to competing users. Dawn Donut Co. v. Hart's Food Stores, 267 F.2d 358, 362 (C.A.2, 1959). However, as held in that case, the *HN15* protection is only potential in areas where the registrant in fact does not do business. A competing user could use the mark there until the registrant extended its business to the area. Thereupon the registrant would be entitled to exclusive use of the mark and to injunctive relief against its continued use by prior users in that area. Ibid., 360, 365.

From this reasoning, the **[**24]** court concluded that "in no case would [the party alleging infringement] be entitled to injunctive relief except in the area actually penetrated by [that party]." 604 F.2d at 851.

This Court also applied this rule in Pizzeria Uno Corp. v. Temple, 747 F.2d 1522 (4th Cir. 1984). Although the court in Pizzeria Uno declined to enjoin the defendant restaurant because the plaintiffregistrant had not expanded into the defendant's territory, the court's ruling was made "without prejudice to plaintiff's right to renew its claims if it or one or more of its franchisees subsequently invades the same

**Exhibit 17, p.17**

geographical area in which the defendant, using the challenged trademark, operates." Id. at 1536. In this case, undisputed evidence demonstrates that Lone Star Steakhouse has already expanded into Alpha's trade territory by opening restaurants in Centreville and Herndon, Virginia, suburbs within the Washington, D.C., area. Therefore, the fact that Alpha may have used the mark"Lone Star" in the Washington, D.C., area prior to Lone Star Steakhouse does not establish legally protectible priority. Under the reasoning in Armand's Subway **[**25]** and Pizzeria Uno, Plaintiff Lone Star Steakhouse thus can properly seek an injunction against Alpha for trademark infringement and unfair competition. n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n13 Alpha also argues that Lone Star Steakhouse has not obtained enforceable trademark rights from Max Shayne because Lone Star Steakhouse has not controlled the trademark's use. In support of this contention, Alpha alleges that Lone Star Steakhouse has allowed "Lone Star Oyster Bar" in Lubbock, Texas, to continue its operations without any restrictions from Lone Star Steakhouse. This contention, however, is flatly contradicted by an agreement between Lone Star Steakhouse and Lone Star Oyster Bar dated March 31, 1993. In this agreement, Lone Star Oyster Bar specifically acknowledged the validity of Lone Star Steakhouse's trademarks. Lone Star Steakhouse also placed several restrictions on Lone Star Oyster Bar's ability to use the term "Lone Star." For instance, the agreement reveals that Lone Star Steakhouse allowed Lone Star Oyster Bar to use the term "Lone Star" but only as long as the term was in conjunction with the words "Oyster Bar" or "Oyster Bar Yacht Club." JA at 1100-06.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[**26]**

By this same reasoning, however, Plaintiff Max Shayne cannot properly seek an injunction against Alpha because Max Shayne has neither entered the Washington, D. C., market area where Alpha does business nor has presented evidence that it plans to expand to that area. See Pizzeria Uno, 747 F.2d at 1536 (refusing to enjoin defendant restaurant because plaintiff-registrant had not expanded into defendant's market area). The district court granted an injunction to both Plaintiffs by enjoining Alpha from unfairly competing with either Plaintiff or from doing any act likely to induce the mistaken belief that Alpha is connected with either Plaintiff. We therefore remand to the district court to amend its injunction so as to remove any language enjoining Alpha from infringing upon Plaintiff Max Shayne's trademark in New York City. This redaction will **[*933]** effectively leave an injunction only enjoining Alpha from activities infringing upon Lone Star Steakhouse's trademark in the Washington, D.C., area.

IV.

Although we agree with the district court that Plaintiffs have an incontestable trademark and that Plaintiffs have priority of use over Alpha, these conclusions do not

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (18 of 30)2/10/2006 4:46:49 PM

**Exhibit 17**, p.18

automatically warrant affirmance **[\*\*27]** of the district court's granting Plaintiffs summary judgment on the issue of liability. As mentioned above, the district court in this case did not hinge its granting of summary judgment on finding a likelihood of confusion essentially because the court reasoned that the "Lone Star" mark was incontestable. In holding the trademark's incontestability to be dispositive of this case, the district court's resolution of infringement was incomplete. A trademark's incontestability provides a strong presumption in favor of the mark's protectibility and validity. See 15 U.S.C. § 1115(b). However, as mentioned above, the Lanham Act establishes a two-prong test that Plaintiffs must satisfy in order to obtain an injunction for trademark infringement and unfair competition. In addition to proving the mark's protectibility, a complainant must demonstrate that the defendant's use of the colorable imitation is likely to cause confusion among consumers. Because incontestability alone thus does not prove that a likelihood of confusion exists between the two marks, the district court erroneously relied on incontestability as being dispositive in this case.

