BidZirk LLC et al v. Smith
Gcc11 Document by Citation - 747 F.2d 1522
Doc. 6 Att. 19
6:06-cv-00109-HMH        Date Filed 02/13/2006        Entry Number 6-20        Page 1 of 24

*747 F.2d 1522, \*; 1984 U.S. App. LEXIS 16570, \*\*;*
*224 U.S.P.Q. (BNA) 185*

Pizzeria Uno Corporation, Appellant, v. James W. Temple, Jr., d/b/a/ Taco Uno, Appellee

No. 83-1493

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

747 F.2d 1522; 1984 U.S. App. LEXIS 16570; 224 U.S.P.Q. (BNA) 185

April 2, 1984, Argued
November 20, 1984, Decided

**PRIOR HISTORY: [\*\*1]**

Appeal from the United States District Court for the District of South Carolina, at Columbia. Clyde H. Hamilton, District Judge.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff restaurant corporation appealed from the United States District Court for the District of South Carolina, at Columbia, which refused to grant injunctive relief in plaintiff's action against defendant restaurant for trademark infringement, under 15 U.S.C.S. §§ 1114(1) and 1125(a), and state law unfair competition.

**OVERVIEW:** Plaintiff restaurant corporation claimed that defendant restaurant had infringed its trademark. The lower court found for defendant, and the court affirmed, even though the term used by defendant was not descriptive of a product, instead being merely a fanciful foreign name. Because the parties' marks were used for dissimilar services and advertised in different markets, the likelihood of harm was lessened. Defendant also did not intend to confuse the public nor had defendant penetrated into plaintiff's markets.

**OUTCOME:** The court affirmed the lower court's judgment because defendant had not competed in plaintiff's markets, had not intended confusion, and its mark referred to dissimilar services.

**CORE TERMS:** descriptive, trademark, registration, suggestive, similarity, secondary meaning, restaurant, infringement, disclaimed, registered, prefix, advertising, blue ribbon, injunctive relief, franchisee, registered trademark, composite, trade name, trade-mark, distinctiveness, common use, fanciful, advertisements, food, unfair competition, burden of proof, common law, merchandise, translated, detergent

**LexisNexis(R) Headnotes**

Trademark Law > Infringement Actions > Standards of Review > Clearly Erroneous Review

HN1± All findings in trademark cases, regardless of whether these findings are ultimate or subsidiary findings, are to be reviewed under the clearly erroneous rule. A finding is clearly erroneous when there is no evidence in the record supportive of it and also, when, even though there is some evidence to support the finding, the reviewing court, on review of the record, is left with a definite and firm conviction that a mistake has been made in the finding. Nor does the clearly erroneous rule protect findings that have been made on the basis of the application of incorrect legal standards or made in disregard of applicable legal standards, such as burden of proof.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview
Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

HN2± The circumstances under which injunctive relief may be granted to the owner of a registered trademark are stated in 15 U.S.C.S. § 1114(1). Under that statute, the issue is whether the use of the accused copy or colorable imitation of the registered mark is likely to cause confusion, or to cause mistake, or to deceive. In applying the test, it is not necessary for the owner of the registered trademark to show actual confusion: the test is whether there is likelihood of confusion. If the use of the contested mark is likely to cause such "likelihood," the owner of the registered trademark is entitled to relief.

Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > General Overview
Trademark Law > Subject Matter > Distinctiveness > General Overview
Trademark Law > Likelihood of Confusion > Intent > General Overview

HN3± To determine whether there is a likelihood of confusion under the trademark statute, courts generally consider a number of factors, including the following: a) the strength or distinctiveness of the mark; b) the similarity of the two marks; c) the similarity of the goods or services the marks identify; d) the similarity of the facilities the two parties use in their businesses; e) the similarity of the advertising used by the two parties; f) the defendant's intent; g) actual confusion. Not all these factors are always relevant or equally emphasized in each case.

Trademark Law > Subject Matter > Distinctiveness > Determinations
Trademark Law > Likelihood of Confusion > Similarity > General Overview

HN4± The first and paramount factor in determining whether there is a likelihood of confusion under the trademark statute is the distinctiveness or strength of the two marks. In determining such question, the courts have classified marks submitted for registration into four groups in an ascending order of strength or distinctiveness: 1. generic; 2. descriptive; 3. suggestive; and 4. arbitrary or fanciful.

Trademark Law > Subject Matter > Secondary Meaning > General Overview

Exhibit 18, p.2

Trademark Law > Subject Matter > Suggestive Terms
Trademark Law > Subject Matter > Descriptive & Laudatory Terms > General
Overview
**HN5** A mark that is merely descriptive is considered to be weak and cannot be
accorded trade mark protection without proof of secondary meaning,
whereas a mark which is either suggestive or arbitrary is strong and
presumptively valid.

Trademark Law > Likelihood of Confusion > Similarity > General Overview
Trademark Law > Subject Matter > Descriptive & Laudatory Terms > General
Overview
**HN6** A word or figure is descriptive if it identifies a characteristic or quality of an
article or service, and a suggestive term is one which suggests rather than
describes some characteristic of the goods to which it is applied and requires
the consumer to exercise his imagination to reach a conclusion as to the
nature of these goods. Generally speaking, if the mark imparts information
directly, it is descriptive. If it stands for an idea that requires some operation
of the imagination to connect it with the goods, it is suggestive.

Trademark Law > Subject Matter > Secondary Meaning > General Overview
Trademark Law > Subject Matter > Descriptive & Laudatory Terms > General
Overview
Trademark Law > Protection of Rights > Registration > Federal Registration
**HN7** If a mark is refused registration because it is found to be descriptive, the
applicant may proceed under 15 U.S.C.S. § 1052(f) to assert that its mark,
though descriptive, has acquired what is known as a secondary meaning and,
if the applicant proves secondary meaning, it can secure registration. If the
Patent and Trademark Office finds the mark suggestive on the other hand, it
will grant registration without requiring proof of secondary meaning.

Trademark Law > Protection of Rights > Registration > Evidence
Trademark Law > Subject Matter > Secondary Meaning > General Overview
Trademark Law > Subject Matter > Suggestive Terms
**HN8** The significance of registration without proof of secondary meaning is that
the Patent and Trademark Office has "concluded" that the mark or figure was
not merely descriptive but suggestive and this essential fact, i.e., the action
of the Patent and Trademark Office, must be considered prima facie correct
by a court in considering the validity of a trademark, or the prima facie
evidence rule would be rendered ineffective, since registration under those
circumstances constitutes not only a determination by the Patent and
Trademark Office that the term or word is suggestive but also operates to
provide prima facie evidence of the registrant's right to use the mark,
endowing it with a strong presumption of validity.

Trademark Law > Infringement Actions > Discovery
Trademark Law > Subject Matter > Secondary Meaning > General Overview

**Exhibit 18, p.3**

*HN9* The factors for determining whether secondary meaning has attached are:
(1) long use; (2) advertising; (3) sales volume; and (4) identity of service or origin in the minds of the purchasing public.

