BidZirk LLC et al v. Smith                                                                Doc. 6 Att. 20
Get a Document - by Citation - 26 F.2d 972
6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-21    Page 1 of 5

*26 F.2d 972, \*; 1928 U.S. App. LEXIS 3813, \*\**

YALE ELECTRIC CORPORATION v. ROBERTSON, Commissioner of Patents, et al.

No. 305

Circuit Court of Appeals, Second Circuit

26 F.2d 972; 1928 U.S. App. LEXIS 3813

June 11, 1928

**PRIOR HISTORY:** [\*\*1]

Appeal from the District Court of the United States for the District of Connecticut.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff appealed a decision by the United States District Court for the District of Connecticut finding a likelihood of confusion to exist between defendant's products and plaintiff's products and enjoining plaintiff from manufacturing articles consisting in whole or in part of metal or other hard substance and bearing the disputed mark.

**OVERVIEW:** Both plaintiff flashlight manufacturer and defendant lock manufacturer used the mark "Yale" on their goods. The lower court found a likelihood of confusion existed between the parties' goods, and it enjoined plaintiff from using the mark "Yale" on any article it manufactured made of metal or other hard substance. The court affirmed but modified the injunction. If customers identified the borrower's use of a mark with the owner's, the borrowing was actionable even though the borrower did not tarnish the mark. The fact that the flashlights and locks were both made of metal did not give them the same descriptive properties. The lower court's injunction was too broad when it barred plaintiff from manufacturing any metal products, and the court struck this restriction.

**OUTCOME:** The court affirmed the lower court's finding because trademark infringement could occur where parties used same mark but made different products, but it modified the injunction because a ban on manufacturing any product made of metal or other hard substance was too broad.

**CORE TERMS:** flash-lights, descriptive, registration, decree, metal, merchant, proper name, reputation, convincing, disparity, borrower, insure, denote, buyers, batteries, divert

## LexisNexis(R) Headnotes

Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

**HN1** The law of unfair trade comes down very nearly to this -- as judges have repeated again and again -- that one merchant shall not divert customers from another by representing what he sells as emanating from the second. This has been, and perhaps even more now is, the whole Law and the Prophets on the subject, though it assumes many guises.

Trademark Law > Likelihood of Confusion > Similarity > General Overview

**HN2** A merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask.

Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview

**HN3** Unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful.

Trademark Law > Likelihood of Confusion > Similarity > General Overview

**HN4** If originally descriptive, a mark may have been so generally used that it denotes no particular maker, unless narrowly applied.

Trademark Law > Protection of Rights > Registration > Federal Registration

**HN5** It would plainly be a fatuity to decree the registration of a mark whose use another could at once prevent.

Trademark Law > Subject Matter > Distinctiveness > General Overview

**HN6** The phrase "same descriptive properties" should be taken as no more than a recognition that there may be enough disparity in character between the goods of the first and second users as to insure against confusion. That will indeed depend much upon trade conditions, but these are always the heart of the matter in this subject.

**OPINIONBY:** HAND

**OPINION:** Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

 [*973]  L. HAND, Circuit Judge.

The original examiner concluded that the use of the word "Yale" upon the plaintiff's goods was confusing to the defendant's buyers, but based his decision upon the ground that the mark sought to be registered was only a proper name, whose registration the statute did not allow. The commissioner affirmed this decision on the same ground, without passing on the evidence of confusion. The Court of Appeals of the District of Columbia in turn affirmed the Commissioner, but, because of a change in the law, solely on its own finding that there was likelihood of confusion between the

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/yaleopinion.htm (2 of 5)2/10/2006 4:50:38 PM

Exhibit 19, p.2

wares of the two parties. The District Judge took more testimony, and also reached the conclusion that there was likelihood of confusion. As the case came up, he was, and we are, required to accept the findings of the Patent Office on such an issue of fact, unless the evidence to the contrary is altogether convincing, Morgan v. Daniels, 153 U.S. 120, 125, 14 S. Ct. 772 (38 L. Ed. 657), for the new evidence **[**2]** was not of a kind to change the result. The proof as a whole is far from convincing against the finding; the record contains many instances where the defendant's buyers did, or said that they should, suppose the plaintiff's flash-lights to be one of the defendant's products, and it is extremely probable that mistakes will continue unless the practice ceases.

