BidZirk LLC et al v. Smith — Doc. 6 Att. 21
Get a Document - by Citation - 928 F.2d 104
6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-22    Page 1 of 9

*928 F.2d 104, \*; 1991 U.S. App. LEXIS 3894, \*\*;*
*18 U.S.P.Q.2D (BNA) 1156*

SHELL OIL COMPANY, a Delaware Corporation, Plaintiff-Appellee, v. COMMERCIAL PETROLEUM, INCORPORATED, a North Carolina Corporation, Defendant-Appellant. SHELL OIL COMPANY, a Delaware Corporation, Plaintiff-Appellant, v. COMMERCIAL PETROLEUM, INCORPORATED, a North Carolina Corporation, Defendant-Appellee

Nos. 89-1592, 89-1596

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

928 F.2d 104; 1991 U.S. App. LEXIS 3894; 18 U.S.P.Q.2D (BNA) 1156

October 29, 1990, Argued
March 11, 1991, Decided

**PRIOR HISTORY:**

[\*\*1]  Appeals from the United States District Court for the Western District of North Carolina, at Statesville. Woodrow Wilson Jones, Senior District Judge. No. CA-88-34-ST-C-P.

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant appealed an order of the United States District Court for the Western District of North Carolina, at Statesville, enjoining it from infringing certain of plaintiff's trademarks. Plaintiff cross-appealed the court's refusal to award damages and attorney fees.

**OVERVIEW:** Plaintiff brought suit against defendant alleging trademark infringement in violation of the Lanham Trademark Act of 1946, 15 U.S.C.S. §§ 1114(1) and 1125(a) (1988), and unfair competition. Plaintiff sought an injunction pursuant to 15 U.S.C.S. § 1116 (1988), damages pursuant to 15 U.S.C.S. § 1117 (1988) and N.C. Gen. Stat. § 75-1.1 (1988), and treble damages pursuant to N.C. Gen. Stat. § 75-16 (1988). The trial court enjoined defendant from further infringement holding that defendant competed unfairly with plaintiff and infringed on plaintiff's trademark. Defendant appealed. Plaintiff cross-appealed the denial of damages. The appellate court affirmed, holding that defendant's use of plaintiff's marks was deceptive and likely to confuse customers who relied on the marks as symbols of plaintiff's quality. It further held that the trial court did not abuse its discretion in refusing to award damages because the evidence did not show that plaintiff actually suffered a monetary loss.

**OUTCOME:** The appellate court affirmed the order enjoining defendant from further acts of trademark infringement where defendant's use of plaintiff's marks was deceptive and likely to confuse customers. It also affirmed the trial court's refusal to award damages where the evidence did not show that plaintiff actually suffered a monetary loss.

**CORE TERMS:** oil, bulk, trademark, quality control, customer, distributor, genuine, Lanham Act, actual damages, Lanham Trademark Act, trademark infringement, unfair competition, treble damages, likely to cause, cross-appeals, stringent, packaged, invoices, tanker, symbol, jobber, state law, manufacturer, sponsorship, affiliation, holder, civil action, motor oil, transportation, designation

## LexisNexis(R) Headnotes

Trademark Law > Infringement Actions > Determinations
**HN1** See 15 U.S.C.S. § 1114.

Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > General Overview
Trademark Law > Federal Unfair Competition Law > False Designation of Origin > Elements
Trademark Law > Federal Unfair Competition Law > False Advertising > General Overview
**HN2** See 15 U.S.C.S. § 1125(a).

Trademark Law > Infringement Actions > Determinations
Trademark Law > Conveyances > General Overview
**HN3** As a general rule, trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent.

Trademark Law > Infringement Actions > Determinations
**HN4** A product is not truly "genuine" unless it is manufactured and distributed under quality controls established by the manufacturer. The Lanham Trademark Act, 15 U.S.C.S. § 1114, affords the trademark holder the right to control the quality of the goods manufactured and sold under its trademark. The actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain.

Trademark Law > Infringement Actions > Determinations
Trademark Law > Conveyances > General Overview
Trademark Law > Likelihood of Confusion > General Overview
**HN5** Proof of actual confusion is unnecessary to a finding of trademark infringement; the likelihood of confusion is the determinative factor.

