BidZirk LLC et al v. Smith                                                                 Doc. 6 Att. 27
Get a Document - by Citation - 5 F.3d 59
6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-28    Page 1 of 8

*5 F.3d 59, \*; 1992 U.S. App. LEXIS 2735, \*\*;*
*70 Rad. Reg. 2d (P & F) 765; 20 Media L. Rep. 1904*

EDGE BROADCASTING COMPANY, t/a Power 94, Plaintiff-Appellee, v. UNITED STATES OF AMERICA; FEDERAL COMMUNICATIONS COMMISSION, Defendants-Appellants.

No. 90-2668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

5 F.3d 59; 1992 U.S. App. LEXIS 2735; 70 Rad. Reg. 2d (P & F) 765; 20 Media L. Rep. 1904

October 31, 1990, Argued
February 27, 1992, Decided

## SUBSEQUENT HISTORY: [\*\*1]

Released for Publication August 31, 1993.

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Frank A. Kaufman, Senior District Judge. (CA-88-693-N)

**DISPOSITION:** AFFIRMED

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Appellant government sought review of a judgment from the United States District Court for the Eastern District of Virginia construing 18 U.S.C.S. §§ 1304, 1307 as governing only commercial speech and holding that §§ 1304, 1307, as applied to appellee corporation, unconstitutionally restricted commercial speech.

**OVERVIEW:** Appellee corporation owned a North Carolina radio station that derived a large audience from neighboring Virginia, which had a state-sanctioned lottery. 18 U.S.C.S. § 1304 prohibited broadcast of lottery ads or information, while 18 U.S.C.S. § 1307 exempted liability if they ads were for state-sanctioned lotteries and broadcast by a station licensed by a lottery-sanction state or an adjacent state that had a lottery. Appellee challenged the constitutionality of §§ 1304, 1307 as applied to this case. Appellant government sought review after the lower court found §§ 1304, 1307 unconstitutional. Commercial speech that was not false, deceptive, or did not concern unlawful activity could be restricted only if a substantial governmental interest was served through means that directly advanced the interest. The restriction did not directly serve the appellee's interest in regulating lottery information. Prohibiting appellee from advertising Virginia's lottery was ineffective in shielding North Carolina residents from lottery information, given the listeners' proximity. An "as applied" analysis was proper to determine constitutionality. Judgment was affirmed.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/edgeopinion.htm (1 of 8)2/10/2006 9:08:02 AM

Exhibit 26, p.1

Dockets.Justia.com

**OUTCOME:** The judgment that federal laws prohibiting broadcast of lottery ads under certain conditions were unconstitutional was affirmed. The laws did not directly serve appellee government's substantial interest in regulating lottery information as applied to appellant corporation.

**CORE TERMS:** lottery, commercial speech, broadcast, advertisement, regulation, advertising, prong, First Amendment, governmental interest, residents, free speech, broadcasting, radio station, ineffective, gambling, station, exposed, license, radio, licensed, reside, noncommercial speech, government interest, lawful activity, state law, infringement, non-lottery, discourage, misleading, accorded

## LexisNexis(R) Headnotes

Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses
**HN1** See 18 U.S.C.S. §§ 1304.

Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses
**HN2** See 18 U.S.C.S. § 1307.

Communications Law > Broadcasting > FCC Regulations
**HN3** The Federal Communications Commission may revoke any station license for a violation of 18 U.S.C.S. § 1304, as provided by 47 U.S.C.S. § 312(a).

Constitutional Law > Fundamental Freedoms > Freedom of Speech > Commercial Speech
**HN4** Although commercial advertising is entitled to less protection under U.S. Const. amend. I than noncommercial speech, commercial speech that is not false or deceptive and does not concern unlawful activity may be restricted only in the service of a substantial government interest, and only through means that directly advance that interest. In order to uphold the constitutionality of a regulation on commercial speech, the government must establish that the restriction directly advances a substantial government interest.

Constitutional Law > Fundamental Freedoms > Freedom of Speech > Commercial Speech
**HN5** The test for determining the constitutionality of a restriction on commercial speech requires, at the outset, that the court determine whether the expression is protected by U. S. Const. amend. I. For commercial free speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, the court asks whether the asserted governmental interest is substantial. If both inquiries yield positive answers, the court must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

Constitutional Law > Fundamental Freedoms > Freedom of Speech > Commercial Speech

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/edgeopinion.htm (2 of 8)2/10/2006 4:59:20 PM

Exhibit 26, p.2

**HN6** The fourth prong of the Central Hudson test provides that a restriction on commercial speech may be no more extensive than necessary to further the state's interests. Under this standard, the regulation must be one that employs not necessarily the least restrictive means, but a means narrowly tailored to achieve the desired objective.

