BidZirk LLC, et al. v. Smith
Get a Document - by Citation - 917 F.2d 161
6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-30    Page 1 of 9
Doc. 6 Att. 29

*917 F.2d 161, \*; 1990 U.S. App. LEXIS 18742, \*\*;*
*16 U.S.P.Q.2D (BNA) 1646*

**OSEM FOOD INDUSTRIES LTD., Plaintiff-Appellant, v. SHERWOOD FOODS, INC., SHERWOOD BRANDS INC., UZIEL FRYDMAN, Defendants-Appellees. OSEM FOOD INDUSTRIES LTD., Plaintiff-Appellant, v. SHERWOOD FOODS, INC., SHERWOOD BRANDS INC., UZIEL FRYDMAN, Defendants-Appellees, and AMIR FRYDMAN, Defendant**

Nos. 89-3248, 89-3310

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

917 F.2d 161; 1990 U.S. App. LEXIS 18742; 16 U.S.P.Q.2D (BNA) 1646

January 8, 1990, Argued
October 25, 1990, Decided

**SUBSEQUENT HISTORY:** Rehearing En Banc Denied November 20, 1990, Reported at: 1990 U.S. App. LEXIS 20538.

**PRIOR HISTORY:**

 **[\*\*1]**  Appeals from the United States District Court for the Middle District of North Carolina, at Winston-Salem, N. Carlton Tilley, Jr., District Judge. CA-89-23-WS.

**DISPOSITION:** Vacated and Remanded.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff appealed from the order of the United States District Court for the Middle District of North Carolina, at Winston-Salem, denying plaintiff's motion for a preliminary injunction in its action for trade dress infringement under the Lanham Act, 15 U.S.C.S. § 1125(a).

**OVERVIEW:** Plaintiff sold packaged soup, and sued defendants for trade dress infringement under the Lanham Act. Defendants admitted copying plaintiff's trade dress in developing their product's original trade dress, which it slightly modified after the case was commenced. The court denied plaintiff's motion for a preliminary injunction refusing to consider the presumption of secondary meaning because the revised package created a significantly different overall impression from plaintiff's original package. The court of appeals vacated the order, and remanded the case. The court held that the district court erred in not properly considering the presumption of secondary meaning and the presumption of confusion that arose from defendants' admitted copying.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/osemopinion.htm (1 of 9)2/10/2006 11:15:52 AM

Exhibit 28, p.1
Dockets.Justia.com

**OUTCOME:** The court of appeals vacated the order, and remanded the case, since the district court did not properly consider the presumption of secondary meaning that arose from defendants' admitted copying of plaintiff's trade dress, and did not properly consider the presumption of confusion that arose from that same copying.

**CORE TERMS:** package, copying, preliminary injunction, secondary meaning, soup, trade dress, revised, band, copied, color, green, newcomer, consumer, competitors, customers, red, giving effect, presumed, centered, deceived, yellow, symbol, Lanham Act, unfair competition, order appealed, reconsider, impression, dehydrated, confusing, effective

## LexisNexis(R) Headnotes

Trademark Law > Infringement Actions > Determinations
Trademark Law > Likelihood of Confusion > Intent > General Overview
Trademark Law > Subject Matter > Secondary Meaning > General Overview

**HN1** Evidence of intentional direct copying establishes a prima facie case of secondary meaning sufficient to shift the burden of persuasion to the defendant on that issue. This not only shifts the burden of proof but acts as a presumption upon which a judgment must issue in the absence of rebutting proof.

