BidZirk LLC, et al. v. Smith    Doc. 6 Att. 33
Get a Document - by Citation - 303 F. Supp. 2d 583
6:06-cv-00109-HMH    Date Filed 02/13/2006    Entry Number 6-34    Page 1 of 18

*303 F. Supp. 2d 583, \*; 2003 U.S. Dist. LEXIS 24659, \*\**

FAIRBANKS CAPITAL CORP., Plaintiff v. W. CRAIG KENNEY, et al., Defendants

Civil No. AMD 02-2587

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

303 F. Supp. 2d 583; 2003 U.S. Dist. LEXIS 24659

May 6, 2003, Decided

**DISPOSITION: [\*\*1]** Plaintiff's motion for preliminary injunction granted in part and denied in part. Plaintiff's motions to strike hearing exhibit and for entry of preliminary injunction by default denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff financial services company sued, inter alia, defendant homeowner alleging federal trademark and copyright infringement and related state law claims arising out of the creation and maintenance of a website making substantial use of the company's registered trademark. The company sought, inter alia, preliminary and permanent injunctive relief and damages.

**OVERVIEW:** The homeowner created a website critical of the company whose address incorporated the company's name. Clear and convincing evidence showed it was likely many reasonably alert internet users searching for the company's website, using commonly-available search engines, would land on defendants' website, and be genuinely confused over the source of the site's information. Any delay in the company's preliminary injunction motion did not lessen its irreparable harm, and did not unduly prejudice the homeowner. Any likelihood of harm to the homeowner if the injunction issued was outweighed by the likelihood of harm to the company if the injunction did not issue, so the company could simply raise substantial questions going to the merits of its false designation of origin claim. The homeowner intentionally used the "salient feature" of the company's trademark in his domain name. The company did not show, under the Anticybersquatting Consumer Protection Act, 15 U.S.C.S. § 1125(d), the homeowner's bad faith attempt to profit from using the company's mark, as the homeowner's purpose was to criticize the company.

**OUTCOME:** The company's preliminary injunction motion was granted to the extent that the homeowner was enjoined from further use of the company's mark in his website domain names and in connection with the homepage on his website, but injunctive relief under the statute preventing the use of a similar domain name.

**CORE TERMS:** fairbanks, website, domain, user, preliminary injunction, trademark, match, homepage, mortgage, site, trademark infringement, borrower, engine,

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (1 of 18)2/10/2006

Exhibit 32, p.1
Dockets.Justia.com

irreparable harm, injunctive relief, registered, consumer, keyword, logo, conti, servicing, unfair competition claim, designation, similarity, quotation, confuse, mortgage loan, entity, locate, owl

## LexisNexis(R) Headnotes

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

HN1 Before a court may issue a preliminary injunction, the court must weigh and evaluate the evidence to assess four interrelated factors, namely: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest.

Civil Procedure > Injunctions

HN2 Injunctive relief granted early in the course of litigation should be the exception rather than the rule.

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

HN3 A hazard of granting a preliminary injunction is that it requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting in a certain way. The danger of a mistake in this setting is substantial.

Civil Procedure > Injunctions > Preliminary & Temporary Injunctions

HN4 When deciding whether to grant a preliminary injunction, a court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such a showing is made, the court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. If the balance of the hardships tips decidedly in favor of the plaintiff, then typically it will be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. But if the balance of hardships is substantially equal as between the plaintiff and defendant, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success.

Trademark Law > Infringement Actions > Burdens of Proof
Trademark Law > Federal Unfair Competition Law > Lanham Act > Remedies
Trademark Law > Federal Unfair Competition Law > False Designation of Origin > Elements

HN5 To establish the need for injunctive relief for a general trademark infringement or unfair competition claim, a plaintiff must prove the following elements: (1) it possesses a valid trademark; (2) defendant used the mark; (3) defendant's use of the mark occurred "in commerce;" (4) defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) defendant used the mark in a way likely to confuse consumers.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (2 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.2

Trademark Law > Infringement Actions > General Overview
Trademark Law > Federal Unfair Competition Law > False Designation of Origin > General Overview
Trademark Law > Federal Unfair Competition Law > Lanham Act > General Overview

HN6⬥ A claim for false designation of origin, in a trademark infringement case, specifically focuses on establishing that there is a likelihood of consumer confusion as to the source, origin, or sponsorship of the products or services involved. A plaintiff need not, however, show actual confusion in the marketplace.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > Preliminary Injunctions
Trademark Law > Likelihood of Confusion > Consumer Confusion > General Overview
Trademark Law > Federal Unfair Competition Law > False Advertising > General Overview

HN7⬥ Evidence in a trademark infringement case that a defendant's acts and omissions involve a tendency to deceive can suffice to support a finding of irreparable harm, allowing injunctive relief.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview

HN8⬥ The irreparable harm to a plaintiff trademark owner arising from the conduct of an infringer is, enormous, immediate, and presumed in law.

Trademark Law > Conveyances > General Overview
Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview

HN9⬥ If another uses someone's trademark, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use.

Trademark Law > Infringement Actions > Defenses > Laches
Trademark Law > Infringement Actions > Remedies > General Overview

HN10⬥ Three factors are considered in assessing delay to determine whether laches is a viable defense against a trademark infringement claim seeking damages, including: (1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay.

