IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| BidZirk, LLC, Daniel G. Schmidt, III, and Jill Patterson,<br><br>        Plaintiffs,<br><br>vs.<br><br>Philip Smith,<br><br>        Defendant. | Civil Action No. 6:06-0109-HMH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

    This matter is before the court on the plaintiffs' motion for a preliminary injunction preventing the defendant from using the BidZirk trademark on the defendant's website. The plaintiffs are represented by counsel, and the defendant is proceeding *pro se*. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration. A hearing on the motion was held before this court on Thursday, March 16, 2006, with both parties appearing.

    In March 2005, the plaintiff consigned a large number of items with plaintiff BidZirk, LLC, a business that offers, for a fee, services related to eBay listing and auctions. The plaintiff was ultimately dissatisfied with the price he received for certain items and with the timing of payments to him following the sale of certain items. The plaintiff publishes an internet website at www.jackwhispers.blogspot.com. Following his experience with BidZirk, the plaintiff posted a four-part series on his blog in which he detailed his experience with BidZirk. The series was titled, "You Gotta Be Berserk to Use an eBay Listing Company!". The plaintiff concluded with a checklist that he recommended for use by readers when considering using an eBay listing company. In the series, the plaintiff used several

depictions of BidZirk's trademark.[1] On January 10, 2006, the plaintiffs filed a complaint against the defendant alleging causes of action for violation of the Lanham Act, defamation, and invasion of privacy. The plaintiffs sought injunctive relief and damages. On February 13, 2006, the plaintiffs moved for a preliminary injunction prohibiting the defendant from further publication of or internet linking to BidZirk's trademarks (the motion now before this court). In that motion, the plaintiffs also seek nominal damages for the defendant's alleged bad faith and willful infringement of its trademarks and further seek attorneys' fees.

In determining whether to grant injunctive relief prior to trial, a court must balance four factors:

(a) The plaintiff's likelihood of success in the underlying dispute between the parties;

(b) whether the plaintiff will suffer irreparable injury if the injunction is not issued;

(c) the injury to the defendant if the injunction is issued; and

(d) the public interest.

*Scotts Company v. United Indust. Corp.*, 315 F.3d 264, 271 (4th Cir. 2002); *Blackwelder Furniture Co. v. Seilig Manuf. Co.*, 550 F.2d 189, 193 (4th Cir. 1977).

The Lanham Act, provides, in pertinent part:

The several courts vested with jurisdiction of civil actions arising under this Act shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of [15 U.S.C. § 1125]. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth

---

[1] At the hearing, the defendant agreed to remove all but one of the depictions of the plaintiffs' trademark from his blog within two hours of the close of the hearing.

2

>  in detail the manner and form in which the defendant has complied with the injunction.

15 U.S.C. §1116(a).

The Federal Trademark Dilution Act of 1995 ("FTDA"), an amendment to the Lanham Act, is codified at 15 U.S.C. §1125(c). The FTDA provides, in pertinent part:

> The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection . . . In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief as set forth in [15 U.S.C. § 1116] unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of the famous mark shall also be entitled to the remedies set forth in [15 U.S.C. §§ 1117(a) and 1118], subject to the discretion of the court and the principles of equity.

*See* 15 U.S.C. §1125(c)(1)-(2).

"Dilution" is a defined term within the Lanham Act as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception." *See* 15 U.S.C. §1127. The Supreme Court of the United States has held that the FTDA requires proof of "actual dilution," rather than a mere likelihood of dilution. *See Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003). The "actual dilution" requirement is satisfied where a defendant uses a mark identical to the plaintiff's mark, as opposed to a mark that merely approximates the plaintiff's mark. *See 7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 352, 357 (D. Md. 2004). Dilution under the FTDA occurs in two possible forms: blurring or tarnishment. The plaintiffs' allegation in this case is that their trademark was diluted through tarnishment on

the defendant's website. In such case "a trademark 'is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'" *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 2004 WL 2158120 at *8 (S.D. N.Y. 2004) (quoting *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996)). A trademark may also be tarnished if through infringement it ceases to become a "wholesome identifier of plaintiff's product." *See Hormel Foods*, 73 F.3d at 507.

Under the FTDA, injunctive relief is not available to halt "noncommercial" use of a mark, nor may a plaintiff obtain an injunction against use of a trademark in "all forms of news reporting or news commentary." *See* 15 U.S.C. § 1125(c)(4)(C). The defendant argues that his use of the plaintiffs' mark is "noncommercial," stating,

> Defendant receives little to zero money from said advertisements and merely promotes them as quality products the Defendant personally uses. No "per click revenue" is made from Defendant's site. Defendant also asserts that Jackwhispers is not a commercial venture and is a consumer advocacy site.

(Answer ¶ 15). The plaintiffs argue that "Fourth Circuit law is . . . clear that *any* linkage between Defendant's website (including BidZirk's infringed trademarks) and an offering of goods and services constitutes commercial use, depriving Defendant of the 'noncommercial' use defense" (pl. m. for prelim. inj. 13) (citing *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 366 (4th Cir. 2001)). The plaintiffs note that the defendant's website includes links to a number of commercial products available for purchase from third parties, and the "click-thru" advertisements support the defendant's website (pl. m. for prelim. inj., ex. 3 at 24-25). Based upon the foregoing, this court agrees that the "noncommercial" use defense is not available to the defendant.

