IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| BIDZIRK, LLC, DANIEL G. SCHMIDT, III, and JILL PATTERSON, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action No. 6:06-CV-00109-HMH |
| PHILIP RUSS SMITH, ) ) | OBJECTIONS TO MAGISTRATE'S REPORT |
| Defendant. ) | |

COMES NOW BidZirk, LLC ("BidZirk"), Daniel G. Schmidt, III ("Schmidt") and Jill Patterson ("Patterson"), Plaintiffs in the above-captioned action, and pursuant to 28 U.S.C. § 636(b)(1), file these objections to the report issued March 21, 2006 by Magistrate Judge William M. Catoe, and show the Court as follows:

**INTRODUCTION**

Plaintiffs filed their complaint on January 10, 2006, with BidZirk asserting claims for trademark infringement and dilution, and Schmidt and Patterson asserting claims for defamation and invasion of privacy. On February 13, 2006, BidZirk filed a motion for preliminary injunction based on Defendant's infringement and dilution of BidZirk's trademarks under the Lanham Act (and specifically 15 U.S.C. § 1125(c), the Federal Trademark Dilution Act). The Court, pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e), referred the matter to Magistrate Judge Catoe. The Court heard oral argument on March 16, 2006. On March 21, 2006, Magistrate Judge Catoe issued his report, in which the Court recommended that

BidZirk's motion for preliminary injunction be denied. BidZirk objects to this finding, and requests that the Court enter a preliminary injunction in BidZirk's favor, and award at least nominal damages and attorneys' fees to BidZirk.

## ARGUMENT

Magistrate Judge Catoe noted that under the Federal Trademark Dilution Act ("FTDA"), a plaintiff may not obtain injunctive relief if infringement of trademarks occurs as part of "noncommercial" use of the marks, or in cases involving "news reporting or news commentary." See Report, p. 4-5. The Report notes correctly that the law of Fourth Circuit is clear that any linkage between Defendant's website and commerce deprives Defendant of the "noncommercial" use defense under the FTDA. See Report, p. 4; People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 366 (4th Cir. 2001). The dispositive issue in this matter, then, turns on whether Defendant's internet blog postings can rightly be considered "news reporting or news commentary." See 15 U.S.C. § 1125(c)(4)(C); Report, p. 5.

In the report, Magistrate Judge Catoe adopted one commentator's view that the "what is journalism?" question should be resolved using a functional analysis:

> A functional analysis is recommended by some commentators and legislators . . . The medium [internet blogging] doesn't answer the question. It has more to do with the function that the person is performing . . . If the bloggers' involvement is to report information to the public and to gather information for that purpose openly then they should be treated like a journalist . . . There should be a functional analysis in addition to or instead of the current analysis of what medium you are writing in[.]

See Report, p. 6 citing Hudson, BLOGGING from www.firstamendmentcenter.org/speech/internet (November 2005). Magistrate Judge Catoe, in conducting this sort of recommended functional

analysis, concluded that Defendant's infringement of BidZirk's trademarks occurred in the context of "news reporting or news commentary." As set forth in the report:

> [I]t appears that the defendant's function was to report information to his readers. The article began as follows:
>
>> In this special report . . . I'll be telling my detailed story of using such a[n eBay listing company] and relate how my selling Apple parts on eBay for 9 years has given me unique insight into the matter. This is my story as experienced by me personally. I have dealt with a company called BidZirk, in my home town. I have also visited several competitors. In doing extensive Google research, I have found that my problems are almost universal . . . but that only larger clients really complain. At the end, I will offer a downloadable PDF checklist for you to use when choosing a listing company that includes questions you may not have thought of before. Please feel free to share your thoughts about these services and what you think about the article!
>
> He reported the positive aspects of his dealings with BidZirk ("I will give credit to BidZirk, in that, they were fair with the prices they charge for shipping"), along with the negative. Within the article, the defendant gave tips to his readers about selling items on eBay, and in the final installment of the article, he provided a "helpful checklist to use if you decide to use an eBay dropoff." Based upon the foregoing, this court finds that the defendant's function was to provide "news reporting or news commentary" in his articles about BidZirk.

