*2007 U.S. Dist. LEXIS 2391, \**

Samuel Todd Whatley, Plaintiff, vs. South Carolina Department of Public Safety, SC Dept of Motor Vehicles, Boykin Rose, Individually and in his Official Capacity; Marcia Adams, Individually and in her Official Capacity; Jimmy Early, Individually and in his Official Capacity; Phillip Cockrell, Individually and in his Official Capacity; and and David Burgess, Individually and in his Official Capacity; Defendants.

View the Full Docket from LexisNexis CourtLink for 3:05cv42
Civil Action No. 3:05-0042-JFA-JRM

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA, COLUMBIA DIVISION

2007 U.S. Dist. LEXIS 2391

January 10, 2007, Decided

**PRIOR HISTORY:** Whatley v. S.C. Dep't of Pub. Safety, 2006 U.S. Dist. LEXIS 94950 (D.S.C., Sept. 1, 2006)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendants, his former employer, and several individuals, alleging that he was terminated due to his religion, in violation of 42 U.S.C.S. § 1983 and Title VII, and for taking leave under the Family Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq. A magistrate recommended summary judgment for defendants and dismissal for failure comply with a court order. Both parties filed objections to the magistrate's report.

**OVERVIEW:** The employee performed computer consulting work for a state agency. He was unhappy with a transfer to coordinate a certain computer system, but his grievance was denied. He was placed on FMLA leave at the start of the new job. After completion of the leave, the employee did not return to work. He was later terminated as part of a budgetary cut. The employee contended that he was subjected to unlawful employment practices due to his religious beliefs. The magistrate recommended dismissal for the employee's failure to attend his deposition and granting summary judgment for defendant. The court agreed with these recommendations. The employee failed to show pervasive harassment due to his religion, and in any event, he did not utilize available corrective procedures. He also failed to show that the reassignment and termination were due to his religion or that there was a failure to accommodate his religious needs. Similarly, there was no showing of retaliation for any protected activities or for taking FMLA leave. Further, the employee's failure to attend a properly noticed deposition or provide requested documents, pursuant to court order, provided a basis for dismissal of the suit.

**OUTCOME:** The court overruled the employee's objections to the magistrate's report, but granted defendants' limited objections as to the use of certain documents. The court concurred with the magistrate's report recommending denying the employee's summary judgment motion and granting summary judgment to defendants on all of the employee's claims and dismissing the case for failure to comply with discovery and the court's prior

order.

**CORE TERMS:** religious, retaliation, summary judgment, hostile work environment, recommendation, deposition, terminated, religion, protected activity, discovery, religious discrimination, non-discriminatory, plaintiff failed, harassment, warning, failure to comply, demonstrating, disciplined, e-mails, accommodate, subjected, discovery process, grievance, rose, prima facie claim, adverse action, authenticity, recommending, reassigned, electronic

## LexisNexis(R) Headnotes

Civil Procedure > Judicial Officers > Magistrates > Pretrial Orders
*HN1* A magistrate judge makes only a recommendation to a court. A court is not bound by the recommendation of a magistrate judge but, instead, retains responsibility for the final determination. A court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, a court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by a court's review of a report thus depends on whether or not objections have been filed, in either case a court is free, after review, to accept, reject, or modify any of a magistrate judge's findings or recommendations.

Civil Procedure > Parties > Self-Representation > Pleading Standards
*HN2* While a federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, the requirement of liberal construction does not mean that a court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can a court assume the existence of a genuine issue of material fact where none exists.

Labor & Employment Law > Discrimination > Harassment > Religious Harassment
*HN3* To prove a hostile work environment claim in the religious context, a plaintiff must demonstrate the following: (1) he experienced unwelcomed harassment; (2) the harassment was based on his religion; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment; and (4) there is some basis for imposing liability on the employer.

Labor & Employment Law > Discrimination > Harassment > Religious Harassment
*HN4* The United States Supreme Court decision of Harris v. Forklift Systems, Inc. addressed what constitutes a "hostile work environment" for purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. The Supreme Court held that a hostile or abusive work environment can be only be determined by looking at the totality of the circumstances. The Supreme Court advised looking at a number of factors, including the frequency of the alleged discriminatory conduct; its severity; whether the alleged conduct was physically threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interfered with the employee's work performance.

Labor & Employment Law > Discrimination > Harassment > Religious Harassment
Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Defenses & Exceptions > General Overview
*HN5* In the cases of Faragher v. City of Boca Raton and Burlington Industries, Inc. v. Ellerth, the United States Supreme Court established an affirmative defense to

potential liability for a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. The defense consists of two necessary elements: (1) the employer exercised reasonable care to prevent and promptly correct the harassing behavior; and (2) the plaintiff failed to take advantage of any preventative or corrective procedures that the employer provided.

Labor & Employment Law > Discrimination > Religious Discrimination > Burdens of Proof > Employee Burdens
Labor & Employment Law > Discrimination > Religious Discrimination > Defenses & Exceptions > Reasonable Accommodation & Undue Hardship
Labor & Employment Law > Discrimination > Religious Discrimination > Employment Practices > Discharges

*HN6* Title VII of the Civil Rights Act of 1964 (Title VII) makes it unlawful to discharge an individual because of his or her religion. 42 U.S.C.S. § 2000e-2. The U.S. Court of Appeals for the Fourth Circuit has recognized two potential theories for religious discrimination under Title VII: disparate treatment and failure to accommodate. To prove disparate treatment, a plaintiff must show that the employer took a tangible employment action against plaintiff because of his religion.

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting
Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burdens of Proof
Labor & Employment Law > Discrimination > Religious Discrimination > Burdens of Proof > Burden Shifting

*HN7* If an employer presents a legitimate, nondiscriminatory reason for its actions, a plaintiff must show that the employer's proffered reason is pretextual and was actually motivated by illicit discrimination.

Labor & Employment Law > Discrimination > Religious Discrimination > Defenses & Exceptions > Reasonable Accommodation & Undue Hardship

*HN8* An employee can establish a valid claim even if an employer presents irrefutable evidence demonstrating that the employer took certain action against defendant because of legitimate, nondiscriminatory reasons. To prove a prima facie religious accommodation claim, a plaintiff must establish that (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; and (3) he or she was disciplined for failure to comply with the conflicting employment requirement.

Labor & Employment Law > Discrimination > Religious Discrimination > Defenses & Exceptions > Reasonable Accommodation & Undue Hardship

*HN9* A reasonable religious accommodation is one that does not cause undue hardship to an employer or does not result in more than a de minimis cost to an employer. The U.S. Court of Appeals for the Fourth Circuit has addressed the ability of an employer to accommodate an employee's supposed religious need to impose his religious beliefs on others. The Fourth Circuit has held that such a situation places an employer "between a rock and a hard place" and held that such an accommodation would impose an undue burden on an employer.

Labor & Employment Law > Discrimination > Retaliation > General Overview

*HN10* Under Title VII of the Civil Rights Act of 1964 (Title VII), an employer is forbidden from taking action that discriminates against an employee because that employee

has either opposed an employer's practice that Title VII prohibits or has made a charge, testified, assisted, or participated in a Title VII investigation proceeding, or hearing. See 42 U.S.C.S. § 2000e-3(a).

