LEXSEE 256 F. SUPP. 2D 424

**PINEHURST, INC., Plaintiff, v. BRIAN WICK; and AMERICAN DISTRIBUTION SYSTEMS, INC., d/b/a DEFAULTDATA.COM, Defendants.**

CIVIL NO. 1:01CV00441

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

*256 F. Supp. 2d 424; 2003 U.S. Dist. LEXIS 5388; 66 U.S.P.Q.2D (BNA) 1610*

March 21, 2003, Decided
March 21, 2003, Filed

**PRIOR HISTORY:** *Pinehurst, Inc. v. Wick, 2002 U.S. Dist. LEXIS 19527 (M.D.N.C., May 15, 2002)*

**DISPOSITION:** [**1] Plaintiff's motion for summary judgment granted. Plaintiff's request for permanent injunction granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff golf resort filed a suit against pro se defendants individual and his internet domain name registration business alleging violation of the Anticybersquatting Consumer Protection Act (ACPA) and the Federal Trademark Dilution Act (FTDA) by their unlawful registration and use of internet domain names that were identical or confusingly similar to its federal service marks. The resort moved for summary judgment under *Fed. R. Civ. P. 56*.

**OVERVIEW:** Defendants admitted that by registering the contested domain names, they wanted to have access to people trying to find the resort. There was no dispute that the domain names were identical or confusingly similar to the resort's federal service marks. The court found that there was no genuine issue of material fact concerning defendants' bad faith. They had had no intellectual property right in the marks prior to registering the domain names; the domain names were not the legal name of any defendant; there was no evidence of defendants' bona fide prior use; there was no bona fide non-commercial or fair use of the resort's marks; the intent was to divert the resort's potential customers; defendants offered the domain names in exchange for financial gain; defendants failed to provide the name of a contact person when they registered the name; defendants engaged in warehousing; defendants incorporated into their domain names the resort's distinctive and famous marks; and finally defendants' stated purpose for registering the domain names of messing with corporate America showed bad faith. Defendants' use of the domain names diluted the resort's service marks.

**OUTCOME:** The resort's motion for summary judgment was granted. Its request for a permanent injunction was also granted and the court ordered defendants to transfer ownership of the domain names, awarded the resort statutory damages in the amount of $ 100,000, and awarded it attorney's fees and costs.

**CORE TERMS:** domain, com, registered, famous, bad faith, golf, service marks, registering, registration, website, confusingly, resort, dilution, country club, distinctive, attorney's fees, statutory damages, trademark, internet, customer, parody, summary judgment, injunction, message, admit, law firms, cybersquatting, register, commerce, mess

**COUNSEL:** For Pinehurst, Inc, PLAINTIFF: W Andrew Copenhaver, Womble Carlyle Sandridge & Rice, Winston-Salem, NC USA. Stephen M Trattner, Trattner & Assoc, Washington, DC USA.

For Brian Wick, DEFENDANT: Brian Wick, Denver, CO USA.

**JUDGES:** Frank W. Bullock, United States District

6:06-cv-00109-HMH     Date Filed 10/15/2007     Entry Number 132-5     Page 2 of 8

Page 2

256 F. Supp. 2d 424, *; 2003 U.S. Dist. LEXIS 5388, **1;
66 U.S.P.Q.2D (BNA) 1610

Judge.

**OPINION BY:** Frank W. Bullock

**OPINION**

[*425] *MEMORANDUM OPINION*

BULLOCK, District Judge

Pinehurst, Inc. ("Plaintiff") filed the present suit against *pro se* Defendants Brian Wick and American Distribution Systems, Inc. (collectively "Defendants") alleging violation of the Anticybersquatting Consumer Protection Act, *15 U.S.C. § 1125(d)*, and the Federal Trademark Dilution Act, *15 U.S.C. § 1125(c)*. Plaintiff's suit arises out of Defendants' allegedly unlawful registration and use of internet domain names that are identical or confusingly similar to Plaintiff's federal service marks. [**2] This matter is before the court on Plaintiff's motion for summary judgment pursuant to *Federal Rule of Civil Procedure 56*.

