IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

| | |
|---|---|
| BIDZIRK, LLC, | ) |
| Appellant, | ) |
| v. | ) Appeal No. 06-1487 |
| PHILIP J. SMITH, | ) |
| Appellee. | ) |

**FILED**
JUL 11 2006
U.S. Court of Appeals
Fourth Circuit

## SUPPLEMENT TO APPELLANT'S INFORMAL BRIEF

COMES NOW BidZirk, LLC ("BidZirk"), Appellant in the above-captioned appeal, and files this its supplement to its informal brief, filed May 30, 2006, and shows the Court as follows:

### INTRODUCTION

BidZirk filed its notice of appeal on April 21, 2006. The Court's order for informal briefing was filed on April 27, 2006. Per the terms of the order, BidZirk mailed its informal brief to the Court on May 22, 2006, and it was received and stamped 'filed' on May 30, 2006. The circumstances of BidZirk's preparation of its informal brief, however, prevented counsel from attaching additional materials to the handwritten form submitted to the Court. Counsel was summoned by a client to southwest Colorado on the morning of May 22, 2006 to investigate a fatal van accident that took place near Moab, Utah on May 20, 2006. Counsel hurried to the airport, and arrived in Grand Junction, Colorado on May 22, within time to place BidZirk's informal brief in the post for that day, but without the chance to attach any supplemental materials to the brief. Counsel

telephoned the Clerk of Court's office, and was advised to send supplemental materials under separate cover. This submission constitutes that supplement.

This appeal arises from the denial by the United States District Court for the District of South Carolina of BidZirk's motion for a preliminary injunction against Appellee Smith. BidZirk commenced an action in January 2006 asserting claims against Smith for violations of the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c). See Exhibit 1. BidZirk alleges that Smith infringed its trademarks by publishing them on his internet blog, www.jackwhispers.blogspot.com,[1] as part of a series of postings entitled "You Gotta Be Beserk to Use an eBay Listing Company!" See Exhibit 2. BidZirk's motion was referred to a magistrate under 28 U.S.C. § 636(b)(1) and Local Rule 73.02 DSC. The magistrate, applying a "functional analysis," recommended that BidZirk's motion be denied, based on a review of the content of Smith's postings and the supposed applicability of the FTDA's "news reporting and news commentary" defense to trademark infringement. See 15 U.S.C. § 1125(c)(4)(C); Exhibit 3. The District Court adopted the magistrate's recommendation, also basing its decision merely "[u]pon review of the content of [Smith's] article." See Exhibit 4.

The FTDA provides for injunctive relief and damages for trademark infringement that results in dilution (whether through blurring or tarnishment) of another's marks. See 15 U.S.C. §§ 1116; 1125(c)(1)-(2). There are three defenses to a trademark infringement claim under the FTDA: (1) fair use in comparative advertising; (2) non-commercial publication of a trademark; and (3) publication of a trademark in "news reporting and news commentary." See 15 U.S.C. § 1125(c)(4)(C). Smith's publication concerning

---

[1] Smith's web site has since been renamed, and content previously published is now available at www.fixyourthinking.com. One can still arrive at the same web site using the URL www.jackwhispers.blogspot.com.

2

BidZirk is not comparative advertising, and Smith has never claimed that it is. Smith is not entitled to the "non-commercial use" defense, because his web site includes "click thru" advertisements, which link the web site to exclusively commercial sites that offer products or services for sale. Fourth Circuit law is clear that such advertisements render the site publishing them a "commercial" site for purposes of the Lanham Act. See People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 366 (4th Cir. 2001).

