Bidzirk, LLC Daniel Schmidt III
& Jill Patterson

                                   Plaintiffs

VS

Philip J Smith
                              Defendant

Civil Action #
6:06-0109-HMH-WMC

Defendant memorandum
for summary judgement

Dockets.Justia.com

*MR ELWELL YOUR COPY PRINTED OUT FUNNY AND THE FONT PRINTED SMALLER AND WITHOUT PROPER JUSTIFICATION*

This is the summary judgement memorandum that the Honorable Judge Herlong stated that I could submit:

This is from various legal blogs around the internet. I have provided my own notes in bold:

In response to this gripe post, BidZirk sued Smith for Lanham Act violations, defamation and invasion of privacy. Smith fought back with unspecified counterclaims. At a March 16 hearing, Smith promised to remove all but one of BidZirk's logos. On April 10, the judge denied BidZirk's motion for a preliminary injunction because Smith's use of the trademarks was for news reporting and commentary (which isn't actionable under trademark law). BidZirk has appealed the denial of the preliminary injunction to the Fourth Circuit Court of Appeals.

**[Note that Smith only made these concessions as a good faith gesture and was not required to or asked to remove the additional logos by the court]**

In the Nov. 7 ruling, the judge evaluates BidZirk's motion to dismiss Smith's counterclaims for lack of federal subject matter jurisdiction. Smith's counterclaims relate to his experiences with BidZirk and their dealings in litigation, neither of which the court felt were close enough to BidZirk's claims over the blog post to mandate consolidation, and there was insufficient basis to support federal jurisdiction otherwise. Presumably, Smith can reflie his claims against BidZirk in an appropriate state court.

**[Note that all of Bidzirk's claims beyond the Copyright/Srvice Mark claim were pendant and should thusly be dropped and Bidzirk required to refile in State Court as Smith was]**

Putting aside the procedural technicalities, I'm still stuck on why the plaintiff brought this lawsuit in the first place. Smith posted a very idiosyncratic story to a relatively low-profile blog about a small eBay reseller with 3 storefronts in South Carolina. As a result, I assume that very few people would notice the post, let alone be influenced by it. The lawsuit just escalate the attention paid to the post. Meanwhile, I haven't been able to work through all of the facts, but on its face the trademark claim appears pretty bogus, and the defamation and invasion of privacy claims could be as well. So I have an especially difficult time understanding how this lawsuit is economically rational. Finally, given the website modifications that Smith has already made, I can't figure out why BidZirk thinks that a preliminary injunction is worth pursuing all the way to the Fourth Circuit.

**[Note that Bidzirk no longer operates in Greenville County due to lack of revenue. It has been my contention that this whole business is a tax shelter]**

Of course, there is always the possibility that this lawsuit is not about the merits and instead is just an abusive effort to punish a blogger for speaking out.... In any case, the seeming illogic of this lawsuit illustrates why there are comparatively few blog-related lawsuits. Most of the time, it just doesn't make sense to sue over a blog post.

# Biography

Eric Goldman joined the Santa Clara University School of Law faculty in 2006 as an

Assistant Professor and Director of the school's High Tech Law Institute. Previously, he was an Assistant Professor at Marquette University Law School, General Counsel of Epinions.com, and an Internet transactional attorney at Cooley Godward LLP.

Eric teaches Cyberlaw and Intellectual Property and previously has taught courses in Copyrights, Contracts, Software Licensing and Professional Responsibility.

Eric's research focuses on Internet law, intellectual property, marketing, and the legal and social implications of new communication technologies. Recent papers have addressed topics such as adware/spyware, search engines and spam.

Eric received his BA, *summa cum laude* and Phi Beta Kappa, in Economics/Business from UCLA in 1988. He received his JD from UCLA in 1994, where he was a member of the *UCLA Law Review*, and concurrently received his MBA from the Anderson School at UCLA.



_____CASE STUDY_____

**Bynog v. SL Green Realty Corp.**, 97 Fair Empl. Prac. Cas. (BNA) 709 (2005) resulted in Plaintiff's failure to get an injunction to stop the blogger from making statements on his website because the Plaintiff could not show irreparable harm.

