IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| BidZirk, LLC, Daniel G. Schmidt, III, and Jill Patterson, | C.A. No. 6:06-109-HMH |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| Philip J. Smith, | |
| Defendant. | |

This matter is before the court on Philip J. Smith's ("Smith") pro se motion for summary judgment and the court's sua sponte inquiry regarding sanctions against the Plaintiffs. After a review of the law and facts of this case, the court grants Smith's motion for summary judgment and sanctions Plaintiffs' counsel.

**I. FACTUAL BACKGROUND**

This case arises from the posting of a four-part article titled "Special Report: You Gotta Be Berserk to Use an eBay Listing Company! The Whole Story" ("article") on Smith's blog located at http://www.jackwhispers.blogspot.com ("blog"). (Pls.' Mem. Opp'n Summ. J. Ex. 2 (Article).)[1] The article concerns Smith's experience using BidZirk, an auction listing company, to sell items on eBay. (Id.) "An auction listing company is a business that accepts goods on consignment, and administers auction sales of consigned goods on web sites such as eBay."

---

[1]In essence, this is a case in which the Plaintiffs have sued Smith because he published articles on the internet critical of the Plaintiffs' business.

1

(Compl. ¶ 6.) BidZirk is paid a fee for these services based on a percentage of the money received from an auction. (Id. ¶ 7.)

In the article, Smith depicts BidZirk's trademark and details his interactions with Daniel G. Schmidt ("Schmidt"), BidZirk's president. (Pls.' Mem. Opp'n Summ. J. Ex. 2 (Article).) Smith relates the positive and mostly negative aspects of utilizing an eBay listing company, like BidZirk, and provides a checklist for his readers to utilize in deciding whether to use a listing company. (Id.)

On January 10, 2006, the Plaintiffs filed suit against Smith. BidZirk alleges a claim under the Lanham Act for damages and an injunction, alleging that Smith improperly placed BidZirk's trademark on his blog. In addition, Schmidt has sued for defamation alleging that Smith published false and derogatory statements about Schmidt on his blog. Finally, Schmidt and Jill Patterson ("Patterson") have sued for invasion of privacy alleging that Smith linked their picture to the blog. The link was an article with a picture of Schmidt and Patterson in it. Smith failed to answer and on February 16, 2006, a default was entered by the clerk. The court set aside entry of default on February 27, 2006, and allowed Smith time to answer.

On February 13, 2006, BidZirk moved for a preliminary injunction. United States Magistrate Judge William M. Catoe issued a Report and Recommendation on March 21, 2006, recommending denying the motion. The Plaintiffs filed objections. The court adopted Magistrate Judge Catoe's Report and Recommendation and denied the Plaintiffs' motion for a preliminary injunction on April 10, 2006. The Plaintiffs appealed and the Fourth Circuit affirmed on March 6, 2007.

In addition, Smith asserted several counterclaims, but those were dismissed on the Plaintiffs' motion to dismiss for lack of jurisdiction on November 7, 2006. The Plaintiffs moved to amend the complaint, which was granted on January 29, 2007.[2] However, the Plaintiffs never filed an amended complaint. The Plaintiffs filed a motion for judgment on the pleadings (document number 33) and a motion for summary judgment (document number 72), which were denied on February 23, 2007, and May 30, 2007, respectively. At a status conference on September 17, 2007, Smith orally moved for summary judgment. The court allowed Smith fifteen days to submit a memorandum in support of his oral motion. Smith filed a supplemental memorandum on September 26, 2007. In addition, at the status conference, the court allowed the Plaintiffs fifteen days to submit a memorandum addressing why they should not be sanctioned for filing a lis pendens against Smith's condo and for asking abusive discovery requests. The Plaintiffs submitted their brief concerning sanctions on September 27, 2007, and their memorandum in opposition to summary judgment on October 15, 2007.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against

---

[2] The Plaintiffs incorrectly state in their memorandum that this motion is still pending. Given that the Plaintiffs failed to file the second amended complaint, the court will not address any claims raised therein.