HN16 The **[\*\*28]** standard for likelihood of confusion under which a court may grant injunctive relief for trademark infringement is established in 15 U.S.C. § 1114 (1). Under the test in § 1114(1), the analysis turns on whether the use of the accused copy or imitation of the registered trademark is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1); see Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984). In applying this standard, this Court has emphasized that a trademark owner need not demonstrate actual confusion. Pizzeria Uno, 747 F.2d at 1527 (quoting Dwight S. Williams v. Lykens Hosiery Mills, 233 F.2d 398, 401 (4th Cir. 1956)). This Court has added that the "an unauthorized use a trademark infringes the trademark holder's rights if it is likely to confuse an 'ordinary consumer' as to the source or sponsorship of the goods." Anheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992), cert. denied, 121 L. Ed. 2d 147, 113 S. Ct. 206 (1992). **[\*\*29]** Given the fact that the likelihood of confusion depends on "varying human reactions to situations incapable of exact appraisement," Colburn v. Puritan Mills, Inc., 108 F.2d 377, 378 (7th Cir. 1939), this Court has concluded that determining the likelihood of confusion is an "inherently factual" issue that depends on the facts and circumstances in each case. Anheuser-Busch, 962 F.2d at 318; see also Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1356 n.5 (9th Cir. 1985).

In order to guide courts HN17 in determining whether a likelihood of confusion exists, this Court has delineated seven factors a court must consider: (1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion. Pizzeria Uno, 747 F.2d at 1527. Importantly, not all these factors are of equal relevance in every **[\*\*30]** case. Id.

As in this case, litigants often most ardently debate the first factor, the strength or distinctiveness of the trademark. In addressing this question, HN18 courts have categorized marks submitted for registration into four classes in increasing order of strength or distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary. Id. Specifically, Lone Star Steakhouse and Alpha debate as to whether the

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (19 of 30)2/10/2006 4:46:49 PM

**Exhibit 17,** p.19

trademark "Lone Star" is descriptive or suggestive. HN19 The significance of this distinction between descriptive or suggestive lies in the fact that descriptive marks are accorded trademark protection only upon proof of secondary meaning while suggestive marks are considered presumptively valid. Id. (quoting Del Laboratories, [*934] Inc. v. Alleghany Pharmacal Corp., 516 F. Supp. 777, 780 (S.D.N.Y. 1981)).

HN20 The distinction between the two classes of marks is difficult to determine and involves a factual examination of the two terms. To aid in the analysis, courts have developed legal definitions of the two terms. For instance, courts have reasoned that a word or figure is descriptive if it "identifies a characteristic or quality of an [**31] article or service," and is suggestive if it "'suggests rather than describes,' some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature to these goods." Pizzeria Uno, 747 F.2d at 1528 (quoting Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1183 (5th Cir. 1980), cert. denied, 450 U.S. 981, 67 L. Ed. 2d 816, 101 S. Ct. 1516 (1981)).

Given this problem in determining whether a mark is descriptive or suggestive, courts have often given due regard to the determination of the Patent and Trademark Office, which necessarily decides whether a mark is descriptive or suggestive in its decision whether to register the mark. This determination is evident because the Trademark Office requires applicants with descriptive marks to prove that the marks have secondary meaning before it grants registration. In contrast, the Office grants registration of suggestive marks without proof of such meaning. Id. Courts can thus determine the Trademark Office's classification of a trademark by [**32] noting whether the Office required proof of the mark's secondary meaning. This Court has reasoned that the Trademark Office's determination represents prima facie evidence of whether the mark is descriptive or suggestive. See id. at 1528-29 (citing, inter alia, Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366, 378 (7th Cir. 1976), cert. denied, 429 U.S. 830, 50 L. Ed. 2d 94, 97 S. Ct. 91; McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1133 (2d Cir. 1979)).

In this case, the district court did not make findings as to the descriptiveness or suggestiveness of the incontestable trademark "Lone Star" because the court concluded that Alpha could not defend its use of an incontestable trademark by arguing that the mark is merely descriptive. Although the district court correctly reasoned that the alleged infringement of an incontestable trademark cannot be defended on the ground that the trademark is merely descriptive, see Park ' N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 196-97, 83 L. Ed. 2d 582, 105 S. Ct. 658 (1985), [**33] numerous courts have held that HN21 incontestability alone does not establish that the trademark is strong and therefore likely to cause the consumer confusion necessary for a finding of trademark infringement. See, e.g., Miss World (U.K.) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1448-49 (9th Cir. 1988) ("An incontestable status does not alone establish a strong mark."); Oreck Corp. v. U.S. Floor Sys., Inc., 803 F.2d 166, 171 (5th Cir. 1986) (holding that incontestable status does not preclude defendant from arguing that mark is weak and not infringed because no consumer confusion was present), cert. denied, 481 U.S. 1069, 95 L. Ed. 2d 871, 107 S. Ct. 2462 (1987); Majorica S.A. v. Majorica Int'l, Ltd., 687 F. Supp. 92, 7 U.S.P.Q.2D (BNA) 1872, 1876 (S.D.N.Y. 1988) (incontestability does not relieve registrant of requirement of proving likelihood of confusion); see also Liggett Group,