Trademark Law > Protection of Rights > Registration > Incontestability > Continuing Use Requirement
Trademark Law > Protection of Rights > Registration > Evidence
Trademark Law > U.S. Trademark Trial & Appeal Board Proceedings > Cancellations > General Overview

*HN10* The presumption which registration gives the mark does not preclude one charged with infringement from collaterally attacking in an infringement action, either by way of an affirmative defense or by way of a counterclaim seeking cancellation of the registration, if the mark has not become incontestable under 15 U.S.C.S. § 1065(2).

Trademark Law > Protection of Rights > Registration > Federal Registration
Trademark Law > Protection of Rights > Registration > Actual Notice

*HN11* The effect of a disclaimer is to disavow any exclusive right to the use of a specified word, phrase, or design outside of its use within a composite mark.

Trademark Law > Likelihood of Confusion > General Overview
Trademark Law > Protection of Rights > Registration > Disclaimer of Unregistrable Matter
Trademark Law > Protection of Rights > Registration > Federal Registration

*HN12* Where the proposed mark consists of but two words, one of which is disclaimed, the word not disclaimed is generally regarded as the dominant or critical term in determining the distinctiveness or suggestiveness of the proposed mark. Such is merely the application of the rule that a descriptive word can never constitute the dominant part of a mark. And while a composite term, including disclaimed words or figures, is to be considered in its entirety in determining validity of a trade mark, it is a settled principle of trade mark law that the dominant part of a mark may be given extra weight on the issue of likelihood of confusion. This is particularly so when the disclaimed word is set forth in considerably smaller letters than the dominant word.

Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > General Overview
Trademark Law > Subject Matter > Suggestive Terms

*HN13* Where the dominant word is suggestive and is identical in the two marks, with a difference in the two marks only in the prefix, and where the product involved, though not being identical, belongs to the same general class of merchandise or service, there is such similarity as to create a likelihood of confusion.

Trademark Law > Subject Matter > Distinctiveness > General Overview
Trademark Law > Protection of Rights > Priority > General Overview

**Exhibit 18, p.4**

*HN14* Another indication of distinctiveness in a trademark consisting of a word singly or in conjunction with another is the frequency of prior use of the word in other marks, particularly in the same field of merchandise or service.

Trademark Law > Subject Matter > Distinctiveness > General Overview
*HN15* In determining whether a word or syllable has a descriptive or suggestive significance as applied to merchandise it is proper to take notice of the extent to which it has been used in trademarks by others on such merchandise.

Trademark Law > Federal Unfair Competition Law > General Overview
Trademark Law > Protection of Rights > Registration > General Overview
Trademark Law > Subject Matter > Names > Generic Names > General Overview
*HN16* In those cases where the proposed trademark is a foreign word, the courts generally apply what is familiarly known as "the doctrine of foreign equivalents" in determining descriptiveness versus suggestiveness. Under this doctrine, foreign words are translated into English and then tested for descriptiveness or genericness, by seeing whether that foreign word would be descriptive of the product to that segment of the purchasing public which is familiar with that language.

Trademark Law > Infringement Actions > Determinations
*HN17* A merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury even though the borrower does not tarnish it, or divert any sales by its use.

Trademark Law > Likelihood of Confusion > Intent > General Overview
Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview
*HN18* If there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion, since one intending to profit from another's reputation generally attempts to make his signs, advertisements, etc., to resemble the other's so as deliberately to induce confusion. But if there is good faith belief that a subsequently-adopted mark will not lead to confusion, however, that intent is no defense if a court finds actual or likelihood of confusion.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview
Trademark Law > Infringement Actions > Standards of Review > Clearly Erroneous Review
*HN19* The owner of a registered trademark in no case is entitled to injunctive relief except in the area actually penetrated by the alleged infringer.

**COUNSEL:** Edward F. Perlman, (George L. Greenfield, Wolf, Greenfield & Sacks, P.C.),

**Exhibit 18, p.5**

for Appellant

Cort Flint, (Dority & Flint), for Appellee.

**JUDGES:** Winter, Chief Judge, Russell, Circuit Judge, and Warriner, United States District Judge for the Eastern District of Virginia, sitting by designation.

**OPINIONBY:** RUSSELL

**OPINION:** **[*1524]** RUSSELL, Circuit Judge:

The plaintiff, the assignee of a registered trademark, asserts two causes of action for injunctive relief, one to restrain alleged infringement of its registered trademark by the defendant under 15 U.S.C. §§ 1114(1), 1125(a), and the other under state common law to restrain the defendant's unfair competition in the alleged exploitation of plaintiff's trademark, with jurisdiction based on 15 U.S.C. § 1121, and 28 U.S.C. § 1338. After a trial before the court, the district judge found that there was no infringement redressable under § 1114(1) and that, since the state common law action was basically the same as the federal **[**2]** infringement action, there was no common law violation. 566 F. Supp. 385. From the judgment entered thereon, the plaintiff has appealed. Though we conclude, unlike the district judge, that plaintiff's trademark rights have been infringed by the defendant, we agree with the district court that the absence of any actual competition between plaintiff and its possible franchisees on the one hand, and the defendant, on the other hand, in the geographical area where the defendant presently operates, compels the denial of injunctive relief in plaintiff's favor at this time. On that basis, we affirm the denial of relief to the plaintiff, without prejudice to plaintiff's right to renew its claims if it or one or more of its franchisees subsequently invades the same geographical area in which the defendant, using the challenged trademark, operates.

I

The use of plaintiff's trade name "Pizzeria Uno" began some forty years ago in Chicago, where Ike Sewell opened a restaurant using that trade name. This restaurant and its trade name acquired over the **[*1525]** years a wide reputation, was favorably discussed by the food editors in national papers, and enjoyed a flattering **[**3]** exposure on national television programs. In 1978, Sewell in the name of the corporation Pizzeria Uno and Due International, Inc. (of which Sewell was the sole stockholder), applied to the Patent and Trademark Office for registration of the trademark "Pizzeria Uno" for "Restaurant Services, in class 42 (U.S. CL 100), with a disclaimer of any right to the exclusive use of the word 'Pizzeria' without detriment to any common law rights to the mark as a whole." On April 11, 1978, the Patent Office granted registration of the trademark, without requiring proof of secondary meaning. All title to the trademark, "including the registrations therefor, together with the goodwill of the business symbolized by said marks and the rights to recover for past infringement of said marks," "throughout the entire world, excluding only the State of Illinois," was thereafter transferred to the plaintiff. The purpose of the transfer was stated to be the promotion and exploitation of the trademark in providing restaurant and food services, particularly in the United States.

Exhibit 18, p.6

The plaintiff/appellant, in promoting the use of the trademark, as contemplated under its agreement, developed a standardized type **[\*\*4]** of operation, with facilities and type of services of a unique quality. In this connection, it opened four wholly owned Pizzeria Uno restaurants and began to franchise others to operate such restaurants in various areas of the nation. Under the terms of the franchise, the operator was required to expend several hundreds of thousand dollars in furnishing the restaurants, to pay an annual license fee of five per cent of its gross, and to spend approximately two per cent of gross in advertising. As of the trial, the plaintiff had some eleven franchised operations, spread from Massachusetts in the East to California in the West and from Georgia in the South to Illinois and Michigan in the Midwest. In connection with its displays and advertisements for such franchised operations, the plaintiff and its franchisees emphasized "UNO" as the dominant word in the trademark. For this reason, the term "Pizzeria" in the trademark is about an eighth the size of the term "Uno" in all display materials and advertising signs used by either the plaintiff or its franchisees.