Therefore, so far as we can see, only two points of law need be considered: Whether the defendant's goods have "the same descriptive properties" as the plaintiff's, which is a condition upon its opposition to registration; whether, in view of the fact that it makes no flash-lights or batteries, it may complain of the plaintiff's use of its name. HN1 The law of unfair trade comes down very nearly to this -- as judges have repeated again and again -- that one merchant shall not divert customers from another by representing what he sells as emanating from the second. This has been, and perhaps even more now is, the whole Law and the Prophets on the subject, though it assumes many guises. Therefore it was at first a debatable point whether a merchant's good will, indicated by his mark, could extend beyond such goods as he sold. How **[**3]** could he lose bargains which he had no means to fill? What harm did it do a chewing **[*974]** gum maker to have an ironmonger use his trade-mark? The law often ignores the nicer sensibilities.

However, it has of recent years been recognized that HN2 a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, HN3 unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful. Aunt Jemima Mills Co. v. Rigney, 247 F. 407 (C.C.A. 2) L.R.A. 1918C, 1039; Akron-Overland v. Willys-Overland, 273 F. 674 (C. C.A. 3); Vogue Co. v. Thompson-Hudson Co., 300 F. 509 (C.C.A. 6); Wall **[**4]** v. Rolls-Royce, 4 F.(2d) 333 (C.C.A. 3). Although it is quite true that the point is still open in the Supreme Court. Beech-Nut Co. v. Lorillard, 273 U.S. 629, 47 S. Ct. 481, 71 L. Ed. 810. Again, HN4 if originally descriptive, a mark may have been so generally used that it denotes no particular maker, unless narrowly applied. Pabst Brewing Co. v. Decatur Brewing Co., 284 F. 110 (C.C.A. 7). Here we are dealing with a proper name, which, though it has been used quite generally, is shown to denote the defendant when applied to flash-lights. The disparity in quality between such wares and anything the plaintiff makes no longer counts, if that be true. The defendant need not permit another to attach to its good will the consequences of trade methods not its own.

There remains the question of registration, the goods not being of the "same

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/yaleopinion.htm (3 of 5)2/10/2006 4:50:38 PM

Exhibit 19, p.3

descriptive properties" in the colloquial sense. HN5 It would plainly be a fatuity to decree the registration of a mark whose use another could at once prevent. The act cannot mean that, being drafted with an eye to the common law in such matters. American Steel Foundries v. Robertson, 269 U.S. 372, 381, 46 S. Ct. 160 (70 L. Ed. 317). While we own that **[\*\*5]** it does some violence to the language, it seems to us that HN6 the phrase should be taken as no more than a recognition that there may be enough disparity in character between the goods of the first and second users as to insure against confusion. That will indeed depend much upon trade conditions, but these are always the heart of the matter in this subject. It is quite true that in Rosenberg v. Elliott (C.C.A.) 7 F.(2d) 962, the court felt bound to find that caps and suits had the same descriptive properties, quite independently of the confusion which had arisen. We cannot say that that is the case here, for the fact that flash-lights and locks are made of metal does not appear to us to give them the same descriptive properties, except as the trade has so classed them. But we regard what the trade thinks as the critical consideration, and we think the statute meant to make it the test, despite the language used.

The defense of laches needs no more than mention. The plaintiff has gone on in the face of the defendant's opposition from the very outset. If its persistence now lays a heavy burden on it, it is of its own making. It would be an easy escape from the consequences of a **[\*\*6]** wrong to assert that one has grown so old in its practice as to make any change painful.

The injunction is, however, too broad. Since the plaintiff has used the word upon nothing but flash-lights and batteries, and so far as appears does not mean to do more, the defendant needs no further protection. Besides, it does not inevitably follow that all metal objects, and all those made from any hard substance, should not bear the name "Yale." At least, this record does not raise that question. The following words will be struck from the second paragraph of the decree: "Or any article which is manufactured and consists in whole or in part of metal or other hard substance." Otherwise, the decree is affirmed, with costs.

Service: **Get by LEXSEE®**
Citation: **26 F.2d 972**
View: Full
Date/Time: Friday, February 10, 2006 - 4:49 PM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/yaleopinion.htm (4 of 5)2/10/2006 4:50:38 PM

Exhibit 19, p.4


About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/yaleopinion.htm (5 of 5)2/10/2006 4:50:38 PM

**Exhibit 19, p.5**