Trademark Law > Infringement Actions > Determinations
**HN6** Liability under the Lanham Act, 15 U.S.C.S. § 1114, for trademark infringement is predicated on use of a registered trademark that is likely to cause confusion.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWEL...ments/Client%20Files/Schmidt/Smith/shelloilopinion.htm (2 of 9)2/10/2006 4:52:42 PM

**Exhibit 20, p.2**

Trademark Law > Infringement Actions > Remedies > Profits
Trademark Law > Infringement Actions > Remedies > Damages > General Overview

**HN7** Equitable damages, as measured by the infringer's profits, can be awarded to the trademark owner without proof of actual loss. However, the court has broad discretion to award any monetary relief necessary to serve the interests of justice. 15 U.S.C.S. § 1117 (1988).

Civil Procedure > Costs & Attorney Fees > Attorney Fees

**HN8** Under both the Lanham Act 15 U.S.C.S. § 1117 (1988) and N.C. Gen. Stat. § 75-16.1 (1988), attorney's fees are not awarded as a matter of right; they are within the discretion of the trial court.

Torts > Damages > Punitive Damages
Torts > Business & Employment Torts > Unfair Business Practices

**HN9** N.C. Gen. Stat. § 75-16 states that if damages are assessed the court should treble the amount. Proof of actual damages is an essential element for an award of treble damages.

**COUNSEL:** Argued: Roger Lee Edwards, Edwards & Bruce, P.A., Mooresville, North Carolina, for Appellant.

Thomas Joseph Ward, Sr., Ward, Lazarus & Grow, Washington, District of Columbia, for Appellee.

On Brief: Harold R. Bruno, III, John T. Lanahan, Ward, Lazarus & Grow, Washington, District of Columbia; Robert J. Wishart, Wishart, Norris, Henninger & Pittman, P.A., Burlington, North Carolina; Kimbley L. Muller, Shell Oil Company, Houston, Texas, for Appellee.

**JUDGES:** Hall and Murnaghan, Circuit Judges, and Young, Senior United States District Judge for the District of Maryland, sitting by designation.

**OPINIONBY:** HALL

**OPINION:** [*106] HALL, Circuit Judge.

Commercial Petroleum, Inc. ("Commercial"), appeals the order enjoining it from infringing upon certain Shell Oil Company ("Shell") trademarks. Shell cross-appeals the district court's refusal to award damages and attorney's fees. Finding no error, we affirm.

I.

Shell produces motor oils for use in heavy-duty trucks under the identifying trademarks "Rotella" and "Shell Rotella T." These oils are sold in packaged and bulk form through numerous licensed [**2] distributors and jobbers. Since 1957, the subject marks have been marketed and widely publicized in North Carolina and throughout the United States.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWEL...ments/Client%20Files/Schmidt/Smith/shelloilopinion.htm (3 of 9)2/10/2006 4:52:42 PM

Exhibit 20, p.3

Shell imposes stringent quality control standards on its trademark licensees. n1 Under these standards, Shell requires its authorized distributors and jobbers to maintain storage facilities and transportation procedures that assure the integrity of the motor oils. Stringent quality control standards are necessary because the bulk lubricant goes through numerous tanks, tanker trucks, and pumps during the distribution process, and the oil can easily be contaminated by residuals.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Examples of procedures required by Shell are the use of dedicated lines, pumps and tanks, as well as the steam cleaning of tankers prior to filling with the product.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Commercial is a wholesaler of many brands of bulk and packaged oil. For several years, Commercial sold both packaged and bulk Shell motor oil as "Shell Rotella T." After receiving a written warning from Shell concerning use of its **[\*\*3]** trademarks on bulk oil sales, Commercial discontinued using the actual trademarks on its customer invoices for Shell bulk oil sales and substituted the symbols "SRT" or "RT." However, when questioned by customers about the change, Commercial readily confirmed that all oil billed under these designations was in fact "Shell Rotella T" motor oil. Although customers may have been generally aware that it was not an authorized Shell distributor, Commercial eventually included a disclaimer to that effect on its invoices and delivery tickets.

In handling bulk oil, Commercial employed its own quality control standards, which were less stringent than Shell's and not approved by Shell. n2 Commercial has never been affiliated with Shell as a jobber or otherwise; it purchased bulk Shell oil from Shell's authorized distributors and then resold it.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 For example, Commercial hauls the subject oils immediately after hauling diesel fuel, without cleaning the tanker.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Shell alleged in its complaint that Commercial's use of Shell's marks **[\*\*4]** and the use of substitute marks constituted unfair competition and trademark infringement in violation of the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1114(1) and 1125(a) (1988), n3 because it falsely indicated affiliation, **[\*107]** sponsorship or approval by Shell and created a likelihood of confusion among prospective purchasers. Shell sought an injunction, pursuant to 15 U.S.C. § 1116 (1988) and North Carolina General Statute § 75-1.1 (1988). Shell also sought damages and profits derived from the sale of bulk oil under its marks, pursuant to 15 U.S.C. § 1117 (1988) and North Carolina General Statute § 75-1.1. Finally, Shell sought treble damages, pursuant to North

file:///C|/Documents%20and%20Settings/kmelwell.KMELWEL...ments/Client%20Files/Schmidt/Smith/shelloilopinion.htm (4 of 9)2/10/2006 4:52:42 PM