Constitutional Law > Fundamental Freedoms > Freedom of Speech > Commercial Speech

**HN7** An "as applied" analysis should be performed to test the constitutionality of a particular application of a law prior to addressing any other constitutional challenges. If a regulation on commercial speech cannot pass constitutional muster "as applied," then the constitutional analysis is concluded.

**COUNSEL:** ARGUED: Robert David Kamenshine, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants.

Conrad Moss Shumadine, WILLCOX & SAVAGE, P.C., Norfolk Virginia, for Appellee.

ON BRIEF: Stuart M. Gerson, Assistant Attorney General, Anthony J. Steinmeyer, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Henry E. Hudson, United States Attorney, Norfolk, Virginia; Nancy Stanley, FEDERAL COMMUNICATIONS COMMISSION, Washington, D.C., for Appellants.

Walter D. Kelley, Jr., Cecelia A. Weschler, WILLCOX & SAVAGE, P.C., Norfolk, Virginia; Wayne G. Souza, CROSHAW, SIEGEL, BEALE, HAUSER & LEWIS, P.C., Virginia Beach, Virginia, for Appellee.

**JUDGES:** Before WIDENER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and HADEN, Chief United States District Judge for the Southern District of West Virginia, sitting by designation. Judge Widener **[**2]** wrote a dissenting opinion.

**OPINIONBY:** PER CURIAM

**OPINION:** **[*60]** *OPINION*

PER CURIAM:

The Federal Communications Commission appeals a judgment construing 18 U.S.C. §§ 1304 and 1307 as governing only commercial speech and holding the application of 18 U.S.C.§§ 1304 and 1307 limiting advertising by a radio station to be an unconstitutional restriction on commercial speech. We affirm.

I.

Edge Broadcasting Corporation (Edge) owns and operates the 100,000 watt radio station WMYK-FM known as "Power 94." Power 94 is licensed by the Federal Communications Commission to Elizabeth City, North Carolina, and broadcasts from Moyock, North Carolina. Moyock is approximately three miles from the North Carolina

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/edgeopinion.htm (3 of 8)2/10/2006 4:59:20 PM

Exhibit 26, p.3

and Virginia borderline. Corporate offices are located in Virginia Beach, Virginia, and Power 94 carries the dual identification of Elizabeth City, North Carolina, and Virginia Beach, Virginia.

Since Power 94 is located so close to the Virginia and North Carolina borderline, its signal is broadcast to residents of both states. It is estimated that 92.2% of Power 94's listening audience resides in Virginia and that 7.8% of the audience resides in North Carolina. Power 94's signal reaches nine counties in **[\*\*3]** North Carolina. Less than 2% of all North Carolinians reside in those counties.

The State of North Carolina and the Commonwealth of Virginia have adopted opposite views regarding state-sponsored lotteries. A majority of Virginia voters approved a referendum on November 3, 1987, creating a state-run lottery to "produce revenue consonant with the probity of the Commonwealth and the general welfare of the people." Virginia Code Ann., § 58.1-4001 (1987). In North Carolina, to the contrary, it is a criminal offense to operate a lottery and that state does not sponsor a lottery. N. C. Gen. Stat. §§ 14.289 and 14.291 (1983). Edge derives most of its advertising income from Virginia based companies and seeks to participate in the very substantial expenditures Virginia makes in advertising its lottery. Edge has refrained from broadcasting information regarding the Virginia lottery for fear of violating federal law.

As part of a federal regulatory scheme of state lotteries, 18 U.S.C. §§ 1304 and 1307 provide in pertinent part as follows:

**HN1**

**[\*61]** 1304. Whoever broadcasts by means of any radio station for which a license is required by any law of the United States, or whoever, operating any such **[\*\*4]** station, knowingly permits the broadcasting of, any advertisement of or any information concerning any lottery, gift enterprise, or similar scheme . . . shall be fined not more than $ 1,000 or imprisoned not more than one year, or both.