Trademark Law > Subject Matter > Secondary Meaning > General Overview
Trademark Law > Likelihood of Confusion > General Overview
Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > General Overview

**HN2** When a newcomer to the market copies a competitor's trade dress, its intent must be to benefit from the goodwill of the competitor's customers by getting them to believe that the new product is either the same, or originates from the same source as the product whose trade dress was copied. Logic requires, no less than the presumption of secondary meaning from copying, that from such intentional copying arises a presumption that the newcomer is successful and that there is a likelihood of confusion. It would be inconsistent not to require one who tries to deceive customers to prove they have not been deceived. A respectable body of authority has recognized that the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > Preliminary Injunctions
Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > General Overview
Trademark Law > Likelihood of Confusion > Intent > General Overview

**HN3** The proper course of action in a case where the newcomer copied its competitor's trade dress is to apply the presumption of confusion and consider, in the setting of an application for a preliminary injunction, whether the newcomer has presented sufficient evidence to rebut the presumption.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/osemopinion.htm (2 of 9)2/10/2006 5:04:01 PM

Exhibit 28, p.2

**COUNSEL:** Argued: George Lester Little, Jr., Petree, Stockton & Robinson, Winston-Salem, North Carolina, for Appellant.

Laurence R. Hefter, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, District of Columbia, for Appellees.

On brief: H. C. Roemer, Jr., Thomas E. Graham, Petree, Stockton & Robinson, Winston-Salem, North Carolina, for Appellant.

Robert D. Litowitz, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, District of Columbia, William D. Spry, Jr., David C. Smith, Allman, Spry, Humphreys, Leggett & Howington, P.A., Winston-Salem, North Carolina, for Appellees.

**JUDGES:** Widener and Sprouse, Circuit Judges, and Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

**OPINIONBY:** WIDENER

**OPINION:** **[*162]** WIDENER, Circuit Judge

Osem Food Industries Ltd. (Osem) appeals from the district court's denial of a preliminary injunction to enjoin Sherwood Foods, Inc.'s (Sherwood) n1 continued use of a dehydrated soup package that Osem contends violates 15 U.S.C. § 1125(a) of the Lanham Act. n2 Osem argues that the district court erred **[**2]** in not giving effect to a presumption of secondary meaning from Sherwood's admitted copying of Osem's trade dress; that even without the presumption, its trade dress had secondary meaning; that the district court erred in not giving effect to a presumption of likelihood of consumer confusion from Sherwood's deliberate copying; that even if there is no presumption of confusion, the district court erred in not applying the digits of confusion test to the case; that the district court failed to give adequate consideration to evidence of actual confusion; and that the district court incorrectly balanced the harm to the parties and to the public in refusing to issue the preliminary injunction. We are of opinion that the district court did not properly consider the presumption of secondary meaning that arose from Sherwood's admitted copying, and in the same vein did not properly consider the presumption of confusion that arose from that same copying. Thus, we vacate the order appealed from and remand to the district court for it to reconsider its order regarding the preliminary injunction in the light of this opinion.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Sherwood Brands, Inc. and Uziel Frydman are also parties. We may refer to the defendants collectively as Sherwood.

n2 Osem's suit also alleged common law unfair competition and violations of the North Carolina General Statute § 75-1.1.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/osemopinion.htm (3 of 9)2/10/2006 5:04:01 PM