Trademark Law > Infringement Actions > Defenses > Laches
Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview

HN11⬥ In a trademark infringement case, the doctrine of laches is sparingly applied where a plaintiff only seeks equitable relief; moreover, in consideration of the public interest, the doctrine may not be invoked to deny injunctive relief if it is apparent that the infringing use is likely to cause confusion.

Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning &

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (3 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.3

Sound > General Overview
Trademark Law > Likelihood of Confusion > Intent > General Overview
Trademark Law > Federal Unfair Competition Law > False Designation of Origin > General Overview

**HN12** The essential factor in establishing a claim for false designation of origin is the likelihood of consumer confusion. Courts generally consider seven factors to determine the likelihood of confusion, including: (1) the distinctiveness of the senior mark; (2) the similarity of the marks; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities employed by the parties to transact their business; (5) the similarity of the advertising used by the parties; (6) the defendant's intent in adopting the same or similar mark; and (7) evidence of actual confusion. However, not all these factors are always relevant or equally emphasized in each case.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > Preliminary Injunctions

**HN13** When a preliminary injunction is sought in a trademark infringement case, although the balance of hardships weighs the two most important Blackwelder factors to determine whether to issue a preliminary injunction, the public interest must always be considered.

Trademark Law > Federal Unfair Competition Law > Lanham Act > General Overview

**HN14** The Lanham Act, 15 U.S.C.S. 1051 et seq., is Congress's attempt at eliminating confusion from the marketplace with regard to the identification of goods and services.

Trademark Law > Infringement Actions > General Overview
Trademark Law > Special Marks > Trade Names > Infringement
Trademark Law > Federal Unfair Competition Law > General Overview

**HN15** The Lanham Act, 15 U.S.C.S. § 1051 et seq., was designed to curb deceptive and misleading uses of trademarks and to protect not only businesses but the general public as well from the use of false trade descriptions.

Trademark Law > Infringement Actions > Remedies > Equitable Relief > General Overview
Cyberlaw > Trademarks > Infringement
Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > General Overview

**HN16** The Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C.S. § 1125(d), states that a person shall be liable in a civil action by the owner of a mark if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark and (ii) registers, traffics in, or uses a domain name that is identical or confusingly similar to that mark. 15 U.S.C.S. § 1125(d)(1)(A).

Trademark Law > Subject Matter > Names > Internet Domains

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (4 of 18)2/10/2006 5:05:48 PM

**Exhibit 32, p.4**

Trademark Law > Protection of Rights > Conveyances > Valid Transfers
Trademark Law > Protection of Rights > Priority > General Overview

HN17 The Anticybersquatting Consumer Protection Act, 15 U.S.C.S. § 1125(d), sets forth a number of factors that may be considered in making a determination of a defendant's "bad faith," including: (1) the defendant's trademark or other rights in the domain name; (2) the extent to which the domain name consists of the defendant's legal name; (3) the defendant's prior use of the domain name in connection with the bona fide offering of goods or services; (4) the defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the defendant's intent to divert consumers from the mark owner's online location to a website under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source or sponsorship of the site; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner for financial gain; and (7) the defendant's provision of material and misleading false contact information when applying for the registration of the domain name. 15 U.S.C.S. § 1125(d)(1)(B)(i).

Trademark Law > Likelihood of Confusion > Similarity > Appearance, Meaning & Sound > General Overview
Trademark Law > Protection of Rights > Registration > General Overview
Trademark Law > Subject Matter > Names > Internet Domains

HN18 The Anticybersquatting Consumer Protection Act, 15 U.S.C.S. § 1125(d), set forth a number of factors that may be considered in making a determination of a defendant's "bad faith," including: (1) the defendant's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others; and (2) the extent to which the mark incorporated in the defendant's domain name registration is or is not distinctive and famous. 15 U.S.C.S. § 1125(d)(1)(B)(i).

**COUNSEL:** For Fairbanks Capital Corp., Plaintiff: Frederick W Chockley, III, LEAD ATTORNEY, Mark I Bailen, Baker and Hostetler, Washington, DC.

For W. Craig Kenney, Defendant: Barton J Sidle, LEAD ATTORNEY, Law Office of Barton J Sidle, Timonium, MD.

For W. Craig Kenney, Defendant: Peter B Langbord, Lynberg and Watkins, Los Angeles, CA.

For Brian Barr, Defendant: Philip Scott Friedman, LEAD ATTORNEY, Friedman Law Offices PLLC, Washington, DC.

**JUDGES:** ANDRE M. DAVIS, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ANDRE M. DAVIS

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (5 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.5

**OPINION:** **[\*585]** MEMORANDUM

Plaintiff, Fairbanks Capital Corporation ("Fairbanks"), instituted this action against defendants W. Craig Kenney and Brian Barr alleging federal trademark and copyright infringement and related state law claims arising out of defendants' creation and maintenance of a website making substantial use of Fairbanks' registered trademark. Fairbanks seeks, *inter alia*, preliminary and permanent injunctive relief **[\*\*2]** and damages. I conducted a preliminary injunction hearing on February 28, 2003, and the parties have supplemented their pre-hearing contentions and arguments in post-hearing memoranda. I have fully considered all of the parties' arguments and evidentiary materials. For the reasons set forth herein, I shall grant in part and deny in part Fairbanks' motion for preliminary injunction and defendants shall be enjoined from further use of the "FAIRBANKS" mark in their website domain names and in connection with the homepage on the Kenney website.