4

The defendant next argues that the entries on his blog are "news reporting or news commentary", and, thus, the plaintiffs may not obtain an injunction under the FTDA. *See* 15 U.S.C. § 1125(c)(4)(C). The FTDA does not define "news reporting" or "news commentary," and no reported federal case includes a holding defining either of these terms. A number of courts have touched on the question of whether a blogger can be considered a journalist, and bloggers have attempted to wrestle with the issue as well. *See, e.g.*, Hudson, BLOGGING from www.firstamendmentcenter.org/speech/internet (November 2005) (noting that "[t]he question of who is a journalist has confounded the public and the press for a long time") (pl. m. for prelim. inj., ex. 34); Meyer, WHAT IS A JOURNALIST? from www.usatoday.com/news/opinion/2005-03-30-journalists_x.htm (March 30, 2005) (noting proliferation of shield laws protecting disclosure of journalists' sources, and noting that none define status of bloggers) (pl. m. for prelim. inj., ex. 35); Hempel, ARE BLOGGERS JOURNALISTS? from www.businessweek.com/technology/content/mar2005/tc2005037_7877_tc024.htm (March 7, 2005) (documenting interaction with well-known blogger who admitted he did not consider himself a journalist) (pl. m. for prelim. inj., ex. 36); Hiler, ARE BLOGGERS JOURNALISTS? from www.microcontentnews.com/articles/bloggingjournalism.htm (April 11, 2002) (advocating for creation of bloggers' code of ethics to legitimize blogging as trustworthy) (pl. m. for prelim. inj., ex. 37).

Courts in the District of Columbia Circuit have addressed the "who is a journalist?" question without answering it. In *Lee v. Department of Justice*, the court found:

> The proliferation of communications media in the modern world makes it impossible to construct a reasonable and useful definition of who would be a "reporter" eligible to claim protection from a newly minted common law privilege. *See In re Miller*, 397 F.3d [964, 967 (D.C. Cir. 2005)] (Sentelle, J., concurring) (questioning whether the definition of "reporter" should include "the stereotypical 'blogger' sitting in his pajamas at his personal computer posting on the World Wide Web"). Reporters cannot be readily identified. They do not have special courses of study of special degrees. They are not licensed.

5

> They are not subject to any form of organized oversight or discipline.

*Lee v. Department of Justice*, 401 F. Supp. 2d 123, 140 (D.D.C. 2005). Several states, including South Carolina, have journalist "shield" laws, which protect reporters from compulsory disclosure of news sources. *See* S.C. Code §19-11-100 (2005). South Carolina's shield law, however, does not define the terms "journalist" or "reporter."

> A functional analysis is recommended by some commentators and legislators:
>
> Gregg Leslie, legal defense director for the Reporters Committee for Freedom of the Press, says that asking whether bloggers are journalists is the wrong question. "'Bloggers' is a vague, amorphous term like 'telephone users,'" he says. "Just like some telephone users are journalists and some are not; the same thing with bloggers. The medium doesn't answer the question. It has to do more with the function that the person is performing. That's how we have approached the shield law question. If the bloggers' involvement is to report information to the public and to gather information for that purpose openly then they should be treated like a journalist."
>
> "There should be a functional analysis in addition to or instead of the current analysis of what medium you are writing in," Leslie said.
>
> "As the courts have confirmed what makes journalism journalism is not the format but the content," says [Kurt] Opsahl [staff attorney for the Electronic Frontier Foundation]. "Where news is gathered for dissemination to the public, it is journalism - regardless of whether it is printed on paper or distributed through the Internet."

BLOGGING at 3 (noting instances where bloggers scooped the mainstream media on major news stories).

The plaintiffs argue that the defendant's use of BidZirk's trademarks cannot be considered "news reporting or news commentary" under this functional analysis. This court disagrees. This court has reviewed the four-part article posted by the defendant on his blog (pl. m. for prelim. inj., ex. 3-6), and it appears that the defendant's function was to report information to his readers. The article began as follows:

6

> In this special report . . . I'll be telling my detailed story of using such a company and relate how my selling Apple Parts on eBay for 9 years has given me unique insight into the matter. This is my story as experienced by me personally. I have dealt with a company called BidZirk, in my home town. I have also visited several competitors. In doing extensive Google research, I have found that my problems are almost universal ... but that only larger clients really complain. At the end, I will offer a downloadable PDF checklist for you to use when choosing a listing company that includes questions you may not have thought of before. Please feel free to share your thoughts about these services and what you think about the article!

(Pl. m. for prelim. inj., ex. 6 at 1).  He reported the positive aspects of his dealings with BidZirk ("I will give credit to BidZirk, in that, they were fair with the prices they charge for shipping") (pl. m. for prelim. inj., ex. 6 at 30), along with the negative.  Within the article, the defendant gave tips to his readers about selling items on eBay, and in the final installment of the article, he provided a "helpful checklist to use if you decide to use an eBay dropoff" (pl. m. for prelim. inj., ex. 6 at 30-32).  Based upon the foregoing, this court finds that the defendant's function was to provide "news reporting or news commentary" in his articles about BidZirk.

Wherefore, based upon the foregoing, as this court finds that the defendant's use of the plaintiff's trademark was in "news reporting or news commentary," the plaintiffs may not obtain injunctive relief.  See 15 U.S.C. §1125(c)(4)(C).  Accordingly, this court recommends that the plaintiffs' motion be denied.


                                        s/William M. Catoe
                                        United States Magistrate Judge

March 21, 2006

Greenville, South Carolina