See Report, p. 6-7 (citations omitted, ellipses in original).

With respect, a complete functional analysis of Defendant's internet postings cannot lead to the conclusion that the "articles" are "news" in any sense of the word. Review of Defendant's postings reveals clearly an objective to slander BidZirk and its principals. The fact that Defendant introduced his "articles" as a "special report" with a "downloadable PDF checklist" does not mean that the blog lived up to its introduction, as in fact it did not. Further, Defendant's

3

reference to BidZirk's fair shipping prices does not render the entire posting objective or otherwise consistent with "news reporting or news commentary."

Defendant may have had no gripe with the cost of shipping auctioned items through BidZirk, but in his blog he related the following either about BidZirk directly, its principals, or the industry generally (though such comments necessarily also referred to BidZirk alone, as that is the only eBay listing company with which Defendant dealt):

(1) the company is "not upfront about their fees," see Exhibit 1, p. 2;

(2) listing companies charge "outrageous shipping and handling charges for your item, therefore lowering the final bid," see Exhibit 1, p. 3 (this charge is made, and then withdrawn as it pertains to BidZirk, as indicated above);

(3) "[l[isting companies do not pass savings along to the customer," see Exhibit 1, p. 3;

(4) "[l]isting companies do everything to protect themselves from not making any money," see Exhibit 1, p. 3;

(5) Defendant indicated that BidZirk deceives its customers – "Talk about customer expectations of how its [sic] to work vs. how its [sic] REALLY going to work," see Exhibit 1, p, 3;

(6) Defendant stated that listing companies "tend to protect their feedback to your detriment," see Exhibit 1, p. 3;

(7) Defendant stated that "typically teenagers end up running the show for absentee owners. Essentially, the eBay version of McDonald's?" – these statements were a reference to BidZirk's ownership and labor force; see Exhibit 1, p. 4;

4

(8) Defendant also maligned BidZirk by stating that the company was owned by "40 and 50 somethings trying a mid life crisis career change[1]," see Exhibit 1, p. 4;

(9) Defendant related that Schmidt was late to their first meeting (due to traffic), and indicated that their first meeting told Defendant that Schmidt, BidZirk's owner, "was a yes man," see Exhibit 1, p. 7;

(10) Defendant also took pains to note that Schmidt and Patterson were planning to marry around the time of their launch of BidZirk, questioning Plaintiffs' ability properly to operate a business: "Wait!  He was getting married, going on a honeymoon, and starting a (in his own words) 'multi-location business that will be national in 5 years time'?"  See Exhibit 1, p. 8.  Defendant also indicated that "[i]t is worthy to note that a new marriage deserves dedication . . . but that it may have taken away from time to dedicate to our level of customer[2]."  See Exhibit 1, p. 11;

(11) Defendant inserted gratuitous depictions of BidZirk's trademarks into his blog, merely for the sake of thumbing his nose at BidZirk, see Exhibit 1, p. 10;

(12) Defendant stated that a certain lot of items was donated due to its failure to sell, "[s]uspiciously, I might add."  See Exhibit 1, p. 25.  Defendant implied that BidZirk

---

[1] Schmidt, one of BidZirk's principals, is in his early 50s and was previously a successful owner of a large physical therapy practice, all of which was known to Defendant.  To imply that eBay is a young man's business, or that Schmidt endured a crisis of some sort that led him to start an auction consignment company, is typical of Defendant's snide efforts to denigrate Plaintiffs.

[2] This obvious implication of this comment – that Schmidt and Patterson should perhaps have foregone their marriage while a customer of Defendant's (self-awarded) status was trading with BidZirk – is likewise exemplary of and betrays the subjective and malicious tone of the entire four-part posting, in which Defendant castigates BidZirk and its principals for merely failing to put first the satisfaction of every demand Defendant cared to make.

5

    made a sweetheart deal with another customer that had an interest in the items consigned by Defendant. <u>Id.</u>; and

(13) Defendant stated that Schmidt's evident mistake about the date of a second planned meeting (Schmidt was a day <u>early</u>, not a day late) "illustrate[d] my points about involvement and dedication to our level of customer." <u>See</u> Exhibit 1, p. 25-6.