Labor & Employment Law > Discrimination > Retaliation > Elements > General Overview

*HN11* To establish a prima facie claim of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e-3(a), a plaintiff must show (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action.

Labor & Employment Law > Discrimination > Retaliation > Elements > Protected Activities

*HN12* Protected activity is divided into two categories: opposition and participation. Participation activity includes making a charge, testifying or participating in a Title VII investigation, proceeding, or hearing concerning the plaintiff's employer. Conversely, opposition activity includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities. In determining whether an employee engaged in legitimate opposition activity, a court will balance the purposes of Title VII to protect individuals engaging in reasonable opposition to discrimination against Congress's desire not to handcuff an employer's ability to select and control its personnel.

Labor & Employment Law > Discrimination > Retaliation > Elements > Adverse Employment Actions

*HN13* The U.S. Supreme Court has held that the scope of the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e-3(a), extends beyond simple employment or workplace-related harms to any materially adverse harm that an employee reasonably believes is connected to his prior protected activity.

Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > General Overview

*HN14* Under the Family Medical Leave Act (FMLA), an eligible employee may take unpaid leave from his employment for up to 12 weeks in any 12-month period for family or health-related matters. 29 U.S.C.s. § 2612(a)(1). Upon returning to work, the employee has a right to be restored by the employer to the position of employment held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other conditions and terms of employment. 29 U.S.C.s. § 2614(a)(1)(A)-(B). In an effort to ensure that employees may freely exercise their FMLA rights, the Act creates a private cause of action enabling an employee to sue an employer who retaliates or otherwise discriminates against the employee for taking leave under the FMLA. 29 U.S.C.S. § 2615(a)(2).

Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Remedies

*HN15* See 29 U.S.C.S. § 2615(a)(2).

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting
Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burdens of Proof

Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Burdens of Proof

*HN16* Family Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq., retaliation claims are analogous to those derived under Title VII of the Civil Rights Act, 42 U.S.C.S. § 2000e et seq., and so are analyzed under the burden-shifting framework of McDonnell Douglas. To establish a prima facie claim for FMLA retaliation, a plaintiff must prove: (1) he engaged in protected activity; (2) the employer took adverse action against him; and (3) the adverse action was connected to the plaintiff's protected activity. If the plaintiff meets his burden, then the defendant must then demonstrate that any adverse action it took against plaintiff was nondiscriminatory. Once the employer proves a nondiscriminatory purpose for its adverse employment action, then plaintiff must prove that the employer-alleged reasoning is pretext for FMLA retaliation.

Labor & Employment Law > Leaves of Absence > Family & Medical Leave Act > Burdens of Proof

*HN17* An employer's reduction in force is a legitimate, nonretaliatory reason to discharge an employee. A plaintiff bears the burden of establishing that an employer's proffered explanation for an adverse employment action is pretext for Family Medical Leave Act, 29 U.S.C.S. § 2601 et seq., retaliation.

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Public Employees

*HN18* In order to prove a First Amendment retaliation claim against a public employer, a plaintiff must prove that (1) he spoke as a citizen, not as an employee, on a matter of public concern; (2) his interest in the expression at issue must outweigh the employer's interest in providing effective and efficient services to the public; (3) he was deprived of some valuable benefit; and (4) there is a causal connection between the alleged protected speech and the retaliatory employment action by the public employer. Speech is a matter of public concern if it addresses an issue of social, political, or other interest to a community.

Civil Procedure > Discovery > Misconduct
Civil Procedure > Dismissals > Involuntary Dismissals > Failures to Comply
Civil Procedure > Sanctions > Contempt > Civil Contempt

*HN19* Dismissal of a party's case for failure to comply with a court order or a discovery request is a severe sanction that must be exercised cautiously and with restraint. Nevertheless, Fed. R. Civ. P. 37 requires all parties to comply with discovery requests and any court orders regarding discovery. If a party fails to comply, the court may issue sanctions against that party, including the dismissal of the party's action. Fed. R. Civ. P. 37(b)(2)(C) states that if a party fails to obey an order to provide or permit discovery, a court in which the action is pending may make an order dismissing the action. The U.S. Court of Appeals for the Fourth Circuit has held that a court must consider four factors in determining whether dismissal action is the appropriate sanction for a party's failure to comply with discovery. Specifically, a court must consider: (1) whether the noncomplying party acted in bad faith; (2) the degree of prejudice suffered by the other parties as a result of the failure to comply; (3) the deterrence value of dismissal as a sanction for this sort of noncompliance; and (4) the efficacy of a less drastic sanction.

Civil Procedure > Dismissals > Involuntary Dismissals > Failures to Comply

*HN20* Fed. R. Civ. P. 41 allows a court power to involuntary dismiss a party's action for

failure of a plaintiff to prosecute or to comply with these rules or any order of court. Fed. R. Civ. P. 41(b). In assessing whether dismissal of a party's action is appropriate under Rule 41(b), a court evaluates: (1) the degree of the plaintiff's personal responsibility for the failures; (2) the amount of prejudice caused to the defendant; (3) the existence of a history of the plaintiff deliberately proceeding in a dilatory fashion; and (4) the availability of a less drastic sanction.

Civil Procedure > Discovery > Misconduct
Civil Procedure > Dismissals > Involuntary Dismissals > Failures to Comply
*HN21* A party's failure to follow a court's order to comply with discovery is a factor in dismissing a party's case.

Civil Procedure > Discovery > Methods > Oral Depositions
Civil Procedure > Discovery > Misconduct
*HN22* A party's continued refusal to attend his deposition establishes a pattern of dilatory conduct.

Civil Procedure > Discovery > Misconduct
Civil Procedure > Dismissals > Involuntary Dismissals > Failures to Comply
*HN23* It is unnecessary to impose less drastic sanctions prior to entering an order of dismissal.

Civil Procedure > Discovery > Misconduct
Civil Procedure > Dismissals > Involuntary Dismissals > Failures to Comply
Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview
*HN24* Dismissal of a case with prejudice is an appropriate sanction for a party who fails to comply with the discovery process and refuses to follow a court's prior order.

Civil Procedure > Summary Judgment > Supporting Materials > Affidavits
Evidence > Authentication > General Overview
*HN25* Under Fed. R. Evid. 901, documents must be properly authenticated as a condition precedent to their admissibility by evidence sufficient to support a finding that the matter in question is what its proponent claims. Fed. R. Evid. 901(a). This rule applies with equal force at the summary judgment stage of a case. Under Fed. R. Civ. P. 56(e), documents submitted as evidence to support or oppose a motion for summary judgment must be authenticated, which is ordinarily done by affidavit. To be admissible at summary judgment, documents must be authenticated and attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e). Accordingly, unsworn, unauthenticated documents produced by either party in their respective motions cannot be considered by a court on summary judgment.

Evidence > Authentication > General Overview
*HN26* Electronic mail communications can normally be authenticated by affidavit of a recipient, comparison of the communications content with other evidence, or statements or other statements from the purported author acknowledging the e-mail communication.