FACTS

Plaintiff is the owner of the internationally famous Pinehurst Golf Resort and Pinehurst No. 2 golf course, which has hosted many national golf tournaments, including the United States Open in June [*426] 1999. Plaintiff owns two federal service marks for golfing, resort, and country club services: "Pinehurst" (Reg. Nos. 1,293,332 and 1,601,470) and "Pinehurst Resort and Country Club" (Reg. Nos. 1,663,739 and 1,663,828), which Defendants admit are famous and distinctive marks.

In 1999, Defendants registered 3,000 to 4,000 domain names. Among these domain names, Defendants registered domain names that were confusingly similar to some of the most famous marks in the country. Defendants have registered approximately seven percent of the Fortune 500 company names as domain names. Defendants have also registered 250 domain names similar to well-known law firms "in order to mess with attorneys because Defendants feel lawyers are the biological parents of big-business and the U.S. Constitution has never made a mortgage payment for a lawyer." (Pl.'s Mem. Supp. Mot. Summ. [**3] J., Ex. B at No. 134.) In addition to targeting businesses and law firms, Defendants have targeted famous country clubs, golf clubs, and recreational facilities in their registration of domain names in order to "mess" with the lives of executives who play golf at these facilities.

In 2000, Defendants spent approximately $ 42,500.00 to register additional domain names, to renew prior registrations, and to transfer existing domain names to a new register. As of September 2002, Defendants owned approximately 8,000 domain names and have owned as many as approximately 10,000 domain names in the past. Of those domain names, approximately ninety-nine percent are ".coms" and approximately twenty percent of those domain names correspond to names or marks of established corporations. Defendants have subsequently sold several of their registered domain names to companies that have contacted them requesting to purchase the company's domain name. Approximately ninety-five percent of Defendants' corporate income has been generated through the sale of generic domain names and out-of-court settlements with parties threatening legal action. In 2000, Defendants earned approximately $ 187,000.00 from [**4] the sale of their domain names.

On October 7, 1999, Defendants, using the trade name "NameIsForSale.com," registered the domain name "PinehurstResort.com." In November 2000, Plaintiff sent Defendants a cease-and-desist letter requesting that Defendants transfer the domain name "PinehurstResort.com" to Plaintiff. In exchange for the transfer, Plaintiff agreed to waive its claim for damages and attorney's fees. Defendants refused to transfer the domain name. After Plaintiff's efforts to obtain the transfer of "PinehurstResort.com" failed, it filed the present suit. Following the filing of this suit, Defendants registered "PinehurstResorts.com." Plaintiff amended its complaint to include Defendants' registration and use of this domain name. Then, approximately two weeks after Plaintiff filed its amended complaint, Defendants registered "Pinhurst.com."

Defendants admit that by registering "PinehurstResort.com" and "PinehurstResorts.com" they wanted to have access to people trying to find Plaintiff. Defendants' "free speech forum" at "PinehurstResort.com" has contained, *inter alia*, Defendants' "TownDrunk" logo, a reference to Defendants' "4thReich" website in a disclaimer, and statements [**5] regarding federal judge Lewis Babcock as a "*first amendment* challenged country club good 'ole boy." (Pl.'s Mem. Supp. Mot. Summ. J., Ex. B at Nos. 22,

256 F. Supp. 2d 424, *426; 2003 U.S. Dist. LEXIS 5388, **5;
66 U.S.P.Q.2D (BNA) 1610

83.) Also included on Defendants' Pinehurst websites are photographs of a miniature golf course, a trailer park, and a pond with people swimming.

[*427] Plaintiff's amended complaint states two claims: (1) dilution in violation of the *Federal Trademark Dilution Act*; and (2) cybersquatting in violation of the *Anticybersquatting Consumer Protection Act*. Plaintiff alleges that Defendants, through the use of the websites "PinehurstResort.com" and "PinehurstResorts.com," have denigrated Plaintiff and harmed the goodwill Plaintiff has established over nearly 100 years of use and promotion of its famous Pinehurst service marks. Plaintiff further alleges that Defendants' registration of domain names identical or confusingly similar to Plaintiff's Pinehurst marks was done in bad faith with an intent to profit. Plaintiff seeks as relief a permanent injunction, damages, attorney's fees and costs, and transfer of ownership of Defendants' Pinehurst domain names.