The issue before the Court is accordingly a narrow one: Did the District Court err in finding Smith's publication subject to the FTDA's "news reporting and news commentary" defense against trademark infringement? The District Court arrived at its decision by (1) purportedly following the recommendation of "some commentators and legislators" in employing a "functional analysis" of blog publications to determine whether they qualify as "news reporting and news commentary;" and (2) applying a "functional analysis" to the contents of Smith's internet postings, but without regard to the totality of the circumstances surrounding their publication. The District Court applied the "functional analysis" with no description of the test itself, and without reference to any accompanying criteria whatsoever, finding only that "it appears that [Smith's] function was to report information to his readers." See Exhibit 2, p. 6.

The District Court's finding was in error. Courts are not, and should not, be in the business of examining published material to determine whether it is "news reporting" or "news commentary." Further, it is imprudent and undesirable to permit an infringing publication's character as "news reporting and news commentary" to turn on a court's assessment of what "appears" to be a defendant's function in publishing material on the internet. The indefinite "functional analysis" utilized by the District Court would, if

applied in every case, generate unjust, inconsistent and unpredictable results. BidZirk proposes that the Court adopt a test, based upon existing First Amendment principles, to determine whether infringing publications qualify as "news reporting and news commentary" under the FTDA. This proposed test requires a trial court to assess not only the apparent function of a publication, but also the <u>intent</u> of the publisher. The District Court erroneously viewed Smith's publication in isolation; viewed together with all of Smith's other BidZirk-related activities, his intent to discredit and damage BidZirk is palpable. When the Court, using BidZirk's proposed test, examines the totality of circumstances and evaluates Smith's publication in light of <u>all</u> of those facts, BidZirk's entitlement to a preliminary injunction is also readily apparent. The Court should order the case remanded to the District Court for reconsideration of BidZirk's motion for preliminary injunction, with instructions to apply the test set forth below in determining the applicability of the FTDA's "news reporting and news commentary" defense to trademark infringement.

## ARGUMENT

I.    <u>Constitutional bases for press privileges.</u>

Under the First Amendment to the United States Constitution, "Congress shall make no law . . . abridging the freedom of speech, or of the press." However, practical considerations have through history dictated that the First Amendment's guarantee of freedom of the press is not absolute. <u>See, e.g.</u>, <u>Branzburg v. Hayes</u>, 408 U.S. 665 (1972) (recognizing journalists' qualified privilege against disclosure of sources); <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254 (1964) (noting lack of constitutional value in libelous speech). Freedom of the press is differentiated from the First Amendment's

4

Exhibit 5, p. 4

guarantee of freedom of speech by the existence of the precursor newsgathering function. See von Bulow v. von Bulow, 811 F.2d 136, 142 (2d Cir. 1987) ("This qualified right [privileged newsgathering], which results in the journalist's privilege, emanates from the strong public policy supporting the unfettered communication of information by the journalist to the public") (emphasis supplied).

Sullivan limited journalists' liability for defamation by fashioning an "actual malice" test for defamation of public officials and other public figures. See Sullivan, 376 U.S. at 280. In actions alleging defamation, First Amendment issues and implications arise when the defendant is a member of the press. Sullivan, 376 U.S. at 279-80. At common law, defamation by any defendant resulted in presumed general damages. See Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974). In such cases, truth was the only available defense. See, e.g., Sullivan, 376 U.S. at 267 (noting Alabama statute on libel per se). In Gertz, the Supreme Court rejected strict liability for press defamation, explaining that "a rule of strict liability that compels a publisher or broadcaster to guarantee the accuracy of his factual assertions may lead to intolerable self-censorship," and that "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters." Gertz, 418 U.S. at 341-2.