_____

This litigation STOPPED me from selling my condo as the Plaintiff attorney threatened attaching any asset that I had from the beginning. I was constantly threatened and harassed about selling my condominium.

The following email was sent to me from Kevin Elwell Plaintiff Attorney on May 3 2006:

*You have already been in possession of these requests for over 200 days, and the allowed response time under the rules is 30 days.*

*You have no absolute right to 'pour over' the proceeds of the sale of real property into another residence, simply because you work from home.  If judgment is taken against you, proceeds from the sale of your residence are subject to execution.*

Not only is this untrue, but this email was sent the day after Judge Catoe FURIOUSLY reprimanded the Plaintiff attorney for not following Rule 11 Court procedure by jumping ahead to the punitive

stage of the trial without any merit or precedent to do so.

I therefore claim the following:

The housing market in Greenville SC has since deteriorated since this action was brought against me. I just finished coming close to a closing until the buyer saw the *lis pendens* (eventhough now removed) when doing Title Research. His attorney recommended that he forfeit his earnest money of $300 and find another residence to purchase I was unable to obtain a statement from the buyer's attorney in such a short period of time. BUT, I can have affidavits submitted that I was in fact moving out and was fully ready to sell and be out by closing on Oct 15 2007.

This litigation was initiated in January 2006. My condo was placed for sale in November 2005. I had several interested parties. I took my condominium off the market to potentially have as an euity asset to obtain a loan if needed for attorney retainer.

My condo payment is $550/monthly x 21 months  of this litigation = $11,550.00

My regime fee is $135/monthly x 21 months of this litigation = $2185.00

My HomeOwner's Association assessed $135.00 in August of 2007

My insurance is $155 yearly x 1.75 years = $271.25

My taxes are $460 yearly x 1.75 years = 805.00

_____

Total $14,946.25

This is the total that I do not feel I would have had to pay out due to this litigation. A COURT ORDERED REMOVAL of the *lis pendens* was made.

Furthermore, I feel I am owed full proceeds from my contract consignment with Bidzirk as the contract states that I will agree to mediation in all disputes. NO MEDIATION took place at ANY time during this litigation. Bidzirk should be required to submit the total revenue received from my consignments and be ordered to return all of the revenue received due to the gross breach of contract and because this litigation has drained ALL proceeds I received from them.

My total expenses for paperwork, attorney, and travel are as follows:

**(10)** Certified Mailings & Postage Related Costs: Total $54.31

**(8)** Envelopes $8.40

**(1)** Travel (2X) to Charleston SC to speak with EFF Consultation Attorney x .30 cents a mile = $286.80

**(1)** Consulatation with Jim Carpenter (Carpenter Law Firm) $300

**(1)** Consultation with David Wyatt (Attorney for OMG Greenville) $100 trade for computer repair

The Honorable Judge Herlong said I could make ANY notes in my memorandum for possible sanctions. I therefore put forth the following:

- I walked out of the first deposition after being being physically threatened. The opposing attorney refused to move on after asking me who my customers were by name. I refused to tell him and he stopped the FILMING and COURT RECORDER and hulked over me threatening me calling me a "punk". During both depositions the Plaintiff attorney and Ty Schmidt would laugh after they asked me a harassing question. The SC bar has informed me that this was irresponsible and unquestionably improper for the attorney to do so. It is my contention that the Plaintiff attorney planned that I would leave the deposition to put me in a "not so favorable light" with the court and compel further testimony.

-In the second the second deposition, the Plaintiff attorney stated as his final question, paraphrased, "You say that this matter has depressed you, are you sure you are not depressed because you are 32, unmarried, have no children, no career, live in a rundown condo, and have a junk title car?" The plaintiff and his client smiled and Ty Schmidt even laughed in a raspy, shoulder moving laugh. Again, the SC bar has informed me that this was irresponsible and unquestionably improper for the attorney to do so.