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F.Supp. 2d 596, 604 (D. Md. 1998).

### B. Smith's Summary Judgment Motion

#### 1. Defamation

"In order to prove defamation, the complaining party must show: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm." Fleming v. Rose, 567 S.E.2d 857, 860

4

(S.C. 2002). "[L]ibel is a written defamation." Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497, 501 (S.C. 1998).

Whether the alleged defamatory statement is actionable per se "is always a question of law for the court." Id. at 501. "If a defamation is actionable *per se*, then under common law principles the law *presumes* the defendant acted with common law malice and that the plaintiff suffered **general** damages." Id. In the alternative, if a "defamation is not actionable *per se*, then at common law the plaintiff must plead and prove common law actual malice and **special** damages." Id. at 501-02.

Libel is actionable per se if it involves "written or printed words which tend to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous." Id. at 502 (internal quotation marks omitted). "In other words, if the trial judge can legally presume, because of the nature of the statement, that the plaintiff's reputation was hurt as a consequence of its publication, then the libel is actionable *per se*." Holtzscheiter, 506 S.E.2d at 502.

Schmidt alleges that Smith's statements that Schmidt was a "yes man" who over promised and under delivered is defamation per se. (Pls.' Mem. Opp'n Summ. J. Ex. 3 (Schmidt Aff. ¶ 9).) The court has reviewed the article and the court finds that Smith's statements about Schmidt are patently not defamatory. Smith stated in the article as follows:

> From the beginning . . . I could tell the owner was a yes man. Of course, I have to be honest . . . eBay is; in and of itself a yes man paradise. Many sellers over promise and under deliver.

>    Although the owner seemed like a yes man . . . I had done my home work . . . he had owned an ecommerce B2B company called ChannelLinx. Tech savvy? Possibly . . .

(Id. Ex. 2 (Article).)  "Under the First Amendment there is no such thing as a false idea.  However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas.  But there is no constitutional value in false statements of fact."  Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974).

An alleged defamatory statement "must be provable as false before there can be liability under state defamation law."  Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990).  "[O]pinion statements, defamatory or otherwise, are not actionable unless they contain provably true or false factual connotations."  Woodward v. Weiss, 932 F. Supp. 723, 726 (D.S.C. 1996) (alteration in original) (internal quotation marks omitted).  The statement that "I could tell the owner was a yes man" is an opinion statement that cannot be characterized as true or false.  The term "yes man" has different meanings to different people.  See McCabe v. Rattiner, 814 F.2d 839, 842 (1st Cir. 1987) (finding that the term "scam" "means different things to different people . . . and there is not a single usage in common phraseology.  While some connotations of the word may encompass criminal behavior, others do not.  The lack of precision makes the assertion 'X is a scam' incapable of being proven true or false." (Alteration in original)); Lauderback v. Am. Broad. Cos., Inc., 741 F.2d 193, 196 (8th Cir. 1984) (insurance agent referred to as a "crook").  "Clearly, if the statement was not capable of being verified as false, there could be no liability for defamation."  Woodward, 932 F. Supp. at 726.  Based on the foregoing, calling Schmidt a "yes man" cannot give rise to liability for defamation.

Further, even if the term "yes man" could be verified as true or false, it is plainly not defamatory. Immediately after stating that Schmidt seemed like a "yes man," Smith describes Schmidt as possibly tech savvy, which is a positive statement about Schmidt. In addition, Smith stated that in the ebay industry many sellers commonly over promise and under deliver. However, Smith never said that Schmidt over promised and under delivered in this transaction. None of Smith's statements "reduce[d] [Schmidt's] character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous." Holtzscheiter, 506 S.E.2d at 502 (internal quotation marks omitted). Based on the foregoing, the court finds that Smith's statements were patently not defamatory.