Exhibit 17  p.20

Inc. v. Brown & Williamson Tobacco Corp., 748 F. Supp. 344, 365 (M.D.N.C. 1990) (holding that a stipulation **[\*\*34]** as to the validity of trademark does not preclude evidence of consumer awareness of the mark), aff'd, 964 F.2d 335 (4th Cir. 1992), aff'd, 125 L. Ed. 2d 168, 113 S. Ct. 2578 (1993). But see Wynn Oil Co. v. American Way Service Corp., 943 F.2d 595, 600 (6th Cir. 1991) (holding that incontestable marks are presumed to be strong); Dieter v. B & H Industries of Southwest Florida, Inc., 880 F.2d 322, 329 (11th Cir. 1989), cert. denied, 498 U.S. 950, 112 L. Ed. 2d 332, 111 S. Ct. 369 (1990) (same).

For instance, the Seventh Circuit in Munters Corp. v. Matsui America, Inc., 909 F.2d 250, 252 (7th Cir. 1990), addressed similar concerns as to whether a court could analyze the descriptiveness of an incontestable trademark in deciding whether the likelihood of confusion existed necessary for trademark infringement. The court reasoned:

> The district court accordingly found that [the trademark] was protectible and, because **[\*935]** it had been in continuous use for more than **[\*\*35]** five years following its registration, incontestable. Nevertheless, the district court undertook a strength of the mark analysis in evaluating whether Matsui's use of Munters' mark was likely to cause confusion. This is the correct practice in the Seventh Circuit, since strength of the mark is one of the factors in this Circuit for evaluating likelihood of confusion.

Id. Additionally, concerning whether incontestability alone can prevent attack on the trademark's strength, a leading commentator has reasoned:

> A few courts have held that, in an action for infringement of an incontestably registered trademark, the registered mark is deemed strong and not subject to attack on weakness grounds. However, cases holding to the contrary are better reasoned. The registrant must still establish that confusion is likely and, if the registered trademark is weak the purchasing public will not be likely to be confused by the use of a similar mark used on other goods.

1 Jerome Gilson, Trademark Protection and Practice § 2.01, at 2-9 (1994); see also 4A Rudolf Callmann, The Law of Unfair Competition, Trademarks and Monopolies § 25.08, at 61-62 (1992) (reasoning that "incontestability **[\*\*36]** is purely a matter of validity, not of the scope of infringement protection").

We agree with the above reasoning that incontestability affects the validity of the trademark but does not establish the likelihood of confusion necessary to warrant

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (21 of 30)2/10/2006 4:46:49 PM

**Exhibit 17**, p.21

protection from infringement. Likelihood of consumer confusion remains an independent requirement for trademark infringement. See Callmann, § 25.08, at 59. Therefore, because trademark strength is one factor in this Court's test for likelihood of confusion, we follow Munters and hold that we are free to address whether Plaintiffs' incontestable trademark is descriptive or suggestive in determining whether the likelihood of consumer confusion exists in this case. Furthermore, it may be accepted that determining the likelihood of confusion is an "inherently factual" issue, AnheuserBusch, 962 F.2d at 318, and that the district court did not fully address the likelihood of confusion because it erroneously found infringement solely based on the mark's incontestability. n14 We conclude, however, that it is unnecessary to remand this case to the district court for further factual findings because undisputed facts **[\*\*37]** from the record demonstrate a likelihood of confusion. We therefore reject Alpha's claims noted above that material factual disputes remained concerning the strength of the "Lone Star" trademark and the presence of consumer confusion.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n14 In its ruling from the bench, however, the district court did note that Plaintiffs had demonstrated actual confusion in this case. See infra Section V.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

V.

In applying the factors for determining the likelihood of confusion in this case, we conclude that the cumulative weight of the evidence demonstrates that Plaintiff Lone Star Steakhouse has shown a strong likelihood of confusion sufficient to warrant an injunction for trademark infringement under the Lanham Act. Lone Star Steakhouse has extensively used and promoted its "Lone Star" mark. As a result of Plaintiff's efforts, its mark has been the subject of national and local media attention and has achieved a high level of recognition in the restaurant field, entitling the marks to broad legal protection. See Communications Satellite Corp. v. Comcet, Inc., 429 F.2d 1245, 1248 (4th Cir. 1970), **[\*\*38]** cert. denied, 400 U.S. 942, 27 L. Ed. 2d 245, 91 S. Ct. 240 (1970). Furthermore, as noted above, the "Lone Star" mark originally owned by Max Shayne is now an incontestable trademark covering restaurant services.