While the plaintiff presently has no franchisees in South Carolina, it has surveyed the market and is seeking to interest a **[\*\*5]** franchisee or franchisees in operating one of its restaurants in such State.

II.

The defendant had worked in the food distribution industry for about 14 years. During a part of that time, he had responsibility for the supervision of food establishments in the Chicago area, where the initial Pizzeria Uno was located. In July, 1981, he opened two restaurant establishments, one in Sumter, South Carolina, and the other, some fifty miles away, in Columbia, South Carolina, using in the operation of both the mark "Taco Uno." In the latter part of August, 1981, he applied to the Patent and Trademark Office for trademark registration of the mark "Taco Uno" to be used for "restaurant services." He certified in the application that the first use of the mark was July 14, 1981 and stated that the "mark is used in connection with the services by being displayed on signs adjacent [to] the building." By amendment, the defendant disclaimed "the word TACO apart from the mark as shown." By letter dated March 16, 1982, the Patent and Trademark Office refused registration of defendant's mark "on the basis of Registration No. 1,089,458 for the mark Pizzeria Uno." The defendant petitioned for reconsideration **[\*\*6]** of this refusal in July, 1982. On the basis of such petition, the defendant's mark was ordered published in the Official Gazette of the Patent and Trademark Office for the purpose of providing an opportunity for anyone believing he would be damaged by registration of the mark as requested by the defendant to file an opposition to the registration. The plaintiff, within due time, filed its statement of opposition with the Patent and Trademark Office. **[\*1526]** In that posture, the Patent and Trademark Office ordered the matter for hearing but deferred the actual hearing itself, awaiting the judgment in this proceeding which had been filed in the interim.

III.

After trial of this action, in which live and documentary evidence was adduced, the

Exhibit 18, p.7

district court found that there was no infringement by the defendant. In reaching this conclusion, it began by finding that the term "UNO," which it recognized to be the dominant word in the plaintiff's trademark and defendant's proposed registered mark, was both in itself and in conjunction with "Pizzeria" a descriptive or weak term similar to the term "KING" in "Burger King." As a descriptive term, the mark, it accordingly found, was **[**7]** not entitled to "exclusive protection," absent the establishment by appropriate proof of a secondary meaning, and it found further that there was no proof of a secondary meaning. This finding that the term "UNO" was weak and merely descriptive was supported, according to the district court's reasoning, by the decision of the "Trademark Office examiners who are experts in applying the test of likelihood of confusion between two marks," a conclusion which the district court found to be "entitled to great weight." The district court, also, found that the operation of the two restaurants was not similar, though the two do conduct their business "on the same retail level." It held that, while there was "similarity in the advertising media used by both parties," the nearest restaurant of the plaintiff to the South Carolina market, where defendant's operations were centered, was Atlanta, Georgia. Finally, it found no proof of intentional infringement on defendant's part or of any actual confusion. On the basis of these findings and conclusions, the district court dismissed plaintiff's infringement claim. The plaintiff by this appeal, challenges these findings and conclusions of the district **[**8]** court.

IV.

A threshold issue is the standard for appellate review to be applied in reviewing the district court's findings. While some courts have established in trademark cases different standards for review of "foundation" or "subsidiary" findings of fact and of findings of "ultimate facts," *see Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642, 651 (6th Cir. 1982), *cert. denied*, 459 U.S. 916, 74 L. Ed. 2d 182, 103 S. Ct. 231; *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 350 (9th Cir. 1980), we agree with *Lyddan v. United States*, 721 F.2d 873, 875 (2d Cir. 1983), *cert. denied*, 467 U.S. 1214, 104 S. Ct. 2656, 81 L. Ed. 2d 363, that the Supreme Court in *Pullman-Standard v. Swint*, 456 U.S. 273, 286-87, 72 L. Ed. 2d 66, 102 S. Ct. 1781 (1982) made obsolete any distinction between "subsidiary" and "ultimate" findings in the application of the clearly erroneous rule and established the principle that *HN1* all findings, "regardless of whether these findings are ultimate or subsidiary **[**9]** findings" were to be reviewed under the clearly erroneous rule. We, therefore, find that to be the applicable standard for appellate review herein. But under this rule, a finding is clearly erroneous when there is no evidence in the record supportive of it and also, when, even though there is some evidence to support the finding, the reviewing court, on review of the record, is left with a definite and firm conviction that a mistake has been made in the finding. *United States v. Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 68 S. Ct. 525 (1948); *Friend v. Leidinger*, 588 F.2d 61, 64 (4th Cir. 1978); *Phillips v. Crown Central Petroleum Corp.*, 556 F.2d 702, 703 (4th Cir. 1977), *cert. denied*, 444 U.S. 1074, 62 L. Ed. 2d 756, 100 S. Ct. 1021 (1980). Nor will the clearly erroneous rule protect findings which have been made on the basis of the application of incorrect legal standards or made in disregard of applicable legal standards, such as burden of proof, *Lincoln v. Board of Regents*, 697 F.2d 928, 939, n.13 (11th Cir. 1983), **[**10]** *cert. denied*, 464 U.S. 826, 104 S. Ct. 97, 78 L. Ed. 2d 102; *Smith v.* **[*1527]** *Hightower*, 693 F.2d 359, 370, n. 29 (5th Cir. 1982).

Exhibit 18, p.8

V.

With this standard of review resolved, we turn to the legal principles governing the grant of injunctive relief for infringement of a registered trademark such as that owned by the plaintiff. *HN2* The circumstances under which such relief may be granted to the owner of a registered trademark are stated in § 1114(1), 15 U.S.C. Under that statute, the issue is "whether the use of the accused copy or colorable imitation of the registered mark is 'likely to cause confusion, or to cause mistake, or to deceive.'" In applying the test, it is not necessary for the owner of the registered trademark to show actual confusion: "the test is whether there is likelihood of confusion." *Dwight S. Williams v. Lykens Hosiery Mills*, 233 F.2d 398, 401 (4th Cir. 1956). If the use of the contested mark is likely to cause such "likelihood," the owner of the registered trademark is entitled to relief.

[**11]    *HN3* To determine whether there is a likelihood of confusion under the trademark statute, courts generally consider a number of factors, which the district court, relying on *Sun-Fun Products v. Suntan Research & Development*, 656 F.2d 186, 189 (5th Cir. 1981), phrased as follows:

    a) the strength or distinctiveness of the mark;

    b) the similarity of the two marks;

    c) the similarity of the goods/services the marks identify;

    d) the similarity of the facilities the two parties use in their businesses;

    e) the similarity of the advertising used by the two parties;

    f) the defendant's intent;

    g) actual confusion.

We follow the district court in applying generally these factors, but we do so with the caution expressed in *Modular Cinemas of America, Inc. v. Mini Cinemas Corp.*, 348 F. Supp. 578, 582 (S.D.N.Y. 1972), that "not all these [factors] are always relevant or equally emphasized in each case."