Exhibit 20, p.4

Carolina General Statute § 75-16 (1988).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Title 15 U.S.C. § 1114 provides:

(1) HN1 Any person who shall, without the consent of the registrant-

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

. . . .
shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Title 15 U.S.C. § 1125(a) provides:

HN2 Any person who . . . uses in commerce any word, term, name, symbol, . . . or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, . . .

. . . .
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**5]

After a bench trial, the district court concluded that Commercial had competed unfairly with Shell and had infringed on Shell's trademarks. The court enjoined Commercial from using the labels "Rotella," "Shell Rotella T," "RT," or "SRT," in connection with the advertising, marketing, or sale of bulk oil without authorization from Shell. The court declined to award any damages based on its finding that Shell had suffered none. Commercial appealed, and Shell cross-appealed.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWEL...ments/Client%20Files/Schmidt/Smith/shelloilopinion.htm (5 of 9)2/10/2006 4:52:42 PM

Exhibit 20, p.5

II.

Commercial raises two issues: (1) whether trademark law applies to Commercial's sale of genuine bulk oil under Shell's marks, and (2) if applicable, whether Commercial's sale of bulk oil under Shell's marks creates a likelihood of customer confusion.

First, Commercial argues that the district court erred in finding trademark infringement, because it resells genuine bulk oil under a true mark. HN3 As a general rule, trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent. *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir.), *cert. denied*, 484 U.S. 851, 98 L. Ed. 2d 108, 108 S. Ct. 152 (1987). Therefore, we must decide whether Commercial sold a "genuine" [**6] product under Shell marks in order to determine whether trademark law applies.

HN4 A product is not truly "genuine" unless it is manufactured and distributed under quality controls established by the manufacturer. *El Greco Leather Products Co. v. Shoe World*, 806 F.2d 392, 395 (2d Cir. 1986), *cert. denied*, 484 U.S. 817, 98 L. Ed. 2d 34, 108 S. Ct. 71 (1987). The Lanham Trademark Act affords the trademark holder the right to control the quality of the goods manufactured and sold under its trademark. *Id.* "The actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain." *Id.*

The district court found that the quality control standards employed by Shell for the transportation, delivery and storage of bulk oil were necessary to maintain the quality of its bulk oil, and, in fact, Shell's quality control standards were an integral part of the bulk product identified by the marks. While Commercial does not dispute the importance of quality control standards, it contends that it employs its own standards that guarantee the quality of the oil. However, in order to maintain the genuineness of the bulk oil, the quality standards must be controlled by Shell. [**7] *Id.* at 395-96. It is insufficient that Commercial employed its own quality standards. Without Shell's enforcement of its quality controls, the bulk oil sold by Commercial was not truly "genuine."

Therefore, by marketing the bulk oils under Shell's trademarks according to its own quality controls, Commercial violated Shell's right under the Lanham Act to retain control of the use of its trademark in the sale of the product to the end user. *Id.* at 392. The court's findings of fact are not clearly erroneous. We affirm its application of trademark law.

Second, Commercial argues that, even assuming its use of Shell's trademarks implicates trademark law, its sale of bulk oil under Shell's marks did not create [*108] a likelihood of customer confusion. The issue of confusion is key because HN5 "liability HN6 under the Lanham Act for trademark infringement is predicated on use of a registered trademark that 'is likely to cause confusion.'" *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S. Ct. 1516, 67 L. Ed. 2d 816, 210 U.S.P.Q. (BNA) 776 (1981).

Exhibit 20, p.6

Commercial cites *Soweco* for the proposition that the court must "consider whether or not actual confusion has occurred" in order to determine whether **[\*\*8]** a likelihood of confusion existed. Commercial argues that there was no likelihood of confusion, based on its contention that the evidence proved that customers knew that it was not an "authorized distributor" of Shell. *Soweco* does not support Commercial's proposition, however. Though *Soweco* lists "actual confusion" as one factor that courts must consider, it clearly states that "proof of actual confusion is unnecessary; the *likelihood* of confusion is the determinative factor." *Id.* at 1185-86 (emphasis in original).