**HN2**

1307. (a) [An exemption from criminal liability under § 1304 is granted for] . . . an advertisement, list of prizes, or information concerning a lottery conducted by a state acting under the authority of state law --

\* \* \*

(2) broadcast by a radio or television station licensed to a location in that state or an adjacent state which conducts such a lottery.

Pursuant to its regulatory authority, **HN3** the Federal Communications Commission "may revoke any station license . . . (6) for violation of section 1304." 47 U.S.C. § 312 (a). Since Power 94 is licensed to North Carolina, a non-lottery state, the station is prohibited from advertising Virginia's lottery and it may suffer possible revocation of its license if it refuses to comply with the regulations.

Edge brought an action challenging the constitutionality of 18 U.S.C. §§ 1304 and 1307 as applied to prohibit Power 94's broadcasting of Virginia lottery advertisements and information. The district **[\*\*5]** court construed sections 1304 and 1307 as

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/edgeopinion.htm (4 of 8)2/10/2006 4:59:20 PM

Exhibit 26, p.4

relating only to commercial speech and held that the application of these sections to Edge's operation of Power 94 is a constitutionally invalid restriction on commercial speech. From this order the Federal Communications Commission appeals.

II.

Under First Amendment analysis, a lesser degree of protection is accorded commercial speech than other constitutionally guaranteed expressions. * Commercial speech is accorded "'a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values,' and is subject to 'modes of regulation that might be impermissible in the realm of noncommercial expression.'" *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 477, 106 L. Ed. 2d 388, 109 S. Ct. 3028 (1989) (*citing Ohralik v. Ohio State Bar Ass'n.*, 436 U. S. 447, 456, 56 L. Ed. 2d 444, 98 S. Ct. 1912 (1978)). HN4 Although commercial advertising is entitled to less protection under the First Amendment than noncommercial speech, "commercial speech that is not false or deceptive and does not concern unlawful activity . . . may be restricted only in the service of a substantial government interest, and only through means [**6] that directly advance that interest." *Zauderer v. Office of Disciplinary Council*, 471 U.S. 626, 638, 85 L. Ed. 2d 652, 105 S. Ct. 2265 (1985). In order to uphold the constitutionality of a regulation on commercial speech, the government must establish that the restriction "directly advances a substantial government interest." *Id.* at 641.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

* The parties are in agreement that 18 U.S.C. §§ 1304 and 1307 cannot be applied to restrict noncommercial speech about the Virginia lottery. Consequently, listings of prizes and winners and more general news accounts of lottery activities are fully protected by the First Amendment. *See First National Bank of Boston v. Bellotti*, 435 U. S. 765, 55 L. Ed. 2d 707, 98 S. Ct. 1407 (1978).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - HN5 The test for determining the constitutionality of a restriction on commercial speech is as follows:

At the outset, we must determine whether the expression is protected by the First Amendment. For commercial free speech to come within that provision, [1] it at least must concern lawful activity and not be misleading. [**7] Next, we ask [2] whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must [3] determine whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest.

*Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566, 65 L. Ed. 2d 341, 100 S. Ct. 2343 (1980).

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/edgeopinion.htm (5 of 8)2/10/2006 4:59:20 PM

Exhibit 26, p.5

**[\*62]**  Edge's desire to broadcast Virginia lottery information clearly meets the first prong of the *Central Hudson* test. Virginia's lottery is a lawful activity and previous advertisements were not misleading.

The governmental interest asserted in regulating lottery information is the furtherance of fundamental tenets of federalism which permit non-lottery states to discourage gambling. Although Edge argues that discouraging gambling is not a substantial governmental interest under the second prong of the *Central Hudson* test, the governmental interest asserted is similar to other "substantial" interests recognized as meeting this prong. *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. at 568-69 (a state law restriction on utility **[\*\*8]** advertising designed to reduce energy consumption); *Oklahoma Broadcasters Association v. Crislip*, 636 F. Supp. 978 (W.D. Okla. 1985) (a state statutory prohibition upon liquor advertising intended to reduce consumption of alcohol). Edge argues that this interest is not sufficiently substantial because some thirty-three states now sponsor their own lotteries. Nevertheless, as the district court noted, the second prong of the *Central Hudson* test is not a strict one and the government has satisfied it in this case.