Exhibit 28, p.3

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - **[\*\*3]**

Osem, an Israeli corporation, manufactures dehydrated soup mixes and, since 1985, has distributed them in the United States. Osem has sold approximately five million of its soup packages in the United States and caused tens of thousands of leaflets advertising the packages to be distributed **[\*163]** in the United States. For some time, Sherwood acted as a distributor for Osem. That distribution terminated in a lawsuit, and, in late 1988, Osem learned that Sherwood was distributing competing soup mixes in packages which were nearly identical in color scheme, design and graphics to Osem's packages. Sherwood has since admitted that it developed its first package by copying Osem's packaging. Osem initially brought this action against Sherwood on January 6, 1989, alleging a violation of the Lanham Act based on Sherwood's use of the package which was copied from Osem's package. Sherwood agreed to stop using the challenged package, and the district court entered its consent injunctive order **[\*\*4]** preventing Sherwood from further use of the package. Some time later, Osem learned that Sherwood had slightly revised its copied package and was selling soup in the revised packaging. Sherwood's revisions were to make some color changes on the package. n3 On February 27, 1989, Osem filed a motion for a show cause order and for a preliminary injunction concerning Sherwood's use of its revised package. On April 3, 1989, the district court denied the motion for a preliminary injunction. On August 4, 1989, Osem filed a renewed motion for a preliminary injunction, based on additional evidence, which was denied by the district court on August 16, 1989. Osem appeals from the district court's denial of a preliminary injunction.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Osem packages its soup in a foil package which is 6" x 4 5/8" with a red band across the top 1 1/8" which has the name "GOURMET CUISINE" centered in white with two white lines, one above and one below the name. The name has both the first (G) and last (E) letters enlarged. Above the name is a white symbol of a pot. The next color band -- yellow -- is 9/16" wide with the names of the various soup products centered in green lettering. Sherwood also started selling soups with identically the same names as Osem: Chicken Flavored Noodle, Minestrone, Spring Vegetable, and French Style Onion. The final color band is a green band covering the bottom 4 3/8" of the package. In this band Osem's package has "SOUP MIX" or "NOODLE SOUP MIX" centered in white above a caption in white reading "Makes Five 6 oz. Servings" which is above a white two handled soup bowl filled with soup with a spoon extending from the bowl. The bowl is on a white plate adorned with vegetables which supposedly are in the product. In the lower left hand corner of the package is a yellow square with green lettering which says "NET WT. 1.76 oz. 50g. E." Sherwood's first copy of Osem's package was virtually identical to that described above except for some minor changes. It substituted "SOUP DU JOUR" for "GOURMET CUISINE" and added "CHEF'S GOURMET" in yellow print nearby. It also added "Makes Every Day a SOUPer Day" to the red band. It substituted a white symbol of a Chef's hat for Osem's white symbol of a pot. Finally, it said "SOUP AND RECIPE MIX" where Osem's said "SOUP MIX." The Sherwood copy of the package was 1/8" shorter than Osem's and the width of the colored bans varied very slightly from Osem's.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/osemopinion.htm (4 of 9)2/10/2006 5:04:01 PM

Exhibit 28, p.4

The color changes which Sherwood undertook to the copied package to arrive at the revised package are as follows. It changed the bottom band from green to red and changed the color of the soup variety from green to red. The remainder of the package is largely the same.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[**5]**

Osem's first argument is that the district court erred in not giving effect to the presumption of secondary meaning arising from Sherwood's admitted copying. In *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 448, 228 U.S.P.Q. (BNA) 705 (4th Cir. 1986), we held that HN1 "evidence of intentional direct copying establishes a prima facie case of secondary meaning sufficient to shift the burden of persuasion to the defendant on that issue." The court went on to describe its action not merely as a shifting of the burden of proof but as a "presumption" upon which a judgment "must issue" in the absence of rebutting proof. 783 F.2d at 448. Although the district court, in the case before us, found the acknowledged copying, it refused to consider the presumption of secondary meaning because the revised package "creates a significantly different overall impression" from Osem's original package. It thus erred when it considered the presumption not to be effective rather than considering the presumption to be effective and taking into consideration any impression it might have in rebuttal, if at all. It is true that at some point, when changes are made to a copy, the copy ceases to be a copy and becomes something original. **[**6]** However, we believe that the changes considered **[*164]** at this stage of this case make the revised package little other than a copy. n4, n5

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Additionally, we note that some courts have indicated persuasively that once a company commits an unfair business practice it "should thereafter be required to keep a safe distance away from the margin line." *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 705, 212 U.S.P.Q. (BNA) 904 (5th Cir. 1981), *cert. denied*, 457 U.S. 1126, 73 L. Ed. 2d 1342, 102 S. Ct. 2947 (1982), quoting *Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353, 354 (6th Cir. 1930). *Chevron Chemical* went on to discuss *Kimberly Knitwear, Inc. v. Kimberley Stores, Inc.*, 331 F. Supp. 1339, 171 U.S.P.Q. (BNA) 536 (W.D. Mich. 1971), where a manufacturer named Kimberly sued a retailer who used the name Kimberley's. During the pendency of the suit, the retailer changed the name to Kimleys. The court prevented the use of the revised name. It stated that the