I. Background

Fairbanks is a financial services company based in Salt Lake City, Utah; it services single-family residential mortgage loans throughout the United States. In the summer of 2000, ContiMortgage Corporation ("Conti"), which was also involved in the mortgage loan servicing industry, sold certain of its assets to Fairbanks. n1 Defendant Kenney is a Maryland homeowner whose mortgage loan was serviced by Conti and, subsequently, by Fairbanks. In consequence of a series of disputes over Kenney's alleged non-compliance with the terms of his mortgage loan documents and Fairbanks' alleged unfair practices in servicing his mortgage loan, Kenney **[\*\*3]** created n2 **[\*586]** and currently operates a website, http://www.conti-fairbanks.com/, that he states was "created as an online resource for persons harmed by Fairbanks." n3 Indeed, Kenney and Fairbanks have been engaged in federal and state court litigation in connection with their disputes for more than two years. n4

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Fairbanks has also acquired the servicing rights to mortgage loans issued by Bank of America, Citibank, and EquiCredit. *Plaintiff's Hearing Exhibit 22* (Declaration of Gregory Harmer ("Harmer Decl.") at P 10).

n2 Fairbanks argues that defendant Barr is Kenney's *de facto* business partner who has an unknown pecuniary interest in Kenney's website. In April 2001, Fairbanks purchased Citifinancial Mortgage Co. ("Citifinancial") assets. Barr's company, Barr & Associates, provided real estate disposition services to Citifinancial. After Fairbanks discontinued Barr & Associates' services, Barr & Associates sued Fairbanks in August 2001 for, *inter alia*, breach of contract, in a California federal court. Fairbanks' motion for summary judgment was granted in that case and Barr & Associates have appealed the ruling. Fairbanks alleges that, out of frustration from the lack of success in his lawsuit against Fairbanks, Barr "improperly obtained [Fairbanks'] confidential financial statements," and "forwarded these statements to Kenney for posting on the website." I need not make a final determination of the exact relationship between the

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (6 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.6

defendants at this time. *See infra* n. 5. **[\*\*4]**

n3 I am aware from the parties' post-hearing submissions that Kenney has effected at least two changes to his website since the motions hearing. For purposes of my findings of fact in respect to the preliminary injunction issued herein, I am concerned only with the website as it appeared in February 2003.

n4 During the motions hearing, the parties indicated that a trial was scheduled in the Circuit Court for Baltimore County, Maryland, in March 2003, to litigate those claims instituted by Kenney against Fairbanks in connection with the latter's attempt to foreclose on Kenney's home mortgage.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Upon the institution of this action by Fairbanks on or about August 6, 2002, Judge Motz of this court entered an order granting a temporary restraining order ("the TRO") requiring Kenney to delete "any and all financial statements of Fairbanks Capital Corp. from http://www.conti-fairbanks.com/ or any other website he owns or controls." The order also required that Kenney: (1) refrain from any further publication of any of Fairbanks' financial statements, (2) return all of Fairbanks' financial information, **[\*\*5]** and (3) identify all recipients to whom he provided the financial statements. Subsequently, on or about August 16, 2002, I entered an order granting the parties' consent motion to extend the TRO until "further order of this court." Thereafter, the case lay dormant for some period of weeks until Fairbanks filed its motion for preliminary injunction in November 2002 and, at about the same time, Kenney filed his motion to dismiss or, in the alternative, for summary judgment. I denied Kenney's alternative motion without prejudice in an order entered on December 16, 2002, and allowed the parties to commence discovery in anticipation of the hearing on the motion for preliminary injunction. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Fairbanks accurately notes that defendant Barr, who was joined as a party to the case on December 16, 2002, did not submit a written opposition to the motion for preliminary injunction prior to the February 28, 2003, hearing, and did not present evidence in support of his opposition to the motion during the hearing. Essentially, counsel for Barr appeared on Barr's behalf, but took no independent role in opposing the motion; indeed, defendants submitted a joint post-hearing memorandum.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*\*6]**

II. Findings of Fact

1. Fairbanks owns United States Trademark Registration 2,206,930, registered by the

Exhibit 32, p.7

United States Patent and Trademark Office on December 1, 1998, for the mark "FAIRBANKS" complete with an owl logo.

2. Fairbanks maintains a website at http://www.fairbankscaptial.com/ that provides information about the company and its services, including employment opportunities.

3. Kenney has had ongoing disputes regarding the status of his mortgage loan, first with Conti, and then with Fairbanks.

4. Kenney controls and/or owns a website with the address http://www.conti-fairbanks.com/. Kenney has also registered numerous domain names, including: (1) equicreditfairbanks.com; (2) http://www.boa-fairbanks.com/; (3) http://www.fairbankscomplaint.com/; (4) http://www.fairbankscapitalcomplaint.com/; (5) citi-fairbanks.com; (6) bankofamericafairbanks.com; **[*587]** and (7) http://www.fairbankscapital.net/, most of which redirect users back to http://www.conti-fairbanks.com/, the principal site in dispute.

5. Kenney has recently registered the domain names http://www.fairbankssucks.com/ and http://www.fairbankscapitalsucks.com/.

6. The current Kenney website includes a link to http://www.servicingnews.com/, and informs **[**7]** users that they can begin accessing the website, http://www.conti-fairbanks.com/, with the http://www.servicingnews.com/ URL link.