  The above-listed examples demonstrate those instances in which Defendant stepped outside his alleged "function to report information to his readers." <u>See</u> Report, p. 6. Defendant's internet postings are more properly considered "cybergriping," a practice in which an individual, often a disgruntled consumer, complains (or "flames") a business or a businessperson on the internet. <u>See, e.g.</u>, Clayton, C<small>YBERGRIPING</small>: R<small>IPPING A</small> F<small>IRM ON A</small> W<small>EB</small> S<small>ITE</small> C<small>REATED</small> J<small>UST FOR</small> T<small>HAT</small>, 229 N.Y.L.J. (online version, April 23, 2003), attached as Exhibit 2. The purpose of cybergriping, as with many blogs <u>vel non</u>, is to provide a forum for individuals to expound upon their opinions and views, unsolicited by anyone. <u>See, e.g.</u>, [www.theselfishbastard.com](www.theselfishbastard.com); [http://blog.crisscross.com/2006/03/the_selfish_blo.html](http://blog.crisscross.com/2006/03/the_selfish_blo.html) (noting that "[t]he basic format of blogging discourages synthesis. A group of people shouting at each other from their own rooms is not the same as a group of people brought together in one room, hosted by an impartial and knowledgeable moderator").

  Defendant's series of postings on his jackwhispers web site also indicates that Defendant's function during his dealings with BidZirk went well beyond mere newsgathering. Defendant notes that he made a number of suggestions to BidZirk's principals about how better

to operate the business, which he evidently considered a possible entrée to a more permanent position with BidZirk:

> First and foremost … we suggested [to Schmidt] using us to come in and consult (for free) on how to make the descriptions better to achieve not only higher winning bids … but to [e]ntice bidder wars. We mentioned that if this consulting worked out . . . maybe at future locations we could partner and have a quarterly seminar on the tactics for eBay listing. After all, my cohort was an excellent salesman who had worked with HP for several years. And … I had actually taught eBay at the local technical college as a continuing education/adult education class.

See Exhibit 1, p. 20 (ellipses in original).[3] Defendant also suggested that BidZirk give away Defendant's unsold inventory to a company called FreeCycle, a recommendation at odds with Defendant's complaints in his blog that BidZirk failed to get "top dollar" for his consigned articles.[4] See Exhibit 1, p. 24-5.

Most alarmingly, Defendant assumed the stance of litigant vis-à-vis BidZirk during the pendency of their business relationship and indicated such in his "article." Defendant posted to his website the comment that

> [I[ felt like we had enough grounds for [a] breach of contract lawsuit on grounds of contract to sell, delayed payments without interest, underperformance from advertised "top dollar auctions," and for nondisclosure of full fee structure.

See Exhibit 1, p. 13. Nothing that could reasonably be called "news reporting or news commentary" is generated by someone in an admittedly adversarial relationship with the subject

---

[3] Upon information and belief, Defendant taught an eBay seminar at Greenville Technical Community College for a single term, and was not invited back after the college learned that he does not possess a college degree himself.

[4] As mentioned previously in BidZirk's moving papers, eBay claims 140 million unique users. Defendant consistently fails to acknowledge the fact that, among a group this large, the price commanded for an item at auction is perforce an accurate expression of the fair market value of the goods sold; i.e., if 140 million people arrive at the conclusion that Defendant's laptop bags are worth $2 or $3 apiece, that is in fact what they are worth.

7

of the "article." For example, professional journalists are obliged to "distinguish between advocacy and news reporting." <u>See</u> Society of Professional Journalists Code of Ethics, found at http://www.spj.org/ethics_code.asp. Defendant's blog, by explicitly referencing Defendant's adversarial posture with respect to BidZirk, starkly reveals Defendant's lapse in functioning as an alleged gatherer of news. In the jackwhispers web site, at least as far as his postings on BidZirk and his infringing use of BidZirk's trademarks are concerned, Defendant is functionally a complainant, not a journalist.