**COUNSEL:** [*1]

For Samuel Todd Whatley, Plaintiff: Mathias G Chaplin, LEAD ATTORNEY, Mathias G Chaplin Law Office, Columbia, SC.

For South Carolina Department of Public Safety, SC Dept of Motor Vehicles, Boykin Rose, individually and in his Official Capacity, Marcia Adams, Individually and in her Official Capacity, Jimmy Early, Individually and in his Official Capacity, Phillip Cockrell, Individually and in his Offical Capacity, David Burgess, Individually and in his Official Capacity, Defendant: Eugene H Matthews, LEAD ATTORNEY, Richardson Plowden Carpenter and Robinson, Columbia, SC.

**JUDGES:** Joseph F. Anderson, Jr., United States District Judge.

**OPINION BY:** Joseph F. Anderson, Jr.

**OPINION: ORDER**

This matter comes before the court on both plaintiff and defendants' objections to the Magistrate Judge's Report and Recommendation ("Report") filed September 1, 2006. Based on the discussion below, this court affirms the Report.

I. Brief Statement of Facts and Procedural History

Plaintiff, Samuel Todd Whatley ("plaintiff"), brought this action through counsel against his former employers, the South Carolina Department of Motor Vehicles ("DMV") and the South Carolina Department of Public Safety **[*2]** n1 and some of their employees in their individual and official capacities. While employed with defendants, plaintiff initially served as a Senior Information Resource Consultant beginning in March of 2000. In this capacity, plaintiff assisted with several of the defendants' computer initiatives, including Project Phoenix, which was an effort by defendants to overhaul the customer service computer systems for the DMV.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Whatley was originally employed by the South Carolina Department of Public Safety ("SCDPS") in its Division of Motor Vehicles. On June 5, 2003, the Division of Motor Vehicles became an independent agency, i.e., DMV.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In May of 2003, defendants transferred plaintiff to a new job with the DMV field administration office because they wanted to closely coordinate one of the computer systems plaintiff was tasked to support with the field office. While his salary remained unchanged, plaintiff was very unhappy with the transfer and subsequently filed a grievance with the Department of Public Safety. **[*3]** The grievance was ultimately denied, and plaintiff reported to his new job on June 2, 2003. On that day, plaintiff informed his new supervisor, Beverly Hamilton, that he was ill and needed to leave his work and go to the doctor. Thereafter, from June 2, 2003 to August 26, 2003, plaintiff requested and was placed on leave pursuant to the Family Medical Leave Act. After he completed his FMLA leave, plaintiff still did not return to work. On October 1, 2003, plaintiff was terminated by defendants as part of a budgetary cut from the South Carolina General Assembly that allegedly forced defendants to implement a Reduction in Force ("RIF") throughout their departments.

Plaintiff describes himself as a "devout Christian" with strong moral convictions. While employed by defendants, he contends that he was subjected to a variety unlawful employment practices. Accordingly, on January 6, 2005, plaintiff brought this lawsuit against his former employers. In his complaint, plaintiff states four specific claims against defendants: (1) "Religious Discrimination, Violation of First Amendment Rights"; (2) "Violation of the Family Medical Leave Act" ("FMLA"); (3) "Retaliation"; and (4) "Whistle Blower"-  **[*4]**  Title VII § 704(a).

On March 1, 2005, defendants filed a motion to partially dismiss plaintiff's claims. On March 3, 2006, this Court granted defendant's motion to partially dismiss plaintiff's claims, which disposed of the following claims:
(1) Plaintiff's Title VII claims against the individual defendants;

(2) Plaintiff's § 1983 claims against SCDPS, DMV, and the individual defendants in their official capacities;

(3) Plaintiff's retaliation claims except as they specifically pertain to reprisal for engaging in protected activity under Title VII and the FMLA; and

(4) Plaintiff's entire Title VII whistleblower claim

On December 5, 2005, plaintiff filed his motion for summary judgment pursuant to Rule 56(c) FED. R. CIV. P. Defendants have filed two motions that are now before the court. First, on November 10, 2005, defendants filed their motion to dismiss pursuant to Rule 37 and Rule 41 of the Federal Rules of Civil Procedure. Additionally, Defendants have filed their motion for summary judgment dated December 15, 2005. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 As the Magistrate Judge noted in its Report and Recommendation, both parties have also filed a variety of other documents related to their motions for summary judgment and other issues.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*5]**

II. Magistrate Judge's Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02, this case was referred to United States Magistrate Judge Joseph R. McCrorey for a Report and Recommendation. On September 1, 2006, the Magistrate Judge issued his Report and recommended the following:
(1) Defendant's motion to dismiss be granted because plaintiff failed to attend his properly noticed deposition;

(2) Plaintiff's motion for summary judgment be denied;

(3) Defendant's motion for summary judgment be granted; and

(4) Insofar as plaintiff has alleged a Title VII retaliation claim, it should be dismissed by the magistrate judge, *sua sponte.*

Objections to the magistrate judge's Report were initially due on September 21, 2006. However, both parties subsequently filed separate motions requesting an extension of time to provide this court with any objections to the Report. Both parties have now filed their objections, and this matter is now ripe for review by the court.

III. Discussion and Analysis

A. Standard of Review

*HN1* The magistrate judge makes only a recommendation to the Court: The **[\*6]** Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

*HN2* While the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972); Haines v. Kerner, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), **[\*7]** the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Servs, 901 F.2d 387 (4th Cir. 1990).

B. Plaintiff's Title VII Religious Discrimination Claim Against SCDPS and SCDMV

1. Hostile Work Environment

In their motion for summary judgment, defendants asserts that plaintiff's Title VII religious discrimination should not survive summary judgment because plaintiff's alleged incidents of discrimination were not sufficiently severe or pervasive to alter the conditions of his employment or to create an abusive environment. Additionally, they argued that if plaintiff was subjected to a hostile work environment, plaintiff failed to use the procedures established by SCDPS and DMV to prevent and correct the harassment.

The Magistrate Judge limited his discussion on plaintiff's Title VII religious discrimination claim to whether plaintiff was subjected to a hostile work environment because plaintiff could not establish that any tangible employment **[\*8]** action was directed against him based on his religion. Thus, the Magistrate Judge employed the four-pronged summary judgment test to analyze whether defendants' alleged conduct created a hostile work environment. See Baqir v. Principi, 434 F.3d 733, 745-746 (4th Cir. 2006). *HN3* To prove a hostile work environment claim in the religious context, a plaintiff must demonstrate the

following: (1) he experienced unwelcomed harassment; (2) the harassment was based on his religion; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment; and (4) there is some basis for imposing liability on the employer. Id.