DISCUSSION

I. *Standard of Review*

Summary judgment must be granted if there is no [**6] genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See Fed. R. Civ. P. 56(e)*; *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994)* (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson, 477 U.S. at 255*. However, "the mere existence of a scintilla of evidence in support [**7] of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id. at 252*.

II. *Anticybersquatting Consumer Protection Act*

The *Anticybersquatting Consumer Protection Act* ("ACPA") was enacted in 1999 in response to the growing concern over cybersquatting. Cybersquatting refers to the "'deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners.'" *Virtual Works, Inc. v. Volkswagen of Am., Inc., 238 F.3d 264, 267 (4th Cir. 2001)* (quoting S. Rep. No. 106-140, at 4 (1999)). The practice of cybersquatting occurs when a person registers "'well-known brand names as Internet domain names' in order to force the rightful owners of the marks 'to pay for the right to engage in electronic commerce under their own brand name.'" *Id.* (quoting S. Rep. No. 106-140, at 5). For a plaintiff to succeed on its claim under the ACPA, it must show that: (1) its marks are distinctive or famous; (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks; and (3) the defendant registered its [**8] domain names with the bad faith intent to profit from them. *15 U.S.C. § 1125(d)(1)(A)*; *PETA v. Doughney, 263 F.3d 359, 367 (4th Cir. 2001)*.

There is no dispute that Plaintiff's marks "Pinehurst" and "Pinehurst Resort and Country Club" are distinctive and famous marks and therefore entitled to protection. Plaintiff's marks are federally registered, thereby entitling Plaintiff to a [*428] legal presumption that the marks are distinctive. *See Sporty's Farm L.L.C. v. Sportsman Market, Inc., 202 F.3d 489, 497 (2d Cir. 2000)* (citing *Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 545 (1st Cir. 1995))*. Plaintiff has used its marks for many years, and the marks are famous nationwide for golf services. Furthermore, Defendants admit that Plaintiff's marks are distinctive and famous. (Pl.'s Mem. Supp. Mot. Summ. J., Ex. B at No. 101.)

Similarly, there is no dispute that Defendants' domain names are identical or confusingly similar to Plaintiff's federal service marks. "PinehurstResort.com" and "PinehurstResorts.com" are simply variations of Plaintiff's mark "Pinehurst Resort and Country Club." [1] It is very likely [**9] that a customer attempting to access Plaintiff's website will instead reach Defendants' websites due to the similarities between Defendants' domain names and Plaintiff's marks. Defendants admit this likelihood. Defendant Wick stated that "the beauty of registering PinehurstResort.com is that people trying to reach Plaintiff by typing in the domain name PinehurstResort.com will reach Defendant's speech forum . . . instead." (Pl.'s Mem. Supp. Mot. Summ. J., Ex.

6:06-cv-00109-HMH     Date Filed 10/15/2007     Entry Number 132-5     Page 4 of 8

Page 4

256 F. Supp. 2d 424, *428; 2003 U.S. Dist. LEXIS 5388, **9;
66 U.S.P.Q.2D (BNA) 1610

B at No. 82.)

> 1   Defendants registered a third domain name "Pinhurst.com," which is a misspelling of Plaintiff's "Pinehurst" mark. "Pinhurst.com," however, is not included in Plaintiff's complaint. Defendants registered this domain name two weeks after Plaintiff filed its amended complaint.

Because the court finds Plaintiff's marks to be distinctive and famous and Defendants' Pinehurst domain names to be identical or confusingly similar to those marks, the dispositive issue is whether Defendants registered the Pinehurst domain names in a "bad faith intent [**10] to profit" from their use. The ACPA provides nine statutory factors to guide the court's analysis in making the bad faith determination. *15 U.S.C. § 1125(d)(1)(B)*. Consideration of these factors is permissive and "the most important grounds for finding bad faith 'are the unique circumstances of the case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute.'" *Virtual Works, 238 F.3d at 268, 269* (quoting *Sporty's Farm, 202 F.3d at 499*).