Branzburg acknowledged a limitation on journalists' obligations to disclose sources, notes, etc. (what could be considered the reporter's 'work product'), but held that the First Amendment did not shield a journalist's sources from disclosure to a grand jury sitting in a criminal case. See Branzburg, 408 U.S. at 707. In Baker v. F&F Invest., 470 F.2d 778 (2d Cir. 1972) cert. denied, 411 U.S. 966 (1973), the court held, in a civil context, that compelled disclosure of confidential sources was overcome by First

Amendment concerns, based upon the reporter's intent at the beginning of the newsgathering process. See Baker, 470 F.2d at 782. The von Bulow court, considering the holding in Baker, noted that Baker's rationale

> suggests that the critical question in determining if a person falls within the class of persons protected by a journalist's privilege is whether the person, at the inception of the investigatory process, had the intent to disseminate to the public the information obtained through the investigation. A person who gathers information for personal reasons, unrelated to the dissemination of information to the public, will not be deterred from undertaking his search simply by rules which permit discovery of that information in a later civil proceeding. Our holding in Baker provides no basis for claiming a journalist's privilege by persons who not begin their investigations with an intent to disseminate information to the public, since no First Amendment rights are implicated under such circumstances.

von Bulow, 811 F.2d at 143 (emphasis supplied).

Journalists' privileges, essentially refinements of First Amendment freedom of the press, derive from a policy that facilitates the journalists' trade, in order to promote timely dissemination of information to the public. See Rosenbloom v. Metro Media, Inc., 403 U.S. 29 (1971); see also NAACP v. Button, 371 U.S. 415, 433 (1963) (noting need for "breathing space" necessary to "fruitful exercise" of journalists' trade). They serve no other purposes. All press privileges, including those outlined above, arise out of the First Amendment. See, e.g., Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993) (noting that journalist's privilege recognized in Branzburg is a "partial First Amendment shield" that protects the press in both criminal and civil proceedings); Farr v. Pitchess, 522 F.2d 464 (9th Cir. 1975) (same). The "news reporting and news commentary" defense to infringement under the Lanham Act should do likewise.

6

II.  Status of bloggers under the First Amendment.

While no reported case purports to define a blogger as a journalist, plainly courts unaware of blogging, or even of the internet, have dealt capably with the broader question of "who is a journalist?" in the context of determining who is entitled to assert the journalist's privilege under the First Amendment. Bloggers, like others that post content on the internet, cannot simply be 'carved out' of any feasible definition of 'journalist.' As stated in Branzburg:

> Sooner or later, it [will] be necessary to define those categories of newsmen who qualified for the privilege, a questionable procedure in light of the traditional doctrine that liberty of the press is the right of the lonely pamphleteer who uses carbon paper or mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods.

Branzburg, 408 U.S. at 703-4. That time has arrived, at least in the context of the FTDA, but the Court is not without guidance.

In a 1998 case, the United States Court of Appeals for the Third Circuit held that the von Bulow and Shoen tests applied to determine whether individuals were entitled to the First Amendment journalist's privilege. See In re Madden, 151 F.3d 125 (3d Cir. 1998). In Madden, the plaintiff issued a subpoena to Mark Madden, a non-party witness employed by the defendant. Madden produced tape-recorded commentaries for the defendant, which were replayed to callers to the defendant's 900-number hotline. See Madden, 151 F.3d at 126. The subject of the pre-recorded messages was professional wrestling, and Madden admitted that his commentaries were as much entertainment as journalism. Id. Madden refused to identify the confidential sources upon whose information his commentaries were based. Id.

The Third Circuit found von Bulow instructive, and endorsed its reasoning:

7

> In our view, the von Bulow test is consistent with the goals and concerns that underlie the journalist's privilege. Because this test emphasizes the intent behind the newsgathering process rather than the mode of dissemination, it is consistent with the Supreme Court's recognition that the "press" includes all publications that contribute to the free flow of information. This test is also consistent with the Supreme Court's concerns that the privilege apply only to legitimate members of the press. This test does not grant status to any person with a manuscript, a web page or a film, but requires an intent at the inception of the newsgathering process to disseminate investigative news to the public. As we see it, the privilege is only available to those persons whose purposes are those traditionally inherent to the press; persons gathering news for publication. It is the burden of the party claiming the privilege to establish their right to its protection.