- The plaintiff attorney refused to send me certified mail. I was traveling a lot and without certified mail, I was unable to know (at first) what

was serious and what was not. Also, without certified mail or some sort of proof of delivery, how was the Plaintiff attorney to prove I had received any of his paperwork. Furthermore, Plaintiff attorney claimed multiple hand deliveries. I received one hand delivery in person and saw NO ONE physically after that point.

- I was followed for around a week or maybe more. The Plaintiff attorney put a private investigator on me. What precedent or purpose for? This made me VERY paranoid about the lengths to which this attorney was going to go and scared many of my friends.

- The Plaintiff attorney forced me to reveal trade secret information regarding an invention of mine and also forced me to reveal many of my clients personal information. One subject of a completely unrelated article that I posted was contacted and prompted to say something bad about me. Instead, he contacted me and I posted his letter on my website [see attached]

- The Plaintiff attorney insinuated during deposition that I could not leave the state, nor did I have the financial means to travel. I wasn't sure at the time ... so I cancelled a planned business trip to california to promote my invention and attend a very important Apple Computer conference and event that I have been attending for the last 7 years.

-The Plaintiff attorney purposely prolonged the depositions and therefore exponentially the expenses of obtaining records of my testimony from the Court Recorder and from the Videographer. I was unable to afford my own testimony for examination.

- I was under the impression due to Judge Catoe's order that the entire trial was on hold while the Federal Appeals court was examining the "Preliminary Injunction". I therefore missed and was subsequently denied my right to discovery, admission, and interrogatory. I feel that if a trial were to come to about I would be at a strong disadvantage without this information. I am Pro Se and trying as hard as I can, but this was an honest misunderstanding.

- I would like to make note of two comments from Judge Catoe's Order (Entry #112)

*"This court finds several of the plaintiff's requests are irrelevant, vague, overly broad, and unduly burdensome"*

*"Two of the discovery requests appear to have been made for no other purpose than to antagonize and embarrass the defendant"*

These unduly burdensome, irrelevant, and embarrassing/antagonizing requests (and their belligerent and disrespectful insistence in the court for compelled submission) total 11.

One discovery request asked for the entire contents of my hard drive for examination. (Not just Bidzirk information which accounts for less than half a percent of the space on my computer.)

- If this court granted ANY claim or ANY motion the opposing attorney is asking for ... it would set a very dangerous precedent and could prompt 10's of 1000's of lawsuits and possibly be used to revisit and overturn many decisions.

- In an amusing fashion, the ONLY handwritten documentation submitted in this case by the Plaintiff was to the FEDERAL COURT of Appeals. I showed this to 4 separate attorneys; each one laughed. This handwritten submission GREATLY slowed the process of decision for the appeal and was actually a few days late in receipt. [see attached] Please also note that Plaintiff attorney (possibly intentionally) did not put my correct address. I live in 5C not 5B, My name is spelled with (1) L not two ... my neighbor's name is also Phillip (spelled with 2 L's)

- None of the expenses listed are punitive or account for the lost time and potential lost opportunity to act on several of my business ventures.

Mr. Campbell: I am an attorney in Greenville, SC. I represent a client that has filed a federal lawsuit against one Philip Smith (a.k.a. Jackwhispers) for trademark infringement. I have learned that Mr. Smith has attacked/libeled/ slandered a number of other folks in his blog, you included. I was wondering if you would mind giving me some idea of your history with this individual, what kinds of contacts you have had with him, what you have done about his personal attacks, if anything, etc. A copy of my client's complaint and motion for preliminary injunction are attached for your review. Thanks for any help.

At my request, Jack Campbell responds with the following letter:

**An Open Letter To Jackwhispers Readers**
From: of all people... Jack

The past three years has been an interesting time for me, as I chose to move many of my business pursuits from other industries and to focus my efforts in the Apple computer peripherals market space. I have had my ups and downs in that time, and have learned much about the industry, the culture, and the people moving the Apple experience forward these days. And, along the way, I bumped into Philip Smith, publisher of Jackwhispers.

My history with Philip is well known in Mac circles, as most of it has been created in the very bright light of public debate and scrutiny. Philip has disagreed with me almost continually for three years... in almost every way, on almost every topic. We have fussed and feuded over big issues and small. And, he has been a relentless adversary to many of my business activities. At times, clearly, nobody in my life has annoyed me more than Philip, and the merciless attack he launched and sustained against me on both his web site and other web outlets.