2. Invasion of Privacy

"In South Carolina, three separate and distinct causes of action can arise under the rubric of invasion of privacy: (1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs." Snakenberg v. Hartford Cas. Ins. Co., 383 S.E.2d 2, 5 (S.C. Ct. App. 1989). In their complaint, Schmidt and Patterson allege a claim for wrongful appropriation. However, in their memorandum in opposition to Smith's summary judgment motion, Schmidt and Patterson concede that they have no invasion of privacy claim arising under the three causes of action listed above. (Pls.' Mem. Opp'n Summ. J. 21.) Instead, Patterson and Schmidt allege a claim for false light invasion of privacy. No South Carolina court has recognized a cause of action for false light invasion of privacy. Therefore, this claim fails as this cause of action does not exist under South Carolina law. Further, to the extent South Carolina would recognize this cause of action, the claim is wholly without merit.

7

The Restatement (Second) of Torts defines the tort of false light invasion of privacy as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 625E.  Schmidt and Patterson allege that Smith's

> linking to the photograph was accompanied by text in his posting that portrayed Schmidt and Patterson as irresponsible and overcommitted, because [Smith] presumed that the marriage would take time away from Schmidt's and Patterson's service of [Smith] as a customer of BidZirk.

(Pls.' Mem. Opp'n Summ. J. 24 & Ex. 6 (Patterson Aff.¶3) & Ex. 3 (Schmidt Aff. ¶ 12).)

Smith's article stated as follows

> He explained to me how he had just gotten married and was planning his honeymoon in a week's time.
> Wait! He was getting married, going on a honeymoon, and starting a (in his own words) 'multi-location business that will be national in 5 years time'?

(Id. Ex. 2 (Article).)  The article with the picture was hyperlinked to the language "he had just gotten married and was planning his honeymoon in a week's time."  (Id.)  Smith's statements did not cast Schmidt and Patterson in a false light.  Smith merely stated the fact that Schmidt and Patterson had much going on in their lives as they were getting married, going on a honeymoon, and starting a new business.  Nothing about Smith's statements "would be highly offensive to a reasonable person."  Restatement (Second) of Torts § 625E (emphasis added).  Based on the foregoing, this claim is baseless.

> To the extent Patterson and Schmidt continue to allege a claim for wrongful appropriation, this claim also is wholly without merit.
>
>> Wrongful appropriation of personality involves the intentional, unconsented use of the plaintiff's name, likeness, or identity by the defendant for his own benefit. The gist of the action is the violation of the plaintiff's exclusive right at common law to publicize and profit from his name, likeness, and other aspects of personal identity.

Id. at 5-6.

This claim fails because Smith did not place Patterson and Schmidt's picture on his blog. In contrast, Smith's blog included a link that readers could click on that linked the reader to another website, www.communityjournals.com, which contained the article and picture. Notably, Patterson and Schmidt consented to Community Journals' use of Schmidt and Patterson's picture. Schmidt and Patterson consented to the circulation of the article and picture in the Community Journal to publicize the opening of BidZirk. See United States v. Gines-Perez, 214 F. Supp. 2d 205, 225 (D. Puerto Rico 2002) ("[P]lacing information on the information superhighway necessarily makes said matter accessible to the public, no matter how many protectionist measures may be taken, or even when a web page is 'under construction.'" "[I]t strikes the Court as obvious that a claim to privacy is unavailable to someone who places information on an indisputably, public medium, such as the Internet, **without taking any measures to protect the information**."), vacated on other grounds by, No. 02-2707, 2004 WL 528426 (1st Cir. Mar. 18, 2004). Smith did not transport the picture to his blog. Instead, Smith's blog contained a link that readers could click on that takes the reader to the site where the article and picture are located, http://www.communityjournals.com/btc2005/html/2005BTC049.jpg.

The court finds that "a person who places a photograph on the Internet precisely intends to forsake and renounce all privacy rights to such imagery, particularly under circumstances . . . where [Patterson and Schmidt] did not employ protective measures or devices that would have controlled access to the Web page or the photograph itself." Gines-Perez, 214 F. Supp. 2d at 225. Further, there is no evidence that Smith's link to the article containing the picture of Patterson and Schmidt was done to benefit Smith in any way. Based on the foregoing, the court finds that Schmidt and Patterson consented to the display of their picture on the internet.