Although not dispositive as to likelihood of confusion, this incontestable status does entitle the mark to substantial protection, Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986), and does provide conclusive evidence of Plaintiffs' right to use the mark in commerce as established in 15 U.S.C. § 1115(b). Shakespeare Co. v. Silstar Corp. of America, Inc. , 9 F.3d 1091, 1093 (4th Cir. 1993), cert. denied, **[\*936]** 128 L. Ed. 2d 864, 114 S. Ct. 2134 (1994).

Specifically regarding the descriptive/suggestive inquiry, other courts have held that incontestable marks are "conclusively presumed to be nondescriptive or to have acquired secondary meaning." Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1184 (5th Cir. 1980). **[\*\*39]** Alpha contends, however, that the mark is merely geographically descriptive because the term "Lone Star" is strongly associated with the state of

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (22 of 30)2/10/2006 4:46:49 PM

**Exhibit 17, p.22**

Texas. The use of the words "Lone Star" in connection with "Cafe" or "Steakhouse & Saloon," however, clearly indicates a source for the restaurant services, rather than merely describing a characteristic or quality of the service. Because the descriptive/ suggestive inquiry "involves an evaluation of what prospective consumers perceive in terms of an indication of source," Contemporary Restaurant Concepts, Ltd. v. Las Tapas-Jacksonville, Inc., 753 F. Supp. 1560, 1564 (M.D. Fla. 1991), we conclude that the "Lone Star" mark as used by Lone Star Steakhouse is suggestive. Furthermore, as stated above, this Court should give due respect to the fact that the Patent and Trademark Office did not require proof of secondary meaning when the Office granted Max Shayne a registration for "Lone Star Cafe," which explicitly disclaimed the word "Cafe." n15 Because the Office will not grant descriptive marks registration absent such proof, it is presumed that the Office considered the "Lone Star" mark at issue in this case to **[\*\*40]** be suggestive. n16 See Pizzeria Uno, 747 F.2d at 1534.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 The fact that the Trademark Office did not require proof of secondary meaning can be determined from analyzing a title copy of the registration the Office issued. When the Office requires such proof, it notes "2(f)" above the serial number on the bottom right of the registration certificate. The notation signifies that the Office obliged the registrant to satisfy the requirement under 15 U.S.C. § 1052(f) that the registrant provide evidence of the mark's distinctiveness prior to registration. See 15 U.S.C. § 1052(f) (allowing registration of descriptive marks that have become distinctive of the applicant's goods in commerce). The record in this case contains certified copies of the three trademarks at issue. None of the copies has the notation "2(f)" above the serial number. JA at 320-22.

n16 Even if "Lone Star" were deemed descriptive, the evidence of actual confusion certainly demonstrates that the mark has acquired secondary meaning in this case. See Miller v. Lone Star Tavern, Inc., 593 S.W.2d 341, 344-45 (Tex. Ct. App. 1979) (affirming a jury finding that the mark "Lone Star" had acquired secondary meaning in an unrelated case involving Texas state law of unfair competition).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*41]**

Alpha attempts to rebut this presumption of a suggestive classification by providing evidence that the term "Lone Star" has been used by several other establishments in connection with restaurant services. n17Regardless of whether the presence of these restaurants serves to rebut this presumption, Lone Star Steakhouse has produced sufficient evidence demonstrating satisfaction of the other factors in the Pizzeria Uno test for likelihood of confusion. For instance, in evaluating the similarity of two marks, this Court has reasoned that the marks need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks. Id. at 1529-30, 1534-35. In this case, the dominant portion of the parties' marks-"Lone Star"--is the same, causing a strong likelihood of confusion. Alpha's coupons and advertisements also show "Lone Star" in larger lettering than the word