A.

*HN4* The first and paramount factor under this set of factors is the distinctiveness or strength [**12] of the two marks. In determining such question, the courts have classified marks submitted for registration into four groups in an ascending order of

**Exhibit 18, p.9**

strength or distinctiveness: 1. generic; 2. descriptive; 3. suggestive; and 4. arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 189 U.S.P.Q. (BNA) 759, 537 F.2d 4, 9, 189 U.S.P.Q. (BNA) 769 (2d Cir. 1976). The primary point of disagreement in this case, as it was developed by the district court, was whether the plaintiff's mark was descriptive or suggestive. The importance of this conflict in terms between descriptive or suggestive lies in the strength or weakness to be assigned marks satisfying the definitions of those respective terms and the nature of the protection afforded the copyright owner. As the court stated in *Del Laboratories, Inc. v. Alleghany Pharmacal Corp.*, 516 F. Supp. 777, 780 (S.D.N.Y. 1981):

> HN5 ". . . a mark which is merely descriptive is considered to be weak and cannot be accorded trade mark protection without proof of secondary meaning, whereas a mark which is **[**13]** either suggestive or arbitrary is strong and presumptively valid."

Gilson in his text expresses basically the same distinction in effect between the two terms. Under this formulation, descriptive marks are "narrowly circumscribed" in their legal protection and registrability and "are usually enforced only against closely similar marks which are used on virtually identical products," while a suggestive mark "will ordinarily be protected against the use of the same or a confusingly similar mark *on the same product, or related products, and even on those which may be considered by some to be unrelated but which the public is likely to assume emanate from the trade mark owner*." 1 Gilson, *Trademark Protection and Practice*, § 2.01, pp. 2-3 and 2-4 (1984) (Italics added).

**[\*1528]** This distinction between the two designations, is, as one court has remarked, "a difficult distinction to draw," *Union Carbide Corp. v. Ever-Ready, Inc.*, 188 U.S.P.Q. (BNA) 623, 638, 531 F.2d 366, 379 (7th Cir. 1976), *cert. denied*, 429 U. S. 830, 50 L. Ed. 2d 94, 97 S. Ct. 91, 191 U.S.P.Q. (BNA) 416, and is normally made on the basis of a facial comparison **[**14]** of the two terms. Courts have formulated definitions of the two terms in the hope of aiding in making the distinction. n1 Thus, they have said that HN6 a word or figure is descriptive if it "identifies a characteristic or quality of an article or service," and a suggestive term is "one which 'suggests rather than describes' some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of these goods." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980), *cert. denied*, 450 U.S. 981, 67 L. Ed. 2d 816, 101 S. Ct. 1516, 210 U.S.P.Q. (BNA) 776 (1981). Another explanation of the differences in the two terms was given in *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d at 379:

> "Generally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (10 of 24)2/10/2006 4:48:48 PM

**Exhibit 18, p.10**

imagination to connect it with the goods, it is suggestive."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The reason for establishing a suggestive category in this connection was stated in *Abercrombie & Fitch v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). In that case Judge Friendly said (p. 10):

> "The category of 'suggestive' marks was spawned by the felt need to accord protection to marks that were neither exactly descriptive on the one hand nor truly fanciful on the other -- a need that was particularly acute because of the bar in the Trademark Act of 1905, 33 Stat. 724, 726, (with an exceedingly limited exception noted above) on the registration of merely descriptive marks regardless of proof of secondary meaning."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*\*15]**

Even with those definitions at hand, however, "the line between descriptive and suggestive marks is scarcely 'pikestaff plain'" and the distinction to be given the two terms is frequently "made on an intuitive basis rather than as a result of a logical analysis susceptible of articulation." *Ever-Ready*, 531 F.2d at 379. The problem of making the proper determination of whether the mark is descriptive or suggestive, has caused a number of courts, when confronted with the problem, to conclude that under the circumstances it is especially prudent "to give due respect to the determination of the Patent Office if the distinction [between the two ideas] is to be drawn in a consistent manner." *Id.*, at 379. This is because the Patent and Trademark Office is the administrative agency initially charged with determining the registrability of a mark or figure and in exercising that function it must necessarily decide whether the mark is descriptive or suggestive, since the Patent and Trademark Office may not grant registration to a mark which it finds to be "merely descriptive." *See Del Laboratories*, 516 F. Supp. at 780. n2 Of course, **[\*\*16]** HN7 if the mark is refused registration because it is found to be descriptive, the applicant may proceed under § 1052(f) to assert that its mark, though descriptive, has acquired what is known as a secondary meaning and, if the applicant proves secondary meaning, n3 it can secure registration. **[\*1529]** If the Patent and Trademark Office finds the mark suggestive on the other hand, it will grant registration without requiring proof of secondary

**Exhibit 18, p.11**

meaning. _HN8_ The significance of registration without proof of secondary meaning in this case, as it is in any similar case, is that the Patent and Trademark Office has "concluded" that the mark or figure was not "'merely descriptive' 'but suggestive'" and this "essential fact [_i.e._, the action of the Patent and Trademark Office] must be considered prima facie correct by a court in considering the validity of a trademark, or the prima facie evidence rule would be rendered ineffective," _Union Carbide Corp._, 531 F.2d at 378; _McGregor Doniger, Inc. v. Drizzle, Inc._, 599 F.2d 1126, 1133 (2d Cir. 1979), **[\*\*17]** since registration under those circumstances constitutes not only a determination by the Patent and Trademark Office that the term or word is suggestive but also operates to provide "prima facie evidence of the registrant's right to use the mark," _Soweco v. Shell Oil Co._, 617 F.2d at 1184, "endow[ing] it with a strong presumption of validity," _Coca-Cola Co. v. Overland, Inc._, 692 F.2d 1250, 1254 (9th Cir. 1982).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Under the Trademark Act of 1905, there was a statutory prohibition against registration of a merely descriptive term. _Beckwith v. Commissioner of Patents_, 252 U. S. 538, 540, 64 L. Ed. 705, 40 S. Ct. 414 (1920):

> ". . . the case falls within the proviso of the Registration Act of 1905, declaring that no mark consisting merely of words or devices which are descriptive of the goods with which they are used or of the character or quality of such goods shall be registered under the terms of the act."

This was changed by the Lanham Act, § 1052 (f), 15 U.S.C., the effect of which is stated in _Park'N Fly v. Park & Fly, Inc._, 489 F. Supp. 422, 424 (D. Mass. 1979):

> ". . . The Patent and Trademark Office may not refuse registration except upon grounds enumerated in § 1052, the only relevant one of which is § 1052(e)(1), denying protection to a trademark that is "merely descriptive" of the goods. This restriction is modified, however, by § 1052 (f), allowing registration for a mark "'which has become distinctive of the applicant's goods,' i.e., has acquired secondary meaning."

**[\*\*18]**

**Exhibit 18, p.12**

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (12 of 24)2/10/2006 4:48:48 PM

n3 HN9 The factors for determining whether secondary meaning has attached are listed in *Southwestern Bell Tel. Co. v. Nationwide Independent Directory Service, Inc.*, 371 F. Supp. 900, 909 (W.D. Ark. 1974). They are "(1) long use; (2) advertising; (3) sales volume; and (4) identity of service or origin in the minds of the purchasing public."