The use of the Shell marks implies that the product has been delivered according to all quality control guidelines enforced by the manufacturer. The district court found that Commercial does not follow Shell quality control procedures, and there was, therefore, a likelihood of customer confusion as to the quality and source of the bulk oil. The court considered the evidence "more than ample" to show likelihood of confusion, n4 and the court's findings of fact are not clearly erroneous. We affirm its conclusion that Commercial's use of Shell's marks was deceptive and likely to confuse consumers who rely on the trademarks as symbols of Shell quality. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 For example, one defense witness testified at trial that, notwithstanding the fact that Commercial's president had told him that his company was not an authorized distributor of Shell, and that he had read the disclaimer Commercial placed on its invoices, he would look to Shell if any of his motors were damaged by the use of the oil. **[\*\*9]**

n5 Based on our affirmance of the court's finding a likelihood of customer confusion under the Lanham Trademark Act, we find it unnecessary to reach the issue of unfair competition under North Carolina state law, N.C. Gen. Stat. § 75-1.1 (1988).

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

III.

Shell cross-appeals the district court's denial of damages. n6 Shell argues that the district court incorrectly interpreted the Lanham Act by concluding that a finding of actual losses is a prerequisite to an award of damages. In denying an award of damages, the court stated simply that "the evidence does not show any damages suffered by Shell and none will be assessed." *Shell Oil Co. v. Commercial Petroleum, Inc.*, 733 F. Supp. 40 (W.D.N.C. 1989). Shell is correct that HN7 equitable damages, as measured by the infringer's profits, can be awarded to the trademark owner without proof of actual loss. *Blue Bell Co. v. Frontier Refining Co.*, 213 F.2d 354 (10th Cir. 1954). However, the court has broad discretion to award any monetary relief necessary to serve the interests of justice. 15 U.S.C. § 1117 (1988); *Metric &*

file:///C|/Documents%20and%20Settings/kmelwell.KMELWEL...ments/Client%20Files/Schmidt/Smith/shelloilopinion.htm (7 of 9)2/10/2006 4:52:42 PM

Exhibit 20, p.7

*Multistandard* [**10] *Components Corp. v. Metric's, Inc.*, 635 F.2d 710 (8th Cir. 1980). Based on the court's statement, we do not believe that it misinterpreted the requirements for awarding damages.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 Shell also cross-appeals the district court's denial of an award of attorney's fees under the Lanham Act and North Carolina law. HN8 Under both the Lanham Act and state statute, attorney's fees are not awarded as a matter of right; they are within the discretion of the trial court. *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 917, 223 U.S.P.Q. (BNA) 982 (Fed. Cir. 1984); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 747 (7th Cir. 1985); *Mayton v. Hiatt's Used Cars, Inc.*, 45 N.C. App. 206, 262 S.E.2d 860 (1980) (under N.C. Gen. Stat. § 75-16.1, attorney's fees are within discretion of court but are contingent upon finding actual damages). Finding no abuse of discretion, we affirm the court's denial of attorney's fees.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Moreover, the court found that, though some of Shell's distributors may have suffered losses, Shell suffered no [**11] actual damages as a result of Commercial's infringement. Though the district court *could* have awarded Shell some or all of [*109] Commercial's profit, it did not abuse its discretion by not doing so. n7

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 Shell also argues that based on the court's finding of unfair competition, damages should have been assessed and trebled under North Carolina General Statute § 75-16 (1988). Section 75-16 HN9 states in pertinent part: "if damages are assessed . . . treble . . . the amount." Proof of actual damages is an essential element for an award of treble damages. *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 268 S.E.2d 271 (1980). Because we affirm the court's finding no actual damages, Shell is not entitled to treble damages under state law.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

AFFIRMED

Service: **Get by LEXSEE®**
Citation: **928 F.2d 104**
View: Full
Date/Time: Friday, February 10, 2006 - 4:51 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs

file:///C|/Documents%20and%20Settings/kmelwell.KMELWEL...ments/Client%20Files/Schmidt/Smith/shelloilopinion.htm (8 of 9)2/10/2006 4:52:42 PM

Exhibit 20, p.8

- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWEL...ments/Client%20Files/Schmidt/Smith/shelloilopinion.htm (9 of 9)2/10/2006 4:52:42 PM

**Exhibit 20, p.9**