The third prong requires that a restriction on commercial speech directly advance the interest of the jurisdiction whose legislation is challenged. "Ineffective or remote support" fails to justify an infringement on First Amendment free speech. *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. at 564. Under the unique circumstances of this case, the government's goal to preserve state lottery policies is not advanced by precluding Power 94 from broadcasting Virginia lottery advertisements. Approximately 127,000 North Carolina residents are within Power 94's broadcast range. These listeners, who comprise **[\*\*9]** less than 2% of North Carolina's total population, receive most of their radio, newspaper and television communications from Virginia-based media. The North Carolina residents who might listen to Power 94 are inundated with Virginia's lottery advertisements. Simply put, the North Carolina residents which the statutes purport to protect already are exposed to numerous Virginia Lottery advertisements through telecast, broadcast and print media. Prohibiting Power 94 from advertising Virginia's lottery is ineffective in shielding North Carolina residents from lottery information. This ineffective or remote measure to support North Carolina's desire to discourage gambling cannot justify infringement upon commercial free speech.

HN6

The fourth prong of the *Central Hudson* test provides that a restriction on commercial speech may be "no more extensive than necessary to further the state's interests . . . ." 447 U.S. at 569-70. Under this standard, the regulation must be one "that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480, 106 L. Ed. 2d 388, 109 S. Ct. 3028 (1989). **[\*\*10]** The district court concluded that the lottery advertisement regulations met this standard. Neither party objects to this finding and we concur with the district court's reasoning.

Thus, in this case 18 U.S.C. §§ 1304 and 1307 fail the *Central Hudson* test since the regulations do not directly advance the governmental interest asserted. Since the

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/edgeopinion.htm (6 of 8)2/10/2006 4:59:20 PM

Exhibit 26, p.6

regulations as applied to Edge Broadcasting fail to meet the third prong of the *Central Hudson* test, they work an unconstitutional restriction on commercial speech.

III.

The Federal Communications Commission additionally argues that the district court improperly used an "as applied" standard when evaluating Edge's challenge to 18 U.S.C. §§ 1304 and 1307. We disagree.

An "as applied" challenge is proper when testing the validity of facially valid restrictions on political speech. *Hess v. Indiana*, 414 U.S. 105, 38 L. Ed. 2d 303, 94 S. Ct. 326 (1973). The same is true under commercial free speech analysis. HN7 An "as applied" analysis should be performed to test the constitutionality of a particular application of a law **[*63]** prior to addressing any other constitutional challenges. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 106 L. Ed. 2d 388, 109 S. Ct. 3028 (1989). **[**11]** If a regulation on commercial speech cannot pass constitutional muster "as applied," then the constitutional analysis is concluded. Accordingly, the district court properly used an "as applied" analysis when testing the constitutionality of the challenged provisions.

IV.

Based on the foregoing reasons, we conclude that the district court properly held that 18 U.S.C. §§ 1304 and 1307 are an unconstitutional restriction on commercial speech as applied to advertisements concerning Virginia's lottery by Power 94 and Edge Broadcasting. Accordingly, the decision below is hereby

*AFFIRMED*.

**DISSENTBY:** WIDENER

**DISSENT:** WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

I disagree with the majority's analysis of the third prong of the *Central Hudson* requirement.

As the majority correctly recites, the interest of the United States is to preserve state lottery policies, and that is explicitly expressed in 18 U.S.C. §§ 1304 and 1307. I think it a mistake to hold, as we do, that those statutes as applied are invalid because less than 2% of North Carolina's total population are exposed to the broadcast of WMYK-FM. And the fact that such 2% may be exposed to the broadcasts from Virginia does **[**12]** not alter the fact that Congress has the undoubted right to enact the legislation which it did. The fact that the legislation does not uniformly succeed in all instances is no reason to hold it unconstitutional.

Another objection to this decision is that as a practical matter the electromagnetic waves of immense numbers of radio and television broadcasts, probably a majority of

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/edgeopinion.htm (7 of 8)2/10/2006 4:59:20 PM

**Exhibit 26, p.7**

them, cross state lines, so if our decision is carried to its logical conclusion, as it will be, it will serve to completely invalidate the statutes involved.

    Service: **Get by LEXSEE®**
    Citation: **5 F.3d 59**
       View: Full
Date/Time: Friday, February 10, 2006 - 4:58 PM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/edgeopinion.htm (8 of 8)2/10/2006 4:59:20 PM

**Exhibit 26, p.8**