> defendants have attempted to retain the goodwill they have appropriated by the use of plaintiff's name, through the use of a name which, while perhaps not confusingly similar, is so reminiscent of the plaintiff's that it continues to accord the defendants some of the same unfair advantage they have previously enjoyed. This they may not do.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/osemopinion.htm (5 of 9)2/10/2006 5:04:01 PM

Exhibit 28, p.5

*Chevron Chemical*, 659 F.2d at 705, quoting *Kimberly Knitwear*, 331 F. Supp. at 1341.

n5 Believing that *Kramer* requires a presumption of secondary meaning in this case, we need not address Osem's second argument that even without the presumption, it put on enough evidence to show that its trade dress had a secondary meaning.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*7]**

Next, Osem argues that there should be a presumption of a likelihood of consumer confusion which flows from Sherwood's copying. In *Kramer*, 783 F.2d at 448 n.24, we reserved that issue. Whether there is a presumption of likelihood of consumer confusion from proof of intentional copying of trade dress is an issue that has divided the circuits. The Second and Ninth Circuits, for example, have held that a presumption of confusion arises from copying. n6 The Third, Seventh, and Eleventh Circuits have held that although copying is a factor to consider, no presumption arises. n7 A leading commentator on the subject attributes the presumption to the Second Circuit's analysis in *My-T-Fine Corp. v. Samuels*, 69 F.2d 76 (2d Cir. 1934), and states that it is "an integral part of the fabric of trademark analysis." See McCarthy, *Trademarks and Unfair Competition* **[\*\*8]** §§ 23:34-35 (2d ed. 1984). Footnote 24 in *Kramer* is of like import. In *My-T-Fine Corp. v. Samuels*, 69 F.2d at 77, the court reasoned: **[\*\*9]**

> the plaintiff has proved no more than that the boxes look a good deal alike, and that confusion may well arise; and were it not for the evidence of the defendants' intent to deceive and so to secure the plaintiff's customers, we should scarcely feel justified in interfering at this stage of the cause [on a motion for preliminary injunction]. But where it appears, we think that it has an important procedural result; a late comer who deliberately copies the dress of his competitors already in the field, must at least prove that his effort has been futile. Prima facie the court will treat his opinion so disclosed as expert and will not assume that it was erroneous. He may indeed succeed in showing that it was; that, however bad his purpose, it will fail in **[\*165]** execution; if it does, he will win. But such an intent raises a presumption that customers will be deceived.

We agree with that analysis. *HN2* When a newcomer to the market copies a competitor's trade dress, its intent must be to benefit from the goodwill of the competitor's customers by getting them to believe that the new product is either the

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/osemopinion.htm (6 of 9)2/10/2006 5:04:01 PM

Exhibit 28, p.6

same, [**10] or originates from the same source as the product whose trade dress was copied. Logic requires, no less than the presumption of secondary meaning from copying, that from such intentional copying arises a presumption that the newcomer is successful and that there is a likelihood of confusion. It would be inconsistent not to require one who tries to deceive customers to prove they have not been deceived. This court, indeed, has previously observed that a "respectable body of authority" has recognized "'that the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer.'" *Amp Inc. v. Foy*, 540 F.2d 1181, 1187 (4th Cir. 1976), quoting *Harold F. Ritchie Inc., v. Chesebrough-Ponds Inc.*, 281 F.2d 755, 758 (2nd Cir. 1960). See also *Communications Satellite v. Comcet, Inc.*, 429 F.2d 1245 (4th Cir. 1970), *cert. denied*, 400 U.S. 942, 27 L. Ed. 2d 245, 91 S. Ct. 240 (1970).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 See *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954, 205 U.S.P.Q. (BNA) 297 (2d Cir. 1980) ("If there was intentional copying the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded."); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354, 204 U.S.P.Q. (BNA) 808 (9th Cir. 1979)("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived.").