7. The Kenney website welcomes users on its homepage by announcing: "WELCOME TO THE FAIRBANKS RESOURCES SITE."

8. The Kenney website homepage also includes a news clip entitled, "AMERICA'S POSTER CHILD FOR MORTGAGE ABUSE." The clip displays a man with his hand blocking what appears to be a reporter and camera man. In the background of the picture there is a building with the "FAIRBANKS" mark (including the owl logo) above the door. The website states that the picture is courtesy of "KUTV 2, Salt Lake City, Utah."

9. The Kenney website has an internal link to a section titled "Our Mission," where Kenney states,

> This site is devoted to borrowers who have their home mortgages serviced by Fairbanks. In addition, we provide valuable and timely information to the mortgage industry, attorneys and regulators. Our goal is to provide information in an organized and professional format that can be of value to all who visit. We go to great lengths to insure the information and guidance offered is accurate and non-inflammatory. To accommodate visitors who wish to **[**8]** air their comments or dissatisfaction publicly, we offer a Discussion Forum and from time to time publish Horror Stories submitted by borrowers.
>
> Our primary mission is to insure that borrowers do not lose their homes

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (8 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.8

to a foreclosure due to the misconduct of the servicer or the application of fees that are not provided for in the borrower's mortgage note. We do not provide legal advice. The operator of this web site is a borrower, whose mortgage is serviced by Fairbanks, and wishes to share the information gathered with others similarly situated.

10. The Kenney website homepage states that it is "devoted to helping borrowers resolve problems and providing insight to investors and managers of real estate backed securities." To that end, the website provides links that, *inter alia*, (1) list the dockets of active federal litigation against Fairbanks (or its entities); (2) track media coverage of Fairbanks (and its entities); (3) allow users to submit their personal information and stories regarding their mortgage experiences with Fairbanks (or its entities); and (4) provide information and sample letters to mortgage companies regarding some of the more common problems a borrower **[\*\*9]** might encounter.

11. The Kenney website provides the names and addresses of Fairbanks entities and officers in the State of Utah and contains a referral service to lawyers specializing in borrower issues, including a link to a website that engages in commercial transactions pertaining to loan servicing.

12. The mailing address listed for communications to the website owner is "CONTI-FAIRBANKS.COM," P.O. Box 925, Glenco, Maryland 21152, an address used by Kenney.

13. When the key word "Fairbanks" is used in a keyword search in the YAHOO! or GOOGLE web search engines, approximately **[\*588]** 800,000 matches are listed. Neither the Fairbanks website nor the Kenney website is listed in the first 60 matches on YAHOO! or the first 30 matches on GOOGLE.

14. When the key phrase "Fairbanks Capital" is used in a keyword search in the YAHOO! or GOOGLE search engines, approximately 200,000 matches are listed. The Fairbanks website is listed as the first web match in both search engines. The Kenney website is not listed in the first 60 web matches on YAHOO! or the first 30 web matches on GOOGLE, but the ninth match on YAHOO! and the thirteenth match on GOOGLE, entitled "ContiMortgage-public warning (now **[\*\*10]** named Fairbanks Capital)" has a direct link to the Kenney website on its homepage.

15. When the key phrase "Fairbanks Mortgage" is used in a keyword search in the YAHOO! or GOOGLE search engines, approximately 16,000 matches are listed. The Kenney website and the Fairbanks website are listed as the fifty-fifth and fifty-ninth matches, respectively, on YAHOO! and neither site is listed in the first 30 matches on GOOGLE.

16. When the key phrase "fairbanks or conti" is used in a keyword search in the Altavista search engine, approximately 663 results are listed. The Kenney website is the first website listed; the Fairbanks website is not listed in the first ten results.

17. When the key phrase "fairbanks or conti mortgage" is used in a keyword search in

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (9 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.9

the GOOGLE search engine, approximately 349 matches are listed. The Kenney website is the first website listed. The Fairbanks website is not listed in the first ten results on GOOGLE.

18. When the key phrase "fairbanks or conti mortgages" is used in a keyword search in the YAHOO! search engine, the Kenney website is the first website listed. The Fairbanks website is not listed in the first ten, results.

19. When the key phrase "fairbanks [**11] capital" is used in a keyword search in the LYCOS search engine, approximately 350,000 results are listed. The Kenney website is not listed in the first ten results. The Fairbanks website is listed as the first result on YAHOO!.

20. The evidence in the record shows clearly that Kenney is possessed of an unbounded antipathy for Fairbanks and that he views Fairbanks as a corporate entity that preys on consumers in violation of state and federal consumer protection laws and regulations.

III. Conclusions of Law

1. HN1 Before a court may issue a preliminary injunction, the court must weigh and evaluate the evidence to assess four interrelated factors, namely: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991); *Blackwelder Furniture v. Seilig Mfg. Co.*, 550 F.2d 189, 195-96 (4th Cir. 1977); *Great Eastern Resort Corp. v. Virtual Resort Solutions, LLC*, 189 F. Supp. 2d 469, 474 (W.D. Va. 2002). [**12] HN2 Injunctive relief granted early in the course of litigation should be the exception rather than the rule. The Fourth Circuit has noted that HN3 a hazard of granting a preliminary injunction is that it "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting in a certain way. 'The danger of a mistake' in this setting 'is substantial.'" *Hughes Network Sys. v. InterDigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (quoting *Federal Leasing, Inc. v. Underwriters at* [*589] *Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981)); *Great Eastern Resort Corp.*, 189 F. Supp. 2d at 473-74.