This fact is further pointed up in Defendant's communications since the issuance of Magistrate Judge Catoe's report. On March 29, 2006, Defendant e-mailed BidZirk's counsel a message that included the following:

> I also received the injunction ruling. Upon victory and consultation with my attorney I plan to file suit now for breach of contract, har[r]assment, and defamation of character, and punitive for financial loss [sic]. I will also be contacting the DA about fraud concerning the manner in which items are split 50/50 or or [sic] greater in Bidzirk's favor and how this is not disclosed. Further, I would seek to find Bidzirk a tax shelter business as they do not pull in enough revenue to cover rent at both locations, advertising, and utilities, much less; employment costs. I plan to note with the DA that it appears as if you are not trying to win this case on merit, but on procedural technicality. I am going to city hall today to obtain a protest permit and will be protesting Bidzirk in the next few days publicly . . . If mediation were granted in this case I might consider not protesting and might consider not officially delivering my countersuit. This is not a bribe or a black mail ... I want this to be over and my losses cut short. The more this is aggravated the more it gets exposed on my website and the worse things look for Bidzirk ... seeming to bully the little guy.

<u>See</u> Exhibit 3. The Court's functional analysis of the purpose behind Defendant's internet postings must include an evaluation of Defendant's plainly vindictive approach towards BidZirk. Defendant's postings are not properly viewed in isolation, but must be considered part of a multi-

pronged effort to discredit and damage BidZirk. Defendant, in addition to referencing litigation against BidZirk in what is supposedly a "news article" about the company, now intends to institute a criminal prosecution against BidZirk, and evidently to involve the Internal Revenue Service in an investigation of BidZirk as well, based on his absolutely unsubstantiated (and demonstrably untrue) allegation that BidZirk operates at a loss for an illegal purpose. In addition, Defendant also intends to picket BidZirk's store locations, and has purportedly obtained a city permit in order to do so. Defendant's obvious malice towards BidZirk cannot be ignored, and necessarily impacts any evaluation of the purpose and intent of his internet blog. A stray comment concerning BidZirk's reasonable shipping fees does not do away with the mountain of evidence demonstrating that Defendant's "function" was not and is not to provide "news reporting or news commentary," but to injure BidZirk and its principals.

## CONCLUSION

Defendant's internet postings about BidZirk, viewed in their totality and in light of subsequent communications, reveal the palpable contempt in which Defendant holds BidZirk, as well as his purpose to harm the company. No disseminator of legitimate "news reporting or news commentary" is motivated by such spite. Defendant is not entitled to the defense provided in 15 U.S.C. § 1125(c)(4)(C), and the Court should accordingly grant BidZirk's motion, enter a preliminary injunction against Defendant, and award BidZirk at least nominal damages and its attorneys' fees.

This 4th day of April, 2006.

/s/ Kevin M. Elwell

_____

KEVIN M. ELWELL
USDC Bar No. 9706

K.M. ELWELL, P.C.
111 East North Street
Greenville, South Carolina 29601
(864) 232-8060
(404) 759-2124 e-facsimile
kmelwell@kmelwell.com

Attorneys for Plaintiffs BidZirk, LLC,
Daniel G. Schmidt, III and Jill Patterson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| BIDZIRK, LLC, DANIEL G. SCHMIDT, III, and JILL PATTERSON, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action No. 6:06-CV-00109-HMH |
| PHILIP RUSS SMITH, ) ) | CERTIFICATE OF SERVICE |
| Defendant. ) | |

This is to certify that I have this day served a copy of the foregoing OBJECTIONS TO MAGISTRATE'S REPORT by depositing same in the United States Mail in a properly-addressed envelope with adequate postage affixed to:

Mr. Philip J. Smith
601 Cleveland Street, Apartment 5-C
Greenville, South Carolina 29601

This 4th day of April, 2006.

/s/ Kevin M. Elwell
_____
KEVIN M. ELWELL
USCD Bar No. 9706

K.M. ELWELL, P.C.
111 East North Street
Greenville, South Carolina 29601
(864) 232-8060
(404) 759-2124 e-facsimile
kmelwell@kmelwell.com

Attorneys for Plaintiffs BidZirk, LLC,
Daniel G. Schmidt, III, and Jill Patterson