The Magistrate Judge found that plaintiff had failed to demonstrate that any alleged actions taken by defendants were objectively offensive such that a reasonable person would find hostile or abusive. In making this determination, the Magistrate Judge cited to **HN4**⬆ the United States Supreme Court decision of Harris v. Forklift Systems, Inc. In Harris, the Court addressed what constituted a "hostile work environment" for purposes of Title VII. Harris, 510 U.S. 17, 18-19, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). The Court held that a hostile **[*9]** or abusive work environment can be only be determined by looking at the totality of the circumstances. The Court advised looking at a number of factors, including the frequency of the alleged discriminatory conduct; its severity; whether the alleged conduct was physically threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interfered with the employee's work performance. Id. at 23.

In the instant case, the Magistrate Judge thoroughly analyzed defendants' alleged conduct towards plaintiff to consider whether it rose to the level of a hostile work environment. Most of these alleged instances involved defendants' warning plaintiff to stop expressing his religious views in the workplace. For example, defendants sent several e-mails and also issued several verbal warnings to plaintiff indicating that he needed to cease his religious outwardness while at work. See Def's Mot. for Summ. J. (Attachment G). The Magistrate Judge also found that the plaintiff, in his own deposition, could only describe several occasions when he was admonished for his outward religious beliefs. Finally, the Magistrate Judge concluded that even if plaintiff **[*10]** was subjected to a hostile work environment, defendant was still entitled to summary judgment because plaintiff failed to utilize defendants' grievance procedure for such actions.

**HN5**⬆ In the companion cases of Faragher v. City of Boca Raton and Burlington Industries, Inc. v. Ellerth, the United States Supreme Court established an affirmative defense to potential liability for a hostile work environment under Title VII. The defense consists of two necessary elements: (1) the employer exercised reasonable care to prevent and promptly correct the harassing behavior; and (2) the plaintiff failed to take advantage of any preventative or corrective procedures that the employer provided. Burlington Indus, Inc., 524 U.S. at 765. The Magistrate Judge determined that defendant DPS has an internal grievance policy to address allegations of harassment, and plaintiff admitted in his own deposition that he was aware of such a procedure. Nevertheless, plaintiff failed to follow the grievance policy and report any of the alleged religious harassment. Accordingly, the Magistrate Judge held that defendants were also entitled to the Faragher/Ellerth affirmative defense.

Plaintiff **[*11]** now objects the the Magistrate Judge's Report recommending the granting of defendants' motion for summary judgment on plaintiff's Title VII religious discrimination claim. In particular, plaintiff argues that the Magistrate Judge failed to consider the defendants' alleged policy of allowing no religion in the workplace. Furthermore, plaintiff contends that defendants' "zero tolerance" policy relating to religion on the job did not reasonably accommodate plaintiff's religious beliefs. See Brown v. Polk County, 61 F.3d 650 (8th Cir. 1995). Finally, plaintiff contends that the Magistrate Judge neglected to address plaintiff's claim that he overheard other employees referring to him as a "religious fanatic," which allegedly caused him to suffer both physical and mental health problems.

After reviewing the evidence in the light most favorable to the plaintiff, both parties' memoranda, the Magistrate Judge's Report, and the applicable caselaw, the court finds that

there is no merit to plaintiff's Title VII claim that he was subjected to a hostile work environment. As indicated above, the Magistrate Judge only analyzed plaintiff's Title VII claim relating a hostile work **[\*12]** environment. Plaintiff has simply failed to present any evidence demonstrating that he was subjected to severe or pervasive harassment at work. To the contrary, the only evidence presented shows that defendants sent various e-mails to plaintiff warning him to cease talking to fellow employees about his religion. Additionally, plaintiff points to several alleged conversations he overheard in which unknown employees referred to plaintiff as a "religious fanatic." There is no evidence that any of these e-mails or alleged conversations unreasonably interfered with plaintiff's work performance, were physically threatening or humiliating, or were commonplace at plaintiff's employment to the extent that it can be said that plaintiff was the victim of an objectively hostile or abusive work environment. See Harris, 510 U.S. at 23; See also Boyle v. Hartford Cty., 2004 WL 3222888 at \*4 (March 31, 2004)(finding that employees' statements calling plaintiff a "Bible thumper" and a "religious fanatic" were insufficient to establish a hostile work environment.). Indeed, the sole reason why defendants spoke with plaintiff on more than one occasion about ceasing his **[\*13]** religious discussions with others was because plaintiff repeatedly refused to heed his employers' warnings.

Finally, assuming *arguendo* that plaintiff could establish a prima facie claim for a hostile work environment, plaintiff's claim would still fail because he did not utilize any of defendants' corrective procedures that were available to him. See Burlington Indus, Inc., 524 U.S. at 765. At his deposition, plaintiff readily admitted that he never filed a grievance for religious discrimination/harassment with the defendants' Human Resources Department. Therefore, the Magistrate Judge was correct in granting summary judgment for defendants as it relates to plaintiff's Title VII hostile work environment claim.

2. Title VII Religious Discrimination-Disparate Treatment and Failure to Accommodate

Furthermore, there is no merit to plaintiff's Title VII religious discrimination claim either. *HN6* Title VII makes it unlawful to discharge an individual because of his or her religion. See 42 U.S.C. § 2000e-2. The Fourth Circuit has recognized two potential theories for religious discrimination under Title VII: disparate treatment and failure **[\*14]** to accommodate. Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996). To prove disparate treatment, a plaintiff must show that the employer took a tangible employment action against plaintiff because of his religion. See id. See also, McIntyre-Handy v. West Telemarketing Corp., 97 F.Supp.2d 718, 729-733 (E.D. Va. 2000).

The Magistrate Judge concluded that plaintiff had failed to assert any evidence that defendants took any employment action against plaintiff because of his religion. After reviewing the record, there is no reason to disturb the Magistrate Judge's Report. While plaintiff was reassigned to another position in May of 2003 and ultimately terminated in September of 2003, defendants have effectively proven a legitimate, non-discriminatory reason for both of these actions. Chalmers, 101 F.3d at 1017-1018.

Indeed, the facts demonstrate that David Burgis, the head of the DMV, reassigned plaintiff to the DMV's Field Administration Office because he believed it was important to coordinate "Q-matic" n3 closely with the field administration staff. Moreover, plaintiff was terminated, along with others, as part **[\*15]** of a Reduction in Force caused by the budgetary cuts of the DMV beginning in June of 2001. *See* Adams Aff. PP 5-6 (stating plaintiff's position was eliminated as a cost-saving measure because his duties could be efficiently outsourced and that plaintiff's position was never filled since he was terminated). Plaintiff has failed to provide any evidence rebutting the defendants' reasoning for his reassignment and ultimate termination. Chalmers, 101 F.3d at 1017-1018 (stating that *HN7* if an employer presents [a

legitimate, non-discriminatory reason] for its actions, plaintiff must show that the employer's proffered reason is pretextual and was actually motivated by illicit discrimination). Accordingly, the Magistrate Judge was correct in finding no merit in plaintiff's Title VII religious discrimination claim as it relates to disparate treatment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Q-matic was the name of the computer system that was responsible for tracking DMV customers. Plaintiff, in his position in information technology for defendants, was tasked to support this computer system among others.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*16]**

However, unlike the disparate treatment theory, *HN8* an employee can establish a valid claim even if the employer presents irrefutable evidence demonstrating that the employer took certain action against defendant because of legitimate, non-discriminatory reasons. Chalmers, 101 F.3d at 1018. To prove a prima facie religious accommodation claim, a plaintiff must establish that (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; and (3) he or she was disciplined for failure to comply with the conflicting employment requirement. Id at. 1019. There is no doubt that plaintiff has met the first two elements as evidenced by plaintiff's sincere religious beliefs, and the defendants' constant attempts to prohibit plaintiff from discussing his religion with others. Thus, the only question is whether plaintiff was disciplined for his failure to comply with his employers' requirements regarding religion.