In addition to enumerating the factors the court may consider in making a bad faith intent determination, the ACPA contains a safe harbor provision. The safe harbor provision states that "bad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *15 U.S.C. § 1125(d)(1)(B)(ii)*. However, "[a] defendant who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from the [ACPA's] safe harbor [**11] provision." *Virtual Works, 238 F.3d at 270*.

After considering the factors set forth in the ACPA, the court finds that there is no genuine issue of material fact concerning Defendants' bad faith. First, Defendants had no intellectual property right in their Pinehurst marks prior to registering the Pinehurst domain names. Second, Defendants' Pinehurst domain names do not consist in any way of the legal name of any Defendant nor of any name otherwise commonly used to identify Defendants. Defendants have never registered a trademark or conducted any business using the name Pinehurst or any variation thereof. Third, there is no evidence of Defendants' prior use of the Pinehurst [*429] domain names in connection with the bona fide offering of any goods or services.

Fourth, Defendants have failed to show any bona fide non-commercial or fair use of Plaintiff's marks. Under the fourth factor, the court may consider "the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name." *15 U.S.C. § 1125(d)(1)(B)(IV)*. Defendants argue that they use their domain names merely to display "parody" web pages. Defendants' *First* [**12] *Amendment* argument in this context has been rejected by several courts. *See, e.g., PETA, 263 F.3d at 366-67*; *Morrison & Foerster LLP v. Wick, 94 F. Supp. 2d 1125, 1131, 1134-35 (D. Colo. 2000)* (a case involving these same *Defendants*); *Planned Parenthood Fed'n of Am., Inc. v. Bucci, 1997 U.S. Dist. LEXIS 3338, 42 U.S.P.Q.2d 1430, 1435 (S.D.N.Y. 1997)*.

"A parody must 'convey two simultaneous--and contradictory--messages: that it is the original, but also that it is *not* the original and is instead a parody.'" *PETA, 263 F.3d at 366* (quoting *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc., 886 F.2d 490, 494 (2d Cir. 1989))*. Defendants' domain names, however, do not simultaneously convey two contradictory messages. Looking at Defendants' domain names alone, there is no suggestion of a parody. "PinehurstResort.com" and "PinehurstResorts.com" simply copy Plaintiff's marks. The domain names convey the first message, that it is the original, but the second message, that it is not the original and that it is a parody, is discovered only by accessing the website and reading through the website's [**13] content. *Wick, 94 F. Supp. 2d at 1134-35*. "Thus, the messages are not conveyed simultaneously and do not constitute a parody." *PETA, 263 F.3d at 367*; *see also Bucci, 42 U.S.P.Q.2d at 1435* (rejecting parody defense because "seeing or typing the [protected] mark and accessing the web site are two separate and nonsimultaneous activities").

Fifth, Defendants admit that their intent in using their Pinehurst domain names was to divert customers looking for Plaintiff's website in order to expose those customers to their messages, which they knew would be offensive to some people. Defendants also admit that there is a likelihood of confusion because customers will believe they are accessing Plaintiff's website but will instead locate Defendants' website. In addition to containing potentially offensive messages, Defendants' websites contain disparaging photographs harmful to the reputation and goodwill represented by Plaintiff's

256 F. Supp. 2d 424, *429; 2003 U.S. Dist. LEXIS 5388, **13;
66 U.S.P.Q.2D (BNA) 1610

Pinehurst marks. Customers expecting to see world-class golf facilities and million dollar real estate will instead see a miniature golf course and a dilapidated trailer park.