Madden, 151 F.3d at 129-30 (internal citations omitted). Further, the Madden court found, citing Shoen, that in applying the test articulated in von Bulow

> the critical question for deciding whether a person may invoke the journalist's privilege is whether [he] is gathering news for dissemination to the public. Shoen, 5 F.3d at 1293. We hold that individuals are journalists when engaged in investigative reporting, gathering news, and have the intent at the beginning of the news-gathering process to disseminate this information to the public.

Madden, 151 F.3d at 130 (internal quotation marks omitted, emphasis supplied).

There is no principled reason not to relate the FTDA's defense against infringement of trademarks in cases of "news reporting and news commentary" to other journalists' privileges recognized under the First Amendment. Both the First Amendment journalists' privilege and the FTDA's "news reporting and news commentary" defense to infringement seek to protect the same conduct; i.e., legitimate newsgathering and publication. Recent authority supports the notions that all journalists' privileges derive from the First Amendment, and that courts should not engage in weighing the newsworthiness of published material.

8

The United States District Court for the District of Columbia recently rebuffed arguments for the existence of a "common law" journalist's privilege against disclosure of sources. See Lee v. Department of Justice, 401 F. Supp. 2d 123, 140 (D.D.C. 2005). In Lee, a non-party news reporter proposed a balancing test, which would require a court to weigh the public interest in privileged newsgathering against the public interest in compelled disclosure, even though the plaintiff could demonstrate that (1) the information sought goes "to the heart of" the plaintiff's case and (2) the plaintiff has exhausted "every reasonable alternative source of information" before seeking testimony from the journalist. See Lee, 401 F. Supp. 2d at 128.

The court demurred, finding that such a balancing test would engage the court in weighing the "newsworthiness" of a story against a litigant's interest in information obtained during the newsgathering process. See Lee, 401 F. Supp. 2d at 139 ("Whether a reporter must reveal his sources should not rest on the value assigned by a jurist to the reporter's story or the litigant's purpose"). Lee thus reaffirms another premise central to First Amendment press jurisprudence: "Under the First Amendment, there is no such thing as a false idea." Gertz, 418 U.S. at 339. In answering the question "who is a journalist?" the pertinent issue is the publisher's intent, not the content of the publication. Courts are not equipped to assess the "value" of news, but courts may effectively undertake "an intent-based factual inquiry" into the circumstances of publication (including internet postings) to determine whether the publisher is entitled to First Amendment-derived privileges. See von Bulow, 811 F.2d at 144. Determination of the applicability of the "news reporting and news commentary" defense under the FTDA perforce requires the same intent-based factual inquiry.

9

In the instant case, the District Court failed to undertake any such fact-based inquiry, relying instead on the Smith's apparent "function," based solely on the four corners of his web postings. See Exhibit 3. According to the test articulated in <u>Madden</u>, itself based upon the test fashioned in <u>von Bulow</u> and extended in <u>Shoen</u>, to be entitled to assert the "news reporting and news commentary" defense to infringement of BidZirk's marks, Smith must demonstrate through competent evidence that he (1) was engaged in investigative reporting or gathering news; and (2) had the intent at the inception of the newsgathering process to disseminate this information to the public. <u>See</u> <u>Madden</u>, 151 F.3d at 130; <u>von Bulow</u>, 811 F.2d at 144; <u>see also</u> <u>Shoen</u>, 5 F.3d at 1294 (extending journalist's privilege to materials obtained absent guarantee of confidentiality).