I am writing this letter to state my beliefs about the rights of bloggers like Philip to make such public accusations and to foment such public debate as Philip has done with me these years. In a nutshell: Bravo!

Has Philip been a pain in my posterior at times? Yes. Has he infuriated me at times to a degree where I wanted to hurl incendiary devices toward his home in South Carolina? Oh, yes. Do I think Philip should have been gagged and shut down at some point along the way? No way.

We live in interesting times where our definitions of 'media' are being challenged on a near daily basis, where our ideas about the creation and dissemination of information and the rights and abilities of people everywhere to engage in the public activity of doing these things is being expanded regularly. The Web is changing everything at lighting speed. And, in what I think is a wonderful way, it is pushing the way the public can be exposed to and can debate issues small and large back to an earlier time... to a time of the Citizen Journalist.

We are leaving a time when Big Media prints or broadcasts information to us, and we simply gobble it up as gospel, unchallenged. Instead, we are being pulled back to an era -- a great and nobel era -- where citizens were expected to hear the news of the day, and receive it with some skepticism, and to engage their own minds and resources in evaluating the claimed statements and drawing their own conclusions. We are reentering an era where citizens must actually begin thinking about the issues of the day with their own minds, and with their own analytical thinking fully engaged. The God of Unimpeachable Big Media is tumbling down.

Philip and his site(s), and his various causes are but a small slice of this overall return of the world to a time of the Citizen Journalist. Facts are not triple checked, beliefs are not screened with an institutionalized editorial policy... people just say what they believe and report what they see around them. And, we as readers and listeners have a larger responsibility to evaluate and judge the merits of the claims. It is a wonderful system... anarchic, yes... but it is the way a democracy should work. Unfettered public speech, coupled with a demand that citizens actually think... well, that system is the root of an open, unencumbered society.

I would not slow this shift to a more open society no matter what the personal issues I face. It is entirely too important of a larger issue for

everyone for it to be stifled for the convenience of one person. So, again, I fully support Philip's right to publish what he sees and to publish his opinions on the web... or anywhere else.

Philip recently had some interaction with a South Carolina based eBay third-party auction services company. And, he has published reports of the things he saw in that process. It seems that the person who owns that company does not believe in the higher values of the Citizen Journalist, as he has not only filed suit against Philip asking to enjoin Philip from publishing Jackwhispers, but has reached out to pull other people into his case... people including me.

*To Mister Complaining Business Guy in South Carolina*, I say this: If you cannot stand public debate of your actions and operations, you are hiding something. And, by legally attacking anyone who disagrees with your beliefs and practices you are simply bullying a small guy, in an effort to continue hiding whatever the details of your business might be that you believe cannot stand the scrutiny of public debate. If you think Philip is wrong, there is a Comments system alive on this site where you enter the debate for yourself. Present your facts and claims against his, and let the public use their own minds to draw their own conclusions

*Mister 3rd Party eBay Auction Services Guy*, if you are a big man, you will be big enough to face criticism openly, and to face it with your own defense. If you are guilty or are too small of a man to do this... well, you will resort to hiring a team of lawyers to bludgeon the little Citizen Journalist into silence.

That said, I am publicly declaring my support of Philip Smith and Jackwhispers in this matter. He is within his rights (as they should exist in this country) to report what he sees, what he believes, and what he thinks. If someone does not like what is said, they have just as much right to counter publish their positions, or to even participate in debate right here. That is pure democracy at work at the grass roots level. And, I support Philip's unequivocal right to be here.

Jack Campbell

*Proof of EFF assistance and of attorney in Charleston*

From: Richard Esguerra <richard@eff.org>
Subject: **EFF cooperating attorney response**
Date: June 6, 2007 1:25:50 PM EDT
To: adzoox@yahoo.com

Philip,

Here is the contact information for an SC attorney that may be able to provide you with some legal assistance.