### 3. Lanham Act

Under the Lanham Act,

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B)(1998). BidZirk alleges that it is entitled to damages under 15 U.S.C. § 1117(a), which provides that if the defendant violates § 1125(a) then the plaintiff can "recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Further, Bidzirk alleges that it is entitled to treble damages and reasonable attorney's fees under § 1117(b).

In addition, Bidzirk seeks a permanent injunction. The court has the power to grant injunctions "to prevent the violation of any right of the registrant of a mark registered in the

Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of [15 U.S.C. § 1125]." 15 U.S.C. § 1116(a) (West Supp. 2007). Section 1125(c)(1) provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

BidZirk alleges that its mark is famous and distinctive, that Smith's infringement is in connection with a commercial use, that Smith's infringement dilutes the mark, and that Smith's infringement is not excused by any statutory defense. Even if Smith has infringed BidZirk's mark, the court finds that this infringement is excused by a statutory defense. Under § 1125(c)(4)(C), no "forms of news reporting and news commentary" are actionable under § 1125. These terms are not defined in the Lanham Act. Further, there is no published case deciding whether a blogger is a journalist.

However, in determining whether Smith was engaged in news reporting or news commentating, the court has applied the functional analysis suggested by commentators and the Plaintiffs in their memorandum in support of a preliminary injunction, which examines the content of the material, not the format, to determine whether it is journalism. See David L. Hudson, Jr., Blogging, http://www.firstamendmentcenter.org//press/topic.aspx?topic=blogging; (Pls.' Mem. Supp. Preliminary Injunction Ex. 34 (Hudson on Blogging).). In addition, the court has considered the intent of Smith in writing the article. The court agrees that not all bloggers are journalists. However, some bloggers are without question journalists. See CNN BLOGS: YOUR SAY, http://www.cnn.com/exchange/blogs/.

Upon review of the content of the article, the court finds that Smith's use of the BidZirk mark in the article was in the context of news reporting or news commentary. The article posted by Smith concerning the Plaintiffs is written for the purpose of conveying information to the public. In the four installments of the article, Smith describes his experience with BidZirk in great detail. (Pls.' Mem. Opp'n Summ. J. Ex. 2 (Article).) In addition, Smith addresses the positive and negative aspects, in his opinion, of dealing with a an eBay listing company, such as BidZirk. (Id.) Further, Smith provides a checklist for using an eBay listing company and tips for selling items on eBay. (Id.) Smith felt that what he learned from his experience with BidZirk would be helpful to others in dealing with an eBay listing company. The fact that Smith reports negatively about his experience with BidZirk does not dictate that the article's function or intent was not news reporting or news commentary.

There is no evidence that the sole purpose of the article was to denigrate BidZirk. Smith's article was titled "Special Report: You Gotta Be Berserk to Use an eBay Listing Company! The Whole Story." (Id.) Smith plainly states at the beginning of the article as follows: "In this special report . . . I'll be telling my detailed story of using such a company and relate how my selling Apple parts on eBay for 9 years has given me unique insight into this matter." (Id.) Smith further states that he has done research in preparation for his article as follows:

> This is my story as experienced by me personally. I have dealt with a company called BIDZIRK, in my home town. I have also visited several competitors. In doing extensive Google research, I have found that my problems are almost universal . . . but that only larger clients really complain. At the end, I will offer a checklist for you to use when choosing a listing company that includes questions you may not have thought of before.

(Pls.' Mem. Opp'n Summ. J. Ex. 2 (Article).)  Smith engaged in background research and provided consumers with a checklist for use in selecting a listing company.  Smith's article evidences his intent to report what he believed was a newsworthy story for consumers.  Based on the foregoing, no genuine issues of material fact exist and BidZirk's Lanham Act claim fails as a matter of law.