**Exhibit 17, p.23**

"Grill," further reinforcing the dominance of the mark "Lone Star." These factors directly parallel our reasoning in Pizzeria Uno, in which we found that "Taco Uno" was confusingly similar to "Pizzeria Uno" in the restaurant field. Id. at 1534-36. In reaching this conclusion, **[\*\*42]** we relied, in part, on the fact that the dominant portion of the mark--"Uno"--was displayed in larger lettering in the advertisements than the prefix "Pizzeria." Id. at 1533.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n17 For instance, Alpha highlights the presence of the "Lone Star Cafe" in Indian Head, Maryland, a rural area approximately twenty miles south of Washington, D.C.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Regarding the third factor, the similarity of the goods and services that the marks identify, Alpha argues that the two restaurants are different because it serves primarily Tex-Mex food while Lone Star Steakhouse serves more traditional American fare, such as steaks, ribs, and chicken. Again, Pizzeria **[\*937]** Uno is helpful in resolving this issue. In that case, this Court held that restaurants with greater differences in menu selection and atmosphere than those in this case were similar enough to cause a likelihood of confusion. In particular, the plaintiff in Pizzeria Uno offered Italian cuisine and a full bar in a sitdown restaurant while the defendant provided drive-through **[\*\*43]** and counter service for Mexican fast food. Id. at 1535. In finding a likelihood of confusion, the court reasoned that "it is obvious that the products and services provided by the two companies serve the same purpose." Id. The similarities in this case are even greater than those in Pizzeria Uno. Both Lone Star Steakhouse's restaurants and Alpha's Lone Star Grill have sit-down restaurants with full bar service, cater to the same customers, and have overlapping items on their menus. These similarities, especially the fact that their restaurant services attract many of the same customers, further work to satisfy the fourth factor, the similarity of the facilities the two parties use in their businesses to sell their product or service. See Philip Morris v. MidWest Tobacco Inc., 1988 U.S. Dist. LEXIS 16787, 9 U. S.P.Q.2D (BNA) 1210, 1214 (E.D. Va. 1988).

Concerning the similarity of advertising, evidence demonstrates that both parties advertise in newspapers and offer coupons in the Washington, D.C., area, which customers can redeem for discounts on meals. See id.; see also Pizzeria Uno , 747 F.2d at 1535 **[\*\*44]** (reasoning that advertising similarities would directly support a finding of infringement). Regarding the defendant's intent, this Court has reasoned that a defendant can be liable for trademark infringement even if it acted in good faith. Pizzeria Uno, 747 F.2d at 1535. Lone Star Steakhouse nevertheless offered evidence that supports a presumption that Alpha acted in bad faith in conducting certain activities of the Lone Star Grill. Specifically, Alpha may have been unaware of the Lone Star Steakhouse restaurants when it originally opened its Arlington Lone Star Grill in 1991, but Alpha opened a new restaurant in Baltimore under the same name after the commencement of this lawsuit and despite Lone Star's requests that Alpha change the name of its restaurant. Furthermore, given Alpha's awareness of actual

**Exhibit 17, p.24**

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (24 of 30)2/10/2006 4:46:49 PM

consumer confusion, its expansion violated its duty to use a trademark that avoids such actual confusion. See Osem Food Industries Ltd. v. Sherwood Foods, Inc., 917 F.2d 161, 165 (4th Cir. 1990); AMP Inc. v. Foy, 540 F.2d 1181, 1187 (4th Cir. 1976); see also Food Fair Stores, Inc. v. Lakeland Grocery Corp., 301 F.2d 156, 163 (4th Cir. 1962), **[**45]** cert. denied, 371 U.S. 817, 9 L. Ed. 2d 58, 83 S. Ct. 31 (1962).

Most importantly, Lone Star Steakhouse produced undisputed evidence demonstrating actual confusion among consumers. As noted above, affidavits, declarations, and deposition testimony introduced before the district court provided evidence that customers have been confused in believing that Plaintiff's Lone Star Steakhouse restaurants and Alpha's Long Star Grill were associated. In its brief before this Court, Alpha concedes the fact that customers have mistakenly associated Lone Star Steakhouse with Alpha's restaurant. n18 Furthermore, in entering the permanent injunction in the case, the district court explicitly found that "plaintiffs have shown not only the required likelihood of confusion but also actual confusion in this case." JA at 1179. This evidence is entitled to substantial weight as it provides the most compelling evidence of likelihood of confusion. M. Kramer Mfg. Co., Inc. v. Andrews, 783 F.2d 421, 448 n.24 (4th Cir. 1986); AMP Inc. v. Foy, 540 F.2d 1181, 1186 n.8 (4th Cir. 1976); HMH Publishing Co., Inc. v. Brincat, 504 F.2d 713, 719 (9th Cir. 1974) **[**46]** (reasoning that actual confusion is "determinative in many instances" in finding trademark infringement).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n18 Alpha discounts this confusion by arguing that the confusion may have been "manufactured by Lone Star Steakhouse itself." Appellant's Br. at 27. The record does not support this bald allegation.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Although the above evidence demonstrates a likelihood of confusion between Alpha's "Lone Star Grill" and the Lone Star Steakhouse restaurants in the Washington, D.C., area, the evidence does not demonstrate a likelihood of confusion sufficient to support the district court's granting Max **[*938]** Shayne summary judgment on the issue of liability. All the evidence Plaintiffs offered under the Pizzeria Uno analysis regarding the similarity of the goods and services, the similarity of the facilities, the similarity of the advertising, the defendant's intent, and the actual confusion specifically addresses the confusion between Plaintiff Lone Star Steakhouse and Alpha. Plaintiffs have not demonstrated how Alpha's restaurant **[**47]** in Arlington, Virginia, damaged Max Shayne's restaurant in New York City. Moreover, Max Shayne cannot benefit from evidence that Lone Star Steakhouse has garnered media attention through its extensive advertisement of the Lone Star Steakhouse mark. Such advertisement is irrelevant in proving the strength of Max Shayne's "Lone Star Cafe Roadhouse" mark in New York City. In effect, Max Shayne can rely only on the general evidence Plaintiffs presented proving that the Plaintiffs' marks have both become incontestable due to Max Shayne's continuous use over a five-year period. As reasoned above, however, incontestability alone does not demonstrate the likelihood of confusion