*To same effect, see Boden Products, Inc. v. Doric Foods*, 552 F. Supp. 493, 498 (N.D. Ill. 1982).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

HN10 The presumption which registration thus gives the mark, though, does not preclude one charged with infringement from "collaterally attack[ing] in an infringement action, either by way of an affirmative defense or by way of a counterclaim seeking cancellation of the registration," if the mark has not become incontestable under § 1065(2), 15 U.S.C., § 1115(a), 15 U.S.C.; 1 Gilson, *Trade Mark Protection and Practice*, § 4.04, p. 4-33 (1984 ed.); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir. 1980). **[\*\*19]** Registration, and the presumption it creates, however, as we have already observed, do, for purposes of suit, "shift the burden of proof from the plaintiff, who in a common law infringement action would have [had] to establish his right to exclusive use, to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such [exclusive] use." *Id.*, at 373. n4

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 This presumption may be overcome, according to early decisions, only by clear and convincing evidence, but under the modern rule the standard is by a preponderance of the evidence. *Vuitton et fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 775-76 (9th Cir. 1981).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Since often the mark is a composite term or figure, it is important in this connection to determine whether any part of the composite term has been disclaimed. n5 The effect of a disclaimer has been properly stated in *In re Franklin Press*, 597 F.2d 270, 273, 201 U.S.P.Q. (BNA) 662 (CCPA 1979): **[\*\*20]**

HN11 "The effect of a disclaimer is to disavow any exclusive right to the use of a specified word, phrase, or design outside of its use within a composite mark."

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (13 of 24)2/10/2006 4:48:48 PM

Exhibit 18, p.13

Similarly, the Court in *In re Hercules Fasteners*, 40 C.C.P.A. 944, 203 F.2d 753, 757, 97 U.S.P.Q. (BNA) 355 (CCPA 1953) said:

> "The purpose of a disclaimer is to show that the applicant is not making claim to the exclusive appropriation of such matter except in the precise relation and association in which it appeared in the drawing or description."

**HN12** Where the proposed mark consists of but two words, one of which is disclaimed, the word not disclaimed is generally regarded **[\*1530]** as the dominant or critical term in determining the distinctiveness or suggestiveness of the proposed mark. *See, for instance, American Throwing Co. v. Famous Bathrobe Co.*, 45 C.C.P.A. 737, 250 F.2d 377, 382, 116 U.S.P.Q. (BNA) 156 (CCPA 1957). Such is merely the application of the rule **[\*\*21]** that a descriptive word can never constitute the dominant part of a mark. *Id.*, at 381-82; *National Nugrape Co. v. Judge & Dolph*, 33 C.C.P.A. 1032, 154 F.2d 521, 522, 69 U.S.P.Q. (BNA) 388 (CCPA 1946); *American Brewing Co. v. Delatour Beverage Corp.*, 26 C.C.P.A. 778, 100 F.2d 253, 255, 40 U.S.P.Q. (BNA) 173 (CCPA 1938). And while a composite term, including disclaimed words or figures, is to be considered in its entirety in determining validity of a trade mark, it is a settled principle of trade mark law that "the dominant part of a mark may be given extra weight on the issue of likelihood of confusion," *Continental Scale Corp. v. Weight Watchers Int., Inc.*, 517 F.2d 1378, 1381-82, 186 U.S.P.Q. (BNA) 321 (CCPA 1975); *American Drill Bushing Co. v. Rockwell Mfg. Co.*, 52 C.C.P.A. 1173, 342 F.2d 1019, 1021, 145 U.S.P.Q. (BNA) 144 (CCPA 1965). This is particularly so when the disclaimed word is set forth in considerably smaller letters than the dominant word. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 Disclaimer is a well recognized practice in trademark registration. Often the mark submitted for registration is a composite term, consisting of "registrable subject matter in conjunction with matter which was merely descriptive, or geographically descriptive, and therefore unregistrable." The Patent Office administratively began the practice of "allowing such unregistrable matter to be disclaimed, so that the mark as a whole might be registered," although as a complete term the mark included unregistrable descriptive matter. This administrative practice received judicial sanction in *Beckwith v. Commissioner of Patents*, 252 U.S. 538, 545-46, 64 L. Ed. 705, 40 S. Ct. 414 (1920), and was expressly authorized in § 1056, 15 U.S.C. of the Lanham

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (14 of 24)2/10/2006 4:48:48 PM

**Exhibit 18**, p.14

Act. **[**∗∗**22]**

n6 This fact was noted in Application of *Blue Lake Producers Cooperative*, 39 C.C.P.A. 805, 194 F.2d 126, 127, 92 U.S.P.Q. (BNA) 334 (CCPA 1952), but was deemed unimportant in that case because both words in the mark were found to be descriptive.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Since we look primarily to the dominant word in a composite-word trademark, it has been generally held that *HN13* where the dominant word is suggestive and is identical in the two marks, with a difference in the two marks only in the prefix, and where the product involved, though "not being identical," "belong[s] to the same general class of merchandise" or service, there is such similarity as to create a likelihood of confusion. *See, Bon Ami Co. v. McKesson & Robbins*, 25 C.C.P.A. 826, 93 F.2d 915 (CCPA 1938); *American Throwing Co. v. Famous Bathrobe Co.*, 45 C.C.P.A. 737, 250 F.2d 377, 381, 116 U.S.P.Q. (BNA) 156 (CCPA 1957).In *Bon Ami*, Justice Hatfield, concurring, said, at pp. 916-17:

> "If all **[**∗∗**23]**  that a newcomer in the field need do in order to avoid the charge of confusing similarity is to select a word descriptive of his goods and combine it with a word which is the dominant feature of a registered trade-mark so that the borrowed word becomes the dominant feature of his mark, the registered trade-mark, made valuable and outstanding by extensive advertising and use, soon becomes of little value, and, of course, each of the subsequent initiating trade-marks (and there would be many) is of value only to the extent that its users are trading on the good will of the owner of the original registered trade-mark."