n7 See *American Home Products v. Barr Laboratories*, 834 F.2d 368, 371, 5 U.S.P.Q.2D (BNA) 1073 (3d Cir. 1987) (copying "does not relieve plaintiff of its burden of proving likelihood of confusion," it is "at most a factor tending to suggest likelihood of confusion"); *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1184, 10 U.S.P.Q. 2d (BNA) 1001 (7th Cir. 1989) ("Because intentional copying is but one of the factors 'bearing on the likelihood of confusion issue,' we are of the opinion that the district judge committed error when he *presumed* the likelihood of confusion element from his finding that Ross intentionally copied the Air-Dyne.") (emphasis in original); *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 859 n.13, 221 U.S.P.Q. (BNA) 536 (11th Cir. 1983) ("Proof of intentional copying is evidence, but not conclusive, on the likelihood of confusion issue, which is consistent with our holding in the text regarding the effect of proof of intentional copying on the secondary meaning issue."). *Brooks* apparently rejected a suggestion only that an irrebuttable presumption arose, but the indication is that a rebuttable presumption would fare no better.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The district court declined to apply a presumption of confusion from Sherwood's copying. In this it erred. Additionally, it did not discuss the factors considered when considering the issue of likelihood of confusion. See generally *Pizzeria Uno Corp.* [**11] *v. Temple*, 747 F.2d 1522, 224 U.S.P.Q. (BNA) 185 (4th Cir. 1984). It merely declined to apply a presumption of confusion from Sherwood's copying and

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/osemopinion.htm (7 of 9)2/10/2006 5:04:01 PM

Exhibit 28, p.7

stated, with little factual finding, that it had "concluded that the likelihood of public confusion is not great." HN3 The proper course of action in a case such as this where the newcomer copied its competitor's trade dress is to apply the presumption and consider (in the setting of an application for a preliminary injunction) whether the newcomer presented sufficient evidence to rebut the presumption. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Since we believe that a presumption of likelihood of confusion flows from Sherwood's intentional copying, we need not address Osem's remaining arguments regarding the likelihood of confusion.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

We next address Osem's final argument that the district court erred in balancing the harm to the parties and the public and erred in not issuing the preliminary injunction. The district court, when balancing the harm to the parties, relied on its improper findings that there was no presumption of secondary [**12] meaning and that there was no presumption of likelihood of confusion. Given those findings, the district court believed that neither Osem nor the public would be harmed by the lack of a preliminary injunction as much as would Sherwood by its issuance. Since we have held that, in this case, there are applicable presumptions of both secondary meaning and a likelihood of confusion, the district court should reevaluate its decision as to whether or not a preliminary injunction should issue in the light of those holdings.

Accordingly, we vacate the order appealed from and remand for the district court to reconsider its order denying the preliminary injunction in the light of this opinion.

VACATED AND REMANDED.

---

Service: **Get by LEXSEE®**
Citation: **917 F.2d 161**
View: Full
Date/Time: Friday, February 10, 2006 - 5:03 PM EST

---

\* Signal Legend:

- 🔴  -  Warning: Negative treatment is indicated
- 🟨Q -  Questioned: Validity questioned by citing refs
- ⚠️  -  Caution: Possible negative treatment
- 🟢  -  Positive treatment is indicated
- 🅰️  -  Citing Refs. With Analysis Available
- ℹ️  -  Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/osemopinion.htm (8 of 9)2/10/2006 5:04:01 PM

**Exhibit 28, p.8**



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...ocuments/Client%20Files/Schmidt/Smith/osemopinion.htm (9 of 9)2/10/2006 5:04:01 PM

**Exhibit 28, p.9**