2. HN4 When deciding whether to grant a preliminary injunction, the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such a showing is made, the court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir. 2002); *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 858-59 (4th Cir. 2001); *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). [**13] If the balance of the hardships "tips decidedly in favor of the plaintiff," *Rum Creek*, 926 F.2d at 359 (internal quotation marks omitted), then typically it will "be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation," *Blackwelder*, 550 F.2d at 195 (internal quotation marks omitted). But if the balance of

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (10 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.10

hardships is substantially equal as between the plaintiff and defendant, then "the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success." *Direx,* 952 F.2d at 808 (internal quotation marks omitted).

3. Fairbanks seeks to enjoin defendants from using its trademark in their website, asserting that such use as shown in this record, violates the Lanham Act, 15 U.S.C. § 1125(a), as a false designation of origin. **HN5** To establish the need for injunctive relief for a general trademark infringement or unfair competition claim, a plaintiff must prove the following elements: (1) it **[**14]** possesses a valid trademark; (2) defendant used the mark; (3) defendant's use of the mark occurred "in commerce;" (4) defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) defendant used the mark in a way likely to confuse consumers. *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (trademark infringement/unfair competition claim) (citing 15 U.S.C. §§ 1114, 1125(a)). **HN6** A claim for false designation of origin specifically focuses on establishing that there is a likelihood of consumer confusion as to the source, origin, or sponsorship of the products or services involved. *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (trademark infringement/unfair competition claim). A plaintiff need not, however, show actual confusion in the marketplace. *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984); *Yellowbrix, Inc. v. Yellowbrick Solutions, Inc.*, 181 F. Supp. 2d 575, 578 (E.D.N.C. 2001).

4. **HN7** Evidence that a defendant's acts and omissions **[**15]** involve "a tendency to deceive" can suffice to support a finding of irreparable harm. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1183-84 (8th Cir. 1998) (a "tendency to deceive" satisfies the requisite showing of irreparable harm in false advertising/unfair competition claim and generally under the Lanham Act); *Cornwell v. Sachs*, 99 F. Supp. 2d 695, 702, 705-08 (E.D. Va. 2000) (granting preliminary injunction where plaintiff asserted claims under Lanham Act alleging defendant's "intent to deceive" the public using plaintiff's name for advertising and promotional purposes); *Black & Decker v. Pro-Tech Power, Inc.*, 26 F. Supp. 2d 834, 862 (E.D. Va. 1998) (tendency to mislead satisfies the irreparable harm requirement in claim alleging variety of trademark infringement claims). The evidence in this record establishes by clear and convincing **[*590]** evidence that it is highly likely that large numbers of reasonably alert users of the World Wide Web who are searching for Fairbanks' website, using commonly-available search engines, will land on defendants' website instead of on Fairbanks' site, and that for several moments after landing on **[**16]** defendants' site, such users will experience genuine confusion over the source of the information being provided at the site. (Defendants' website's homepage announced, "Welcome TO THE FAIRBANKS RESOURCE SITE," indicating that the website is owned, sponsored, or otherwise controlled by Fairbanks.)

5. **HN8** The irreparable harm to a plaintiff trademark owner arising from the conduct of an infringer is, enormous, immediate, and presumed in law. *Augusta Nat'l, Inc. v. Executive Golf Mgmt, Inc.*, 996 F. Supp. 492, 496 (D.S.C. 1998) (trademark infringement); *see Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938-39 (4th Cir. 1995) (recognizing that "irreparable injury regularly follows

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (11 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.11

from trademark infringement"). In *Pizzeria Uno Corp.*, the Fourth Circuit quoted with approval Judge Learned Hand's long-recognized pronouncement that, HN9 "if another uses [someone's trademark], he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use . . . ." *Pizzeria Uno Corp.*, 747 F.2d at 1535 (quoting *Yale Elec. Corp. v. Robertson,* 26 F.2d 972, 974 (2d Cir. 1928) [**17] ). Thus, although Kenney is not a Fairbanks competitor in the traditional sense, nevertheless, as the law recognizes, Fairbanks' loss of control over its reputation, goodwill and its "FAIRBANKS" mark through the Kenney domain names and website inflicts irreparable injury on Fairbanks' legitimate proprietary rights. *Augusta Nat'l, Inc.*, 996 F. Supp. at 496; *see Scotts Co.*, 315 F.3d at 273 ("In Lanham Act cases involving trademark infringement, a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case."); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (trademark infringement and unfair competition claim where court found that oil wholesaler's use of oil company's trademark was likely to confuse and deceive consumers).

6. Although defendants contend that Fairbanks' delay in seeking preliminary injunctive relief undermines its assertion of irreparable harm, I find and conclude that any delay in prosecuting the motion for preliminary injunction was reasonable, does not lessen the irreparable harm to Fairbanks, [**18] and did not unduly prejudice defendants. *Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990) (citing *Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 958 (4th Cir. 1971) HN10 (considering three factors in assessing delay to determine whether laches is a viable defense against a trademark infringement claim seeking damages, including: (1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay)); *see Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 461 (4th Cir. 1996) HN11 (doctrine of laches is sparingly applied where plaintiff only seeks equitable relief; "moreover, in consideration of the public interest, [the doctrine] may not be invoked to deny injunctive relief if it is apparent that the infringing use is likely to cause confusion.") (citing McCarthy § 31:4 (4th ed. 2003)); *Skippy, Inc. v. CPC Int'l,* [*591] *Inc.*, 674 F.2d 209, 212 (4th Cir.), *cert. denied,* 459 U.S. 969, 74 L. Ed. 2d 280, 103 S. Ct. 298 (1982) [**19] (availability of laches as a defense to claims for injunctive relief is limited).