Here, while there is evidence suggesting that defendants did repeatedly warn plaintiff about his religiosity in the workplace, there is a paucity of evidence showing that plaintiff was **[*17]** never disciplined for his religious behavior. Cf. Baltgalvis v. Newport News Shipbuilding, Inc., 132 F.Supp.2d 414, 418 (E.D. Va. 2001)(employer disciplined employee- who refused to provide her Social Security number because of her religious beliefs- by terminating her). Furthermore, even if plaintiff could establish that he was disciplined because his religious beliefs conflicted with defendants' employment requirements, there is ample evidence to suggest that defendants could not reasonably accommodate plaintiff's religious needs without undue hardship. Chalmers, 101 F.3d at 1019.

*HN9* A reasonable accommodation is "one that does not cause undue hardship to an employer or does not result in more than a de minimis cost to an employer." McIntyre-Handy, 97 F.Supp.2d at 735 (quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977)). In Chalmers, the Fourth Circuit addressed the ability of an employer to accommodate an employee's supposed religious need to impose his religious beliefs on others. Chalmers, 101 F.3d at 1021 The Court held that such a situation places an employer "between a rock **[*18]** and a hard place" and held that such an accommodation would impose an undue burden on an employer. Id.

In the instant case, like Chalmers, plaintiff repeatedly attempted to discuss his religious faith among his co-workers. Plaintiff's conduct here plainly put defendants "between a rock and a hard place," and thus any attempt to reasonably accommodate plaintiff's proselytizing would have imposed an undue burden upon defendants.

Additionally, plaintiff's reliance on Brown v. Polk County is unfounded. In Brown, the plaintiff, the director of information services in Polk County, Iowa, was disciplined and

ultimately terminated for engaging various religious activities, including *inter alia* making several Biblical references to co-workers and keeping certain religious items on his desk. Brown, 61 F.3d at 652-653. The United States Court of Appeals for the Eighth Circuit held that plaintiff had successfully pled a Title VII religious accommodation claim. Central to this holding, however, was the Eighth Circuit's finding that plaintiff was fired, at least in part, because of his religious activities. Id. at 657. The Eight Circuit pointed **[*19]** to a county administrator's own testimony in which he claimed that the plaintiff's religious activities were "a factor" in their decision to terminate the plaintiff. Id.

Unlike Brown, plaintiff has presented no evidence indicating he was transferred and ultimately terminated because of his religious activities. Instead, defendants' actions against plaintiff appear to be based solely on legitimate, non-discriminatory reasons. Accordingly, this court holds that plaintiff's religious accommodation claim under Title VII must also fail.

B. Plaintiff's Retaliation Claims

1. Title VII Retaliation

Plaintiff also alleges that the defendants, DMV and SCDPS, retaliated against him in violation of Title VII of the 1964 Civil Rights Act. *HN10*⚐Under Title VII, an employer is forbidden from taking action that discriminates against an employee because that employee has either opposed an employer's practice that Title VII prohibits or has "made a charge, testified, assisted, or participated in a Title VII investigation proceeding, or hearing." *See* 42 U.S.C. § 2000e-3(a). The purpose of the anti-retaliation provision in Title VII is to prevent an employer **[*20]** from "interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees." Burlington Northern & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2412, 165 L. Ed. 2d 345 (2006).

*HN11*⚐To establish a prima facie claim of retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action. Laughlin v. Metro Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). *HN12*⚐Protected activity is divided into two categories: opposition and participation. Participation activity includes making a charge, testifying or participating in a Title VII investigation, proceeding, or hearing concerning the plaintiff's employer. Id at. 259. See also Kubico v. Ogden Logistics Servs., 181 F.3d 544 (4th Cir. 1999). Conversely, opposition activity includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin,* 149 F.3d at 259. **[*21]** In determining whether an employee engaged in legitimate opposition activity, a court will balance the purposes of Title VII to protect individuals engaging in reasonable opposition to discrimination against Congress's desire not to handcuff an employer's ability to select and control its personnel. Id. See also Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981).

The Magistrate Judge recommended that plaintiff's Title VII retaliation claim be dismissed *sua sponte.* Specifically, the Magistrate Judge held that plaintiff had failed to engage in any protected activity under Title VII and thus plaintiff had failed to establish a prima facie claim for Title VII retaliation. Plaintiff has offered no objections regarding the Magistrate Judge's recommendation to dismiss his Title VII retaliation claim. After reviewing the record and applicable caselaw, the court is inclined to agree with the reasoning of the Magistrate Judge. There is simply no evidence demonstrating that the plaintiff engaged in either opposition or participatory protected activity. Furthermore, even if plaintiff could demonstrate that he had engaged in such activity, plaintiff's Title **[*22]** VII retaliation claim would still fail because

there is no casual connection between any possible protected activity and defendants' decision to reassign and ultimately terminate plaintiff. As stated above, defendants had legitimate, non-discriminatory motives for both of these decisions.

Finally, the most recent decision by the United States Supreme Court broadening the scope of a Title VII anti-retaliation claim is also unavailing to plaintiff. See Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). In Burlington, the Court addressed whether Title VII's anti-retaliation provision prohibits only those employer actions and resulting harms that are related to the employee's occupation or the workplace. Id. at 2411. In resolving a split among the various circuit courts, [HN13] the Court held the scope of the anti-retaliation provision extends beyond simple employment or workplace-related harms to any materially adverse harm that an employee reasonably believes is connected to his prior protected activity. Id. at 2415-2416. As stated before, plaintiff has simply failed to provide this court with evidence showing that **[*23]** he experienced any material adverse treatment from the defendants or has engaged in any protected activity. Accordingly, this court agrees with the Magistrate Judge that plaintiff's Title VII claim for retaliation should be dismissed sua sponte.

## 2. FMLA Retaliation

Additionally, the Magistrate Judge recommended that plaintiff's cause of action for retaliation under the Family Medical Leave Act ("FMLA") is without merit. [HN14] Under the FMLA, an eligible employee may take unpaid leave from his employment for up to twelve weeks in any twelve-month period for family or health-related matters. 29 U.S.C. § 2612(a)(1). Upon returning to work, the employee has a "right to be restored by the employer to the position of employment held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other conditions and terms of employment." 29 U.S.C. § 2614(a)(1)(A)-(B). In an effort to ensure that employees may freely exercise their FMLA rights, the Act creates a private cause of action enabling an employee to sue an employer who retaliates or otherwise discriminates against the employee **[*24]** for taking leave under the FMLA. See 29 U.S.C. § 2615(a)(2)([HN15] "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful under this subchapter.").