Sixth, Defendants offered to transfer [**14] ownership of their Pinehurst domain names in exchange for financial gain. 2 Defendants have also transferred the domain [*430] names of other distinctive and famous marks to the mark owners in exchange for money. Defendants state that, while they have sold their domain names to mark owners, they have never contacted a mark owner with the intent of selling the mark owner's domain name. Rather, they contend that all sales have been in connection with settlement offers. Nevertheless, such conduct has been considered evidence of bad faith. *See PETA, 263 F.3d at 369* (stating that district court properly concluded that the defendant's statements that the plaintiff should attempt to "settle" with him and "make him an offer" were evidence of bad faith). Furthermore, the district court in *Wick* found relevant Defendants' use of the domain name "www.NameIsForSale.com" in registering their domain names because "use of this name gives rise to reasonable inference of intent to sell the domain names for a profit." *94 F. Supp. 2d at 1132.*

> 2   In an e-mail Defendant Wick sent to Plaintiff, Wick stated: "The only way I would sign over the disputed addresses to Pinehurst, Inc. would require Pinehurst, Inc. to find another mark holder of equal qualifications who would be willing to sue me . . . . And if some other mark holder is willing to pick up where Pinehurst left off, I would require Pinehurst to make a contribution to a legal expense I have been advised would be between $ 300K - $ 350K to go full term with council [sic] representing me." Wick further stated that there was "good news" for Plaintiff because Qwest Communications filed a complaint concerning Defendants' use of domain names similar to Qwest's mark and that a civil action was certain to follow. He then stated, "In light of the Qwest filing, as far as any potential out of court settlement, all I would ask is a noticeable contribution toward the legal expenses expected in the Civil [sic] action with Qwest." (Pl.'s Mem. Supp. Mot. Summ. J. at Ex. M.)

[**15]   Seventh, in registering their Pinehurst domain names, Defendants failed to provide the name of a contact person as required by the service agreement of "Register.com," which is evidence of bad faith. *See PETA, 263 F.3d at 369; Wick, 94 F. Supp. 2d at 1132.* The eighth factor enumerated in the ACPA "was intended by Congress to target the 'practice known as "warehousing," in which a cyberpirate registers multiple domain names--sometimes hundreds, even thousands--that mirror the trademarks of others.'" *Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 239 (4th Cir. 2002)* (quoting H.R. Rep. No. 106-412, at 13 (1999)). Defendants are engaged in exactly this type of practice. They have registered thousands of domain names that are identical or confusingly similar to the marks or names of others, including seven percent of the Fortune 500 businesses, 250 law firms, and several golf facilities. Ninth, Defendants have incorporated into their Pinehurst domain names Plaintiff's marks, which the court has already found to be distinctive and famous.

Finally, the court finds Defendants' stated purpose for registering their domain names [**16] to be highly persuasive evidence of their bad faith, as did the district court in *Wick, 94 F. Supp. 2d at 1133.* Defendant Wick acknowledged that the purpose of registering the domain names of large corporations, law firms, and golf facilities was to "mess" with "corporate America." Wick stated:

> I got to thinking, well, who else in corporate America can I have fun with? And I figured, well, hey, you know, I got the executives pissed off as a result of me because of the names I own regarding their corporation. I can fool with them where they recreate [golf facilities]. Well, who are they going to get to represent them? So I started getting into targeting . . . large law firms.

(Pl.'s Mem. Supp. Mot. Summ. J., Ex. C at 84.) Further evidence of Defendants' bad faith is their registration of the domain names "PinehurstResorts.com" and "Pinhurst.com." Both of these domain names were registered after Plaintiff initiated its lawsuit. Defendants first registered "PinehurstResorts.com" after Plaintiff filed its complaint. Then, two weeks after Plaintiff amended its complaint to include the domain name "PinehurstResorts.com," Defendants registered the domain [**17] name "Pinhurst.com." In addition to registering these domain names following the initiation of

6:06-cv-00109-HMH     Date Filed 10/15/2007     Entry Number 132-5     Page 6 of 8

Page 6
256 F. Supp. 2d 424, *430; 2003 U.S. Dist. LEXIS 5388, **17;
66 U.S.P.Q.2D (BNA) 1610

this suit, Defendants registered domain names for Plaintiff's legal counsel. Thus, because Defendants registered their Pinehurst domain names in bad faith, they are not entitled to the protection of the ACPA's safe harbor provision, and the court finds that Defendants violated the ACPA.