This Smith cannot do. On remand, the District Court will be called on to consider, as evidence belying any putative intent merely to disseminate information to the public, the fact that in addition to publishing his series of postings on BidZirk on the internet, Smith has also: (1) offered to 'kill' the story in return for payment of $500, <u>see</u> Exhibit 1, ¶ 12; (2) lodged complaints regarding BidZirk with the Better Business Bureau, <u>see</u> Exhibit 4; (3) published a complaint regarding BidZirk on <u>www.ripoffreport.com</u>, <u>see</u> Exhibit 5; (4) begun a series of postings on the subject of protesting and complaining, which postings again specifically referenced Bidzirk, <u>see</u> Exhibit 6; (5) commenced publication of an entirely separate blog at <u>www.kingkongwrong.blogspot.com</u>, for the sole purpose of inciting protests against BidZirk, <u>see</u> Exhibit 7; (6) asserted counterclaims in this action for "causes of action" as disparate as tax fraud, breach of contract, and harassment, <u>see</u> Exhibit 8; (7) issued threats to BidZirk and its counsel to involve the district attorney in some form of

10

prosecution of BidZirk and its principals; and (8) issued threats to picket BidZirk's store locations, see Exhibit 9.

Viewed in light of all of Smith's BidZirk-related activities, it is plain that Smith fails both elements of the von Bulow/Madden test. First, Smith had no intention at the inception of the newsgathering process (if he was indeed gathering news at all) to disseminate information to the public – he was simply a customer of BidZirk. Second, Smith's postings on www.jackwhispers.blogspot.com were not published for the purpose of disseminating information to the public – they were published for the purpose of defaming BidZirk and its principals. Smith's actions reveal not merely an intent to report objectively about a negative experience with BidZirk, but a campaign to injure BidZirk, of which Smith's internet postings are just a part. The District Court failed to consider any of these facts,[2] giving attention only to the content of Smith's publications. To do so was error.

## CONCLUSION

The First Amendment provides the basis for all journalists' privileges. Courts have necessarily developed tests to determine who is entitled to assert the journalist's privilege. The test established in von Bulow and Madden to determine who may avoid disclosure of news sources is equally applicable to the FTDA's "news reporting and news commentary" defense. Accordingly, Smith may not assert the "news reporting and news commentary defense of 15 U.S.C. § 1125(c)(4)(C) unless (per von Bulow) he demonstrates that he was engaged in newsgathering, with an intention existing at the

---

[2] At the time that it issued its ruling on BidZirk's motion for preliminary injunction, the District Court was unaware that Smith had, e.g., prepared a separate web site devoted to defaming BidZirk. However, BidZirk has sought leave to amend its complaint to include Smith's additional defamatory and injurious actions, and so this information would be available to the District Court to consider on remand.

11

Exhibit 5, p. 11

inception of that process to disseminate information to the public. The totality of Smith's BidZirk-related actions betrays his true purpose to injure BidZirk. Smith's internet postings cannot be considered "news reporting and news commentary," and he is not entitled to any defense against infringement of BidZirk's trademarks under the FTDA. The Court should remand this action to the District Court for reconsideration of BidZirk's request for preliminary injunction in light of Smith's intent, as shown by the evidence admitted at hearing.

    This 7th day of July, 2006.

_____
KEVIN M. ELWELL

K.M. ELWELL, P.C.
111 East North Street
Greenville, South Carolina 29601
(864) 232-8060
(404) 759-2124 e-facsimile
kmelwell@kmelwell.com

Attorneys for Appellant BidZirk, LLC

IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

| | |
|---|---|
| BIDZIRK, LLC, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Appeal No. 06-1487 |
| ) | |
| PHILIP J. SMITH, ) | |
| ) | |
| Appellee. ) | |

### **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the foregoing SUPPLEMENT TO APPELLANT'S INFORMAL BRIEF upon the following parties by depositing same in the United States Mail in a properly-addressed envelope with adequate postage affixed to:

Philip J. Smith
601 Cleveland Street
Apartment 5-C
Greenville, South Carolina 29601

This 7th day of July, 2006.

KEVIN M. ELWELL

K.M. ELWELL, P.C.
111 East North Street
Greenville, South Carolina 29601
(864) 232-8060
(404) 759-2124 e-facsimile
kmelwell@kmelwell.com

Attorneys for Appellant BidZirk, LLC

Exhibit 5, p. 13