Jason Scott Luck
Seibels Law Firm, P.A.
165-A King Street
Charleston, SC 29401
Office: 843.722.6777
Fax: 843.722.6781
www.seibelsfirm.com

I hope this helps.  Feel free to let me know how this works out and best of luck on your case.

Regards,
Richard
--
Richard Esguerra
Referral Coordinator
Electronic Frontier Foundation
richard@eff.org
415-436-9333 x111
Become an EFF member! -- http://www.eff.org/support



Start **601 Cleveland St**
**Greenville, SC 29601**

End **165 King St**
**Charleston, SC 29401**

Travel **214 mi – about 3 hours 20**
**mins**

To see all the details that are visible on the screen, use the "Print" link next to the map.

*Proof of distance travelled*



©2007 Google -Map data ©2007 NAVTEQ™ - Terms of Use

**601 Cleveland St**
**Greenville, SC 29601**

Drive: 214 mi – about 3 hours 20 mins

| | |
|---|---|
| 1. Head **west** on **Cleveland St** toward **Newman St** | 0.3 mi |
| 2. Turn **right** at **McDaniel Ave** | 0.4 mi<br>1 min |
| 3. Turn **right** at **Ridgeland Dr** | 138 ft |
| 4. Slight **right** at **Cleveland Park Dr** | 0.4 mi<br>1 min |

Exhibit 7, p. 13

HOME

FIRM OVERVIEW

ATTORNEY PROFILE

OFFICES

LOCATIONS

COMMUNITY
INVOLVEMENT

PROFESSIONAL
ACTIVITIES

GENERAL
INFORMATION

ACHIEVEMENTS

NEWS CLIPS

CLIENTS

# CARPENTER LAW FIRM, PC

## OFFICES

Office Location(s)

**Greenville, South Carolina**

819 E. North Street, Suite 230
Greenville, South Carolina 29601
Telephone: 864-235-1269
Fax: 864-331-3083

james.carpenter@carpenterlawfirm.net

*If needed for contract
consulted for fee of
$300.00 in December
2006*

carpenter-lawfirm.net

LexisNexis
Martindale-Hubbell    This web site is designed for general information only. The information presented at this site should not be
construed to be formal legal advice nor the formation of a lawyer/client relationship.

Federal Appeals submission
by Plaintiff
I TYPED MINE!!                aweb1
                               06-1487

## INFORMAL BRIEF

1. **Jurisdiction (for appellants only)**
   A. What is the name of the court from which you are appealing?

   UNITED STATES DISTRICT COURT FOR THE DISTRICT of SOUTH CA.

   B. What is the date(s) of the order or orders you are appealing?

   April 10, 2006

2. **Timeliness of appeal (for prisoners only)**
   When did you give your notice of appeal to a prison officer for
   mailing to the United States District Court? Enter the exact
   date:    N/A

3. **Issues on Appeal**
   Use the following spaces to tell the United States Court of
   Appeals for the Fourth Circuit why the judgment under review
   should be affirmed, reversed, or vacated and remanded. Appel-
   lants must provide a brief summary of the facts and arguments
   that support their position that the judgment under review was
   wrong. Appellees may rely on the facts and law stated in that
   judgment or may advance alternative grounds for affirmance or
   dismissal. The parties may cite case law, but it is not required.

**Issue 1.**

THE DISTRICT COURT ERRED IN FINDING SMITH'S INTERNET
PUBLICATION TO CONSTITUTE "NEWS REPORTING OR NEWS
COMMENTARY," AND PRIVILEGED UNDER THE LANHAM ACT.

**Supporting Facts and Argument.**

SMITH'S PUBLICATION LACKS ANY OF THE CONTROLS OR
EDITORIAL SAFEGUARDS OF 'STANDARD' JOURNALISM, AND
IS CLEARLY PUBLISHED WITH A DEFAMATORY AND TORTIOUS
PURPOSE. BLOGGING IS NOT MERELY "NEWS REPORTING OR
NEWS COMMENTARY."