### III. Sanctions

The Plaintiffs' attorney, Kevin Elwell ("Elwell"), filed a lis pendens against Smith's condo on October 23, 2006.  Smith moved to strike the lis pendens on October 26, 2006.  After a status hearing on May 2, 2007, Magistrate Judge Catoe ordered Elwell to withdraw the lis pendens on May 7, 2007.  During the May 2, 2007 hearing, Elwell argued that this action is an action "affecting title to real estate," but had no law to support his point.  At the status conference hearing on September 17, 2007, the court allowed Elwell to brief why the court should not issue sanctions against the Plaintiffs for filing the lis pendens.  In the brief, the Plaintiffs allege that at the time the lis pendens was filed, they believed that they were entitled to judgment as a matter of law because Smith had failed to answer certain requests to admit.  The Plaintiffs further allege that they were attempting to protect their ability to collect on a judgment.  The Plaintiffs acknowledge that filing the lis pendens was wholly improper.  (Pls.' Mem. Regarding Sanctions 3.)

A plaintiff may "[i]n an action affecting the title to real property . . . not more than twenty days before filing the complaint or at any time afterwards . . . with the clerk of each county in which the property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action and the description of the property in that county

affected thereby." S.C. Code Ann. § 15-11-10 (2005). "Generally, the filing of a lis pendens places a cloud on title which prevents the owner from freely disposing of the property before the litigation is resolved." Pond Place Partners, Inc. v. Poole, 567 S.E.2d 881, 889 (S.C. 2002). However, "[s]ince the filing of a lis pendens is an extraordinary privilege granted by statute, strict compliance with the statutory provisions is required." Id.

"[A]n action 'affecting the title to real property' clearly allows the filing of a lis pendens by an interested party in order to protect their ownership interest in the property subject to the litigation." Id. However, "[w]here no real property is implicated . . . a notice of pendency of action need not be filed." Id. at 890. Further, "[o]ne who places a lis pendens notice on property without a 'colorable claim' of right to or interest in the property subjects themselves to a claim for slander of title." Ex parte Boykin, 656 So. 2d 821, 826 n.4 (Ala. Civ. App. 1994).

Without question, the instant matter is not an action affecting the title to real property. Therefore, the court will consider whether to impose sanctions. Rule 11(b) of the Federal Civil Procedure states that

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
> (1)   it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2)   the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3)   the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4)   the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Several factors that should be considered when assessing sanctions include:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by his attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

Sanderson v. Boddie-Noell Enter., Inc., 227 F.R.D. 448, 454 (E.D. Va. 2005).

The court finds that the degree of Plaintiffs' counsel's culpability weighs heavily in favor of sanctioning the Plaintiffs' counsel, Kevin Elwell ("Elwell"). Elwell is a competent attorney who knew or should have known with the most basic research that his actions were improper. In addition, after Smith moved to strike the lis pendens, Elwell argued in court that the lis pendens was proper. Elwell had no basis to support his position. (Mem. Regarding Sanctions 2.)

Further, the court finds that Smith has been prejudiced by the filing of the lis pendens. The title to his property was clouded for over six months. Smith alleges that during that time he was attempting to sell his property. Moreover, the public interest in preventing legal counsel from filing improper lis pendens and encumbering property is great. A lis pendens is a very powerful document and the statute is strictly applied because a lis pendens clouds the title to property. There is no evidence that Elwell's client is responsible for Elwell's wrongful conduct. However, taking into account the facts and the factors listed above, the court finds that based on Elwell's grossly improper conduct, he should be sanctioned in the amount of $1,000.00 payable immediately to the Defendant.[3]

---

[3] The court has also considered Rule 11 sanctions against the Plaintiffs and their attorney for the bringing of this action. Although awarding sanctions is a close question, the court declines to do so.

Therefore, it is

**ORDERED** that Smith's motion for summary judgment, document number 125, is granted. It is further

**ORDERED** that Plaintiffs' counsel, Kevin Elwell, is sanctioned in the amount of $1,000.00.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
October 22, 2007