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (25 of 30)2/10/2006 4:46:49 PM

**Exhibit 17, p.25**

necessary to support a finding of trademark infringement. See, e.g. , Munters Corp. v. Matsui America, Inc., 909 F.2d 250, 252 (7th Cir. 1990); 1 Jerome Gilson, Trademark Protection and Practice § 2.01, at 2-9 (1994). We therefore hold that the district court committed error in granting Plaintiff Max Shayne summary judgment on the issue of liability.

VI.

Given the strong evidence demonstrating the likelihood of confusion between Lone Star Steakhouse's mark and Alpha's mark, Alpha **[\*\*48]** nevertheless contends that the district court erred in entering the permanent injunction by arguing that the district court did not conduct a hearing on the issue and by arguing that Plaintiffs did not prove the irreparable injury necessary to achieve the injunction. Both of these contentions lack merit.

Alpha correctly recognizes that *HN22* a party seeking an injunction must normally show that it would suffer irreparable injury absent the injunctive relief. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07, 3 L. Ed. 2d 988, 79 S. Ct. 948 (1959). However, several courts have held that *HN23* a court need not conduct an evidentiary hearing before issuing a permanent injunction if the affidavits and documentary evidence clearly establish the plaintiff's right to the injunction such that a hearing would not have altered the result. See Socialist Workers Party v. Illinois State Bd. of Elections, 566 F.2d 586, 587 (7th Cir. 1977), aff'd, 440 U.S. 173, 59 L. Ed. 2d 230, 99 S. Ct. 983 (1979); United States v. Richlyn Laboratories, Inc., 822 F. Supp. 268, 271 (E.D. Pa. 1993); **[\*\*49]** United States v. Production Plated Plastics, Inc., 762 F. Supp. 722, 729 (W.D. Mich. 1991), opinion adopted, 955 F.2d 45 (6th Cir. 1992), cert. denied, 113 S. Ct. 67 (1992); see also American Can Co. v. Mansukhani, 814 F.2d 421, 425 (7th Cir. 1987). More importantly, *HN24* in the context of a trademark infringement action, a number of courts have adopted the reasoning that"[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." Wynn Oil Co. v. American Way Service Corp., 943 F.2d 595, 608 (6th Cir. 1991) (quoting Koppers Co., Inc. v. Krupp-Koppers GmbH, 517 F. Supp. 836, 849 (W.D. Pa. 1981)); see Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc., 560 F.2d 1325, 1332 (7th Cir. 1977) (holding that the complete injury from trademark infringement"almost inevitably" results in irreparable injury that is not fully compensable in damages), cert. denied, 434 U.S. 1070, 55 L. Ed. 2d 772, 98 S. Ct. 1252 (1978); **[\*\*50]** Jordan K. Rand, Ltd. v. Lazoff Bros., Inc., 537 F. Supp. 587, 597 (D.P.R. 1982).

For instance, upon determining that the defendant was guilty of trademark infringement, the Sixth Circuit in Wynn Oil Co. v. Thomas, 839 F.2d 1183, 1191 (6th Cir. 1988), remanded to the district court with instructions to grant injunctive relief even though the Wynn court made no specific findings as to irreparable injury. In a subsequent case involving the same registrant, the Sixth Circuit affirmed the reasoning in its earlier decision by dismissing the appellant's argument that the district court committed error in granting the injunction without first finding specific evidence of irreparable injury. See **[\*939]** Wynn Oil Co. v. American Way Service Corp., 943 F.2d 595, 608 (6th Cir. 1991). In addition to this judicial reasoning, legal scholars recognize that an "injunction is almost routinely issued when infringement is

**Exhibit 17, p.26**

shown." Dan B. Dobbs, Dobbs Law of Remedies § 6.4(5), at 95 (2d ed. 1993).