In *American Throwing Co. v. Famous Bathrobe Co.*, 250 F.2d at 381, the court was confronted with comparing two marks, both composed of two words, in both of which marks the suffix was the same and the disclaimed prefix was different, a parallel to this case. The court, in finding infringement, said:

> "The situation resolves itself, therefore to a competition between two composite marks, one containing a prefix disclaimed as descriptive and a suffix which is remotely suggestive, the other containing a prefix different from the prefix **[**∗∗**24]** in the first mark, but equally descriptive (and disclaimed), and a suffix identical to that of the first mark.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (15 of 24)2/10/2006 4:48:48 PM

**Exhibit 18, p.15**

"It is clear from the foregoing that the prefixes 'Wiper' and 'Knit' are relegated to a position of minor importance as to the question of confusing similarity. Though the suffix 'Kins' is not as strong an indication of origin as a *completely* arbitrary or coined word might be, it nonetheless is the dominant part of each of the two marks. We are of the opinion that, considering the marks as a whole in light of the foregoing, the average purchaser of infants' wear would likely be confused as to the origin of appellant's 'Knit-Kins.'" [Emphasis in text]

*HN14* Another indication of distinctiveness in a trademark consisting of a word singly or in conjunction with another is the frequency of prior use of the word in other marks, **[*1531]** particularly in the same field of merchandise or service. *Arrow Distilleries, Inc. v. Globe Brewing Co.*, 117 F.2d 347, 351 (4th Cir. 1941), is illustrative of this rule of construction. In that case, the mark was **[**25]** "Arrow." Judge Soper, after noting that the term was "in common use," emphasized that the "word itself or the pictorial representation of an arrow [had] been registered ninety-eight times as a trademark for various articles, including collars, shirts, playing cards, toggle bolts, sewing machines, condensed milk, pickles, noodles, etc. etc." Under those circumstances, the court found no likelihood of confusion, saying at p. 351:

"The inferences, to which the name naturally gives rise, have encouraged so wide a use and so frequent a registration for many different articles that there is little danger that its mere use, even in the closely related field of beers and cordials, will indicate a common origin or endanger the reputation of the plaintiff's goods."

The same thought found expression in *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259-60 (5th Cir. 1980), *cert. denied*, 449 U.S. 899, 66 L. Ed. 2d 129, 101 S. Ct. 268, 208 U.S.P.Q. (BNA) 464:

"The greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion."

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (16 of 24)2/10/2006 4:48:48 PM

Exhibit 18, p.16

In **[\*\*26]** *King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F. Supp. 1138 (S.D. Tex.1982), the court dealt with the use of "King Size" in the sale of clothes. In determining whether the term was descriptive, the court recognized as a persuasive indication "the extent to which it has been used in the trademarks of others offering a similar service or product." p. 1155 The court took note of the fact that "the term 'king size' has been used in the past or is presently being used by other retailers of wearing apparel for larger than normal size men." Because of this the court concluded against sustaining the descriptive term "king size" as having a secondary meaning. p. 1157.

Again, in *Shoe Corporation. of America v. Juvenile Shoe Corp.*, 46 C.C.P.A. 868, 266 F.2d 793, 796, 121 U.S.P.Q. (BNA) 510 (CCPA 1959), the court said:

> *HN15* ⬇ "In determining whether a word or syllable has a descriptive or suggestive significance as applied to merchandise it is proper to take notice of the extent to which it has been used in trademarks by others on such merchandise."

**[\*\*27]**

*HN16* ⬇ In those cases where the proposed trademark is a foreign word, the courts generally apply what is familiarly known as "the doctrine of foreign equivalents" in determining descriptiveness versus suggestiveness. Under this doctrine, "foreign words are translated into English and then tested for descriptiveness or genericness," "by seeing whether that foreign word would be descriptive [of the product] to that segment of the purchasing public which is familiar with that language," 1 McCarthy, *Trade-marks and Unfair Competition*, § 11.14, p. 464-65 (2d ed.1984 Lawyers Coop.), or, as a leading authority has phrased it, by testing whether a "word [sought to be registered] taken from a well-known foreign modern language, which is, itself, descriptive of a product, will be so considered when it is attempted to be registered as a trade-mark in the United States for the same product," *In Re Northern Paper Mills*, 20 C.C.P.A. 1109, 64 F.2d 998 (CCPA 1933). n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 *But see, Le Blume Import Co. v. Coty*, 293 F. 344, 358 (2d Cir. 1923), where the court said:

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (17 of 24)2/10/2006 4:48:48 PM

Exhibit 18, p.17

"But we think that a word which is not in general or common use, and is unintelligible and non-descriptive to the general public, although it may be known to linguists and scientists, may be properly regarded as arbitrary and fanciful and capable of being used as a trademark or trade-name."

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[**28]**

Thus, prior to the decision in *Northern Paper Mills* , the Second Circuit had decided in *McKesson & Robbins v. Charles H. Phillips Chemical Co.*, 53 F.2d 1011 (2d Cir. 1931), *cert. denied*, 285 U.S. 552, 76 L. Ed. 942, 52 S. Ct. 407, that the trade name of "Leche de Magnesia" when translated into English was exactly the same as the existing American trademark of a well-known American product, and accordingly was descriptive and not registrable. In *Weiss Noodle Co. v. Golden Cracknel &* **[*1532]** *Specialty Co.*, 48 C.C.P.A. 1004, 290 F.2d 845, 846, 129 U.S.P.Q. (BNA) 411 (CCPA 1961), the proposed trademark (Ha-Lush-Ka), when spelt phonetically was found to be the same as halushka in Hungarian, which means in that language "noodles." Because the proposed trademark, when translated into English, was the very name of the product involved, registration was denied because the mark was found to be descriptive. Similarly, the effort to register as a trademark for rayon the Italian word "fiocco" was denied, since the word had long been used as the term for rayon, had been used in the "official tariff regulations of Italy for many years. **[**29]** . . ." and had "been accepted by the United States Customs Bureau as meaning staple rayon." *Bart Schwartz Int. Textiles, Ltd. v. FTC*, 48 C.C.P.A. 933, 289 F.2d 665, 667, 129 U.S. P.Q. (BNA) 258 (CCPA 1961). In *Volkswagenwerk Aktiengesellschaft v. Church*, 256 F. Supp. 626 (S.D. Cal. 1966), *aff'd.*, 411 F.2d 350, 161 U.S.P.Q. (BNA) 769 (9th Cir. 1969), it was contended that the term Volkswagen, which in German means "Peoples' Car," was not registrable as descriptive. The court found the term descriptive, relying on § 1065(4), 15 U.S.C. (". . . no incontestable right shall be acquired in a mark which is the common descriptive name of any article or substance, patented or otherwise") in finding the word "the common descriptive name" of the car.

The doctrine most often has arisen in suits for infringement, where the issue is confusion with an existing trademark. Thus, *In Re Maclin-Zimmer-McGill Tobacco Co.*, 49 App. D.C. 181, 262 F. 635 (D.C.Cir. 1920), the Spanish word "El Gallo" n8 was found to conflict with the existing American trademark, "The Rooster." *But cf., Sarkli Ltd.*, 721 F.2d 353-54 (1983), **[**30]** which found no confusion because the French word "Repechage", though found to have the connotation "Second Chance" did not translate into "Second Chance" because of "dissimilarity in appearance, sound and all other factors," when both terms ("Repecage" and "Second Chance") were to be used as the trademark for a skin lotion," and *Continental Nut Company v. Le Cordon Bleu* (CCPA 1974), 494 F.2d 1395, 1397, 181 U.S.P.Q. (BNA) 646, where it was held that

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (18 of 24)2/10/2006 4:48:48 PM

**Exhibit 18, p.18**

there was the equivalence between "Blue Ribbon" and "Le Cordon Bleu." The latter case is particularly interesting. The court said:

> "What does 'Cordon Bleu' really mean to the American public and what does 'Blue Ribbon' mean? The French term is not so unusual to the American public because it is defined in American Dictionaries. Funk & Wagnalls New Standard Dictionary of the English Language defines that term as 'the blue ribbon of the order of the Holy Ghost, the highest order of the old French monarchy,' and as 'a person regarded as entitled to a badge of eminent distinction; specif., a first class cook, particularly a woman cook.'"