7. Specifically, Fairbanks initially filed a complaint against Kenney alleging a variety of trademark infringement claims in the United States District Court for the District of Utah in January 2002. Fairbanks requested leave to amend the complaint to seek injunctive relief from the Utah federal court, but the case was dismissed for lack of personal jurisdiction before the amended complaint was considered. Fairbanks subsequently retained counsel in Maryland, who reasonably and in a professionally appropriate manner investigated the strength of his client's claims before filing a complaint in this court. *See, e.g., Brittingham v. Jenkins*, 914 F.2d at 456 (unreasonable delay found where defendant failed to assert common law trademark rights for at least seven years). Indeed, counsel for Fairbanks filed the case even

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (12 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.12

before he was genuinely prepared to act when it was discovered that defendants had posted Fairbanks' confidential financial and performance records (which were the subject of the TRO granted on August 6, 2002) to the offending website. Thus, Fairbanks' filing of the preliminary **[\*\*20]** injunction motion on November 25, 2002, was timely.

8. Defendants will not be significantly harmed if they are enjoined from using the "FAIRBANKS" mark in either the Kenney website domain names or on the website's homepage announcement, "Welcome TO THE FAIRBANKS RESOURCES SITE." During the motion hearing, defendants admitted that minimal effort and nominal costs are or would be involved in changing the Kenney website domain name, n6 and they presented no evidence indicating that they would be specifically harmed from a preliminary injunction. If the Kenney website domain name is changed, any inconvenience or confusion experienced by users trying to locate Kenney's website can be minimized by using the old domain name as a temporary automatic redirecting link to the new website and domain name. Kenney can create new search words to use in his meta tags that will enable users to locate his website--without the current confusion between his site and the Fairbanks site. Kenney is sufficiently skilled in the art of website design such that he can implement several methods that will direct users to his website where he voices his criticisms of Fairbanks without improperly using the "FAIRBANKS" **[\*\*21]** mark in his website meta tags or in his domain names. Kenney currently has at least six registered domain names (most of which contain the "FAIRBANKS" mark) that redirect users to the original website at http://www.conti-fairbanks.com/. Moreover, the current Kenney website at http://www.conti-fairbanks.com/ presently includes a link to http://www.servicingnews.com/, and informs website users that they can begin accessing the Kenney website, http://www.conti-fairbanks.com/, with the http://www.servicingnews.com/ URL link. It appears that Kenney has already taken the first step to discontinuing use of the "FAIRBANKS" mark in the domain names of his website.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 As I noted earlier, defendants have updated or otherwise made changes to the Kenney website at least twice since the motions hearing on February 28, 2003.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

9. In balancing the harms to the parties, any likelihood of harm to defendants if the injunction issues is significantly outweighed by the likelihood of harm to Fairbanks if the injunction does not issue. *Scotts Co.*, 315 F.3d at 271; **[\*\*22]** *Direx Israel, Ltd.*, 952 F.2d at 812. Because the balance **[\*592]** of the hardships "tips decidedly in favor of the plaintiff," *Rum Creek*, 926 F.2d at 359 (internal quotation marks omitted), it will be enough that Fairbanks can raise questions going to the merits of their claims "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation," *Blackwelder*, 550 F.2d at 195 (internal quotation marks omitted).

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (13 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.13

10. Fairbanks has raised serious questions going to the merits of a claim for false designation of origin insofar as (1) Fairbanks possesses a valid trademark for the mark, "FAIRBANKS;" (2) Kenney has used the "FAIRBANKS" mark in the domain names and on the homepage of his website; (3) Kenney has used the "FAIRBANKS" mark in commerce through the creation of his website and registered domain names, and boasts that he has had over 200,000 visitors; (4) Kenney has used the "FAIRBANKS" service mark on his website and in connection with the advertising of legal referral services and URL links to various housing, mortgage lending, and consumer protection websites; and (5) **[**23]** the Kenney website domain names are likely to confuse users who are attempting to locate the official Fairbanks website and are unaware that the Kenney website exists.

11. HN12 The essential factor in establishing a claim for false designation of origin is the likelihood of consumer confusion. *See Pizzeria Uno Corp.*, 747 F.2d at 1527; *Yellowbrix, Inc.*, 181 F. Supp. 2d at 578. Courts generally consider seven factors to determine the likelihood of confusion, including: (1) the distinctiveness of the senior mark; (2) the similarity of the marks; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities employed by the parties to transact their business; (5) the similarity of the advertising used by the parties; (6) the defendant's intent in adopting the same or similar mark; and (7) evidence of actual confusion. *Resorts of Pinehurst v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 422-23 (4th Cir. 1998); *Yellowbrix, Inc.*, 181 F. Supp. 2d at 578. However, "not all these [factors] are always relevant or equally emphasized in each case." *Pizzeria Uno*, 747 F.2d at 1527 **[**24]**. In this case, the second, sixth, and seventh factors actually militate toward a finding of a likelihood of confusion.