In his complaint, plaintiff inartfully attempts to argue that he was retaliated against for taking his FMLA leave. [HN16] "FMLA [retaliation] claims are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of McDonnell Douglas." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 550-551 (4th Cir. 2006). Accordingly, to establish a prima facie claim for FMLA retaliation, a plaintiff must prove: (1) he engaged in protected activity; (2) the employer took adverse action against him; and (3) the adverse action was connected to the plaintiff's protected activity. Id. at 551 (citing Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)). If the plaintiff meets his burden, then defendant must then demonstrate that any adverse action it took against plaintiff was non-discriminatory. Yashenko, 446 F.3d at 551. **[*25]** Once the employer proves a non-discriminatory purpose for its adverse employment action, then plaintiff must prove that the employer-alleged reasoning is pretext for FMLA retaliation. Id.

The Magistrate Judge reasoned that plaintiff failed to establish an FMLA retaliation claim against defendants because plaintiff failed to assert that defendants violated any FMLA regulation, misapplied his annual, sick, or FMLA leave, or failed to allow him to take his twelve weeks of unpaid leave he was entitled under the FMLA. Instead, the Magistrate Judge reasoned that after seventeen weeks away from work, defendants were legally entitled to terminated plaintiff during the Reduction in Force in September of 2003. Plaintiff

has offered no objection to this conclusion.

After reviewing the record, the Magistrate Judge was correct in his recommendation that plaintiff had failed to establish a prima facie claim for FMLA retaliation. The undisputed facts demonstrate that on June 1,2003, plaintiff took sick leave from his job. He returned to work the following day, but instructed his supervisor, Beverly Hamilton, that he was ill and needed to see his doctor. While defendants initially questioned **[*26]** on June 23, 2003, whether plaintiff was abusing his sick leave, defendants notified plaintiff that he was entitled to twelve weeks of FMLA because of his medical condition n4. Accordingly, plaintiff took FMLA leave from his employment from June 3, 2003 to August 26, 2003. After the twelve-week period was completed, plaintiff was still unable to return to work. Nevertheless, plaintiff continued to be employed with defendants. Finally, on October 1, 2003, plaintiff was terminated by defendants because of their Reduction in Force.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 In his complaint, plaintiff alleged that he suffered from panic attacks, anxiety attacks, depression, and insomnia.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiff fails to show any evidence that defendants took any adverse action because of his decision to take leave under the FMLA. In fact, defendants fully permitted plaintiff to take such leave and further allowed plaintiff to remain employed after exhausting his FMLA leave. Similar to plaintiff's Title VII claim, defendants have demonstrated that their decision to terminate **[*27]** plaintiff in October 2003 was related to their reduction in force, not in retaliation for plaintiff's FMLA leave. See Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997)(finding *HN17* an employer's reduction in force was a legitimate, non-retaliatory reason to discharge an employee). Furthermore, plaintiff offers no evidence demonstrating that the alleged reason for his termination was pretextual. See Yashenko, 446 F.3d at 551 (plaintiff bears the burden of establishing that employer's proffered explanation for an adverse employment action is pretext for FMLA retaliation). Therefore, the court concurs with the Magistrate Judge's recommendation that plaintiff's FMLA retaliation claim should be dismissed.

C. Plaintiff's § 1983 Claim

In plaintiff's complaint, he inartfully alleges that he was unlawfully disciplined and terminated by defendants in violation of, *inter alia,* the First Amendment to the United States Constitution. However, plaintiff fails to cite those specific statements or religious beliefs that he believes are constitutionally protected. In essence, plaintiff appears to allege in his complaint that he was punished and/or retaliated **[*28]** against for engaging in constitutionally protected conduct. In an order entered March 3, 2006, this court dismissed this § 1983 claim as it relates to defendant SCDPS, DMV, and the individual defendants in their official capacities. Thus, the only remaining defendants under plaintiff's § 1983 claim are the various individuals employed with defendant in their individual capacities. These individuals include Boykin Rose, Marcia Adams, Jimmy Early, Philip Cockrell, and David Burgess.

Because plaintiff failed to allege those specific instances relating to the alleged violation of his First Amendment rights, the Magistrate Judge relied upon plaintiff's deposition testimony

to determined which activities plaintiff allegedly believed were constitutionally protected. First, the Magistrate Judge considered plaintiff's email sent in June of 2000 to his department executives, in which plaintiff expressed his disagreement with the purchase of certain computer equipment. Second, the Magistrate Judge also considered plaintiff's conversation with defendant Rose, in which he told Rose that defendants Early and Cockrell had unlawfully required him to lobby Representative Rick Quinn of the South **[*29]** Carolina House of Representatives. Finally, the Magistrate Judge addressed plaintiff's alleged meeting with defendant Rose where plaintiff told Rose that the department had "suspiciously" purchased additional computer equipment. Upon considering all of these statements, the Magistrate Judge found that no First Amendment retaliation occurred against plaintiff. Specifically, the Magistrate Judge held that plaintiff had produced no evidence demonstrating that he was reassigned and ultimately terminated because he exercised his First Amendment rights. Plaintiff has offered no objections to the Magistrate Judge's Report recommending the granting of summary judgment to the individual defendants on his § 1983 claims.

**HN18** In order to prove a First Amendment retaliation claim against a public employer, a plaintiff must prove that (1) he spoke as a citizen, not as an employee, on a matter of public concern; (2) his interest in the expression at issue must outweigh the employer's "interest in providing effective and efficient services to the public"; (3) he was deprived of some valuable benefit; and (4) there is a causal connection between the alleged protected speech and the retaliatory employment **[*30]** action by the public employer. See Peters v. Jenney, 327 F.3d 307, 322 (4th Cir. 2003); McVey v. Stacy, 157 F.3d 271, 277-278 (4th Cir. 1998).

The Magistrate Judge determined that plaintiff's speech concerning alleged anti-lobbying activities by defendants constituted a matter of public concern. See Ridpath v. Board of Governors Marshall Univ., 447 F.3d 292, 316 (4th Cir. 2006)(quoting Urofsky v. Gilmore, 216 F.3d 401, 406-407 (4th Cir. 2000))(stating that speech is a matter of public concern if it addresses "an issue of social, political, or other interest to a community."). Additionally, the Magistrate Judge found that plaintiff was denied a valuable benefit when he was reassigned and ultimately terminated from his job. However, the Magistrate Judge held that plaintiff failed to establish the necessary causal relationship between plaintiff's protected speech and defendants' decision to reassign and eventually terminate him. Moreover, the Magistrate Judge found that all of the individual defendants were entitled to qualified immunity in their individual capacities.

After reviewing the evidence in the light most **[*31]** favorable to plaintiff, the court agrees with the Magistrate Judge's recommendation that plaintiff has failed to prove a First Amendment retaliation claim. Plaintiff cannot offer any evidence demonstrating that he was reassigned and/or terminated because of his above-mentioned comments. Furthermore, similar to plaintiff's Title VII and FMLA retaliation claims, plaintiff cannot rebut defendants' contentions that his termination was solely based on the reduction in force, which is a legitimate, non-discriminatory reason to end an employee's employment. Therefore, plaintiff's First Amendment retaliation claim is without merit and defendants are entitled to summary judgment on this claim.