[*431] III. *Federal Trademark Dilution Act*

To establish a violation of the *Federal Trademark Dilution Act* ("FTDA"), a plaintiff must show that: (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. *15 U.S.C. § 1125(c)*; *Ringling Bros. v. Utah Div. of Travel Dev., 170 F.3d 449, 452 (4th Cir. 1999)*; *Panavision Int'l LP v. Toeppen, 141 F.3d 1316, 1324 (9th Cir. 1998)*.

As discussed *supra*, there is no dispute that Plaintiff's service marks are famous and that Defendants' use of Plaintiff's marks [**18] is commercial. Defendants are in the business of registering and selling domain names, which consist of both generic names and names similar to registered marks. Nor can it be disputed that Defendants' use of Plaintiff's marks began after the marks became famous. Plaintiff registered its service marks in 1990 and 1991, and its marks are famous nationwide for golf services. After the 1999 United States Open Golf Championship which was held at Pinehurst No. 2, Defendants registered the first of their Pinehurst domain names. Defendants' other Pinehurst domain names were registered following the filing of this complaint on April 30, 2001.

The undisputed facts also demonstrate that Defendants' use of their Pinehurst domain names dilutes Plaintiff's service marks. Dilution is "the lessening of the capacity of a famous mark to identify and distinguish goods and services, regardless of the presence or absence of--(1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." *15 U.S.C. § 1127*. A showing of actual dilution of the famous mark is required.*Moseley v. V Secret Catalogue,537 U.S. 418, 155 L. Ed. 2d 1, 123 S. Ct. 1115, 2003 WL 716807* [**19] *(2003)*. Proof of actual dilution, however, "does not mean that the consequences of dilution, such as an actual loss of sales or profits, must also be proved." *Id. 155 L. Ed. 2d 1, [WL] at *7*. "Actual dilution can reliably be proven through circumstantial evidence . . . ." *Id. 155 L. Ed. 2d 1, [WL] at *8*.

Through Defendants' registration and use of their Pinehurst domain names they have reduced Plaintiff's control over its unique association with its service marks. Plaintiff has been unable to obtain the registration of Defendants' Pinehurst domain names. Consequently, Plaintiff is unable to engage in electronic commerce under these domain names, which has reduced the selling power of Plaintiff's marks.

"A significant purpose of a domain name is to identify the entity that owns the web site." *Panavision, 141 F.3d at 1327*. Customers searching for a company's website will often search using a domain name identical or similar to the company's name or mark.*Id.* (citing *Cardservice Int'l v. McGee, 950 F. Supp. 737, 741 (E.D. Va. 1997))*. Defendants' use of domain names identical or confusingly similar to Plaintiff's marks is likely to prevent or hinder Internet users from [**20] accessing Plaintiff's golf services on the Internet. Customers unable to locate Plaintiff's website using domain names identical to its marks, such as "PinehurstResort.com," "'may fail to continue to search for Plaintiff's own home page, due to anger, frustration, or the belief that Plaintiff's home page does not exist.'" *PETA, 263 F.3d at 365* (quoting *Bucci, 42 U.S.P.Q.2d at 1435*). As a result, the economic value of Plaintiff's marks is diminished.

Because of the unique nature of domain names in electronic commerce and the resulting economic harm when marks are [*432] registered as domain names by cyberpirates, Defendants' use of Plaintiff's service marks in their Pinehurst domain names constitutes dilution. See *Panavision, 141 F.3d at 1326-27* (holding that the use of a trademark in a domain name establishes dilution under the FTDA); *Aztar Corp. v. MGM Casino, 59 U.S.P.Q.2d 1460, 1464 (E.D. Va. 2001)* (stating that "where the defendant has used a plaintiff's trademark in a domain name, courts have found dilution as a matter of law"); *Virtual Works, Inc. v. Network Solutions, Inc., 106 F. Supp. 2d 845, 847 (E.D. Va. 2000)*, [**21] *aff'd, 238 F.3d 264 (4th Cir. 2001)* (stating that "internet cyberpiracy constitutes per se trademark dilution" and finding that the plaintiff "experienced economic harm as a result of not being able to use" the domain name of its mark). Defendants have diluted Plaintiff's marks due to the identical or virtually identical character of their