**Issue 2.**

THE DISTRICT COURT ERRED IN FAILING TO INCLUDE IN
ITS "FUNCTIONAL ANALYSIS" OF SMITH'S PUBLICATION THE ACTION
THAT ACCOMPANIED SAID PUBLICATION, E.G. THREATS OF CRIMINAL
PROSECUTION, PICKETING, COUNTERCLAIMS AND A GENERAL
INTENT VINDICTIVELY TO INJURE BIDZIRK & ITS PRINCIPALS

15

aweb1
06-1487

**Supporting Facts and Argument.**

Smith' activities against BizZirk include counter suits with no merit whatsoever, threats to picket, threats to involve law enforcement in BizZirk's business, and publication of additional smearing material. Smith offered to remove the publication in return for money. No "Journalist" engages in such behavior.

**Issue 3.**

**Supporting Facts and Argument.**

aweb1
06-1487

4.  **Relief Requested**

What do you want the Court of Appeals to do?  Identify exactly the relief you seek.  *(1) REVERSE FINDING OF THE DISTRICT COURT THAT SMITHS PUBLICATION IS "NEWS REPORTING OR NEWS COMMENTARY"; (2) FIND LANHAM ACT VIOLATION AND GRANT*

5.  **Prior Appeals (for appellants only)**  *8, 12 IPK AN INJUNCTION AND DAMGS*

A.  Have you filed other appeals in this court?  ___ Yes  ✓ No

B.  If you checked YES, what are the case names and docket numbers for those appeals and what was the ultimate disposition of each?

*Kevin M Guell*
Signature
[Notarization Not Required]

*KEVIN M ELWELL*
[Please Print Your Name Here]

### CERTIFICATE OF SERVICE
**************************

You must serve your papers on appeal on all persons **served** in the lower court case and complete the following certification:

I certify that on  *5/22/06*  I mailed a complete copy of this Informal Brief and all attachments to all parties, addressed as shown below.

*Kevin M Guell*
Signature
[Notarization Not Required]

[List here each party's name and complete mailing address]

*PHILIP L. SMITH*
*600 CLEVELAND ST*
*APARTMENT 5B*
*GREENVILLE SC 29601*



Examples of mailings:

Bubble Mailer costs

## Your Rights Online: Woman Wins Right to Criticize Surgeon on Website

**Posted by samzenpus on Thursday February 08, @12:05AM**
from the tell-it-like-it-is dept.

Scoopy writes

"The website of a cosmetic surgery patient critical of her Sacramento surgeon's work is protected free speech. an appeals court said in an opinion that could have statewide implications. The website contains before and after photographs of 33-year-old Georgette Gilbert. who said the surgery left her with one eyebrow higher than the other and a surprised look permanently affixed to her face. The website was challenged in a defamation suit filed by surgeon Jonathan Sykes. a prominent professor and television commentator on the subject of cosmetic surgery. Although the Sacramento-based 3rd District Court of Appeal only mentions Sykes. the opinion suggests that others who use 'hot topics' of public interest in their advertisements and promotions may shed protections against defamation afforded to ordinary citizens."

Precedent

2600 NEWS: 2600 WINS FORD LAWSUIT – RIGHT TO LINK UPHELD



| Main Page | Off the Hook | Off The Wall | Brain Damage | RNC 2004 | The Magazine | Store | Covers | Meetings |

Precedent



## 2600 WINS FORD LAWSUIT - RIGHT TO LINK UPHELD
Posted 23 Dec 2001 01:52:12 UTC

On December 20, a ruling was issued denying Ford's complaint against 2600. Last April Ford Motor Company sued 2600 Enterprises for pointing fuckgeneralmotors.com at their website. The judge's decision reaffirms the right of domain name holders to point their websites where they choose. While the court avoided ruling on important First Amendment issues, it flatly rejected all of Ford's trademark infringement claims. "This is a decisive victory and we are absolutely delighted," said attorney Eric Grimm who argued the case for 2600. "The court ruled consistently with the law and all precedent."