Although this Court has not yet explicitly applied this presumption in trademark infringement actions, we have recognized **[**51]** that, regardless of any potential injury to sales or to the mark itself, trademark infringement primarily represents an injury to reputation. Communications Satellite Corp. v. Comcet, Inc., 429 F.2d 1245, 1250 (4th Cir. 1970) (quoting Yale Electric Corp. v. Robertson, 26 F.2d 972, 974 (2d Cir. 1928)), cert. denied, 400 U.S. 942 (1970). A district court in this Circuit has added that:

> [Infringement] gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is substantial likelihood of confusion of the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff.

Philip Morris Inc. v. MidWest Tobacco Inc., 1988 U.S. Dist. LEXIS 16787, 9 U.S.P.Q.2D (BNA) 1210, 1215 (E.D. Va. 1988) (quoting Long John Silver's Inc. v. Washington Franchise, Inc., 209 U.S.P.Q. 146, 149 (E.D. Va. 1980)).

In this case, the district court conducted a hearing on July 9, **[**52]** 1993, to address the summary judgment motions; and Alpha had an opportunity at that time to present its positions on the underlying issues of liability to the district court. At the end of the hearing, the district court concluded that Alpha committed trademark infringement; and the court subsequently issued a permanent injunction on July 28, 1993. Having already determined that Alpha committed trademark infringement, the district court had made the findings necessary to grant the injunction. The court therefore was not required to hold a separate hearing on the issue. Moreover, Alpha specifically conceded that, during the time of infringement, it obtained no profits from which Plaintiffs could recover damages. Thus, the only appropriate relief the district court could have awarded was a permanent injunction.

As the court reasoned in Philip Morris, "an injunction is the preferred remedy to insure that future violations will not occur," Philip Morris, 9 U.S.P.Q.2D (BNA) at 1215; and an injunction in this case would serve the public interest by preventing future consumers from being misled. See AMP Inc. v. Foy, 540 F.2d 1181, 1184-85 (4th Cir. 1976); **[**53]** Communications Satellite Corp. v. Comcet, Inc., 429 F.2d 1245, 1251 (4th Cir. 1970), cert. denied, 400 U.S. 942, 27 L. Ed. 2d 245, 91 S. Ct. 240 (1970). **HN25** We review the district court's granting or denial of a permanent injunction for abuse of discretion. Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 814 (4th Cir. 1992). In applying this standard, we accept the factual findings of the district court unless they are clearly erroneous and review the district court's application of legal principles de novo. See North Carolina v. City of Virginia Beach,

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (27 of 30)2/10/2006 4:46:49 PM

**Exhibit 17**, p.27

951 F.2d 596, 601 (4th Cir. 1991). Given this standard of review, we conclude that the district court did not err in granting Lone Star injunctive relief in this case without holding a separate hearing on the issue.

Likewise, we conclude that Plaintiffs need not have offered specific evidence of irreparable injury in this case. Consistent with the above reasoning, we recognize that irreparable injury regularly follows from trademark infringement. See, e.g., Wynn Oil Co. v. American Way Service Corp., 943 F.2d 595, 608 (6th Cir. 1991). **[\*\*54]** However, we need not hold in this case that the presumption arises solely from the finding of infringement because, even without the aid of any presumption, Plaintiffs have produced adequate evidence of irreparable injury by demonstrating actual consumer confusion, specific instances of customer complaints from the confusion, and reasonable responses to these complaints by providing meal discounts and free beverages to customers. Thus, given the abuse of discretion standard of review noted above, we conclude that the district court did not err in issuing the injunction despite the fact that the court did not make specific factual findings of irreparable injury.

**[\*940]** VII.

Alpha finally argues that the district court erroneously denied its motion for leave to file an amended answer and to add counterclaims primarily alleging that the Plaintiffs' trademark was procured by fraud. In refusing to "inject the defense of fraud," the district court considered the motion unduly delayed and reasoned that the amendment would have seriously prejudiced Plaintiffs and placed them at risk of further infringement because the amendment would have delayed the resolution of the case. n19 We review for abuse **[\*\*55]** of discretion a district court's ruling on a motion for leave to amend and to add counterclaims. Deasy v. Hill, 833 F.2d 38, 40-42 (4th Cir. 1987), cert. denied, 485 U.S. 977, 99 L. Ed. 2d 483, 108 S. Ct. 1271 (1988).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n19 In denying the motion, Judge Bryan of the district court reasoned:

> Moreover, I am not willing at this late date on the last day of discovery to inject the defense of fraud, which was not raised until now by any pleading; and because it is apparent that any deficiency in the original registration was known prior or a question about it certainly was known as early as March. I think there is prejudicial delay in raising that; so that I will not allow the amendment.