> "The term 'Blue Ribbon' figuratively refers to an honor or award gained for **[\*\*31]** prominence and, literally, signifies a blue ribbon awarded the first place winner in a competition. . . .

> "On the basis of dictionary definitions we are of the opinion that 'Blue Ribbon' and 'Cordon Bleu' would not have the same significance to the American public and that the marks 'BLUE RIBBON' and 'CORDON BLEU' create different commercial impressions. We conclude, therefore, that the ownership of a registration of 'BLUE RIBBON' for edible nuts does not preclude opposer from asserting damage resulting from the registration of 'CORDON BLEU' for edible nuts."

In essence, as these cases indicate, the doctrine applies where the foreign word is so descriptive of a product or is so much the equivalent of an existing common product as to create the likelihood of confusion. As Professor McCarthy has warned, unless the doctrine is given such an application, the doctrine "can result in a finding quite out of place with the reality of customer perception." (p. 466)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 "El Gallo" is "rooster" in Spanish.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*32]**

**[\*1533]** B.

From this review, certain rules may be deduced for guidance in deciding whether a mark is descriptive or suggestive. The first step in the application of such rules is to ascertain whether the mark is descriptive of some characteristics of the product or whether it merely intimates or suggests some idea of the product. In the use of this test, as applied to a composite word, one part of which has been disclaimed, we look

Exhibit 18, p.19

to the term *not* disclaimed as the dominant term and determine distinctiveness largely on the basis of that dominant term, giving minimum weight, if any, to the non-dominant prefix, especially if the prefix is a descriptive word. Whether the dominant term is suggestive or merely descriptive is most easily resolved by considering whether it is a word in common use, and one often employed in describing a product. An integral part of this inquiry is the frequency, or lack of frequency, in the use of such word in identifying the product. If the proposed mark is a foreign word, consideration of the applicability of the "doctrine of foreign equivalents" is generally resorted to. Finally, we turn to and give great weight to the action of the Patent **[**33]** and Trademark Office in its determination of whether the term is descriptive or suggestive, and its determination may be ascertained by whether the mark was registered without proof of secondary meaning, i.e., found the mark suggestive.

C.

Applying these rules to the mark in question, we conclude that the district court clearly erred in finding that the plaintiff's mark was not suggestive but descriptive. In reaching our conclusion, we, as apparently did the district court, identify as the dominant word in the two marks the word "Uno." We reach this conclusion because "Pizzeria" and "Taco" are both disclaimed. Moreover, the plaintiff, in its advertising has reduced the value of the prefix "Pizzeria" in its mark by printing it in type considerably less conspicuously than the word "Uno" in all its advertising and signs. Further, "Uno" is not a term in common use in English which describes or identifies any product or characteristics of a product. The district court found it to be in common use because it was to be found in the *Random House Dictionary of the English Language Unabridged* (1967 ed.). UNO is in the English section of this Dictionary and the definition there is "United **[**34]** Nations Organization," which clearly is not what either party intended by their mark. *See* p. 1558. The citation given in the district court's opinion for a definition of the word "Uno" is to the Italian-English section of the Dictionary, p. 1810. There the *Italian* word is defined as "1. *art.* a, an 2, *num.*, one." If we resort to the "doctrine of foreign equivalents" the term "Uno" is not to be translated as equivalent to our colloquial term "Number One" in the sense of the "best;" but the translation is merely "one," no more and no less. There is not the slightest evidence or even suggestion that this word, which is a part of "that soft bastard Latin" which Lord Byron admiringly declared, "melts like kisses from a female mouth," was ever used either in its Latin or Italian version, to mean the "best" or as descriptive of any product or was so understood by anyone familiar with either the Latin or Italian language. Never either in Italy, so far as this record shows, nor in this country, had anyone sought so much as to use, much less to register, the word "Uno" as a trade name descriptive of the "best" product. There is thus no extensive use of the word as either **[**35]** a trademark or trade name, whether in Italy or here, such as was the case of "Arrow" in *Arrow Distilleries*, 117 F.2d at 347. Uno is not descriptive of a product as was "Leche de Magnesia." Nor can the word be likened, as the district court assumed, to the well-known term "King," a word so frequently used in a trade name that it has been characterized "as weak a mark as can be found," *King-Cup Candies, Inc. v. King Candy Co.*, 48 C.C.P.A. 948, 288 F.2d 944, 947, 129 U. S.P.Q. (BNA) 272 (1961) (Smith, J., concurring and dissenting), and which carries the connotation of superiority on its face. *See also, King-Size, Inc. v. Frank's King-Size*

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (20 of 24)2/10/2006 4:48:48 PM

**Exhibit 18, p.20**

**[\*1534]**  *Clothes, Inc.*, 547 F. Supp. at 1138. "Uno" is better analogized to a term such as "Del Monte," instanced in *Pick'N Fly, Inc. v. Park & Fly, Inc.*, 489 F. Supp. at 424, or as "La Favorita," described in *Menendez v. Holt*, 128 U.S. 514, 520, 32 L. Ed. 526, 9 S. Ct. 143 (1888), as "merely a fanciful name and in a foreign language."

Finally, we look to the action of the Patent and Trademark Office. The Trademark Office granted plaintiff's mark registration **[\*\*36]**  without requiring proof of secondary meaning. Such action on the Office's part was a determination that plaintiff's mark was suggestive and not descriptive. *See Ever-Ready*, 531 F.2d at 366. Of course, this determination is not conclusive but it does give presumptive validity to the right of plaintiff to have its mark registered as suggestive and shifted the burden of proving the contrary to the defendant. However, the district court gave no weight to this registration of plaintiff's mark and did not shift the burden of proof to the defendant, even though plaintiff was plainly entitled to such. The reason the district court seems to have disregarded this registration of plaintiff's mark is because the defendant had later filed his trademark for registration and, though it first denied registration as likely to cause confusion with plaintiff's trademark the Office had, on defendant's petition for rehearing, set defendant's application, on plaintiff's filing an opposition, for a hearing on whether the granting of defendant's application would result in confusion with plaintiff's mark. We find nothing in this action of the Patent and Trademark Office which would justify **[\*\*37]**  either a conclusion or an inference that the validity of plaintiff's trademark was being decided or that its trademark was not suggestive. That this is true seems evident from the fact that the Patent and Trademark Office has deferred any hearing in its proceedings until this action has been decided.

Considering all the factors to be evaluated in resolving whether plaintiff's mark is suggestive or descriptive, we are convinced it was plain error to find that the mark was not suggestive. n9 In reaching its conclusion, the district court gave no weight to the fact that the plaintiff's predecessor in title had been granted registration without proof of secondary meaning and had assumed incorrectly that the burden of proof rested on the plaintiff.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n9 It could be plausibly argued that UNO is not merely "suggestive," as that term has been used in trademark litigation, but is also "fanciful." *Cf., Stork Restaurant v. Sahati*, 166 F.2d 348 at 355 (9th Cir. 1948). So construed, the term would be even stronger than if it were simply suggestive. Since, however, the parties have argued the case on the distinction between descriptive versus suggestive, we have not considered in any detail whether the word UNO may be deemed "fanciful" in this context. *See also, Menendez*, 128 U.S. at 520, and *Sarkli*, 721 F.2d at 353-54.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*38]**

D.