12. Kenney's use of the name "FAIRBANKS" without the owl logo does not lessen Fairbanks' ability to establish a claim for false designation of origin because Kenney uses the "dominant portion" or "salient feature" of the Fairbanks trademark in his domain names and on the homepage of his website. n7 *See Pizzeria Uno*, 747 F.2d at 1530, 1534-35 (where dominant mark is "Uno" in "Pizzeria Uno" and "Taco Uno," dominant mark may be given extra weight on the issue of likelihood of confusion); *Giant Food, Inc. v. Nations's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983) (dominant portion of the Giant Food, Inc., logo and Giant Hamburgers logo is the word "Giant," in part because "from a distance, both marks reveal a word written across a circular or oval-shaped object"); *World Gym Licensing, Ltd. v. Fitness World, Inc.*, 47 F. Supp. 2d 614, 622-23 (D. Md. 1999) (stating that, in "evaluating the similarity of two trademarks, 'greater weight [should be] given to the dominant or salient portions of the marks;'" the word **[**25]** "world" is **[*593]** the dominant mark in both parties' names) (citing *Lone Star*, 43 F.3d at 926 n.1, 936 (the phrase "Lone Star" is the dominant mark in the names "Lone Star Grill" and in the alleged infringer's name "Lone Star Cafe" where both entities were involved in restaurant service)); *Philip Morris, Inc. v. Imperial Tobacco Co. (of Great Britain and Ireland), Ltd.*, 251 F. Supp. 362 (E.D. Va. 1965) (finding that the word "PLAYER'S" was the "distinguishing, dominant, and salient feature" of the trademark even though "PLAYER'S Navy Cut" was the complete registered mark; defendant had no right to use the dominant feature "PLAYER'S" either alone or in combination with other words). Additionally, it is clear that an Internet user must type in the word "fairbanks" to search for Fairbanks because it would be impossible to use the owl logo in an

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (14 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.14

Internet word search.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 I note that Kenney does use the owl logo portion of the Fairbanks service mark on the homepage of his website as of February 2003.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*\*26]**

13. Kenney has intentionally used the "FAIRBANKS" mark in his domain names (along with other names that are officially affiliated with Fairbanks), in his website meta tags, and on his website homepage, to attract users interested in obtaining loan servicing or other information, critical or otherwise, about Fairbanks. Using the "FAIRBANKS" mark is one way to insure that the purpose of Kenney's website is not frustrated; the website is designed to "assist former and current borrowers whose loans are serviced by Fairbanks Capital . . . [,] to provide commentary, criticism, dialogue, and information associated with Fairbanks Capital[,]" and to deter potential consumers from choosing Fairbanks as their mortgage servicer.

14. Kenney acknowledged that Internet users attempting to locate the official Fairbanks website have actually been confused when they, instead, reached Kenney's website. *Cf. Lucent Technologies, Inc. v. Lucentsucks.com*, 95 F. Supp. 2d 528, 529, 535 (E.D. Va. 2000) (recognizing defendant's argument in ACPA claim that likelihood of confusion was minimal where plaintiff's business involved telecommunications equipment and defendant's challenged website **[\*\*27]** involved pornography) (citing *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 321 (4th Cir. 1992) (acknowledging that *effective parody* "diminishes any risk of consumer confusion") (emphasis added)). Neither this court, nor the parties, however, can calculate how many potential Fairbanks customers reached Kenney's website in error because of the confusing domain names and similar search terms, and were *actually* deterred from choosing Fairbanks as a service provider after reading the information on the Kenney website.

15. **HN13** Although the balance of hardships weighs the two most important *Blackwelder* factors to determine whether to issue a preliminary injunction, the public interest must always be considered. *See Blackwelder*, 550 F.2d at 197. **HN14** "The Lanham Act is Congress' attempt at eliminating confusion from the marketplace with regard to the identification of goods and services." *Yellow Cab Co. of Charlottsville v. Rocha*, 2000 U.S. Dist. LEXIS 11597, 2000 WL 1130621, at \*8 (W.D. Va. 2000). **HN15** The Lanham Act was designed to "curb deceptive and misleading uses of trademarks" and to protect not only businesses but the general public as well from the **[\*\*28]** use of false trade descriptions. *See Selchow & Righter Co. v. Decipher, Inc.*, 598 F. Supp. 1489, 1495 (E.D. Va. 1984) (alleging trademark infringement and unfair competition claims). Members of the public have a strong interest in not being confused or deceptively "attracted" to defendants' website by the unauthorized use of a mark or trade name that is attributed to Fairbanks; thus, the public interest factor weighs in Fairbanks' favor. *Augusta Nat'l, Inc.*, 996 F. Supp. at 499.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (15 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.15

[*594] 16. Fairbanks seeks to enjoin defendants from using its trademark under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA") . HN16 The ACPA states that "a person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark . . . and (ii) registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A). HN17 The ACPA sets forth a number of factors that may be considered in making a "bad faith" determination, including: (1) [**29] the defendant's trademark or other rights in the domain name; (2) the extent to which the domain name consists of the defendant's legal name; (3) the defendant's prior use of the domain name in connection with the bona fide offering of goods or services; (4) the defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the defendant's intent to divert consumers from the mark owner's online location to a website under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source or sponsorship of the site; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner for financial gain; (7) the defendant's provision of material and misleading false contact information when applying for the registration of the domain name; HN18 (8) the defendant's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others; and (9) the extent to which the mark incorporated in the defendant's domain name registration [**30] is or is not distinctive and famous. *See* 15 U.S.C. § 1125(d)(1)(B)(i); *Yellowbrix, Inc.*, 181 F. Supp. 2d at 582.