D. Motion to Dismiss

In addition to recommending that defendants are entitled to summary judgment on all of plaintiff's claims, the Magistrate Judge also recommended granting defendants' motion to dismiss (filed November 10, 2005) pursuant to FED R. CIV. P. 37 and 41. The Magistrate Judge made the following findings justifying the dismissal of plaintiff's case.

On March 22, 2005, plaintiff was deposed. At the deposition, **[*32]** plaintiff's former counsel advised defendants that the deposition would have to be reconvened because plaintiff had not fully provided all of the requested discovery. Counsel attempted to reschedule the deposition and the date of July 6, 2005 was agreed upon by both parties. However, the day before the scheduled deposition, plaintiff cancelled largely because he failed to give his tax records to his former counsel and, in turn, to defendants. On August 23, 2005, defendants filed a motion to compel the production of these documents. One week later, on August 30, 2005, plaintiff's former counsel moved to be removed from the case because plaintiff continued to willfully avoid discovery. Specifically, plaintiff's former counsel indicated that he had attempted on numerous occasions to communicate with plaintiff concerning proper compliance with discovery, but plaintiff had failed to provide him with the requisite information.

On September 15, 2005, the Magistrate Judge conducted a hearing to consider defendant's motion to compel and plaintiff's counsel motion to withdraw as counsel. Both motions were granted. In particular, on September 16, 2005, the Magistrate Judge issued an order warning **[*33]** plaintiff to comply with the requested discovery and to attend his properly noticed deposition, and if plaintiff failed to do so it "may result in sanctions, up to and including the dismissal of this action." Defendants attempted to reschedule plaintiff's deposition on several occasions following the Magistrate Judge's order, but plaintiff continually refused to respond. Additionally, plaintiff never complied with the Magistrate Judge's Order to produce the written discovery as requested in defendants' motion to compel. Therefore, on November 10, 2005, defendants moved to dismiss plaintiff's case pursuant to FED. R. CIV. P. 37 and 41.

*HN19* Dismissal of a party's case for failure to comply with a court order or a discovery request is a severe sanction that must be exercised cautiously and with restraint. Zaczek v. Fauquier Cty. Virginia, 764 F.Supp 1071, 1077 (E.D. Va. 1991). Nevertheless, Rule 37 of the Federal Rules of Civil Procedure requires all parties to comply with discovery requests and any court orders regarding discovery. If a party fails to **[*34]** comply, the court may issue sanctions against that party, including the dismissal of the party's action. See FED. R. CIV. P. 37(b)(2)(C)(stating "If a party...fails to obey an order to provide or permit discovery...the court in which the action is pending may make....an order dismissing the action."). The Fourth Circuit has held that a court must consider four factors in determining whether dismissal action is the appropriate sanction for a party's failure to comply with discovery. Specifically, a court must consider: (1) whether the non-complying party acted in bad faith; (2) the degree of prejudice suffered by the other parties as a result of the failure to comply; (3) the deterrence value of dismissal as a sanction for this sort of non-compliance; and (4) the efficacy of a less drastic sanction. See Mut. Fed. Sav. and Loan Ass'n v. Richards & Assoc., Inc., 872 F.2d 88, 92 (4th Cir. 1992).

Similarly, *HN20* Rule 41 of the Federal Rules of Civil Procedure allows the court power to involuntarily dismiss a party's action "for failure of the plaintiff to prosecute or to comply with these rules **[*35]** or any order of court." See FED. R. CIV. 41(b). In assessing whether dismissal of a party's action is appropriate under Rule 41(b), a court evaluates: (1) the degree of the plaintiff's personal responsibility for the failures; (2) the amount of prejudice caused to the defendant; (3) the existence of a history of the plaintiff deliberately proceeding in a dilatory fashion; and (4) the availability of a less drastic sanction. Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989).

Applying the above factors to the instant case, the Magistrate Judge found that plaintiff acted in bad faith throughout the discovery process. The Magistrate Judge found that

plaintiff's rationale for failing to provide the requested discovery--which was based on plaintiff's claim that both the Internal Revenue Service and the South Carolina Tax Commission could not provide plaintiff with his tax return--was "implausible." Finally, the Magistrate Judge noted his repeated efforts and warnings demanding that plaintiff comply with his discovery orders, which were continually ignored by plaintiff.

Plaintiff now objects to the Magistrate Judge's Report **[*36]** claiming that the Magistrate Judge failed to consider that plaintiff was proceeding *pro se.* Additionally, plaintiff contends that the Magistrate Judge never considered how defendants were prejudiced by plaintiff's noncompliance with the court's order or if less drastic sanctions should have been applied.

After reviewing all of the facts leading to the Magistrate Judge's conclusion recommending the dismissal of plaintiff's action as a sanction for failure to comply with the requested discovery and court orders, the court is inclined to concur with the Magistrate Judge's recommendation. For over six months, defendants and the court attempted to compel plaintiff into compliance with the discovery process. However, despite these efforts and the Magistrate Judge's warnings of the potential dire consequence for failing to follow the court's order, plaintiff continued his noncompliance. See Berry v. South Carolina Dep't of Social Servs., 1997 U.S. App. LEXIS 22647, 1997 WL 499950 at *6 (4th Cir. Aug. 25, 1997)(finding that<sup>HN21</sup> a party's failure to follow a court's order to comply with discovery was a factor in dismissing a party's case). Plaintiff's repeated noncompliance with the court's order can **[*37]** only be seen as deliberate and in bad faith. See Huertas v. City of Philadelphia, 139 Fed. Appx. 444, 2005 WL 1669754 at *2 (3rd Cir. 2005)(finding that<sup>HN22</sup> a party's continued refusal to attend his deposition established a pattern of dilatory conduct).

Furthermore, plaintiff's argument that the Magistrate Judge failed to consider that plaintiff was proceeding *pro se* is unavailing. The Magistrate Judge specifically contemplated this factor and thoroughly explained that plaintiff's repeated refusal to comply with the discovery process was largely the reason why plaintiff was forced to proceed *pro se* in the first place. Additionally, contrary to plaintiff's assertions, the prejudice to defendants is obvious in this case because they were unable to fully depose plaintiff and effectively prepare their case for trial. See Halas v. Consumer Servs., Inc., 16 F.3d 161, 164-165 (7th Cir. 1994)(holding that plaintiff's failure to comply with a court's order requiring him to attend his properly noticed deposition warranted dismissal of his case as an appropriate sanction). Finally, <sup>HN23</sup>it is unnecessary to impose less drastic sanctions prior to entering an order of dismissal. **[*38]** See Hal Commodity Cycles Mgmt. Co. v. Kirsh, 825 F.2d 1136, 1139 (7th Cir. 1987)("A district court is not required to fire warning shot" prior to entering a default judgment against a party.). Therefore, based on the repeated refusal of plaintiff to comply with the discovery process, attend his properly noticed depositions, and follow the Magistrate Judge's prior order, the court holds that dismissal of plaintiff's case with prejudice is warranted at this time. See Daye v. General Motors Corp., 172 F.R.D. 173, 177-179 (M.D. N.C. 1997)(finding that <sup>HN24</sup>dismissal of case with prejudice is an appropriate sanction for a party who fails to comply with the discovery process and refuses to follow a court's prior order).