6:06-cv-00109-HMH    Date Filed 10/15/2007    Entry Number 132-5    Page 7 of 8

Page 7

256 F. Supp. 2d 424, *432; 2003 U.S. Dist. LEXIS 5388, **21;
66 U.S.P.Q.2D (BNA) 1610

domain names to Plaintiff's marks. *Moseley, 155 L. Ed. 2d 1, [WL] at *8*. A customer using the Internet will be unable to discern any appreciable difference between Defendants' domain names and Plaintiff's marks. Therefore, the court finds that Defendants have diluted Plaintiff's service marks in violation of the FTDA.

IV. *Remedies*

Plaintiff has established that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. The court will therefore grant Plaintiff's motion for summary judgment. Accordingly, the court needs to determine the appropriate relief available to Plaintiff.

In Plaintiff's motion for summary judgment, Plaintiff seeks an injunction against the use of the term "Pinehurst" and an order requiring Defendants to transfer all of their domain names that [**22] are identical or confusingly similar to Plaintiff's Pinehurst marks. The ACPA and FTDA provide that a prevailing plaintiff is entitled to injunctive relief. *Section 1125(c)(1)* provides that the owner of a famous mark is entitled to an injunction against another person's use in commerce of a mark. *15 U.S.C. § 1125(c)(1)*. In addition, the ACPA expressly provides that the "court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." *15 U.S.C. § 1125(d)(1)(C)*. Thus, the court will order that Defendants transfer to Plaintiff all Pinehurst domain names identical or confusingly similar to Plaintiff's service marks. The court will also permanently enjoin Defendants from using the term "Pinehurst" alone or in conjunction with any other term that serves as a source identifier.

In addition to injunctive relief, Plaintiff seeks statutory damages in the amount of $ 300,000.00. *Section 1117(d)* provides that "in a case involving a violation of *Section 1125(d)(1)* . . ., the plaintiff may elect . . . to recover . . . an award of statutory damages in the amount of not less than $ 1,000 [**23] and not more than $ 100,000 per domain name, as the court considers just." *15 U.S.C. § 1117(d)*. The imposition of "statutory damages in cybersquatting cases, [serves] both to deter wrongful conduct and to provide adequate remedies for trademark owners who seek to enforce their rights in court." S. Rep. No. 106-140, at 8 (1999).

Defendants' express purpose in registering the domain names of distinctive and famous marks is to "mess" with corporate America, including golf facilities. Defendants have been involved in several proceedings regarding their practice of registering domain names. Each proceeding has resulted in a finding that Defendants acted in bad faith. Despite these adverse [*433] rulings, Defendants have persisted in their unlawful activity of registering domain names similar to protected marks. Defendants' recalcitrance is further evidenced by their conduct in the case at bar. On two separate occasions after the filing of Plaintiff's suit, Defendants registered additional domain names similar to Plaintiff's service marks. Defendants also registered domain names similar to Plaintiff's legal counsel. In sum, Defendants have demonstrated an unwillingness [**24] to comply with the requirements of the ACPA. Therefore, the court will award Plaintiff statutory damages in the amount of $ 50,000.00 per domain name for a total amount of $ 100,000.00. [3]

> 3   The court will award Plaintiff statutory damages for Defendants' registration and use of "PinehurstResort.com" and "PinehurstResorts.com." However, because Plaintiff did not amend its complaint to include Defendants' registration and use of the domain name "Pinhurst.com," the court will not award statutory damages for this domain name.

Finally, Plaintiff requests attorney's fees and costs. A court may award reasonable attorney's fees in "exceptional cases." *15 U.S.C. § 1117(a)*. A case is exceptional if the defendant's conduct was "'malicious, fraudulent, willful or deliberate in nature.'" *PETA, 263 F.3d at 370* (quoting *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1991))*. Given Defendants' stated purpose for registering their domain [**25] names, namely to "mess" with Plaintiff, Defendants' admission that they registered domain names similar to Plaintiff's marks in order to have access to people trying to find Plaintiff, Defendants' continued conduct in the face of numerous adverse rulings, including a federal case explicitly rejecting their *First Amendment* parody defense, and Defendants' registration of additional domain names similar to Plaintiff's marks after the commencement of this lawsuit, the court finds that Defendants' conduct was willful and deliberate. Accordingly, the court concludes that this is an exceptional case and will award Plaintiff attorney's fees. The court will also award Plaintiff costs.