In an eleven page decision, Judge Robert H. Cleland of the Eastern Michigan District Court dismissed each of Ford's claims. Ford had asserted that hyperlinking to their website or referring to it in DNS records constituted a variety of trademark violations. Judge Cleland rejected Ford's twisted interpretation of the trademark act, which claimed that by disparaging Ford's mark and preventing it from "fully exploiting the value of its mark" 2600's actions constituted a commercial use. The decision goes on to draw a distinction between cases in which a trademark was included as part of a domain name, and this case in which "Defendants only use of the word "ford" is in its programming code, which does no more than create a



Exhibit 7, p. 20



hyperlink--albeit automatic--to Plaintiff's "ford.com" site." He later adding that "… programming code, unlike the unauthorized use of a trademark as a domain name, does not inhibit Internet users from reaching the websites that are most likely to be associated with the mark holder."

The court further strengthens the right to hyperlink by stating that "Trademark law does not permit Plaintiff to enjoin persons from linking to its homepage simply because it does not like the domain name or other content of the linking webpage." Finally the court held that given the lack of "connection with goods or services," the standards for unfair competition are "not satisfied simply because a prospective user of the Internet may face some difficulty in finding the home page he is seeking."

2600 would like to thank Eric Grimm for doing a fantastic job on very short notice, and breaking our longstanding tradition of judicial defeat. We'd also like to thank the Electronic Frontier Foundation for their continued support and all of our readers who have donated their time and money towards this case.

Order Denying Plaintiff's "Motion for Preliminary Injunction" (HTML)

Order Denying Plaintiff's "Motion for Preliminary Injunction" (PDF)

Printer-Friendly Format

2600 Magazine
P.O. Box 752
Middle Island, NY 11953
Telephone: 631-751-2600
Fax: 631-474-2677

Comments: Webmaster

Copyright © 1995-2007
2600 Enterprises, Inc. All rights reserved.

Exhibit 7, p. 21

21



# The fast and fun
# way to sell on eBay!



**Trading Assistants**

Members Helping Others

**WHAT SELLS    WHO CAN SELL    HOW IT WORKS    AUCTIONS    LOCATIONS    FEES    ABOUT US**



## Press Room

**Behind the Counter from the Greenville Journal**

BidZirk℠ is featured in the Greenville Journal's 2005 *Behind the Counter*, an inside look at local entrepreneurs and their businesses.

- Click **here** the see the details on BidZirk℠
- Click **here** to view the entire issue.

Proof Bidzirk links to same
article on their website. In fact, this
is where I found it.

From the beginning ... I could tell the owner was a yes man. Of course, I have to be honest ... eBay is; in and of itself a *yes man paradise*. Many sellers over promise and under deliver.

Although the owner seemed like a yes man ... I had done my home work ... he had owned an ecommerce B2B company called *ChannelLinx*. Tech savvy? Possibly ...

* ChanneLinx is promoted at the Bidzirk site indirectly and at the bottom of each page as a technology & design assistance partner.

He explained to me how he had just gotten married and was planning his honeymoon in a week's time.

Wait! He was getting married, going on a honeymoon, and starting a (in his own words) *"multi-location business that will be national in 5 years time"*?

No picture of owner was placed on MY website only the link circled which pointed to (see next page)



Exhibit 7, p. 24

*Example of inventory records we took down*

Bidzerk (1ST trip May 2005 to Congaree Rd)

Dave, Rus, John (bidzerk coworker), Ty (owner), Jill (wife), 2 assistants

Each approximately 2GB below by 512MB ECC SDRAM DIMMs, each with Fibre channel card

9GB drives worth $15+ each
18.2GB drives worth $25+ each

Netfinity server
2-9gigs, one scsi card
One
5500 $250

Netfinity server
2-9gigs, one scsi card
One
5500 $250

2- Compaq mainframe 100u, holds 25 server cabinets each $500 each
Take out 12 outlet cabinet length surge protectors to sell separately $50 each

Vidar scanner-wide format--truscan select, 2 microscsi model p-21
3' wide, has stand
$400 ???

Netfinity server
0-9gigs, 3 scsi card
One
5500 w/lower 2u rackmount full $300??

Netfinity server
2-18.2gigs, 2 lvd scsi card
One
7000
$350??

Netfinity server
1-18.2 gigs, one scsi card
One
5500
$300??

Netfinity server
2-9gigs, one scsi card
One