JA at 976.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (28 of 30)2/10/2006 4:46:49 PM

**Exhibit 17, p.28**

Alpha argues that the district court abused its discretion in denying the motion because the information forming the foundation for the amendment and counterclaim was not available to it when it filed its answer in this case on April **[\*\*56]** 5, 1993. However, the testimony of Alpha's own witness, Kevin P. Steinman, establishes that the information was actually in Alpha's possession before the original answer was filed, well before the close of the discovery period. Plaintiffs deposed Steinman on June 15, 1993. At his deposition, Steinman testified that he discussed the present legal dispute with Alpha's president, Kostas Alexakis, in approximately March of 1993 after Steinman became employed by Alpha as a bartender. During their conversation, Alexakis showed Steinman a computer printout of numerous companies using the term "Lone Star" in their name. In reviewing the printout, Steinman suggested that Plaintiffs' registrations might be attacked because of the fact that "hundreds of other restaurants used the word Lone Star." JA at 209. n20

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -


n20 Steinman is a lawyer who worked as a trademark attorney with the United States Patent and Trademark Office for three-and-one-half years before becoming employed by Alpha in March of 1993.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Although this evidence was **[\*\*57]** in Alpha's possession at least as early as March of 1993, it waited until June 25, the closing days of discovery, before filing its motion to amend. Alpha argues that a "major investigation of activities in other geographic areas" was required to disclose the fraud, Appellant's Br. at 33; and it seeks to dismiss Steinman's testimony by characterizing it as "a chance remark by a bartender employed by Alpha after the case was filed that the trademark sued upon could be invalid." Id. at 34. Steinman's own testimony refutes the notion that a major investigation was needed because Alpha already had significant evidence in its possession, and Alpha's description of Steinman's testimony is misleading. We therefore hold that the district court properly considered Steinman's testimony in dismissing Alpha's motion.

Furthermore, we agree with the district court's conclusion that the proposed amendment, if allowed, would have substantially prejudiced Plaintiffs and would have significantly changed the nature of the litigation. Inserting the defense of fraud in the case on the last day of discovery would have raised new issues, which were not involved in the case during the discovery and were **[\*\*58]** not the subject of Plaintiff's discovery and trial preparation. In particular, because Alpha's fraud claim is based on alleged third-party use of the term "Lone Star," the amendment would have required substantial new discovery regarding third-party activity.

Rule 13(f) of the Federal Rules of Civil Procedure, which permits amendment of the pleadings to add an omitted counterclaim, is interpreted together with Rule 15(a) on amendment of pleadings, which provides that "leave [to amend] shall be freely given when justice so requires." See Foman v. Davis, 371 U.S. 178, 181, 9 L. Ed. 2d 222,

**Exhibit 17, p.29**

83 S. Ct. 227 (1962). This Court has consistently **[\*941]** applied this standard under Rule 15(a) and granted leave when justice so requires. See, e.g., Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987) (citing Foman v. Davis, 371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)). At the same time, however, this Court has reasoned that a motion to amend may be denied when it has been unduly delayed and when allowing the motion **[\*\*59]** would prejudice the nonmovant. See, e.g., Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 421 (4th Cir. 1990); National Bank of Washington v. Pearson, 863 F.2d 322, 327-28 (4th Cir. 1988); Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987), cert. denied, 485 U.S. 977, 99 L. Ed. 2d 483, 108 S. Ct. 1271 (1988). Given these standards and the facts presented in the record demonstrating Alpha's undue delay and the prejudice to Plaintiffs, we conclude that the district court did not abuse its discretion in denying Alpha's motion for leave to amend.

VIII.

For the foregoing reasons, the judgment of the district court is affirmed with respect to Plaintiff Lone Star Steakhouse and reversed and remanded with respect to Plaintiff Max Shayne.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

---

Service:   **Get by LEXSEE®**
Citation:  **43 F.3d 922**
View:  Full
Date/Time: Friday, February 10, 2006 - 4:45 PM EST

---

\* Signal Legend:

🔴 -  Warning: Negative treatment is indicated
🟧Q -  Questioned: Validity questioned by citing refs
🔺 -  Caution: Possible negative treatment
➕ -  Positive treatment is indicated
🅐 -  Citing Refs. With Analysis Available
🅘 -  Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.

---



<u>About LexisNexis</u> | <u>Terms & Conditions</u>
<u>Copyright ©</u> 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ents/Client%20Files/Schmidt/Smith/lonestaropinion.htm (30 of 30)2/10/2006 4:46:49 PM

**Exhibit 17, p.30**