By finding the plaintiff's trademark descriptive and that plaintiff had proved no

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (21 of 24)2/10/2006 4:48:48 PM

**Exhibit 18,  p.21**

secondary meaning for its mark, the district court had in effect held the plaintiff's trademark invalid as descriptive. It did discuss other factors, though it cannot be said that its decision turned on its consideration of these factors. Nor do we think such factors particularly material to the resolution of this case. Because the district court discussed them, however, we consider them. The first of these other factors was the similarity of the two marks. Admittedly, the dominant word in both marks in this case is "Uno." This identity of the dominant term in both marks is a strong indicator of that similarity in appearance and sound which would result in confusion. Such conclusion that there was likelihood of confusion based on similarity of the two marks is supported by the decision in *Clinton Detergent Co. v. Procter & Gamble Co.*, 49 C.C.P. A. 1146, 302 F.2d 745, 746-47, 133 U.S.P.Q. (BNA) 520 (1962). The two marks in that case were Joy dish detergent (senior product) and Carjoy car cleaner. The court found such similarity as to create the likelihood of confusion. As **[\*\*39]** in *Clinton* , there is in this case a similarity between one word in each of the marks and it is the dominant **[\*1535]** word in both. Both Pizzeria and Taco are admittedly descriptive words, indicative of a food connection but it is the dominant word "Uno" that is the distinctive word and the word which has meaning and distinction for the customer. All of this points to the manifest conclusion that there may well be such similarity of mark as to give rise to a likelihood of confusion between the two.

A third factor considered by the district court under the formula for finding likelihood of confusion was similarity of services and facilities. In that connection, it is obvious that the products and services provided by the two companies serve the same purpose. One offers Italian cuisine, and full bar, in a sit-down restaurant. The other offers drive-through and counter service for Mexican fast food. In *Clinton*, 302 F.2d at 748, the court found that the two products in question, car detergent and dish detergent, although intended for different purposes, could be used for the same purpose, and that the purposes were related. Since the goods were also sold **[\*\*40]** through the same retail outlets to the same customers, the court found that the goods were similar. Here, the restaurants of both the plaintiff and the defendant are designed to serve the same purpose. If the *Clinton* court could find similarity because a dish detergent could be used to wash cars and a car cleaner to wash dishes, we think by the same token similarity of services should be found here, too, both parties operate restaurants and are in food service. In a case brought under the predecessor to the Lanham Act, Judge Learned Hand noted that only where the junior user's use is "so foreign to the owner's as to insure against any identification of the two," is use of a mark by a junior user legal. *Yale Electric Corporation v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928). He also said in that case:

"However, it has of recent years been recognized that *HN17* a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for **[\*\*41]** the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury even though the borrower does not tarnish it, or

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (22 of 24)2/10/2006 4:48:48 PM

**Exhibit 18**, p.22

divert any sales by its use. . . ." (p. 974)

Similarity of advertising is another factor evaluated by the district court. The advertising media used by the two companies are the same (primarily newspaper and radio), but the areas where they advertise are different. Taco Uno advertises only in South Carolina, whereas Pizzeria Uno does not advertise specifically in South Carolina, although it advertises in national media and in Georgia papers which reach South Carolina. There is thus a possibility that a consumer could see or hear advertisements for both establishments, and could think them related, although unless and until Pizzeria Uno expands into South Carolina, the number of consumers who encounter advertisements for both would be limited. Given the present unlikelihood of geographic overlap in advertisements, we cannot consider this factor of decisive importance.

The intent of the defendant is sometimes a major factor in infringement **[\*\*42]** cases. *HN18* If there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion, since one intending to profit from another's reputation generally attempts to make his signs, advertisements, etc., to resemble the other's so as deliberately to induce confusion. *See, e.g., Holiday Inns, Inc. v. Holiday Inns*, 364 F. Supp. 775, 177 U.S.P.Q. (BNA) 640, 646-47. But if there is good faith belief that a subsequently-adopted mark will not lead to confusion, however, that intent is no defense if a court finds actual or likelihood of confusion, *Best & Co. v. Miller*, 167 F.2d 374, 377 (2d Cir. 1948), *cert. denied*, 335 U.S. 818, 93 L. Ed. 373, 69 S. Ct. 39, 79 U.S.P.Q. (BNA) 453. We have concluded that there is such likelihood for the reasons earlier stated.

VI.

Viewing the evidence as a whole, we are of the opinion that the district **[\*1536]** court's finding that there was no likelihood of confusion between the two marks, under the rule for appellate review as spelt out in Part IV, was clearly erroneous. **[\*\*43]** It does not follow, however, that injunctive relief is in order. In *Armand's Subway, Inc. v. Doctor's Associates, Inc.*, 604 F.2d 849, 851 (4th Cir. 1979), we held that *HN19* the owner of a registered trademark "in no case would be entitled to injunctive relief except in the area actually penetrated by" the alleged infringer. Since the plaintiff has not "penetrated" the area in which defendant operates, it is not entitled to injunctive relief until it has so "penetrated." n10 We accordingly affirm the district court's denial of injunctive relief but without prejudice to plaintiff's right to renew its claims if it or one or more of its franchisees subsequently invades the same geographical area in which the defendant, using the challenged trademark, operates.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n10 For the same reason, we affirm as of this time, the denial by the district court of

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (23 of 24)2/10/2006 4:48:48 PM

**Exhibit 18**, p.23

relief in the State (South Carolina) common law unfair competition action. For a contrary view in this regard, however, *see, Stork Restaurant v. Sahati*, 166 F.2d 348, 354 (9th Cir. 1948); *Ambassador East, Inc. v. Orsatti, Inc.*, 118 U.S.P.Q. (BNA) 47, 257 F.2d 79, 82 (3d Cir. 1958). The latter case is quite interesting. The Pump Room in the Chicago hotel Ambassador East sued to enjoin the use of "Pump Room" as the name of a restaurant in Philadelphia. The district judge denied injunctive relief after the defendant agreed to add "Orsatti" as a prefix to Pump Room. In substance, he held no unfair competition where the two restaurants were more than ninety miles apart. Judge Goodrich, speaking for the Court, reversed, saying (p. 82):

> "It (the plaintiff) is entitled to have its name protected in full, not modified by other people's names and, at least, on the facts before us, not limited by distance."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[\*\*44]**

Service: **Get by LEXSEE®**
Citation: **747 F.2d 1522**
View: Full
Date/Time: Friday, February 10, 2006 - 4:47 PM EST

* Signal Legend:

🔴 - Warning: Negative treatment is indicated
🟨Q - Questioned: Validity questioned by citing refs
⚠️ - Caution: Possible negative treatment
➕ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

 About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...s/Client%20Files/Schmidt/Smith/pizzeriaunoopinion.htm (24 of 24)2/10/2006 4:48:48 PM

**Exhibit 18, p.24**