17. Fairbanks has not established defendants' bad faith attempt to profit from using the "FAIRBANKS" mark by a preponderance of the evidence. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 225-27 (4th Cir. 2002) (preponderance of evidence standard applies in ACPA claim). Of the factors that are generally considered in a ACPA claim, (1) Kenney has not established a trademark in the registered domain names for his website; but, he has not suggested that he has a trademark in the "FAIRBANKS" mark; (2) Kenney's domain names do not contain his legal name; (3) prior to the circumstances surrounding this case, there is no evidence to suggest that Kenney has previously used his domain names or website in connection with the offering of bona fide goods or services; (4) Kenney uses his website as a forum for criticism of Fairbanks' mortgage servicing business and the use of the "FAIRBANKS" mark on the website is intended to identify the object of his criticisms; (5) defendants intend to attract previous Fairbanks [**31] customers to the Kenney website and divert potential Fairbanks customers from ultimately using Fairbanks' services (through their online website or otherwise) and the website effectively harms any goodwill represented by the "FAIRBANKS" mark and, at least initially, confuses users as to the source or sponsorship of the site; (6) the fact that Kenney (through counsel) allegedly demanded $ 3 million from Fairbanks in August 2002, in the course of settlement discussions, shall not be considered as evidence of his intent to profit from the use of the "FAIRBANKS" mark, *see* Fed. R. Evid. 408; (7) there is no evidence to suggest that Kenney provided any false or misleading information when he applied for the registration [*595] of his domain names; (8) Kenney is aware that one or more

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (16 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.16

of his domain names are strikingly similar to the official Fairbanks domain name, http://www.fairbankscapital.com/, and that by using the "FAIRBANKS" mark in his domain names with other words or names that are or have been associated with Fairbanks, he is more likely to confuse Internet users attempting to locate the official "FAIRBANKS" website; but, nevertheless, (9) the "FAIRBANKS" **[**32]** mark is not distinctive or famous for present purposes. See 15 U.S.C. § 1125(d)(1)(B)(i); *Yellowbrix, Inc.*, 181 F. Supp. 2d at 582.

18. At most, Kenney has somewhat cleverly created a manner to attract previous and potential Fairbanks customers to his website to inform them about his negative experiences with Fairbanks. Kenney includes a section on his website that serves as an attorney referral service; he indicates that, after completing an information form on the website, users who need an attorney will be connected with one in their area. Kenney also indicates that the service is "absolutely free" and he is not "paid by the attorneys for the referrals." Contrary to Fairbanks' assertions that Kenney is guilty of a "bad faith attempt to profit" from his use of the "FAIRBANKS" mark, Kenney's overarching motivation for creating and maintaining the website is to voice his strong criticisms about Fairbanks, provide a forum for others to voice criticisms, and, if possible, prevent others from ending up in his situation. See, e.g., *Lucent Technologies, Inc.*, 95 F. Supp. 2d at 535-36 (recognizing that a successful showing that **[**33]** a website is one for critical commentary can "seriously undermine" the requisite elements in an ACPA claim) (citing *Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161, 1164 (C.D. Cal. 1998)); cf. *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269-70 (4th Cir. 2001) (finding of bad faith in trademark counterclaims where plaintiff requested offer for domain name from defendant within 24 hours or domain name would be sold to highest bidder); *Pinehurst, Inc. v. Wick*, 2003 U.S. Dist. LEXIS 5388, 2003 WL 1870238, at *4-5 (M.D.N.C. March 21, 2003) (finding defendants were engaged in "warehousing" where they registered thousands of domain names that were identical or confusingly similar to the marks or names of others including seven percent of the Fortune 500 businesses; numerous sales of the domain names were in connection with settlement offers).

19. Fairbanks is entitled to preliminary injunctive relief enjoining defendants from (1) using the "FAIRBANKS" mark in any domain name associated with defendants' website; (2) using the "FAIRBANKS" mark in the announcement on the Kenney website homepage, stating "Welcome TO THE FAIRBANKS RESOURCE **[**34]** SITE" or as part of the website owner's contact address; and (3) using the "FAIRBANKS" mark in the meta tags associated with the Kenney website.

20. Fairbanks is not entitled to injunctive relief as to its claim alleging a violation of the ACPA as Fairbanks has failed to establish defendants' "bad faith" intent to profit as required by the statute. 15 U.S.C. § 1125(d)(1)(A).

IV. Conclusion

For the foregoing reasons, Fairbanks' motion for preliminary injunction shall be granted in part and denied in part. Fairbanks' motions to strike hearing exhibit and for entry of preliminary injunction by default shall be denied. Fairbanks' motion to compel deposition testimony shall be denied as moot as moot. An order and a preliminary

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (17 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.17

injunction follow.

Filed: May 6, 2003

/s/

ANDRE M. DAVIS

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **303 F. Supp. 2d 583**
View: Full
Date/Time: Friday, February 10, 2006 - 5:05 PM EST

* Signal Legend:
- 🔴 - Warning: Negative treatment is indicated
- 🅀 - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ♦ - Positive treatment is indicated
- 🅰 - Citing Refs. With Analysis Available
- 🅸 - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

file:///C|/Documents%20and%20Settings/kmelwell.KMELWE...nts/Client%20Files/Schmidt/Smith/fairbanksopinion.htm (18 of 18)2/10/2006 5:05:48 PM

Exhibit 32, p.18