E. Defendants' Objections to the Report

1. Authenticity of Certain Documents

Defendants make two limited objections to the Magistrate Judge's Report. First, they argue that the Magistrate Judge should not have considered the e-mails and electronic calendars that plaintiff produced in considering the parties' motions for summary judgment. See Def's

Mot. Summ. J. (Attachment G). Specifically, defendants claim the authenticity of these **[*39]** documents has never been proven and also constitutes inadmissible hearsay. Consequently, they contend that such information should not have been considered by the Magistrate Judge in his Report. See Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993)("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proferred sufficient proof, in the form admissible evidence, that could carry the burden of proof of his claim at trial.").

*HN25* 🕀 Under Rule 901 of the Federal Rules of Evidence, documents must be properly authenticated as a condition precedent to their admissibility "by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). This rule applies with equal force at the summary judgment stage of a case. Under Rule 56(e) of the Federal Rules of Civil Procedure, documents submitted as evidence to support or oppose a motion for summary judgment must be authenticated, which is ordinarily done by affidavit. See Friedel v. City of Madison, 832 F.2d 965, 970 (7th Cir. 1987); **[*40]** Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993)(To be admissible at summary judgment, documents must be authenticated and attached to an affidavit that meets the requirements of FED. R. CIV. P. 56(e)). Accordingly, unsworn, unauthenticated documents produced by either party in their respective motions cannot be considered by the court on summary judgment. Orsi, 999 F.2d at 92.

In the instant case, defendants contend that plaintiff has failed to meet this evidentiary burden in his production of certain alleged e-mails from defendants and notations made by plaintiff in his electronic calendar. In particular, defendants claim they have no independent record that any of these alleged communications ever existed. Moreover, they argue that plaintiff's refusal to be deposed prohibited defendants from inquiring with plaintiff as to the authenticity or origin of the communications.

Plaintiff has failed to respond to any of these contentions. *HN26* 🕀 Electronic mail communications can normally be authenticated by affidavit of a recipient, comparison of the communications content with other evidence, or statements or other **[*41]** statements from the purported author acknowledging the email communication. United States v. Siddiqui, 235 F.3d 1318, 1322-1323 (11th Cir. 2000); Fenje v. Feld, 301 F.Supp.2d 781, 809 (N.D. Ill. 2003).

After reviewing the documents in question, the court agrees with defendants that these alleged communications have not been properly authenticated. Plaintiff has failed to provide the court with any foundation, authentication, or certification that the documents are legitimate despite defendants' raising concern about their authenticity. Furthermore, none of the alleged communicants in these emails have authenticated them by affidavit. Finally, plaintiff did not attach an affidavit to the documents demonstrating their authenticity. See Orsi, 999 F.2d at 92 ("None of the four documents were attached to affidavits, and the district court had no immediate way of ascertaining whether the documents were even what they purported to be."). Without this requisite showing, we are unable to substantiate the validity of these electronic communications.

While there is some concern that plaintiff's strict compliance with both the Federal Rules **[*42]** of Civil Procedure and Federal Rules of Evidence should be lessen at summary judgment because he has been proceeding *pro se,* this worry is alleviated because plaintiff has been represented by counsel as of October 20, 2006. Defendants did not raise their objections to the authenticity of the e-mails and electronic calendar until October 23, 2006. On this same date, plaintiff was granted an extension of time to file his objections by December 8, 2006. Thus, plaintiff, with the assistance of counsel, had almost 45 days to

respond defendants' objections and supplement the record by authenticating the electronic communications. To this date, plaintiff has yet to authenticate them.

Therefore, plaintiff has failed to authentic both the e-mails and electronic calendar notations and the Magistrate Judge erred in citing to them in his Report. See Miskin v. Baxter Healthcare Corp., 107 F.Supp.2d 669, 674-675 (D. Md. 1999)(holding that documents lacking an attached affidavit or other authenticating information were inadmissible for consideration at summary judgment).

2. Defendant's Discussion of *National R.R. Passenger Corp. v. Morgan*

Finally, defendants object **[\*43]** to the Magistrate Judge's finding that defendants "grossly misinterpreted" the case of National R.R. Passenger Corp. v. Morgan in their motion for summary judgment. Under Title VII, a plaintiff is required to file a charge of discrimination against his employer with either the Equal Opportunity Employment Commission ("EEOC") or a qualifying state agency. 42 U.S.C. 2000e-5(e)(1). If the plaintiff chooses to file with the EEOC, he or she has 180 days after the alleged unlawful employment practice to file a charge. Id. Conversely, if the plaintiff opts to file with a qualifying state agency, he or she has 300 days to file. Id.

In their objections, defendants now suggest that Morgan would prevent consideration by the court of any alleged discrete, discriminatory acts that occurred more than 300 days prior to plaintiff's filing his South Carolina Human Affairs Commission ("SCHAC") charge on November 24, 2003. Furthermore, defendants now interpret Morgan to mean that the entire period may be considered for determining liability related to plaintiff's claim of an alleged hostile work environment so long as an act contributing to the claim occurred **[\*44]** within the filing period.

Regardless of what was previously alleged in their motion for summary judgment, defendants present interpretation of Morgan in their objections to the Magistrate Judge's Report is an accurate statement of the law. See Morgan, 536 U.S. 101, 114-115, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)(holding that for discrete acts of discrimination, a court may only consider those alleged acts that occurred for the 300 days *prior* to a plaintiff filing his charge with the appropriate state agency)(emphasis added); Id at. 117 (holding that in a hostile work environment claim, a court may consider alleged unlawful acts outside the statutory filing period provided an act contributing to the claim occurred within the filing period.). Therefore, it is unnecessary to consider whether the Magistrate Judge erred in finding that defendants' interpretation of Morgan was incorrect.

IV. Conclusion

Based on the foregoing reasons, the court overrules all of plaintiff's objections to the Report. Additionally, the court will grant defendants' limited objections to the Report as the objections relate to the Magistrate Judge's improper use of certain documents in considering the parties'  **[\*45]**  motions for summary judgment. The court also agrees with the Magistrate Judge that plaintiff's Title VII retaliation claims should be dismissed *sua sponte.* Finally, in all other respects, the court concurs with the Magistrate Judge's Report recommending that we grant summary judgment to defendants on all of plaintiff's remaining claims [doc. # 33], deny plaintiff's motion for summary judgment [doc. # 32], and dismiss plaintiff's case with prejudice for failing to comply with the discovery process and the court's prior order [doc. # 28].

IT IS SO ORDERED.

January 10, 2007
Columbia, South Carolina

Joseph F. Anderson, Jr.

United States District Judge