6:06-cv-00109-HMH   Date Filed 10/15/2007   Entry Number 132-5   Page 8 of 8

Page 8
256 F. Supp. 2d 424, *433; 2003 U.S. Dist. LEXIS 5388, **25;
66 U.S.P.Q.2D (BNA) 1610

CONCLUSION

For the reasons set forth in this memorandum opinion, the court will grant Plaintiff's motion for summary judgment. The court will grant Plaintiff's request for a permanent injunction, order Defendants to transfer ownership of their Pinehurst domain names, award Plaintiff statutory damages in the amount of $ 100,000.00, and award Plaintiff attorney's fees and costs. Plaintiff shall submit to the court within twenty (20) days of the entry of this order a fee petition, including appropriate affidavits [**26] and other information, supporting its request for attorney's fees and costs.

An order, judgment, and permanent injunction in accordance with this memorandum opinion shall be entered contemporaneously herewith.

Frank W. Bullock

United States District Judge

March 21, 2003

*ORDER, JUDGMENT, and PERMANENT INJUNCTION*

BULLOCK, District Judge

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that the motion [Doc. # 37] of Pinehurst, Inc., for summary judgment against Brian Wick and American Distribution Systems, Inc., d/b/a DefaultData.com is **GRANTED**;

IT IS FURTHER ORDERED AND ADJUDGED that Brian Wick and American Distribution Systems, Inc., d/b/a DefaultData.com and their partners, associates, agents, servants, representatives, successors, and employees, and all other persons or entities in active concert or participation with Wick, American Distribution Systems, Inc., or either of them are **PERMANENTLY ENJOINED** from:

1. Advertising, promoting, or selling goods or services including the use of the Internet, domain name, e-mail address, meta-tags or using invisible data, in conjunction with the [**27] mark PINEHURST or PINEHURST RESORT or PINEHURST RESORT AND COUNTRY CLUB alone or in combination with some other term or design, including but not limited to PinehurstResort.com and PinehurstResorts.com or taking any action that would dilute the distinctive quality of Pinehurst, Inc.'s PINEHURST and PINEHURST RESORT AND COUNTRY CLUB federal service marks or tarnish the goodwill associated with these federal service marks; and

2. Adopting or using any domain name, whether commercial or not, that includes the term "Pinehurst," "Pinehurst Resort," or "Pinehurst Resort and Country Club," or any confusingly similar terms.

IT IS FURTHER ORDERED AND ADJUDGED that Brian Wick and American Distribution Systems, Inc., immediately take all steps necessary to transfer and assign to Pinehurst, Inc., their "PinehurstResort.com" and "PinehurstResorts.com" domain registrations and any and all other domain names that include the terms PINEHURST, PINEHURST RESORT, or PINEHURST RESORT AND COUNTRY CLUB or any confusingly similar names or marks.

IT IS FURTHER ORDERED that within forty-five (45) days of the entry of this order, judgment, and permanent injunction Brian Wick and American Distribution Systems, [**28] Inc., **PROVIDE** evidence of their compliance with the foregoing paragraph. Failure to abide by this order may be punished by criminal contempt under *18 U.S.C. § 401*.

IT IS FURTHER ORDERED AND ADJUDGED that Pinehurst, Inc., is **AWARDED** statutory damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($ 100,000.00).

IT IS FURTHER ORDERED AND ADJUDGED that Pinehurst, Inc., is **AWARDED** reasonable attorney's fees and costs. Plaintiff shall file within twenty (20) days of the entry of this order a fee petition supporting its request for attorney's fees and costs.

Frank W. Bullock

United States District Judge

March 21, 2003